**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x

GUCCI AMERICA, INC.,                                       :        Civil Action No. 09cv4373
                                                           :        (SAS)(JLC)
                 Plaintiff,                                :
                                                           :
          - against -                                      :
                                                           :
GUESS?, INC., MARC FISHER FOOTWEAR                         :
LLC, THE MAX LEATHER GROUP/CIPRIANI                        :
ACCESSORIES, INC., SEQUEL AG, K&M                          :
ASSOCIATES L.P., VIVA OPTIQUE, INC.,                       :
SIGNAL PRODUCTS, INC. and SWANK, INC.,                     :
                                                           :
                 Defendants.                               :
                                                           :
------------------------------------------------------------------ x

**DECLARATION OF ARTHUR LESHIN**

## DECLARATION OF ARTHUR LESHIN

1.    My name is Arthur Leshin.

2.    From December 1984 to December 2003, I was employed by Gucci America, Inc., initially as its Vice-President and Chief Financial Officer, and then as its Executive Vice-President, Finance, Real Estate and Logistics.

3.    I am competent to execute this Declaration, which I do upon personal knowledge.

4.    Sometime in late 2001 or early 2002, I was introduced to Dr. Stephen Moss by Tim Chorba, a partner with the law firm Patton Boggs LLP. I knew Tim because Gucci was a client of Patton Boggs and Tim had been a member of Gucci America's Board of Directors.

5.    When I met Dr. Moss, he mentioned that he was trying to help his son Jonathan, who was working in California, find a job in the New York area, and asked whether I could help. I told him I that I would try to help Jonathan to the extent I could do so.

6.    Some time thereafter, when I was in San Francisco on other business, I met Jonathan. I thought he was bright and that, if I could hire him, he might be able to help me with financial modeling of proposed real estate leases, preparing abstracts of proposed leases and assisting with certain trademark and U.S. customs issues that were previously handled by other non-legal personnel in the company. Jonathan informed me in our meeting that he had a law degree. I believed that his financial experience with Pricewaterhouse Coopers and McKesson Corporation, and the fact that he had a law degree, made him well-suited to help with the tasks listed above, much as a paralegal might otherwise do.

7.    At the time that I met Jonathan, Gucci had imposed a hiring freeze. I therefore made calls to several people in the real estate business outside of the company to try to help find a real estate position for Jonathan, but none materialized.

8.    When Gucci eventually lifted the hiring freeze, I offered Jonathan a job working with and reporting to me.

9.    Because I did not hire Jonathan to serve as an in-house lawyer, I did not inquire further about his legal background. In particular, I did not make any inquiry as to whether he was a member of the bar of California (or any other state), and I did not ask anyone inside or outside of the company to make any such inquiry.

10.    Although I am not certain, my best recollection is that Jonathan reported to me for approximately a year or so. During that time his responsibilities included financial modeling of real estate leases, preparing lease abstracts and addressing certain trademark and U.S. customs issues. I recall being satisfied with the work Jonathan did, and I came to consider him a trusted employee.

508146v1



11.     Sometime in mid-2003, based on the work Jonathan had done, and my understanding that he was a lawyer, I recommended to the company that Jonathan be promoted to the position of legal counsel.  Thereafter, the company decided to promote Jonathan to that position, although to the best of my recollection, he did not report to me at that time.

12.     I left Gucci America in December 2003.

13.     I am executing this declaration voluntarily.

I HEREBY DECLARE under penalty of perjury that the foregoing is true and correct.

_____
Arthur Leshin

Date: ___3/22/10___

508146v1