UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
GUCCI AMERICA, INC.,                              :   Civil Action No. 09cv4373 (SAS)
                                                  :
          Plaintiff,                              :   **DECLARATION OF**
                                                  :   **CHRISTY LELECK**
     - against -                                  :
                                                  :
GUESS?, INC., MARC FISHER FOOTWEAR                :
LLC, THE MAX LEATHER GROUP/CIPRIANI               :
ACCESSORIES, INC., SEQUEL AG, K&M                 :
ASSOCIATES L.P., VIVA OPTIQUE, INC.,              :
SIGNAL PRODUCTS, INC. and SWANK, INC.,            :
                                                  :
          Defendants.                             :
                                                  :
-------------------------------------------------------------- x

CHRISTY LELECK hereby declares as follows under penalty of perjury:

1. I am the Director of Human Resources at Gucci America, Inc. ("GA"). I have been in that position since October 2004. I was originally hired by GA in October 1998 as a coordinator in the Human Resources Department, and I held that position until 2004. In October 2004, I was promoted to Director of Human Resources, succeeding Karen Lombardo in that position. Altogether, I have worked at GA for over 11 years.

2. I was employed by GA at the time Jonathan Moss was hired by the company in 2002. Although I had no responsibility for Jonathan's hiring, in 2002 and 2003 I worked with Jonathan at GA's Secaucus, New Jersey office. From time to time, Jonathan and I would drive together from GA's New Jersey office to New York City. During this time, I had numerous conversations with Jonathan in which he told me that he was a lawyer, and that he had practiced law before coming to GA. More specifically, I can recall that on at least one occasion, Jonathan told me that before he had been hired by GA, he had practiced law in San Francisco, California.

NY: 508666v1

It was therefore my clear perception and understanding that Jonathan was a lawyer authorized to practice law.

3. To my recollection, it was also the clear perception and understanding of others within GA that Jonathan was a lawyer authorized to practice law. For example, I recall that, starting sometime in 2004, after Jonathan had been promoted to the position of GA's Legal Counsel, GA's then-President, Pat Malone, to whom Jonathan reported, began to expand the scope of the work that Jonathan was doing. I further recall, on several occasions, hearing Ms. Malone refer to Jonathan as "our lawyer" or the "company's lawyer".

4. Similarly, when Daniella Vitale, GA's current President, was promoted to that position in 2006, Ms. Vitale told me, on several occasions, that Jonathan, as the company's lawyer, should take on additional work that was then being handled by our company's outside lawyers, in order to reduce GA's legal costs.

5. My experience with Jonathan has been the same. After being promoted to the position of Director of Human Resources, I have worked with Jonathan on several employment-related legal matters of the company, in which he held himself out to me, and to parties outside of the company, as an attorney. For example, on several occasions Jonathan represented GA as the company's lawyer in EEOC hearings that I or members of my department attended. In addition, in another matter in which I was directly involved, Jonathan acted as the company's lawyer in negotiating a settlement with an employee referral firm used by Gucci.

6. When I was promoted to the position of Director of Human Resources at GA, it did not occur to me that I, or anyone at GA, needed to check Jonathan's qualifications to practice law. In addition to the fact that he always held himself out as a lawyer and was already perceived by senior management as the company's lawyer, it was my understanding that

Jonathan had been originally referred to GA by our outside lawyers, Patton Boggs LLP, and that he had worked with Patton Boggs on a number of matters over the years. Therefore, I had no reason to question Jonathan's qualifications, or his authorization to practice law.

7. During the period that I have held the position of Director of Human Resources at GA, Jonathan received two promotions that I can recall. First, in 2005, Jonathan was promoted to the position of Director of Legal Services. Then, in 2008, he was promoted to the position of Vice President. In neither instance did I investigate Jonathan's background to determine whether he was authorized to practice law, nor did anyone ask me to do so. The reason for that was that Jonathan and had always held himself out as a lawyer, was already considered the company's lawyer, and for years had received good reviews for his work in his position as Legal Counsel. There was, therefore, no reason for me, or anyone else at GA to my knowledge, to suspect that Jonathan had not properly maintained his bar status, or for some reason was not authorized to practice law.

8. After GA learned that Jonathan had been on inactive status with the California Bar for the entire period of his employment by GA, I attended a meeting in February 2010 at GA's offices with Jonathan and Ms. Vitale, the President of GA. At that meeting, Jonathan admitted to me and Ms. Vitale that he had not been forthcoming with the company, and that he had not informed the company that he had been on inactive status with the California Bar. Jonathan offered no explanation for his failure to so inform the company.

NY: 508666v1

Declared under penalty of perjury this 26th day of March, 2010.

_____
CHRISTY LELECK

NY: 508666v1