UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
GUCCI AMERICA, INC.,

                Plaintiff,

                - against -

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

                Defendants.
------------------------------------------------------------------ x

Civil Action No. 09cv4373 (SAS)

**DECLARATION OF
KAREN LOMBARDO**

KAREN LOMBARDO hereby declares as follows under penalty of perjury:

1. I am Executive Vice President, Global Human Resources for The Gucci Group, N.V., based in London, England. I have served in that position since October 2004.

2. Prior to assuming my current position as Executive Vice President, Global Human Resources, I was the Director of Human Resources at Gucci America, Inc. ("GA") from May 1985 to October 2004.

3. As the Director of Human Resources at GA, I was responsible for administrating all matters relating to employee relations at GA.

4. In or about mid-2002, Jonathan Moss was hired by GA. Mr. Moss was hired by GA's then-Executive Vice-President, Finance, Real Estate and Logistics, Arthur Leshin, to assist Mr. Leshin, among other things, with various real estate-related matters arising from GA's efforts to open a number of new retail stores in the United States.

1

5. From my discussions with Mr. Leshin at the time, I understood that Mr. Moss had previously worked as a lawyer in California. My further understanding was that Mr. Moss had been referred to GA by one of the partners in GA's outside law firm, Patton Boggs LLP of Washington, D.C.

6. At the time Mr. Moss was hired, Mr. Leshin further advised me, and I understood, that notwithstanding that Mr. Moss was a lawyer who had previously practiced in California, he was being hired by GA to do non-lawyer work, and that GA would not be using him as an attorney.

7. Accordingly, I did not do anything at that time to investigate whether or not Mr. Moss was authorized to practice law, nor was I asked to do so.

8. To the best of my recollection, based on what I was told by others at GA, including Mr. Leshin, Mr. Moss did a good job in his role as a non-lawyer at GA, and became a valued employee. At some point before I left GA in 2004, I recall that Mr. Moss began to take on additional responsibilities, and became known within GA as the Company's in-house lawyer. Given that Mr. Moss had done good work for the company, had been recommended to the company by GA's outside lawyers, and, to my understanding, had worked with our outside lawyers on a number of matters they were handling for us during his tenure at GA, I did not feel the need to investigate his legal qualifications, including his bar status.

9. After Mr. Leshin left the company in late 2003, Mr. Moss, in his position as in-house counsel, reported to the President of GA. To my understanding, starting in 2004, Mr. Moss' role as the company's in-house counsel continued to expand after he began reporting directly to the President.

2

10. At no time during the period that he was employed by GA did Mr. Moss, to my knowledge, ever inform anyone at GA that he was an inactive member of the California Bar. To the contrary, in my experience, Mr. Moss held himself out, at all times, as a lawyer who was authorized to practice law, and the clear perception that I had, and, as far as I could tell, that others in the company had, was that he was a lawyer.

11. As indicated above, I left GA in October 2004.

Declared under penalty of perjury this 29 day of March, 2010.

*KAREN LOMBARDO*

3

NY: 508651v1