UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
GUCCI AMERICA, INC.,

           Plaintiff,

- against -

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

           Defendants.
------------------------------------------------------------------ x

Civil Action No. 09cv4373 (SAS)

**DECLARATION OF**
**DANIELLA VITALE**

DANIELLA VITALE hereby declares as follows under penalty of perjury:

1.     I am President and Chief Executive Officer of Gucci America, Inc. ("GA"). I have held that position since January 2006. Prior to becoming GA's President and Chief Executive Officer, from 1999 to 2006 I served as GA's Director of Wholesale Region America, and later as its Vice President of Wholesale.

2.     Prior to joining GA in 1999, I was Vice President of Wholesale for Giorgio Armani America. As Vice President of Wholesale, I was primarily responsible for sales and marketing of Giorgio Armani products in the United States. I held this position from 1995 to 1999.

3.     Prior to working for Giorgio Armani America, I spent approximately five years (1991 - 1995) as Merchandise Manager for Ferragamo America. As Merchandise Manager, I was primarily responsible for setting product production plans, acting as a liaison between the corporate office and the sales force, and for inventory management.

NY: 508348v1

4. As President and Chief Executive Officer of GA, I have complete operational responsibilities for all aspects of GA's retail and wholesale business in North and South America

5. When I became the President and Chief Executive Officer of GA in January 2006, it was my firm understanding that Jonathan Moss was, and had been since approximately 2003, GA's in-house Legal Counsel. In fact, during the period 2003 to 2006, I worked with Jonathan on a number of matters in which he represented the company as Legal Counsel.

6. When I was promoted to the position of President and Chief Executive Officer of GA in 2006, one of the things I decided to do, in view of my clear understanding that Jonathan was a lawyer, and had received positive feedback for the work he had done in his position as Legal Counsel, was to expand his duties. Previously, I understood that Jonathan's main focus was on real estate and taxation matters, and on issues related to trademark prosecution and enforcement. However, it occurred to me that, as the company's lawyer, he should be able to take on additional responsibilities in other areas where GA had legal needs, such as employment and transactional matters, which would result in a significant savings for the company on outside counsel fees. I therefore urged our department managers to utilize Jonathan's services as a lawyer to a greater extent, and to rely to a lesser extent on our outside counsel for legal services.

7. By all accounts, and according to my own experience, Jonathan performed well in his expanded role. Among other things, Jonathan represented the company on various important matters such as: GA's new flagship New York City store lease negotiation with the Trump Organization; GA's sub-lease of its previous New York store to the Diesel apparel company; philanthropic agreements between GA and various charitable organizations including Raising Malawi; the establishment of The Gucci Foundation, a non-profit charitable organization; various senior-level employment agreements; the management of GA's trademark enforcement

and anti-counterfeiting programs, including trademark infringement litigation; and research regarding privacy laws relating to the retention of customer information. I was pleased with the results of Jonathan's work and, as far as I could tell from the feedback I was getting, so were others at GA.

8. Recognizing the expanded role Jonathan had taken on as GA's in-house attorney during my tenure as President, in 2008 I decided to promote Jonathan to the position of Vice President, Director of Legal and Real Estate.

9. At all times that I have worked with Jonathan since 2003, he has held himself out to me as an attorney, and as someone who is authorized to practice law. When I was promoted to the position of President and Chief Executive Officer of GA in 2006, it was my clear perception, therefore, that he was the company's lawyer. Further, to my clear recollection, at all times since I became President and Chief Executive Officer of GA, Jonathan was also viewed by others in management positions at GA as the company's lawyer.

10. On January 22, 2010, I was informed that Jonathan had recently testified at a deposition in this action that although he was a member of the California Bar, he was on inactive status, and was not a member of any other state bar.

11. After learning of Jonathan's status as a inactive member of the California Bar, I became extremely concerned about the potential implications of this issue, as it had always been my understanding that Jonathan was authorized to practice law. I therefore made the decision to immediately place him on administrative leave, effective January 25, 2010, pending a more thorough investigation.

12. After conducting a preliminary investigation of this matter, I, along with Christy Leleck, GA's Director of Human Resources, met with Jonathan on February 9, 2010. During

NY: 508348v1

this meeting, Jonathan admitted that he had not been forthcoming with GA at the time he had been hired in 2002, or at any time thereafter, concerning his status with the California Bar. I personally was shocked by this admission, since this was not consistent with the clear understanding I had, for seven years, that Jonathan was a lawyer authorized to practice law. In my mind, this admission raised serious questions about Jonathan's trustworthiness.

13. After further investigation of this matter, I made the decision to terminate Jonathan's employment with GA for cause, effective March 1, 2010. As of that date, Jonathan Moss is no longer employed by GA.

NY: 508348v1

MAR-25-2010  13:33        12123798699                              12123798699    P.06

Declared under penalty of perjury this 20 day of March, 2010,

_____
DANIELLA VITALE