UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

GUCCI AMERICA, INC., : Civil Action No. 09cv4373
: (SAS)(JLC)
        Plaintiff, :
:
    - against - :
:
GUESS?, INC., MARC FISHER FOOTWEAR :
LLC, THE MAX LEATHER GROUP/CIPRIANI :
ACCESSORIES, INC., SEQUEL AG, K&M :
ASSOCIATES L.P., VIVA OPTIQUE, INC., :
SIGNAL PRODUCTS, INC. and SWANK, INC., :
:
        Defendants. :
:

------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF GUCCI AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DISCLOSURE OF THE PRIVILEGED COMMUNICATIONS OF PLAINTIFF'S IN-HOUSE LEGAL COUNSEL JONATHAN MOSS

ARNOLD & PORTER LLP
Louis S. Ederer, Esq.
399 Park Avenue
New York, New York 10022
Tel: (212) 715-1000
Fax: (212) 715-1399

*Attorneys for
Plaintiff Gucci America, Inc.*

## TABLE OF CONTENTS

Preliminary Statement ........................................................................................................... 1

Relevant Facts ...................................................................................................................... 2

Argument .............................................................................................................................. 4

    I.      Standard of Review for Protective Order ................................................................ 4

    II.     The Purpose of the Attorney-Client Privilege ........................................................ 5

    III.    Moss' Communications Are Entitled to Protection as
          Attorney-Client Communications ........................................................................... 6

         A.    Moss Should Be Considered an Attorney for Purposes
               of Applying the Attorney-Client Privilege ................................................. 6

              1.    Moss Is, and Has Been At All Relevant Times, a Member
                   of the California Bar ........................................................................ 7

              2.    Moss Is, and Has Been At All Relevant Times, a Member
                   of the U.S. District Courts for the Southern and Central Districts of
                   California ......................................................................................... 8

         B.    Gucci Had a More Than Reasonable Belief that
               Moss Was an Attorney ................................................................................ 10

         C.    In the Event Moss' Communications Are Determined to Be Not Subject
               to the Attorney-Client Privilege, Gucci Reserves the Right to Invoke
               the Work Product Privilege As to His Communications ........................... 14

Conclusion ......................................................................................................................... 15

# TABLE OF AUTHORITIES

*Federal and State Cases*

*Applebaum v. Rush Univ. Med. Ctr.*,
   231 Ill. 2d 429 (Ill. 2008) ............................................................................................8

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*,
   No. 97 Civ. 4978, 2002 WL 31385824 (S.D.N.Y. Oct. 21, 2002) ..................................9

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
   160 F.R.D. 437 (S.D.N.Y. 1995) ..............................................................................5, 6

*Brydonjack v. State Bar of Cal.*,
   281 P. 1018 (Cal. 1929) ................................................................................................7

*Fin. Tech. Int'l, Inc. v. Smith*,
   No. 99 Civ. 9351, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000) ..........................12, 14

*Freeman v. Indian Spring Land Co.*,
   No. FSTCV054002991S, 2007 WL 127699 (Conn. Super. Ct. Jan. 8, 2007) ..............13

*Galvin v. Hoblock*,
   No. 00 Civ. 6058, 2003 WL 22208370 (S.D.N.Y. Sept. 24, 2003) ................................5

*Golden Trade, S.r.L. v. Lee Apparel Co.*,
   143 F.R.D. 514 (S.D.N.Y. 1992) ..................................................................................6

*Hickman v. Taylor*,
   329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) .....................................................15

*Hustedt v. Workers' Comp. Appeals Bd.*,
   636 P.2d 1139 (Cal. 1981) ............................................................................................7

*In re Asia Global Crossing, Ltd.*,
   322 B.R. 247 (Bankr. S.D.N.Y. 2005) ........................................................................10

*In re Copper Mkt. Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) ................................................................................10

*In re Grand Jury Subpoena Duces Tecum*,
   112 F.3d 910 (8th Cir. 1997) ......................................................................................11

*In re Rivastigmine Patent Litig.*,
   237 F.R.D. 69 (S.D.N.Y. 2006) ....................................................................................9

*In re Rose*,
   993 P.2d 956 (Cal. 2000) ..............................................................................................7

*In re Ruffalo*,
   390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968) ................................................9

*Kunstler v. City of New York*,
   No. 04 Civ. 1145, 2006 WL 2516625 (S.D.N.Y. Aug. 29, 2006) ..............................4, 5

*NXIVM Corp. v. O'Hara*,
   241 F.R.D. 109 (N.D.N.Y. 2007) ............................................................................... 13

