UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
:
GUCCI AMERICA, INC.,                              :   Civil Action No. 09cv4373
                                                  :   (SAS)(JLC)
          Plaintiff,                          :
                                                  :
    - against -                                :
                                                  :
GUESS?, INC., MARC FISHER FOOTWEAR                :
LLC, THE MAX LEATHER GROUP/CIPRIANI               :
ACCESSORIES, INC., SEQUEL AG, K&M                 :
ASSOCIATES L.P., VIVA OPTIQUE, INC.,              :
SIGNAL PRODUCTS, INC. and SWANK, INC.,            :
                                                  :
          Defendants.                         :
                                                  :
------------------------------------------------------------ x

**DECLARATION OF FAUSTO POCAR**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
GUCCI AMERICA, INC.,                                           :     Civil Action No. 09cv4373 (SAS)
                                                               :
                Plaintiff,                                       :
                                                               :
  - against -                                                  :
                                                               :
GUESS?, INC., MARC FISHER FOOTWEAR                             :
LLC, THE MAX LEATHER GROUP/CIPRIANI                            :
ACCESSORIES, INC., SEQUEL AG, K&M                              :
ASSOCIATES L.P., VIVA OPTIQUE, INC.,                           :
SIGNAL PRODUCTS, INC. and SWANK, INC.,                         :
                                                               :
                Defendants.                                      :
                                                               :
-------------------------------------------------------------- x

FAUSTO POCAR hereby declares as follows under penalty of perjury:

1. I am a Full Professor of International Law at the University of Milan and a practicing attorney (*Avvocato*) admitted to practice before the Italian Superior Courts (a detailed résumé is provided as Appendix A). I specialize in Conflict of Laws and EC Law and have been involved in litigation in Italy and abroad on a number of occasions, both as counsel and as an expert. I am also the *Rapporteur* for the Lugano Convention of October 30, 2007 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters.

2. For my services in connection with the drafting of this statement I am being compensated an hourly billing rate of € 800. I am also being reimbursed for expenses. This compensation and reimbursement are to be paid regardless of the outcome of these proceedings.

3. I understand that the defendant Guess?, Inc. ("Guess") is taking the position in this case that the internal written communications of Vanni Volpi, in-house Intellectual Property Counsel of Guccio Gucci S.p.A. ("GG"), a non-party in this case before the U.S. courts, should be provided to Guess in discovery in the litigation. I further understand that the reason Guess is claiming that Volpi's communications should be produced is that under

1

U.S. law, the communications of Volpi, who is not a member of the Italian Bar (*Ordine degli avvocati*), would not be considered privileged communications.

4.  I have been asked by GG to provide this declaration to the Court in order to explain how the Italian legal system operates, and in particular, to explain the legal scheme in Italy as it pertains to privilege and civil litigation.

5.  I understand that the law of privilege in the U.S., and in other countries that have such a doctrine, is a rule of evidence that allows the client to withhold from production, in pretrial discovery and at trial, communications between the client and his attorney that are for the purpose of giving or receiving legal advice. I further understand that such privilege rules exist so that a client may feel comfortable that it can confide in its counsel, and have open and frank discussions about all aspects of the client's legal issues.

6.  In Italy, however, there is no law of privilege that is in any way co-extensive with privilege rules under U.S. law. In fact, Italy has no law that allows a client to invoke the attorney-client privilege with respect to communications it has had with his attorney, in order to prevent those communications from being made available in discovery to an adversary in civil litigation.

7.  In my experience, the principal reason why Italy does not have an evidentiary law of privilege that is co-extensive with U.S. law, or with that of any country for that matter, is that no such rule of evidence is needed in Italy. Rather, in civil litigation in Italy, the rules of disclosure are such that only minimal pretrial discovery is allowed, and GG would not be required to produce any of the documents that are at issue in this case, were the case being litigated in Italy under Italian rules of civil litigation.

8.  The applicable rules of disclosure under the Italian Code of Civil Procedure ("CPC") are Articles 210 and 118, which state as follows:

> *Article 210 CPC - Order for production of documents to a party to the proceedings or to a third party*

1. Upon request of a party to the proceedings, the court may order the other party or a third party to produce a document or a thing which the court regards as necessary for the outcome of the case, provided that the requirements set forth in Article 118 with respect to the inspection of things in the possession of a party or a third party are complied with.

