UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

GUCCI AMERICA, INC.,

        Plaintiff,

      - against -

GUESS?, INC., MARC FISHER FOOTWEAR LLC, THE MAX LEATHER GROUP/CIPRIANI ACCESSORIES, INC., SEQUEL AG, K&M ASSOCIATES L.P., VIVA OPTIQUE, INC., SIGNAL PRODUCTS, INC. and SWANK, INC.,

        Defendants.

---------------------------------------------------------------- x

Civil Action No. 09cv4373 (SAS)(JLC)


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF GUCCI AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DISCLOSURE OF THE PRIVILEGED COMMUNICATIONS OF NON-PARTY GUCCIO GUCCI S.P.A.'S IN-HOUSE INTELLECTUAL PROPERTY COUNSEL VANNI VOLPI


ARNOLD & PORTER LLP
Louis S. Ederer, Esq.
399 Park Avenue
New York, New York 10022
Tel: (212) 715-1000
Fax: (212) 715-1399

*Attorneys for Plaintiff
Gucci America, Inc.*

```
```

## TABLE OF CONTENTS

Preliminary Statement..................................................................................................1

Relevant Facts.............................................................................................................1

Argument ....................................................................................................................5

      I.     Standard of Review for Protective Order.................................................5

      II.    U.S. Law Should Be Applied to Determine Whether Volpi's
            Communications Are Privileged...............................................................6

      III.   The Purpose of the Attorney-Client Privilege .........................................7

      IV.   Volpi's Communications Are Protected from Disclosure Because
            Volpi Was Acting Under the Supervision and Direction of
            Bar-Admitted Attorneys............................................................................8

      V.    Applying Italian Law of Privilege to Volpi's Communications
            Would Offend the Public Policy of This Forum.....................................12

      VI.   In the Event Volpi's Communications Are Determined to Be Not
            Subject to the Attorney-Client Privilege, GA Reserves the Right
            to Invoke the Work Product Privilege As to His Communications.........14

Conclusion ................................................................................................................15

# TABLE OF AUTHORITIES

*Federal and State Cases*

*Astra Aktiebolag v. Andrx Pharm., Inc.*,
   208 F.R.D. 92 (S.D.N.Y. 2002) .................................................................... 6, 12, 13, 14

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
   160 F.R.D. 437 (S.D.N.Y. 1995) .................................................................................. 7

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*,
   231 F.R.D. 134 (S.D.N.Y. 2004) .............................................................................. 7, 8

*Galvin v. Hoblock*,
   No. 00 Civ. 6058, 2003 WL 22208370 (S.D.N.Y. Sept. 24, 2003) ............................. 5

*Golden Trade S.r.L. v. Lee Apparel Co.*,
   143 F.R.D. 514 (S.D.N.Y. 1992) ......................................................................... *passim*

*Hickman v. Taylor*,
   329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) ................................................... 15

*In re Copper Mkt. Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) ................................................................................. 8

*In re Rivastigmine Patent Litig.*,
   05 MD 1661, slip op. (S.D.N.Y. Jan 5, 2006) ........................................................... 11

*Kunstler v. City of New York*,
   No. 04 Civ. 1145, 2006 WL 2516625 (S.D.N.Y. Aug. 29, 2006) ............................... 5

*Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.*,
   No. M8-85, 1999 WL 378337 (S.D.N.Y. June 10, 1999) ........................................... 8

*People v. Osorio*,
   75 N.Y.2d 80 (N.Y. 1989) ........................................................................................... 8

*Upjohn Co. v. U.S.*,
   449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) .................................... 7, 14, 15

*U.S. v. Adlman*,
   68 F.3d 1495 (2d Cir. 1995) ...................................................................................... 15

*U.S. v. Davis*,
   131 F.R.D. 391 (S.D.N.Y. 1990) ................................................................................. 7

*U.S. v. First Nat'l City Bank*,
  396 F.2d 897 (2d Cir. 1968)..................................................................................13

*U.S. v. Kovel*,
  296 F.2d 918 (2d Cir. 1961)..........................................................................8, 10, 11

*U.S. v. Nobles*,
  422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)...................................14, 15

*VLT Corp. v. Unitrode Corp.*,
  194 F.R.D. 8 (D. Mass. 2000)..............................................................................13

*von Bulow v. von Bulow*,
  811 F.2d 136 (2d Cir. 1987)...................................................................................7