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*,
   231 F.R.D. 134 (S.D.N.Y. 2004) ......................................................................... *passim*

*Theard v. U.S.*,
   354 U.S. 278, 77 S. Ct. 1274, 1 L. Ed. 2d 1342 (1957) ............................................... 9

*Trammel v. U.S.*,
   445 U.S. 40, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980) ............................................... 13

*Tyree v. Dance*,
   No. 88-15775, 1990 WL 40298 (9th Cir. Apr. 4, 1990) ........................................... 8, 9

*Upjohn Co. v. U.S.*,
   449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) ............................... 5, 13, 14, 15

*U.S. v. Adlman*,
   68 F.3d 1495 (2d Cir. 1995) ....................................................................................... 15

*U.S. v. Boffa*,
   513 F. Supp. 517 (D. Del. 1981) ................................................................................ 11

*U.S. v. Davis*,
   131 F.R.D. 391 (S.D.N.Y. 1990) ................................................................................. 6

*U.S. v. Hoffman*,
   733 F.2d 596 (9th Cir. 1984) ....................................................................................... 9

*U.S. v. Gillock*,
   445 U.S. 360, 100 S. Ct. 1185, 63 L. Ed. 2d 454 (1980) ........................................... 13

*U.S. v. Mullen & Co.*,
   776 F. Supp. 620 (D. Mass. 1991) ............................................................................. 11

*U.S. v. Nobles*,
   422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975) ........................................ 14, 15

*U.S. v. Ostrer*,
   422 F. Supp. 93 (S.D.N.Y. 1976) .............................................................................. 11

*U.S. v. Rivera*,
   837 F. Supp. 565 (S.D.N.Y. 1993) ...................................................................... 10, 11

*U.S. v. Spector*,
   793 F.2d 932 (8th Cir. 1986), *cert. denied*, 479 U.S. 1031, 107 S. Ct. 876,
   93 L. Ed. 2d 830 (1987) ............................................................................................. 10

*U.S. v. Steele*,
   53 M.J. 274 (C.A.A.F. 2000) ....................................................................................... 9

*von Bulow v. von Bulow*,
   811 F.2d 136 (2d Cir. 1987) ......................................................................................... 5

*Rules and Secondary Authority*

FED. R. CIV. P. 26 ............................................................................................................1, 4, 5, 14

FED. R. EVID. 501 .........................................................................................................................5

Supreme Court Standard 503(a)(2), 56 F.R.D. 183, 235–36 (1973) ...................................2, 10, 13

S. REP. NO. 93-1277, p. 13 (1974) ..............................................................................................13

CAL. BUS. & PROF. CODE, § 6003 ................................................................................................7

CAL. BUS. & PROF. CODE, § 6005 ................................................................................................7

CAL. BUS. & PROF. CODE, § 6006 .............................................................................................7, 8

*Rules and Regulations of the State Bar of California*, art. I, § 2(a) ..............................................7

*Rules and Regulations of the State Bar of California*, art. I, § 3 ..............................................7, 8

Joseph Pratt, *The Parameters of the Attorney Privilege for
   In-House Counsel at the International Level:
   Protecting the Company's Confidential Information*,
   20 NW. J. INT'L L. & BUS. 145 (1999) .................................................................................6

# PRELIMINARY STATEMENT

Plaintiff Gucci America, Inc. ("Gucci") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 26(c), for a protective order against the disclosure of the privileged communications of its in-house Legal Counsel, Jonathan Moss.

Defendant Guess?, Inc. ("Guess") seeks disclosure of the otherwise concededly privileged communications of Moss, a duly admitted member of the California and federal bars, relying only on Moss' voluntary decision, unbeknownst to Gucci, not to pay the additional funds necessary to maintain active California bar status during his tenure at Gucci. In particular, Guess' sole basis for maintaining that Gucci should not be permitted to invoke the attorney-client privilege with respect to Moss' communications is that Moss, Gucci's in-house Legal Counsel since 2003, was an "inactive" member of the California bar. Guess essentially argues that because California law provides that inactive bar members are not allowed to practice law or hold themselves out as lawyers, Moss' communications were not those of an attorney, and may not be protected. As set forth below, however, the issue is far from that simple.

*First*, the basic rule is that the attorney-client privilege applies if the person to whom communication was made "is a member of the bar of a court". *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 138 (S.D.N.Y. 2004). As the evidence presented by Gucci here clearly demonstrates, this requirement is met. The fact is that Moss was, at all relevant times, a member of the California bar (albeit inactive, a status that he could have changed at any time by the ministerial act of paying a larger annual fee), and an active member of the bars of the U.S. District Courts for the Southern and Central Districts of California.