2. In ordering the production of a document or a thing, the court shall give directions with respect to the time, place and mechanics of the production.

3. In any event, the requesting party shall advance any costs that may be incurred by the other party or the third party in connection with the production.

*Article 118 CPC - Order for inspection of persons or things*

1. The court may order a party to the proceedings or a third party to consent to the inspection of their body or a thing in their possession insofar as the inspection is necessary for the ascertainment of the facts of the case, and provided that the inspection is carried out without causing serious harm to the requested party or the third party, and enforcement thereof does not result in a breach of one of the duties of secrecy set forth by Articles [200] and [201] of the Code of Criminal Procedure.

2. If the requested party refuses to comply with an order of inspection without cause, the court may draw adverse inferences against that party pursuant to Article 116.2.

3. If the requested third party refuses to comply with an order of inspection, that third party shall be ordered to pay a fine varying from Euro 250.00 to Euro 1,500.00.

9. In interpreting the above rules of disclosure, the Italian Supreme Court (*Corte di Cassazione*) clarified that an order for the production of documents may be issued *"only insofar as it relates to individual documents"* about which the requesting party *"knows, or purports to know, the specific content, which must be relevant and material for the resolution of the dispute"*.[1] Therefore, Italian courts would not grant requests for the production of categories of documents, including, *e.g.*, requests aimed at obtaining any and all documents relating or referring to a defined legal relationship. In that regard, I should note that Italy is a

---

[1] *Corte di Cassazione*, September 8, 2003, No. 13072; *see also Corte di Cassazione*, May 25, 2004, No. 10043 *and* December 20, 2007, No. 26943. Although the doctrine of *stare decisis* does not apply in Italy and court precedents are not binding, court rulings - especially those rendered by the Supreme Court - are highly authoritative and provide guidance in the interpretation of law by lower courts (*i.e.*, Tribunals and Courts of Appeals), which thus normally follow the precedents of the Supreme Court.

3

Contracting State of the Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters. Pursuant to Article 23 of that Convention:

> A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

The Italian Government has declared to The Hague Conference for Private International Law that it will not grant requests for pre-trial discovery of documents "*as known in Common Law countries.*" In my opinion, the declaration of the Italian Government concerning discovery in common law countries (such as the U.S.) reinforces the position of Italian courts with respect to requests aimed at obtaining the disclosure of categories of unspecified documents.

10. In any event, as indicated in Article 118.2 CPC (which applies to requests for the production of documents by virtue of Article 210.1), while an Italian court may order a party to a civil proceeding to produce "*individual documents*" for inspection, the party ordered to produce such documents may refuse to comply, and the only consequence of refusing to comply is that the court may draw an adverse inference from such failure to produce pursuant to Article 116.2 CPC. However, the drawing of adverse inferences in Italian litigation is not commonplace, and I am not aware of any reported case in which an Italian court has adjudicated a dispute solely on the basis of adverse inferences drawn from a refusal to produce one or more identified documents. In the event a third party refuses to comply with an order for production, the court may only impose a fine ranging from Euro 250.00 (two hundred and fifty) to Euro 1,500.00 (one thousand and five hundreds).

11. Given the requirements concerning a request for the production of documents and the lack of enforcement measures when parties fail to comply with production orders, Articles 210 and 118 CPC are rarely used in Italian civil litigation.

12. Articles 210.1 and 118.1 CPC also provide that a party to a proceeding or a third party ordered to produce a specific document may refuse to produce that document if

4

compliance with the court's order would result in the *"breach of one of the duties of secrecy set forth by Articles [200] and [201] of the Code of Criminal Procedure."* In material part, Article 200 of the Italian Code of Criminal Procedure ("CPP") states as follows:

> *Article 200 CPP - Professional secrets*
>
> 1. The professionals listed below shall not be or compelled to testify in court with respect to the confidential information they have knowledge of due to their [...] office or profession, unless they have a duty to report it to the judicial authorities:
>
> [...]
>
> (b) attorneys [*avvocati*], private investigators, expert witnesses and notaries;
>
> [...].