**Rules and Secondary Authority**

FED. R. CIV. P. 26...................................................................................................1, 5, 14

FED. R. EVID. 501..........................................................................................................7

Supreme Court Standard 503(b), 56 F.R.D. 183, 235–36 (1973)...............................8, 10

2 Jack B. Weinstein & Margaret A. Berger,
  *Weinstein's Evidence* ¶ 503(a)(3)[01] (1990) ....................................................9, 10

8 Wigmore, Evidence, § 2301 (McNaughton rev. ed. 1961).........................................10

## PRELIMINARY STATEMENT

Plaintiff Gucci America, Inc. ("GA") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 26(c), for a protective order against the disclosure of confidential communications engaged in by Vanni Volpi, in-house Intellectual Property Counsel to GA's Italian affiliate, non-party Guccio Gucci S.p.A. ("GG"), as to which GG has asserted the attorney-client privilege.

Guess has challenged GG's assertion of the attorney-client privilege, claiming that because Volpi is not a lawyer, no privilege attaches to his communications. Guess' argument, however, ignores the fact that Volpi, in his role as GG's Intellectual Property Counsel, acts only on the instruction and under the supervision of bar-admitted attorneys, including the General Counsel of GG, Daniela Della Rosa, a member of the New York bar. Under established U.S. law, Volpi acted at all times as the representative or agent of Della Rosa, to assist her in formulating legal strategy and rendering legal advice, and the attorney-client privilege therefore extends to his communications. Thus, this Court should enter an order protecting Volpi's communications from disclosure.

## RELEVANT FACTS

The relevant facts concerning GA and GG's position that Volpi's communications are privileged are fully set forth in the accompanying declarations of Vanni Volpi, GG's in-house Intellectual Property Counsel ("Volpi Decl."); Daniela Della Rosa, General Counsel of GG ("Della Rosa Decl."); Cheryl Solomon, General Counsel of Gucci Group ("Solomon Decl."); Fausto Pocar, Professor of International Law at the University of Milan ("Pocar Decl."); and Louis S. Ederer, Esq. ("Ederer Decl."), along with the exhibits attached thereto. These facts are summarized as follows.

Vanni Volpi was hired as GG's Intellectual Property Counsel in July 2006. Volpi Decl.

¶1; Solomon Decl. ¶8. Prior to joining GG, Volpi spent approximately ten years working as an intellectual property specialist in the legal departments of the world-famous fashion companies Chanel and Louis Vuitton. Volpi Decl. ¶6; Solomon Decl. ¶8. Volpi studied law for five years at the University of Pisa in Italy, and the University of Paris. Volpi Decl. ¶7. Volpi is not, however, a member of the Italian bar. *Id.* at ¶8.

GG's in-house legal department, led by General Counsel Daniela Della Rosa, an active member of the New York bar, is organized like a law firm. Della Rosa Decl. ¶¶4-5, 15. Reporting to Della Rosa are approximately twenty legal professionals and paralegals who specialize in many different areas of the law, including intellectual property, transactional matters, distribution and real estate. *Id.* at ¶15. Over the last five years, GG has deliberately expanded the size of its in-house legal department, in an effort to reduce GG's reliance on outside counsel, and to save costs. *Id.* Volpi's hiring as in-house Intellectual Property Counsel in 2006 was an important part of this expansion. *Id.* at ¶¶ 15, 19.

Prior to Volpi's hiring, GG did not have a member of the legal department who was an experienced professional in intellectual property matters. Volpi Decl. ¶10; Della Rosa Decl. ¶19. Accordingly, much of the work Volpi performs (supervising name searches and clearances, trademark oppositions, and anti-counterfeiting activities) was previously outsourced to an outside law firm, Studio Jacobacci of Turin, Italy. *Id.* Nevertheless, the final responsibility for developing and approving legal strategy concerning all of GG's intellectual property matters continues to reside with GG's General Counsel, Della Rosa. Volpi Decl. ¶¶11, 19; Della Rosa Decl. ¶20; Ederer Decl. ¶2, Ex. A.