*Second*, even if the Court were to find that Moss should not be considered an attorney for purposes of applying the *Beacon Hill* test, Gucci is nevertheless entitled to invoke the attorney-client privilege if it had a reasonable belief that Moss was an attorney when it communicated

with him. *See, e.g.*, Supreme Court Standard 503(a)(2), 56 F.R.D. 183, 235–36 (1973). As demonstrated by the declarations submitted in support of this motion, it is clear that, throughout the course of Moss' employment, Gucci personnel, when they communicated with Moss in confidence, at all times reasonably believed that he was a lawyer authorized to practice law.

Accordingly, on either ground, Gucci is entitled to maintain the attorney-client privilege with respect to Moss' communications, and this Court should enter an order protecting such communications from disclosure.

## RELEVANT FACTS

The facts supporting Gucci's position that (i) Moss was an attorney for purposes of applying the attorney-client privilege; and (ii) alternatively, that Gucci, at all times, had a reasonable belief that Moss was an attorney authorized to practice law, are fully set forth in the accompanying declarations of George Borababy, Esq., a partner at Patton Boggs LLP, Gucci's outside counsel when Moss was hired ("Borababy Decl."); Timothy A. Chorba, Esq., also a partner at Patton Boggs LLP when Moss was hired ("Chorba Decl."); Arthur Leshin, Gucci's former Vice President, Finance, Real Estate and Logistics, who hired Moss in 2002 ("Leshin Decl."); Karen Lombardo, Gucci's Director of Human Resources at the time Moss was hired ("Lombardo Decl."); Christy Leleck, Gucci's Director of Human Resources ("Leleck Decl."); Daniella Vitale, Gucci's President and CEO ("Vitale Decl."); and Louis S. Ederer, Esq. ("Ederer Decl."), along with the exhibits annexed thereto. These facts are summarized as follows:

<u>Moss' Background as an Attorney</u>. Jonathan Moss served as Gucci's in-house Legal Counsel from 2003 to March 1, 2010. Leshin Decl. ¶11; Vitale Decl. ¶¶5, 13. Moss is a graduate of the Fordham University School of Law. Ederer Decl. ¶2, Ex. A. Following his graduation from Fordham, Moss sat for and passed the California bar examination, and, on December 14, 1993, was admitted to the California bar. *Id.* Thereafter, in December 1994,

Moss became a member of the bars of the U.S. District Courts for the Southern and Central Districts of California. *Id.* at ¶¶3-4, Exs. B, C. On September 1, 1996, Moss voluntarily changed his California bar status from active to inactive, but has remained a member of the California bar since that time, each year voluntarily paying the required fee to maintain inactive status. *Id.* at ¶2, Ex. A. Moss remains an active member of the bars of the U.S. District Courts for the Southern and Central Districts of California. *Id.* at ¶¶3-4, Exs. B, C.

<u>Moss' Employment History at Gucci</u>. In 2002, Moss was hired by Gucci into a non-lawyer position, having been referred to Gucci by its outside counsel, Patton Boggs LLP. Chorba Decl. ¶¶5-6; Leshin Decl. ¶¶4-6, 8, 10; Lombardo Decl. ¶¶4-5. While Gucci understood, based on statements Moss made prior to his hiring, that he held a law degree, and had previously worked as a lawyer in California, Gucci hired Moss to do non-lawyer work. Leshin Decl. ¶¶6, 9; Lombardo Decl. ¶¶5-6. Accordingly, Gucci did not make any inquiry at the time of Moss' hiring as to his legal qualifications or bar status. Leshin Decl. ¶9; Lombardo Decl. ¶7. At no time during the hiring process did Moss inform the company that he was an inactive member of the California bar. Lombardo Decl. ¶10. Rather, Gucci understood that Moss was a lawyer authorized to practice law. Leshin Decl. ¶¶6, 11; Lombardo Decl. ¶5.

From 2002-2003, during the period he was employed as a non-lawyer, Moss presented himself to Gucci employees and management as a lawyer authorized to practice law. Lombardo Decl. ¶10; Leleck Decl. ¶¶2-3. In 2002, Moss even submitted court papers in a bankruptcy proceeding in the U.S. Bankruptcy Court for the Southern District of New York, representing that he was a member in good standing of the bar of the State of California, or of the U.S. District Court for the Southern District of California. Ederer Decl. ¶5, Ex. D. In 2003, after having established himself as a trusted employee, Moss was recommended for a promotion, and

3

ultimately was promoted to the position of Legal Counsel. Leshin Decl. ¶¶10-11; Lombardo Decl. ¶8. Given that Moss had done good work for the company, had been referred by Gucci's outside lawyers, had worked with Gucci's outside lawyers on a number of matters, and had consistently held himself out as a lawyer, Gucci did not investigate his legal qualifications or bar status at the time of his promotion. Lombardo Decl. ¶¶8, 10.