13.     Furthermore, under Article 118 CPC, also referred to in Article 210 CPC, such power of inspection is available to the court only in exceptional circumstances, i.e.:

    a.     Whenever the inspection is *essential* to the court to gain knowledge about the fact circumstances of the case (*Corte di Cassazione*, 16 April 1997 No 3260, Giust. civ. Mass., 1997, No. 586), namely when it is impossible to gain such knowledge by means of different evidence (*Corte di Cassazione*, 6 October 2005 No. 19475, Foro it. 2006, 1, 102); and

    b.     Provided that the inspection may be carried out without causing any serious damages to the party or to third parties concerned and such parties are not forced to infringe the duty of secrecy deriving from their office, function or profession, protected *"in Article 351 and 352 [CPP]"* (now in Article 200 (1) (b) CPP, as far as the attorney-client relationship is concerned).

14.     However, because of the specific functions performed by the categories of people enumerated in Article 200 (1) CPP, aimed at taking care of the religious interests, the health or the rights of other people, the last condition required in Article 118 CPC,

5

concerning the duty of secrecy, can not be regarded as providing for general rules of privilege.

15. Nor can the number of the aforementioned people be extended in order to include further similar figures, such as in-house counsels, since by virtue of Article 200 (1) (d) CPP the right to avail itself of the professional secrecy can only be established by law.

16. My foregoing considerations are strengthened by the fact that in order to apply Article 200 (1) (b) CPP to trainee solicitors, not originally mentioned in this Article, an Italian court had to file a petition with the Italian Constitutional Court, who granted the claim on the basis of the equality principle and of the protection of the right of defense (of clients) laid down, respectively, in Articles 3 and 24 of the Italian Constitution (*Corte Costituzionale*, 8 April 1997 No. 87).

17. Any information within the knowledge of an attorney is covered by the professional secrecy provisions provided for in Article 200 CPP, insofar as such knowledge falls within the scope of Article 9 of the Attorneys' Code of Conduct (*Codice di deontologia*) approved by the Central governing board of the Italian Bar (*Consiglio Nazionale Forense*) on April 17, 1997. Specifically, Article 9 imposes a duty of secrecy and confidentiality on attorneys, and obligates them not to disclose the subject matter of professional services provided to clients (or information received from clients) in connection with the performance of their professional duties. Article 9 of the Attorneys' Code of Conduct states as follows:

> *Article 9 of the Attorneys' Code of Conduct - Duties of secrecy and confidentiality*
>
> 1. Attorneys have the duty and the fundamental right not to disclose the subject matter of the professional services provided to clients or information received from clients, or otherwise obtained in connection with the carrying out of the professional mandate.
>
> I. Attorneys shall also owe a duty of secrecy and confidentiality to former clients, both for contentious and non-contentious activities.
>
> II. A duty of secrecy shall also be owed to anyone requesting the attorneys' services, even if the professional mandate is not ultimately accepted.

> III. Attorneys must ensure that their assistants and employees comply with the attorneys' duty of secrecy.
>
> IV. By way of exception to the general rule, attorneys may disclose information regarding their clients, or prospective clients, if the disclosure is necessary to:
>
> a. Carry out the client's legal representation in the best interest of the client;
>
> b. Prevent the commission of a serious criminal offense by the client;
>
> c. Produce evidence in a dispute between the client and the attorney; and
>
> d. Conduct proceedings relating to the modalities of the legal representation of the client by the attorney [*e.g.*, disciplinary proceedings].
>
> In any event, the disclosure of information shall be strictly limited insofar as it is necessary to achieve the above-mentioned objectives.

18. As can be seen from a reading of Article 9, this ethical rule has nothing to do with the concept of attorney-client privilege, that is, a privilege held by a client whereby the client can prevent the disclosure in civil litigation of confidential information exchanged with an attorney for the purpose of rendering legal advice. Rather, as indicated above, Article 9 is quite simply an ethical rule of the Italian Bar regulating the conduct of attorneys, and requiring them to maintain the confidentiality of communications between them and their clients. It does not grant to clients the right to claim U.S.-style privilege. Once again, I should stress there is no need in Italy for an evidentiary rule of privilege that would prevent disclosure of such communications in civil litigation, because the scope of existing disclosure rules under Italian law is very narrow.