Thus, in his role as Intellectual Property Counsel, Volpi is supervised and directed on all matters by Della Rosa, to whom Volpi directly reports. Volpi Decl. ¶¶2-3, 8, 10-11; Della Rosa

2

Decl. ¶¶20-21, 27; Solomon Decl. ¶9. Volpi acts only within the scope of the duties assigned to him by Della Rosa. Volpi Decl. ¶8; Della Rosa Decl. ¶20. In addition to being supervised by, and directly reporting to Della Rosa, Volpi frequently discusses important intellectual property matters to which he has been assigned with Cheryl Solomon, General Counsel of GG's parent company, Gucci Group. Volpi Decl. ¶¶2-3, 12; Della Rosa Decl. ¶22; Solomon Decl. ¶¶8-9. Like Della Rosa, Solomon is a member of the New York bar. Solomon Decl. ¶3.

Volpi's primary responsibility, as GG's Intellectual Property Counsel, is to assist Della Rosa in managing GG's trademark protection and enforcement program. Volpi Decl. ¶4; Della Rosa Decl. ¶18. In particular, Volpi is charged with coordinating the registration and protection of trademarks owned by GG — including the world famous GUCCI mark, and other well-known word and design marks owned by GG. *Id*. Volpi's responsibilities in this regard extend to all countries where GG owns Gucci trademarks. Volpi Decl. ¶¶4-5; Della Rosa Decl. ¶20. In those countries where Gucci trademarks are owned by affiliated companies, like the U.S., Volpi is responsible for interfacing with the legal teams responsible for the protection and enforcement of the Gucci trademarks in those territories, and making sure that Gucci's protection and enforcement efforts are well coordinated. *Id.*

Although Volpi has a certain degree of autonomy in carrying out his day-to-day responsibilities, he does not make any important decisions, nor does he formulate or communicate any legal strategy or advice, without first consulting Della Rosa and obtaining her approval. Volpi Decl. ¶¶8, 11; Della Rosa Decl. ¶21. As such, Della Rosa maintains frequent, usually daily, contact with Volpi, during which time Volpi reports directly to her on the status of the matters on which he is working. *Id.* Della Rosa has specifically instructed Volpi not to make any important decisions regarding legal strategy, nor render any legal advice to the company,

without first reviewing the circumstances of the matter with her, and obtaining her input and approval, and he has not done so. Volpi Decl. ¶¶8, 11, 19; Della Rosa Decl. ¶¶20-21, 27.

In addition to his discussions with Della Rosa regarding the intellectual property matters of GG, Volpi frequently communicates with Solomon to obtain her input in matters of particular importance to the company. Volpi Decl. ¶¶3, 12; Della Rosa Decl. ¶22; Solomon Decl. ¶¶8-9. In particular, Volpi often discusses significant intellectual property litigation matters, especially those litigated in U.S. Courts, with Solomon. *Id.*

In or about March 2008, Solomon contacted Volpi to discuss a Guess product that concerned her. Volpi Decl. ¶13; Solomon Decl. ¶10. Thereafter, Della Rosa instructed Volpi to further investigate Guess' activities and to contact personnel in the legal departments of various Gucci affiliates around the world, including members of the legal department at GA, the plaintiff in this action, in an effort to gather information about Guess' activities. Volpi Decl. ¶13; Della Rosa Decl. ¶23; Solomon Decl. ¶10. At all stages of his investigation of Guess' activities, up until the time that GA sued Guess in the U.S. and GG sued Guess in Italy, Volpi reported what he was learning about Guess' activities to Della Rosa and Solomon. Volpi Decl. ¶¶14-19; Della Rosa Decl. ¶¶24-26; Solomon Decl. ¶¶11-13.

The approximately 150 Volpi communications that GG seeks to protect from disclosure, which are set out in a privilege log produced to defendants, can be divided into two categories. Volpi Decl. ¶20. The first consists of communications between March 2007 and June 2007 relating to Volpi's investigation of Guess' use of the term "Twirl", a mark used by GG and GA for watches. *Id.* The second consists of communications between March 2008 to May 2009 relating to Volpi's investigation of Guess' use of the marks and designs that are the subject of this suit. *Id.* In both instances, Volpi engaged in such communications at the direction and

under the supervision of his bar-admitted superiors, for the purpose of gathering information relating to Guess' infringing activities in the U.S. as well as other jurisdictions, to assist them in formulating legal strategy. *Id.*

In addition to the facts that concern Volpi, his employment status, and the circumstances surrounding his communications in question, GA also herewith submits the declaration of Fausto Pocar, a Full Professor of International Law at the University of Milan, and a practicing attorney admitted to practice before the Italian Superior Courts. Pocar Decl. ¶1. In his declaration, Professor Pocar sets out how the Italian legal system operates, and in particular, explains the legal scheme in Italy as it pertains to privilege and discovery in civil proceedings. GA will make further references to the facts and circumstances set out in Professor Pocar's declaration in Point V below, in connection with the argument that Volpi's communications should be protected from disclosure even in the case where, under a choice of law analysis, the Court may determine that Italian privilege law should apply.