Following his promotion to Legal Counsel in 2003, Moss continued to hold himself out to Gucci personnel and senior management as a lawyer authorized to practice law, and, as a result, became widely thought of as "the company's lawyer." Lombardo Decl. ¶¶9-10; Leleck Decl. ¶¶3, 5, 7; Vitale Decl. ¶¶5-9; Ederer Decl. ¶6, Ex. E. In his role as the company's lawyer, Moss continued to take on additional legal responsibilities. Leleck Decl. ¶¶3-5, 7; Vitale Decl. ¶¶6-9. Among other things, he represented Gucci as a lawyer in proceedings involving third parties, and filed papers in the U.S. Trademark Office in which he held himself out as an attorney admitted to the California bar. Leleck Decl. ¶¶5, 8; Vitale Decl. ¶7; Ederer Decl. ¶7, Ex. F.

In January 2010, when Gucci learned that Moss, although a member of the California bar, had been on inactive status throughout his employment, Gucci placed Moss on administrative leave. Vitale Decl. ¶¶10-11. Thereafter, Gucci met with Moss, and he admitted to management that he had not been forthcoming with them, and that he had withheld from Gucci the fact that he was on inactive status in California. *Id.* at ¶12; Leleck Decl. ¶8. Following a further investigation, Gucci terminated Moss for cause, effective March 1, 2010. Vitale Decl. ¶¶10-13.

## ARGUMENT

### I. Standard of Review for Protective Order

Under FED. R. CIV. P. 26(c), protective orders are appropriate to establish specified terms and conditions for discovery, and restrict the scope of the matters into which parties may inquire. *See, e.g., Kunstler v. City of New York*, No. 04 Civ. 1145, 2006 WL 2516625, at *11 (S.D.N.Y.

Aug. 29, 2006) (FED. R. CIV. P. 26(c) provides a court with "broad discretion to tailor discovery to the needs of the case and the interests of the discovered party"). As such, Courts have repeatedly held that protective orders are appropriate to protect communications which are subject to the attorney-client and/or work product privileges from disclosure. *See, e.g., Galvin v. Hoblock*, No. 00 Civ. 6058, 2003 WL 22208370, at *1 (S.D.N.Y. Sept. 24, 2003) (granting a motion for protective order to protect documents subject to attorney-client privilege).

## II.     The Purpose of the Attorney-Client Privilege

The purpose of the attorney-client privilege is to protect the client against the invasion of its most sensitive and confidential communications with its lawyers, and to encourage the complete disclosure of information between attorney and client, all furthering the interests of justice. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Moreover, the privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390.

Federal privilege issues are controlled by "principles of common law". FED. R. EVID. 501; *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 60 F.R.D. 437, 441 (S.D.N.Y. 1995), citing *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987). Under these principles, the elements of the attorney-client privilege are well settled:

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) ***is a member of the bar of a court***, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Beacon Hill*, 231 F.R.D. at 138 (emphasis added), quoting *Bank Brussels Lambert*, 160 F.R.D. at

441; *see U.S. v. Davis*, 131 F.R.D. 391, 398 (S.D.N.Y. 1990).[1] Thus, as a general matter, the party invoking the privilege must demonstrate that the communications in question were between the client and his attorney (who, to qualify, need only be a bar member), and were made in confidence for the purpose of facilitating the rendering of legal advice or services by the attorney. *See Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 517–18 (S.D.N.Y. 1992).

### III. Moss' Communications Are Entitled to Protection as Attorney-Client Communications

Guess has challenged Gucci's assertion of the attorney-client privilege with respect to Moss' communications, based solely on the argument that because Moss was not an active member of any bar, he was not an attorney authorized to practice law, and therefore no privilege can attach to his communications. Guess' argument, however, is faulty in at least two respects. First, Moss was, in fact, at all times a member of the California bar and the bars of U.S. District Courts for the Southern and Central Districts of California. Thus, his status as a bar member satisfies the first prong of the *Beacon Hill* test, namely that Moss be a "member of the bar of a court." Second, even if the Court determines that Moss was not a bar member for purposes of maintaining privilege, Gucci's reasonable belief that he was an attorney preserves the privilege.