19. As indicated above, the Attorneys' Code of Conduct, of which Article 9 is a part, was promulgated by the Italian Bar. Pursuant to Article 1 of the Attorneys' Code of Conduct and Article 3 of the Professional Law (*Legge professionale*) No. 1578 of November 27, 1933 ("Professional Law"), Article 9 only applies to attorneys who are members of the Italian Bar, not salaried professionals, such as in-house counsel, who are not (and may not be)

members of the Italian Bar.[2] Specifically, Article 1 of the Attorneys' Code of Conduct and Article 3 of the Professional Law provide as follows:

> *Article 1 of the Attorneys' Code of Conduct - Scope of application*
>
> The deontological norms set forth herein apply to all attorneys [*avvocati*] and trainee attorneys [*praticanti*] providing legal services as well as within their reciprocal relationships and *vis-à-vis* third parties.
>
> *Article 3 of the Professional Law*
>
> [...]
>
> Any salaried profession, including professions whose scope is the provision of legal services, is incompatible with the attorney profession [*professione di avvocato*]
>
> [...]

20.     The non-application of the Attorneys' Code of Conduct to in-house counsel has recently been the subject of much debate in Italy, as it has become increasingly recognized that in-house counsel, who hold the same educational degrees as outside counsel (and many of whom have previously qualified for bar membership), and in many instances have more training and experience as legal advisors than their outside counsel counterparts, are important sources of legal services to their employers. Accordingly, in-house counsel in Italy have been lobbying strongly to change the rules of the Italian Bar, to allow them to become bar members. Currently, I am informed that there are ongoing discussions between the National Bar Association and AIGI (*Associazione Italiana Giuristi di Impresa*), the most prominent Italian national association of in-house counsel, to allow Italian in-house counsel to achieve bar membership status. As of today, however, Italian law does not confer such status to in-house counsel.

---

[2] See, e.g., J. Fish, *Regulated legal professionals and professional privilege within the European Union, the European Economic Area and Switzerland, and certain other European jurisdictions*, Dublin, 2004, confirming that "*the duty to preserve the professional secret is imposed upon regulated legal professionals who are authorized to pursue their professional activities under the professional title of* Avvocato. [...] [I]*t follows that those who are not entitled to pursue their activities under this professional title do not fall within the relevant statutory provisions*".

21.  Other than the rules of disclosure discussed above, there are no rules of procedure in civil litigation in Italy that generally require parties to a litigation to produce relevant documents to one another, and, accordingly, there is no need for evidentiary rules, such as rules of privilege, to protect against the disclosure of confidential communications between a client and his attorney.

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____/s/_____
FAUSTO POCAR

Date:  March 31, 2010

# EXHIBIT A

## APPENDIX A

### CURRICULUM VITAE PROF. AVV. FAUSTO POCAR

Professor of International Law, University of Milan since 1976. Editor-in-Chief, *Rivista di diritto internazionale privato e processuale,* and member of the editorial board, among others, of "Italian Yearbook of International Law", "The Global Community. Yearbook of International Law and Jurisprudence", "Journal of International Criminal Justice", "Journal of Private International Law".

Member of the Milan Bar (since 1963) and attorney before the Court of Cassation and the other Italian Superior Courts. Arbitrator and counsel in national and international cases. As a professor, he has provided several affidavits and expert reports before US and UK courts.

Member of the Italian Delegation, Hague Conference on Private International Law (1980, 1996-2004). Rapporteur of the *ad hoc* Group panel on the "Revision of the Brussels and Lugano Conventions" of the Council of the European Union (1997-1999). Co-Rapporteur of the Special Commission on the question of Jurisdiction, Recognition and Enforcement of Foreign Judgement of The Hague Conference on Private International Law (1997-2002). Member of the Committee for the Reform of Private International Law, Italian Ministry of Justice (1985-89).

Author of the official Explanatory Report to the Lugano Convention of 30 October 2007 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (OJEU; C 319, 23.12.2009).

Appeal Judge and past President of the International Criminal Tribunal for the former Yugoslavia (2000-); Member (1985-2000) and Chairman (1991-1992) of the United Nations Human Rights Committee under the International Covenant on Civil and Political Rights.