**ARGUMENT**

**I.      Standard of Review for Protective Order**

Under FED. R. CIV. P. 26(c), protective orders are appropriate to establish specified terms and conditions for discovery, and restrict the scope of the matters into which parties may inquire. *See, e.g., Kunstler v. City of New York*, No. 04 Civ. 1145, 2006 WL 2516625, at *11 (S.D.N.Y. Aug. 29, 2006) (FED. R. CIV. P. 26(c) provides a court with "broad discretion to tailor discovery to the needs of the case and the interests of the discovered party"). As such, Courts have repeatedly held that protective orders are appropriate to protect communications which are subject to the attorney-client and/or work product privileges from disclosure. *See, e.g., Galvin v. Hoblock*, No. 00 Civ. 6058, 2003 WL 22208370, at *1 (S.D.N.Y. Sept. 24, 2003) (granting a motion for a protective order to protect documents subject to attorney-client privilege).

## II. U.S. Law Should Be Applied to Determine Whether Volpi's Communications Are Privileged

In deciding whether the communications of a foreign counsel like Volpi are protected from disclosure under attorney-client privilege, the Court must first determine which law should apply. According to the choice of law doctrine:

> [w]here, as here, alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this court defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum. . . . The jurisdiction with the 'predominant interest' is either 'the place where the allegedly privileged relationship was entered into' or 'the place in which that relationship was centered at the time the communication was sent.'

*Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002). This predominant interest analysis has also been called a "touching base" approach, whereby "any communications touching base with the United States will be governed by the federal [privilege] rules." *Id.*, citing *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992).

Here, as indicated in the evidence of record, the Volpi communications at issue "touch base" with the U.S. As Volpi has indicated, his communications concerned two distinct issues relating to Guess: (i) communications from March 2007 to June 2007 relating to Volpi's investigation of Guess' use of the term "Twirl", a mark used by Gucci for watches; and (ii) communications from March 2008 to May 2009 relating to Volpi's investigation of Guess' use of the marks and designs that are the subject of this suit. Volpi Decl. ¶20; Ederer Decl. ¶¶3-4, Exs. B, C. In both cases, Volpi engaged in such communications for the purpose of gathering information relating to Guess' infringing activities in the U.S. as well as other jurisdictions. Volpi Decl. ¶20. In the case of Guess' use of "Twirl", the parties ultimately reached a resolution of the dispute in all jurisdictions, including the U.S. Ederer Decl. ¶3, Ex. B, at 335:22-336:8. In the case of Guess' use of the marks at issue in this case, Volpi's investigation contributed to the

6

decision to commence parallel suits against Guess in the U.S. and Italy. Volpi Decl. ¶¶13-18. Accordingly, since all of Volpi's communications "touch base" with the U.S., this Court should apply U.S. law in determining whether Volpi's communications are privileged.

### III. The Purpose of the Attorney-Client Privilege

The purpose of the attorney-client privilege is to protect the client against the invasion of its most sensitive and confidential communications with its lawyers, and to encourage the complete disclosure of information between attorney and client, all furthering the interests of justice. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Moreover, the privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390.

Federal privilege issues are controlled by "principles of common law". FED. R. EVID. 501; *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 60 F.R.D. 437, 441 (S.D.N.Y. 1995), citing *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987). As stated in *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, the elements of the attorney-client privilege are:

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) is a member of the bar of a court, ***or his subordinate*** and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Beacon Hill*, 231 F.R.D. 134, 138 (S.D.N.Y. 2004) (emphasis added), quoting *Bank Brussels Lambert*, 160 F.R.D. at 441; *see also U.S. v. Davis*, 131 F.R.D. 391, 398 (S.D.N.Y. 1990). Thus, as noted in *Beacon Hill*, the attorney-client privilege extends not only to the direct communications between an attorney and his client, but also to communications engaged in by an attorney's "subordinate" acting under his supervision and direction, so long as such

7

communications were engaged in to assist the attorney in rendering legal advice. *See, e.g., Golden Trade*, 143 F.R.D. at 517–18.