#### A. Moss Should Be Considered an Attorney for Purposes of Applying the Attorney-Client Privilege

The common law standard for applying attorney-client privilege in the Second Circuit merely requires that a putative attorney be a "member of the bar of a court." *Beacon Hill*, 231 F.R.D. at 138. Here, Moss has been, at all relevant times, a member of the California bar, and an active member of the bars of the U.S. District Courts for the Southern and Central Districts of

---

[1] American courts have been extending the attorney-client privilege to in-house counsel since the beginning of the twentieth century. Joseph Pratt, *The Parameters of the Attorney Privilege for In-House Counsel at the International Level: Protecting the Company's Confidential Information*, 20 NW. J. INT'L L. & BUS. 145, 151 (1999).

California. While his status in the California bar has been "inactive," that has no bearing on the question whether he was admitted to the bar, or met all of the qualifications to practice law. Moss therefore has been, at all relevant times, "a member of the bar of a court."

### 1. Moss Is, and Has Been At All Relevant Times, a Member of the California Bar

For purposes of applying the attorney-client privilege, there is no requirement in *Beacon Hill*, or in any case in this Circuit, that the attorney in question be an "active" member of the bar of any court. The rule is, simply, that the attorney be a member of the bar of some court. Under California law, "inactive" members of the California bar are still bar members.

A California bar member's choice to go inactive does not impact his status as a bar member. Only the California Supreme Court has the ability to take away a bar-admitted attorney's membership. *See, e.g., Hustedt v. Workers' Comp. Appeals Bd.*, 636 P.2d 1139, 1139 (Cal. 1981). Although the Supreme Court has recognized that the California legislature may exercise "a reasonable degree of regulation and control over the profession and practice of law," the Court retains the ultimate authority to decide who is admitted to practice before it. *See Brydonjack v. State Bar of Cal.*, 281 P. 1018, 1021 (Cal. 1929). For example, once the California Supreme Court has admitted an attorney to practice, the attorney cannot be suspended or disbarred except by order of the Court. *See, e.g., In re Rose*, 993 P.2d 956, 956 (Cal. 2000).

Thus, the question whether an attorney is "admitted to practice" under California bar rules is entirely separate from the concept of a bar member going on inactive status. The California bar has two classes of members: active and inactive. *See* CAL. BUS. & PROF. CODE, § 6003. California bar members can elect either, as long as they are not under suspension, and still retain bar membership. *Id.* at § 6005; *Rules and Regulations of the State Bar of California* ["*Rules*"], art. I, § 2(a). Further, an inactive member may transfer to active status at any time

upon written request, simply by paying the full annual membership fee, as opposed to the lesser fee for maintaining inactive status. *See* CAL. BUS. & PROF. CODE, § 6006; Rules, art. I, § 3. According to the California bar website, "[i]nactive members have chosen this status voluntarily and may transfer to active at any time upon request." Ederer Decl. ¶8, Ex. G (California Bar "Member Status Definitions").[2] Thus, the change in status is purely ministerial — there is no waiting period and no "reapplication" process, nor is the transfer subject to any discretion on the part of the California bar.

Therefore, both active and inactive members of the California bar are, by definition, bar members admitted to practice before the California Supreme Court. They are granted admission upon passing the bar exam, and they remain admitted unless the California Supreme Court declares otherwise. *See, e.g., Tyree v. Dance*, No. 88-15775, 1990 WL 40298, at *2 (9th Cir. Apr. 4, 1990) ("[attorney] remained a member of the California bar when he became voluntarily inactive"), citing CAL. BUS. & PROF. CODE, § 6006; *see also Applebaum v. Rush Univ. Med. Ctr.*, 231 Ill. 2d 429, 446 (Ill. 2008) (Illinois Supreme Court held that while attorney voluntarily chose to go on "inactive" status under Illinois' similar procedures for active/inactive bar membership, "he remained — at all times — a licensed and registered member of the Illinois bar"). Accordingly, regardless of whether Moss was "inactive" or "active", he was at all times a member of the California bar, and therefore satisfies the bar membership prong of *Beacon Hill* for purposes of the attorney-client privilege.