Author of numerous legal publications, among which, the following books:

- *The External Competence of the European Union and Private International Law: the EC Court's Opinion on the Lugano Convention* (Proceedings of the Round Table held at Milan University on 16 September 2006) (ed.) Padua 2007;

- *Diritto dell'Unione e delle Comunità europee (European Union and European Community Law)* (1973), 10th edition, Milan, 2006. (Albanian translation of the 4th edition: *E*

I

*drejta e Komuniteteve europiane*, Tirana, 1995; Spanish translation of the 10th edition: *Derecho de la Union y de las Comunidades europeas*, under publication);

- *The Hague Preliminary Convention on Jurisdiction and Judgments. Proceedings of the Round Table* (Proceedings of the Round table held at Milan University on 15 November 2003) (ed.) Padua 2005;

- *Il nuovo diritto internazionale privato italiano (The New Italian Private International Law)* (1997), 2nd edition, Milan, 2002;

- *Commentario breve ai trattati della Comunità e dell'Unione europea (Brief Commentary on EC and EU Treaties)*, Padua, 2001;

- *Commentario del nuovo diritto internazionale privato (Commentary on the New Private International Law)* (ed. with others), Padua, 1996;

- *La convenzione di Bruxelles sulla giurisdizione e l'esecuzione delle sentenze (The Brussels Convention on Jurisdiction and the Enforcement of Judgments)* (1986), 3rd edition, Milan, 1995;

- *Diritto comunitario del lavoro (EC Labour Law)*, Padua, 1983. (Spanish translation: *Derecho comunitario del trabajo*, Madrid, 1988); 2nd edition, 2001 (in cooperation with I. Viarengo);

- *L'assistenza giudiziaria internazionale in materia civile (International Legal Aid in Civil Matters)*, Padua, 1967

and the following articles and essays:

- *Faut-il remplacer le renvoi au droit national par des règles uniformes dans l'article 4 du règlement n° 44/2001? (Should Reference to the National Rules Be Replaced with Uniform Rules in Article 4 of EC Regulation No 44/2001?)* in *Vers de nouveaux équilibres entre ordres juridiques. Mélanges en l'honneur de Hélène Gaudemet Tallon (Towards New Harmony among Legal Systems. Essays in Honour of Hélène Gaudemet Tallon)* Paris 2008, 573-580;

- *Notes on the Pellegrini Judgment of the European Court of Human Rights* in J. Erauw, V. Tomljenović, P. Volken (eds) *Liber memorialis Petar Šarčević: Universalism, Tradition and the Individual* München 2006, 575-581.

- *Concluding Remarks* in A. MALATESTA (ed.) *The Unification of Choice of Law Rules on Torts and other Non-Contractual Obligations in Europe* Padua 2006, 301-305;

- *The EU as an Actor in Private International Law* in R.A. BRAND (ed.) *Private Law, Private International Law & Judicial Cooperation in the EU-US Relationship* 2005, 143-151;

- *The Communitarization of Private International Law* Athens Komotini 2004, 11-23;

- *Remarques sur la coopération judiciaire en matière civile dans la Communauté européenne* (Remarks on Judicial Cooperation in Civil Matters in the European Community) in R. BIEBER, B. DUTOIT (eds.) *Mélanges en l'honneur de Bernard Dutoit* (*Essays in Honour of Bernard Dutoit*) Genève 2002, 221-230;

- *The Drafting of a World-Wide Convention on Jurisdiction and the Enforcement of Judgments: Which Format for the Negotiations in The Hague?* in J.A.R. NAFZIGER, S.C. SYMEONIDES (eds.) *Law and Justice in a Multistate World. Essays in Honour of Arthur T. von Mehren* Ardsley 2002, 191-198;

- *La comunitarizzazione del diritto internazionale privato: una «European conflict of laws revolution»?* (*Communitarization in Private International Law: A "European Conflict of Laws Revolution"?*) in *Rivista di Diritto Internazionale Privato e Processuale* 2000, 873-884.

- *Diritti della difesa e principio del contraddittorio nel diritto comunitario* (*Rights of defense and the rule that the parties should be heard under EU law*) in *Scritti in onore di Giuseppe Federico Mancini* II *Diritto dell'Unione europea* Milano 1998, 769-777.

- *Sull'attività del GEIE costituito tra liberi professionisti* (*On activities of European Economic Interest Grouping (EEIG) between independent professionals*) in *Rivista di diritto civile*, 1996, 387-398.