### IV. Volpi's Communications Are Protected from Disclosure Because Volpi Was Acting Under the Supervision and Direction of Bar-Admitted Attorneys

As indicated in *Beacon Hill*, the Second Circuit has made clear that communications with certain agents of attorneys may fall within the attorney-client privilege. *See Beacon Hill*, 231 F.R.D. at 138, citing *U.S. v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961). The Court in *Kovel* recognized that modern lawyers require the assistance of professionals experienced in particular disciplines (in that case, an accountant) to adequately perform their duties, and found that those aides may independently interact with the client as long as the purpose of the interaction is to help the lawyer provide legal advice, so long as there is a "reasonable expectation of confidentiality under the circumstances." *Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.*, No. M8-85, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999), quoting *People v. Osorio*, 75 N.Y.2d 80, 84 (N.Y. 1989). The Second Circuit's decision in *Kovel* is further supported by the U.S. Supreme Court, as illustrated by Supreme Court Standard 503, also known as Proposed Rule of Evidence 503:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer ***or his lawyer's representative***, or (2) between his lawyer *and his **lawyer's representative***, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

Supreme Court Standard 503(b), 56 F.R.D. 183, 235–36 (1973) (emphasis added). This standard is generally viewed as accurately restating the federal common-law attorney-client privilege. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217–218 & n.2 (S.D.N.Y. 2001) (citing cases).

8

Thus, the law is clear that a highly trained professional, whether he is an intellectual property specialist like Volpi, a patent agent, an accountant, a psychiatrist, or a medical professional, hired for the purpose of assisting the lawyer render legal advice to a client, can have communications with the client and others on his own, without the supervising attorney being involved, so long as he is acting at the direction and under the supervision of the bar-admitted attorney. Here, Volpi, who has worked for nearly 15 years as an intellectual property specialist for three of the world's largest luxury goods companies, qualifies as such a professional. Volpi Decl. ¶6; Solomon Decl. ¶10. Indeed, the evidence demonstrates that Volpi was specifically hired by GG in 2006 to assist the General Counsel with intellectual property matters previously handled by outside intellectual property counsel, for which the General Counsel was (and still is) ultimately responsible. Volpi Decl. ¶10; Della Rosa Decl. ¶¶17-19; Ederer Decl. ¶2, Ex. A. Further, at all times, Volpi acted under the supervision and direction of the General Counsel in carrying out his assignments. Volpi Decl. ¶¶8, 11, 19; Della Rosa Decl. ¶20.

These facts present a classic situation for the application of attorney-client privilege to Volpi's communications on a theory of agency, as summarized by Judge Weinstein:

> Communications to an administrative practitioner or to a patent agent who is not a lawyer, though not in themselves privileged[,] should be protected if they were made in confidence at the direction of a lawyer who is employing the practitioner to assist him in the rendition of legal services. For instance, communications to patent agents will qualify, provided it can be shown that the responsibility for the work being done for the client rested with an attorney, and that the patent agent worked under his direction and performed tasks relevant to the client's obtaining legal advice.

2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 503(a)(3)[01] at 503-26, 27 (1990). Similarly, as stated by Professor Wigmore:

> The assistance of these agents being indispensible to his work and the communications of the client being often necessarily committed to them by the

attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.

8 Wigmore, Evidence, § 2301.

This rule of agency, as it pertains to communications of non-lawyer professionals who carry out assignments in order to assist lawyers in rendering legal advice, was explored in detail by Magistrate Judge Dolinger in *Golden Trade*, which involves the communications of a foreign patent agent acting under the direction of and for the purpose of assisting an attorney. In that case, Judge Dolinger stated:

> Consistent with these purposes [namely, to encourage frank communication between attorneys and their clients, and to ensure that the attorney is fully informed], the attorney-client privilege is not limited to communications directly between the client and the attorney. Rather, if the purpose of the communication is to facilitate the rendering of legal services by the attorney, the privilege may also cover communications between the client and his attorney's representative, between the client's representative and the attorney, and between the attorney and his representative.

143 F.R.D. at 518 (S.D.N.Y. 1992), citing Supreme Court Standard 503(b); 2 Weinstein & Berger, *supra,* at 503-1 & 503-6; *Kovel*, 296 F.2d at 921.