2. **Moss Is, and Has Been At All Relevant Times, a Member of the U.S. District Courts for the Southern and Central Districts of California**

In reciting the test for application of the attorney-client privilege, Courts in this District

---

[2] Moreover, the California bar's form for requesting transfer to active status states: "Status change will be effective upon receipt of this form and payment in full." Ederer Decl. ¶9, Ex. H (California State Bar "Request to Transfer to Active Status" Form). Indeed, after he was placed on administrative leave, Moss paid the additional fee and went on active status with the California bar on February 5, 2010. Ederer Decl. ¶2, Ex. A.

have implicitly recognized that the requirement of bar membership is satisfied by membership at either the state or federal level. *See, e.g., In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 74 (S.D.N.Y. 2006) (noting that "[a] legal professional generally must be admitted to the bar of a state *or* federal court to qualify as an attorney") (emphasis added), citing *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978, 2002 WL 31385824, at *4 (S.D.N.Y. Oct. 21, 2002). As demonstrated by the exhibits annexed to the accompanying Declaration of Louis S. Ederer, Moss is and has been an active member of the bars of the U.S. District Courts for the Southern and Central Districts of California since December 1994, as well as a member of the California bar (active or inactive) since 1993. Ederer Decl. ¶¶2-4, Exs. A, B, C.

Although Moss was an inactive member of the California bar during the period of his employment at Gucci (because, for some reason, he chose to pay the lesser fee to maintain inactive status), this does not impact his bar membership in the U.S. District Courts for the Southern and Central Districts of California. *See Tyree*, 1990 WL 40298, at *2 (attorney's inactive bar member status in California "would not have determined his status as a member of the federal bar . . . 'even if the state bar membership was the predicate upon which [he] was admitted to the federal court'"), quoting *U.S. v. Hoffman*, 733 F.2d 596, 599 (9th Cir. 1984).[3] Accordingly, by virtue of his status as an active member, at all relevant times, of the bars of the U.S. District Courts for the Southern and Central Districts of California, Moss is a "member of the bar of a court," and passes the *Beacon Hill* test.

---

[3] Indeed, this same rule applies even if an attorney is disbarred at the state level, as opposed to the instant case where an attorney voluntarily chose to go on inactive status. *See, e.g., U.S. v. Steele*, 53 M.J. 274, 276 (C.A.A.F. 2000) ("'Though admission to practice before a federal court is derivative from membership in a state bar, disbarment by the State does not result in automatic disbarment by the federal court. Though that state action is entitled to respect, it is not conclusively binding on the federal courts.'"), quoting *In re Ruffalo*, 390 U.S. 544, 547 (1968), citing *Theard v. U.S.*, 354 U.S. 278, 281–82 (1957). Here, we are not dealing with anything so drastic as disbarment. Rather, inactive member status with the California Bar is a voluntary choice made by the attorney, which can be changed to active status at any time through the ministerial act of paying an additional fee.

Notwithstanding that the explicit requirement of *Beacon Hill*, namely that Moss be "a member of the bar of a court," has been met, Gucci anticipates Guess will argue that since Moss was technically not authorized to practice law in California or New York, or in any federal court, he therefore cannot be deemed an attorney for purposes of applying the attorney-client privilege. This argument, however, ignores the reason why the attorney-client privilege exists — to allow a client to communicate frankly and honestly for the purpose of obtaining legal advice, without fear that its communications will be made available to an adversary in litigation. So long as Moss met the *Beacon Hill* definition of an attorney, this sacred right of a client should not be destroyed. Stated another way, if Moss was not technically authorized to practice law, he should suffer any consequences, not Gucci.

### B. Gucci Had a More Than Reasonable Belief that Moss Was an Attorney

Even if this Court determines that Moss, despite having been a bar member at all relevant times, is not considered an attorney for purposes of applying the attorney-client privilege, the privilege is still nevertheless available to Gucci if it reasonably believed that Moss was an attorney when it communicated with him for the purpose of seeking legal advice. This "reasonable belief" test is articulated by the U.S. Supreme Court in Supreme Court Standard 503, which provides that for purposes of applying attorney-client privilege, an attorney is defined as "a person authorized, or *reasonably believed by the client to be authorized,* to practice law in any state or nation." Supreme Court Standard 503(a)(2), 56 F.R.D. 183, 235–36 (1973) (emphasis added).[4] Further, the "reasonable belief" standard has long been followed by federal courts, including courts in this District. *See, e.g., U.S. v. Rivera*, 837 F. Supp. 565, 568 n.1 (S.D.N.Y.

---

[4] Standard 503 is generally considered an authoritative restatement of federal common law. *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 255 n.6 (Bankr. S.D.N.Y. 2005); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217–18 n.2 (S.D.N.Y. 2001); *U.S. v. Spector*, 793 F.2d 932, 938 (8th Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987).