The analogy of Volpi to a foreign patent agent, as in *Golden Trade*, is apt. Patent agents are trained professionals who, although non-lawyers, are highly experienced in the preparation and processing of patent applications, and who often have specific technical knowledge that an attorney may lack. Volpi, like a patent agent, is highly experienced in handling intellectual property matters, having worked for luxury goods companies in the area of trademark prosecution and enforcement, and anti-counterfeiting, for nearly 15 years. Volpi Decl. ¶6. It is no wonder that when GG decided to bring GG's intellectual property enforcement work in-house, it employed Volpi to assist the General Counsel in these matters, so that counsel could render the best possible legal advice to the client. Della Rosa Decl. ¶19.

Defendants will likely argue, as they already have to Judge Scheindlin and Judge Fox,

10

that because Volpi acted with a certain degree of autonomy, and not just as a passive conduit for communications to and from a bar-admitted attorney, his communications cannot be privileged. This misses the point. As *Kovel* and other cases make clear, the rule of agency, as it pertains to the communications of non-lawyers, is not confined to "menial or ministerial employees". *Kovel*, 296 F.2d at 921. There is a difference between communications engaged in by an attorney's secretary, for example, and the communication of a trained professional, like Volpi, carrying out the assignments of an attorney. Clearly, the trained professional will operate with a greater degree of autonomy than a secretary or a translator, who are involved only to ensure that a particular communication gets through to the attorney in good order.

Indeed Magistrate Judge Francis examined this very issue, namely, the extent to which an attorney's agent may act with autonomy and his communications still be considered privileged, in *In re Rivastigmine Patent Litig.*, 05 MD 1661, slip op. (S.D.N.Y. Jan. 5, 2006); Ederer Decl. ¶5, Ex. D. Focusing on the requirement that such an agent must be acting under the attorney's "supervision," Judge Francis found that "'supervision' cannot mean that, in order to preserve the privilege, counsel must direct each individual act of a professional from whom the attorney is receiving assistance." *Rivastigmine*, slip op. at 6. Accordingly, a patent agent who was not "micromanaged" by counsel, and who freely communicated with employees of the client for the purpose of enabling counsel to provide legal advice, was "acting, in effect, as a adjunct to [the client]'s in-house [bar admitted] counsel." *Id.* at 7. As the patent agent's work was assigned by an attorney, and as his communications with the client came within the scope of that assignment, the attorney-client privilege covered the communications of the patent agent. *Id.*

Here, as Volpi, in engaging in the communications at issue, in particular with respect to his investigation of Guess' activities, was acting under the direction and supervision, and

11

therefore as an agent of Della Rosa, GG's General Counsel and a member of the New York bar, and Solomon, also a bar member, the attorney-client privilege should extend to all such communications.

V.  **Applying Italian Law of Privilege to Volpi's Communications Would Offend the Public Policy of This Forum**

Even if this Court were to find, under a choice of law analysis, that Italy has the predominant interest in the communications at issue, the result should still be the same. As indicated in the accompanying declaration of Professor Pocar, "Italy has no law that allows a client to invoke the attorney-client privilege with respect to communications it has had with his attorney, in order to prevent those communications from being made available in discovery to an adversary in civil litigation." Pocar Decl. ¶6. The reason why Italy has not developed a privilege scheme that is co-extensive with the U.S. is that no such privilege is needed in Italy; rather, under the rules of civil litigation, only minimal pretrial discovery is permitted, and GG would not be required to produce any of the Volpi communications at issue in an Italian proceeding. Pocar Decl. ¶¶6-21. The only Italian rule that even bears on this issue is not an evidentiary rule of privilege, but rather an ethical rule prohibiting attorneys from disclosing the subject matter of the professional services they render to a client. Pocar Decl. ¶¶17-18. Once again, there is no need for an attorney-client privilege in Italy, because clients do not have to fear that their confidential communications, such as GG's communications with Volpi here (Volpi Decl. ¶9; Della Rosa Decl. ¶16), will ever be discovered in litigation. Pocar Decl. ¶7.