1993) ("It is common ground among the parties that the attorney-client privilege attaches to confidential communications made to an individual in the genuine, but mistaken, belief that he is an attorney."); *U.S. v. Ostrer*, 422 F. Supp. 93, 97 (S.D.N.Y. 1976) (attorney-client privilege "is applicable where the client entertains good faith beliefs (even if erroneous) that the person consulted is a lawyer, and is acting as such on his behalf").[5]

Here, the evidence amply demonstrates that Gucci had a more than reasonable basis for believing that Moss was an attorney at all times that he was employed by Gucci. *First*, Moss was referred to Gucci for potential employment, in 2002, by Gucci's then-outside counsel, Patton Boggs LLP of Washington, D.C., who informed Gucci that Moss was a lawyer who had practiced law. Leshin Decl. ¶¶4-6; Lombardo Decl. ¶¶5, 8; Leleck Decl. ¶6; Borababy Decl. ¶¶2-8; Chorba Decl. ¶¶5-6. *Second*, at the time Moss was hired, he was hired to fill a non-lawyer role. Leshin Decl. ¶9; Lombardo Decl. ¶6. *Third*, even while Moss was working in a non-lawyer capacity, he frequently held himself out, within Gucci and to third parties, as a lawyer. Lombardo Decl. ¶10; Leleck Decl. ¶¶2-5, 7; Vitale Decl. ¶¶5-9. Indeed, during this period, Moss even made filings in the U.S. Bankruptcy Court in which he held himself out as a bar member. Ederer Decl. ¶5, Ex. D. *Fourth*, throughout the period that Moss was employed by Gucci as a non-lawyer, he fulfilled all of his responsibilities, and became a trusted employee. Leshin Decl. ¶10; Lombardo Decl. ¶8; Leleck Decl. ¶7; Vitale Decl. ¶¶6-7. *Fifth*, even after Moss assumed the position of Legal Counsel, he gave no one at Gucci any reason to question his legal

---

[5] *See also In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) ("courts have found the privilege applicable where the client reasonably believed that a poseur was in fact a lawyer"); *U.S. v. Mullen & Co.*, 776 F. Supp. 620, 621 (D. Mass. 1991) ("[T]he attorney-client privilege may apply to confidential communications . . . when the client is under the mistaken, but reasonable, belief that the professional from whom legal advice is sought is in fact an attorney."); *U.S. v. Boffa*, 513 F. Supp. 517, 523 (D. Del. 1981) ("[T]he rationale behind the privilege equally supports the theory that the privilege should be extended to those who make confidential communications to an individual in the genuine, but mistaken, belief that he is an attorney. . . . Prudence dictates that such a belief should be reasonable . . . .")

11

qualifications, always taking on additional legal responsibilities and handling them, to the point where he came to be considered "the company's lawyer." Lombardo Decl. ¶¶9-10; Leleck Decl. ¶¶3-5; Vitale Decl. ¶¶5-9. *Sixth*, when the company finally learned, during this litigation, that Moss had been on inactive status with the California bar, and was not a member of the bar of any other state, it immediately confronted him with these facts, and he admitted he had withheld that information from the company for years, and had not been forthcoming. Vitale Decl. ¶¶10-12; Leleck Decl. ¶8. *Seventh*, having been deceived by Moss, and now questioning his trustworthiness, Gucci took swift action, terminating his employment for cause. Vitale Decl. ¶¶12-13. Under these unique circumstances, there was never any reason for Gucci to have investigated Moss' actual bar status at the time of his hiring, or any time thereafter (even if anyone at Gucci knew there was such a thing as "inactive" status in the California bar).

It is anticipated that Guess' opposition to Gucci's position on reasonable belief will be based on the decision of Magistrate Judge Ellis in *Fin. Tech. Int'l, Inc. v. Smith*, No. 99 Civ. 9351, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000), a case where, unlike here, the putative attorney had never been admitted to practice law in any jurisdiction. While Judge Ellis acknowledged that a deceived client's "reasonable belief" was the appropriate test for determining whether the attorney-client privilege may be maintained (stating that "the client's bona fide belief in the status of his adviser as an admitted attorney should entitle him to the privilege"), he nevertheless attempted to draw a bright-line rule that a corporation could not meet the "reasonable belief" test unless it exercised due diligence in the hiring process, because it had the means to investigate and verify its-house counsel's bar status before hiring him. *See Fin. Tech.*, 2000 WL 1855131, at *6–7.

Judge Ellis' rule, which has not been followed by any other court, should not be followed

here. First, it turns the "reasonable belief" test on its head, not allowing for the possibility that a corporation's belief that its in-house counsel was authorized to practice law could be reasonable under the unique circumstances of a particular case. Indeed, the case law clearly requires that a party's "reasonable belief" be determined on a case-by-case basis, depending on the unique circumstances of each case. *Upjohn Co. v. U.S.*, 449 U.S. 383, 396 (1981), citing S. REP. NO. 93-1277, p. 13 (1974); *Trammel v. U.S.*, 445 U.S. 40, 47 (1980); *U.S. v. Gillock*, 445 U.S. 360, 367 (1980) (discussing the case-by-case treatment of privilege issues). As a result, in determining whether attorney-client privilege applies, courts must consider the reasonableness of the client's belief that its putative attorney was an attorney on the basis of all facts presented, whether the client was a corporation or individual.