Where a foreign jurisdiction has no law of privilege that would prohibit the disclosure of confidential communications of this nature, U.S. Courts, under principles of comity and public policy, will decline to apply such law (or absence thereof) and order the wholesale production of such communications. Thus, in *Astra*, a case involving communications between a Korean client

12

and its outside and inside counsel, the Court, after finding that Korea had the predominant interest in the communications at issue, nevertheless refused to apply Korean law, because the absence of any law of privilege in Korea (due, as in Italy, to the existence of a discovery scheme that would prevent the disclosure of such documents in Korean litigation) would have required the wholesale production of documents that would not have been discoverable under U.S. law. *Astra*, 208 F.R.D. at 101–02. Under these circumstances, Judge Barbara Jones, writing for the Southern District of New York, held that:

> to order the wholesale production of all of the Korean documents in their entirety [because they are not privileged] . . . would violate principles of comity and would offend the public policy of this forum. The fact is that vastly different discovery practices, which permit only minimal discovery, are applicable to civil suits conducted in Korea. Indeed, none of the documents at issue here would be discoverable in a Korean civil suit. Under these circumstances, where virtually no disclosure is contemplated, it is hardly surprising that Korea has not developed a substantive law relating to attorney-client privilege and work product that is co-extensive to our own law. It also seems clear that to apply Korean privilege law, or the lack thereof, in a vacuum-without taking account of the very limited discovery provided in Korean civil cases-would offend the very principles of comity that choice-of-law rules were intended to protect.

*Id.* at 102[1], citing *U.S. v. First Nat'l City Bank*, 396 F.2d 897, 901 (2d Cir. 1968); *VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8, 17–18 (D. Mass. 2000) (holding that a communication by a Japanese benrishi is covered by attorney-client privilege, even though a benrishi is not recognized as an attorney under U.S. law, in part because such communications would not be discoverable under Japanese law). As a result, Judge Jones applied U.S. privilege law, even though the communications in question did not "touch base" with the U.S., and found that the communications were privileged and not discoverable. *Astra*, 208 F.R.D. at 102.

---

[1] It should also be noted that under Korean law, "a court may only issue an order to compel document production under specific limited circumstances designated by statute." *Id.* at 101 & n.11. This, again, is similar to the limited discovery rules in Italy. Pocar Decl. ¶¶6-21.

13

Thus, under *Astra*, even if this Court were to find that the communications in question do not "touch base" with the U.S., it should nevertheless apply U.S. privilege law. As demonstrated by Professor Pocar, in Italy there is no law of privilege that is in any way co-extensive with U.S. privilege law, there being no need for such law under the rules of discovery in Italy. Pocar Decl. ¶¶6-21. Further, under the agency test set forth in Point IV above, the Volpi's communications would be privileged under U.S. law. Therefore, to order the wholesale production of Volpi communications in this litigation, when GG would not be required to do so in litigation in Italy, would violate the public policy of this forum. *Astra,* 208 F.R.D. at 102 (applying U.S. law to privilege issue where application of foreign privilege law "would require disclosure of many documents (1) that are protected from disclosure under American law and (2) that would not be discoverable under Korean law").

VI.  **In the Event Volpi's Communications Are Determined to Be Not Subject to the Attorney-Client Privilege, GA Reserves the Right to Invoke the Work Product Privilege As to His Communications**

Finally, in the event the Court refuses to extend the attorney-client privilege to Volpi's communications on the ground that the attorney-client privilege does not apply to him as the subordinate or representative of a New York attorney, GA reserves the right to assert the work product privilege with respect to certain communications involving Volpi that relate to this litigation or other contemplated litigations. *See* FED. R. CIV. P. 26(b)(3)(A)–(B).

The work-product doctrine "reflects the strong public policy underlying the orderly prosecution and defense of legal claims." *U.S. v. Nobles*, 422 U.S. 225, 236–37 (1975). "[I]t is essential that a lawyer work with a certain degree of privacy' and . . . if discovery of the material sought were permitted 'much of what is now put down in writing would remain unwritten. . . . Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. . . . And the interest of the clients and the cause

of justice would be poorly served.'" *Upjohn Co.*, 449 U.S. at 392–93, quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). By creating a "zone of privacy," the courts also "prevent one party from piggybacking on the adversary's preparation." *U.S. v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995), citing *Nobles*, 422 U.S. at 238.

Since many of the Volpi communications at issue were at the instruction of outside counsel and/or in contemplation of litigation, they fall under the work-product privilege. Accordingly, should the instant motion for a protective order be denied, GA would be prepared to provide Volpi's communications to the Court for *in camera* review, so that the Court can determine whether the work product privilege, or any other protection, should apply.

## CONCLUSION

For all the foregoing reasons, GA is entitled to an order protecting the communications of Vanni Volpi from disclosure under the attorney-client privilege.

Dated: New York, New York
April 2, 2009

ARNOLD & PORTER LLP

By: /s/ Louis S. Ederer
Louis S. Ederer
louis.ederer@aporter.com
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiff Gucci America, Inc.*