Second, to the extent Judge Ellis drew a distinction under New York law between individual clients and corporate clients, such distinction is not recognized under federal law; indeed, Supreme Court Standard 503(a)(1) defines a "client" as a "person . . . or a corporation". Neither has such a distinction been recognized in other jurisdictions. *See, e.g., Freeman v. Indian Spring Land Co.*, No. FSTCV054002991S, 2007 WL 127699 (Conn. Super. Ct. Jan. 8, 2007) (finding sufficient for attorney-client privilege a corporation's reasonable belief that its in-house counsel was a licensed attorney where that putative attorney was a law school graduate and former member of the Massachusetts bar). In fact, the only Court that has ever commented on Judge Ellis' attempt to establish a bright line rule chose not to apply the rule, instead opting for the case-by-case approach. *See NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 129 n.23 (N.D.N.Y. 2007) ("Plaintiff's plaintive argument that we should follow [Judge Ellis'] rule will be rejected . . . . Considering New York's ambiguity on this principle of law, we will rely upon the content, context and form of the communication.").

Third, and most important, the facts of this case differ dramatically from those in *Fin. Tech.* In that case, the individual in question had never been admitted to practice law in any jurisdiction, instead deceiving his employer, at the time of his hiring, into believing that he had passed the New York bar and was admitted to practice in New York. Moss, on the other hand, *was* an admitted lawyer and a bar member (in the state and federal courts) both at the time he was hired and throughout the course of his employment with Gucci, and could have gone on active status in California at any time simply by writing a bigger check.

Simply put, this case is not *Fin. Tech.* This Court should not blindly apply a rule developed under completely different circumstances, and say that, no matter what, Gucci, because it is a corporation, had a duty to investigate Moss' background, and, failing this, could not have reasonably believed he was an attorney. Under the unique circumstances of this case, Gucci clearly had a genuine, reasonable belief that Moss was an attorney (which he was), and no reason to investigate whether that was the case. Accordingly, attorney-client privilege should attach to all confidential communications between Moss and Gucci, including the communications as to which Gucci claims privilege here.

### C. In the Event Moss' Communications Are Determined to Be Not Subject to the Attorney-Client Privilege, Gucci Reserves the Right to Invoke the Work Product Privilege As to His Communications

Finally, in the event the Court refuses to extend the attorney-client privilege to Moss' communications on the ground that Moss was not a member of the bar of a court or that Gucci did not have a reasonable basis to believe that Moss was an attorney, Gucci reserves the right to assert the work product privilege with respect to communications involving Moss that relate to this litigation or other contemplated litigations. *See* Fed. R. Civ. P. 26(b)(3)(A)–(B).

The work-product doctrine "reflects the strong public policy underlying the orderly prosecution and defense of legal claims." *U.S. v. Nobles*, 422 U.S. 225, 236–37 (1975). "'[I]t is

essential that a lawyer work with a certain degree of privacy' and . . . if discovery of the material sought were permitted 'much of what is now put down in writing would remain unwritten. . . . Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. . . . And the interest of the clients and the cause of justice would be poorly served.'" *Upjohn Co.*, 449 U.S. at 397–98, quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). By creating a "zone of privacy," the courts also "prevent one party from piggybacking on the adversary's preparation." *U.S. v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995), citing *Nobles*, 422 U.S. at 238.

Since many of Moss' communications at issue were engaged in at the instruction of outside counsel and/or in contemplation of litigation, they fall under the work-product privilege, regardless of Moss' status as an attorney. Accordingly, should the instant motion for a protective order be denied, Gucci would be prepared to provide Moss' communications to the Court for *in camera* review, so that the Court can determine whether the work product privilege, or any other protection, should apply.

## CONCLUSION

For all the foregoing reasons, Gucci is entitled to a order protecting the communications of Jonathan Moss from disclosure on the basis of attorney-client privilege.

Dated: New York, New York  
April 2, 2009

ARNOLD & PORTER LLP

By: _____  
Louis S. Ederer  
louis.ederer@aporter.com  
399 Park Avenue  
New York, New York 10022  
(212) 715-1000

*Attorneys for Plaintiff Gucci America, Inc.*