**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

GUCCI AMERICA, INC.,

               Plaintiff,

          -against-

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

              Defendants.

---------------------------------------------------------

Civil Action No. 09cv4373
(SAS)(JLC)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GUESS?, INC.'S
OPPOSITION TO PLAINTIFF GUCCI AMERICA, INC.'S MOTION FOR A
PROTECTIVE ORDER AGAINST THE DISCLOSURE OF THE PRIVILEGED
COMMUNICATIONS OF PLAINTIFF'S IN-HOUSE LEGAL
COUNSEL JONATHAN MOSS**


O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
ROBERT C. WELSH
ANDREW J. FRACKMAN
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max
Leather Group/Cipriani Accessories, Inc.,
Sequel AG, K&M Associates L.P., Viva Optique,
Inc., Signal Products, Inc., and Swank, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

   I.     GUCCI'S COMMUNICATIONS WITH JONATHAN MOSS ARE NOT
        PROTECTED UNDER THE ATTORNEY-CLIENT PRIVILEGE .......................... 2

      A.   Moss Does Not Satisfy The "Authorized to Practice Law" Requirement of
           Federal Common Law....................................................................................... 2

      B.   By Failing To Conduct Any Investigation Into Moss's Qualifications,
           Gucci Did Not Exercise "Reasonable Precaution" And Therefore Cannot
           Satisfy The "Reasonable Belief" Requirement of Federal Common Law ........... 6

   II.    GUCCI'S PRIVILEGE LOG FAILS TO MEET THE REQUIREMENTS OF
        FEDERAL RULE OF CIVIL PROCEDURE 26(B)(5)............................................ 11

   III.   GUCCI HAS FAILED TO ESTABLISH THAT THE WORK-PRODUCT
        DOCTRINE APPLIES TO MOSS'S COMMUNICATIONS................................... 13

CONCLUSION................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allen v. West Point-Pepperell*,
   848 F. Supp. 423 (S.D.N.Y. 1994) ....................................................... 11

*Brink v. DeLesio*,
   82 F.R.D. 664 (D. Md. 1979)................................................................. 5

*Condon v. Stephan Mach. Corp.*,
   No. 90 CIV. 0823, 1990 WL 311599 (S.D.N.Y.  June 18, 1990).......................................... 13

*FTI v. Smith*,
   No. 99 Civ. 9351, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000)........................................... 7, 8

*In re Grand Jury Subpoena Dated Jan. 14, 1984*,
   750 F.2d 223 (2d Cir. 1984) ................................................................... 1

*In re Grand Jury Subpoenas Dated Jan. 20, 1998*,
   995 F. Supp. 332 (E.D.N.Y. 1998) ....................................................... 5

*In re Grand Jury Subpoenas Dated July 6, 2005*,
   510 F.3d 180 (2d Cir. 2007) ................................................................... 13

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   No. 04 Civ. 5316, 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006) ........................................... 5

*NXIVM v. O'Hara*,
   241 F.R.D. 109 (N.D.N.Y. 2007) ....................................................... 8

*Petz v. Ethan Allen, Inc.*,
   113 F.R.D. 494 (D. Conn. 1985) ....................................................... 11

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*,
   231 F.R.D. 134 (S.D.N.Y. 2004) ..................................................... *passim*

*SR Int'l Bus. Ins. Co. LTD v. World Trade Ctr. Prop. LLC*,
   No. 01 Civ. 9291, 2002 WL 1455346 (S.D.N.Y. July 3, 2002) ........................................... 14

*Tyree v. Dance*,
   No. 88-15775, 1990 WL 40298 (9th Cir. Apr. 4, 1990)......................................... 4

*U.S. v. Boffa*,
   513 F. Supp. 517 (D. Del. 1981)........................................................... 7

*U.S. v. Constr. Prods., Research, Inc.*,
   73 F.3d 464 (2d Cir. 1996) ................................................................... 12, 13

*U.S. v. United Shoe Mach. Corp.*,
   89 F. Supp. 357 (D. Mass. 1950) ....................................................... 5

*Z.A. v. San Bruno Park Sch. Dist.*,
   165 F.3d 1273 (9th Cir. 1999) ................................................................... 3

## Statutes

12 OKLA. STAT. § 2502 (2009) ................................................................... 5

ALASKA R. EVID. § 503 (2009) ................................................................... 5

ARK. CODE. ANN. § 16-41-101  (2009)................................................................... 5

## TABLE OF AUTHORITIES
(continued)

**Page**

CAL. BUS. & PROF. CODE § 6125 ........................................................... 2

CAL. BUS. & PROF. CODE § 6126(a) ....................................................... 3

CAL. EVID. CODE § 950 (2009) ............................................................. 5

FLA. STAT. ANN. § 90.502 (2010) ......................................................... 5

ME. R. EVID. § 502 (2010) .................................................................. 5

MISS. R. EVID. § 502 (2010) ............................................................... 5

N.D. R. EVID. RULE 502 (2010) ........................................................... 5

NEB. REV. STAT. ANN. § 27-503 (2010) ................................................ 5

NEV. REV. STAT. ANN. § 49.065 (2009) ................................................ 5

WIS. STAT. ANN. § 905.03 (2009) ........................................................ 5

### Rules

C.D. Cal. Civ. L.R. 83-2.2.1 ................................................................. 3

C.D. Cal. Civ. L.R. 83-3.3 ................................................................... 4

Fed. R. Civ. P. 26 ............................................................................. 11

Fed. R. Evid. 501 ............................................................................. 2

S.D. Cal. Civ. L.R. 83.3(c) .................................................................. 4

S.D. Cal. Civ. L.R. 83.3(d) .................................................................. 4

State Bar of California Membership Rules, Rule 2.30 (B) ......................... 3

Supreme Court Standard 503 ........................................................... 2, 5

WEST'S CAL. RULES OF COURT (State & Fed. ed. 1987) ......................... 4

### Other Authorities

CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE
AND PROCEDURE § 5471 (1986) ........................................................ 5

JACK B. WEINSTEIN, FED. EVID. § 503.02 (Joseph M. McLaughlin ed., 2010) ............ 5

S. Reisinger, *Privilege Contested Due to Lawyer's Inactive Bar Status*,
N.Y.L.J., April 8, 2010 ..................................................................... 3

## INTRODUCTION

All Gucci had to do was ask. Gucci could have readily learned that Jonathan Moss was not authorized to practice law simply by asking him whether he was an active member of the California Bar. That is what Guess did when it deposed Moss. And that is what Gucci never did in all the years Moss acted as Gucci's legal counsel.

As the party claiming privilege, Gucci has the burden of establishing that the attorney-client privilege applies to communications involving Moss. *See, e.g.*, *In re Grand Jury Subpoena Dated Jan. 14, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984) ("[i]t is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or *ipse dixit* assertions") (emphasis in original).[1] Gucci simply fails to shoulder this burden.

The attorney-client privilege does not apply to Gucci's communications with Moss because at no time relevant to Gucci's motion was Moss authorized to practice law before a state or federal court.[2] Further, Gucci's own declarations and accompanying documents establish that it failed to exercise "reasonable precaution" by permitting Moss to act as Gucci's counsel without first inquiring into his background or qualifications.

Additionally, Gucci's privilege log fails to meet the requirements of Federal Rule of Civil Procedure 26(b)(5), which mandates that the party asserting privilege describe the withheld documents in a manner that "will enable other parties to assess the applicability of the privilege or protection." Where, as here, the privilege log fails to comply with the requirements of Rule 26, courts will order production of the documents. Finally, Gucci does not come close to

---

[1] Internal citations are omitted and emphases are added unless otherwise noted.

[2] As Gucci notes in its papers, "[o]n September 1, 1996, Moss voluntarily changed his California bar status from active to inactive." Plaintiff's Motion (Memo. re: Jonathan Moss, hereinafter "Moss Br.") at 3. Moss remained on inactive status for the next thirteen and a half years until February 5, 2010. *See* Decl. of Louis Ederer ("Ederer Decl.") ¶ 2, Ex .A (containing screenshot from the State Bar of California website showing result of an "attorney search" for Jonathan Moss).

meeting its burden of proof for withholding Moss's documents on the ground of the work-product doctrine.

## ARGUMENT

### I.    GUCCI'S COMMUNICATIONS WITH JONATHAN MOSS ARE NOT PROTECTED UNDER THE ATTORNEY-CLIENT PRIVILEGE.

Gucci acknowledges that federal common law governs the applicability of the attorney-client privilege in this case,[3] and that Supreme Court Standard 503 ("Standard 503") "is generally considered an authoritative restatement of federal common law."[4]  Despite these concessions, Gucci's motion papers largely ignore Standard 503's requirements.  Here's why: Standard 503 defines an attorney as either (1) an individual *authorized* to practice law; or (2) an individual a client *reasonably believes* to be authorized to practice law.  Supreme Court Standard 503(a)(2), reprinted in 56 F.R.D. 183, 236 (West 1972).  Gucci cannot satisfy either of these requirements.

### A.    Moss Does Not Satisfy The "Authorized to Practice Law" Requirement of Federal Common Law.

At no time relevant to Gucci's motion was Moss authorized to practice law in any jurisdiction, state or federal.  As even Gucci grudgingly concedes, Moss was not authorized to practice law in California—the only state in which he was a member of the bar—during his tenure at Gucci.  Moss. Br. at 3, 10.  California predicates the right to practice law on *active membership* in the State Bar.  "No person shall practice law in California unless the person is an *active* member of the State Bar."  CAL. BUS. & PROF. CODE § 6125.  The Rules of the State Bar of California also specifically prohibit an inactive member from representing clients, giving legal advice or otherwise engaging in the practice of law:

---

[3] Moss. Br. at 5 ("Federal privilege issues are controlled by 'principles of common law.' FED. R. EVID. 501; *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 60 F.R.D. 437, 441 (S.D.N.Y. 1995).")

[4] Moss. Br. at 10 n. 4.

> No member practicing law, or occupying a position in the employ
> of or rendering any legal service for an active member, or
> occupying a position wherein he or she is called upon in any
> capacity to give legal advice or counsel or examine the law or pass
> upon the legal effect of any act, document or law, shall be enrolled
> as an inactive member.

State Bar of California Membership Rules, Rule 2.30 (B).  Not only is the practice of law while

on inactive status prohibited by California law, it is also punishable as a misdemeanor.  CAL.

BUS. & PROF. CODE § 6126(a) ("Any person . . . practicing law who is not an active member of

the State Bar, or otherwise authorized . . . to practice law in this state. . . is guilty of a

misdemeanor"); *see also Z.A. v. San Bruno Park Sch. Dist.*, 165 F.3d 1273, 1275 (9th Cir. 1999)

("In the state of California, a person must be an active member of the California State Bar in

order to practice law.  Any person . . . practicing law, who is not an active member of the state

bar, is guilty of a misdemeanor.").

Gucci nonetheless argues that, even though Moss was not an active member of the State

Bar of California, he was "an active member of the bars of the U.S. District Courts for the

Southern and Central Districts of California," and thus Gucci may assert the privilege.  Moss Br.

at 3, 9.  Even a few minutes of legal research would have revealed that the local rules for the

Central District and Southern District Courts require that an attorney maintain continuing and

active membership in the State Bar of California to remain a member of both federal bars.[5]  *See*

C.D. Cal. Civ. L.R. 83-2.2.1 ("[a]dmission to and *continuing membership* in the Bar of this Court

---

[5] Indeed, the New York Law Journal reporter covering the story surrounding Moss's termination readily
determined that once Moss went on inactive status, he could no longer practice in the federal courts in which he had
been admitted. *See* S. Reisinger, *Privilege Contested Due to Lawyer's Inactive Bar Status*, N.Y.L.J., April 8, 2010 at
1 ("Attorneys admitted to practice in California's Southern District must be 'active members in good standing of the
State Bar of California,' according to the district's Web site. The Central District of California says in its voice
recording that a prerequisite to admission in that federal court is that an attorney must be an active member of the
state's bar."). Even after this Article was published, Gucci never sought to amend its motion papers or otherwise
notify the Court that one of its central legal arguments was without merit.

is limited to persons of good moral character who are *active members* in good standing of the State Bar of California"); S.D. Cal. Civ. L.R. 83.3(c) (same).

Significantly, the local rules for both district courts contemplate the very situation presented here—namely, where an attorney originally obtains membership in the federal bar and later moves from active to inactive status. *Both rules explicitly deny continued membership to such attorneys.* *See* C.D. Cal. Civ. L.R. 83-3.3 ("[a]ny attorney previously admitted to the Bar of this Court who no longer is enrolled as an *active member* of the Bar, Supreme Court, or other governing authority of any State, territory or possession, or the District of Columbia, shall not practice before this Court")[6]; S.D. Cal. Civ. L.R. 83.3(d) ("in the event that an attorney is no longer eligible to practice in another jurisdiction by reason of . . . enrollment as an inactive member, the attorney will immediately be suspended from practice before this court without any order of court and until the attorney becomes eligible to practice in such other jurisdiction"). These Local Rules were in effect well before Moss went on inactive status in 1996,[7] which means that once Moss switched from active to inactive status, he was no longer a member of the federal bar. There is no justification for Gucci's failure to apprise the Court of the unambiguous Local Rules of these Courts.[8]

Gucci also tries to invoke what it calls the "*Beacon Hill* test",[9] which it says "merely requires that a putative attorney be a 'member of the bar of the court.'" Moss Br. at 6, *citing*

---

[6] Indeed, had Moss practiced in the Central District of California after becoming an inactive member of the California Bar, he could have been disbarred. C.D. Cal. Civ. L.R. 83-3.3 ("Upon receipt of reliable information that such attorney is practicing before the Bar of this Court, this Court shall issue an Order to Show Cause why the attorney should not be disbarred")

[7] *See* WEST'S CAL. RULES OF COURT 914, 1019 (State & Fed. ed. 1987).

[8] Gucci's reliance on *Tyree v. Dance*, No. 88-15775, 1990 WL 40298, at *1 (9th Cir. Apr. 4, 1990) is equally unavailing. The issue before the court in *Tyree* was whether an Assistant United States Attorney was authorized to request a wiretap when he was an inactive member of the California bar, but *remained admitted to practice* in front of the United States District Court Central District of Utah. *Id.* at *1. Unlike in Utah, the local rules for both district courts to which Moss was admitted specifically prohibit an attorney from continuing to be a member of the federal bar once the attorney switches from active to inactive status.

[9] Moss Br. at 6.

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 138 (S.D.N.Y. 2004). In truth, *Beacon Hill* sets forth no new test and, in any event, sets forth no different test than contained in Standard 503.[10] It is well-established that "Supreme Court Standard 503, restates, rather than modifies, the common-law lawyer-client privilege." JACK B. WEINSTEIN, FED. EVID. § 503.02 (Joseph M. McLaughlin ed., 2010).[11]  *See also* CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5471 (1986) (noting that "inactive or retired membership that does not permit the member to practice law" is insufficient for purposes of being a "lawyer" under Standard 503).

Indeed, courts that have addressed this issue have interpreted the language quoted by Gucci in a manner entirely consistent with Standard 503"s "authorized to practice" language. *See, e.g.*, *Brink v. DeLesio*, 82 F.R.D. 664, 674 (D. Md. 1979) (denying claim of attorney-client privilege in part based on attorney's inactive status in Virginia State Bar); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 3476735, at *17 (S.D.N.Y. Nov. 30, 2006) (noting that the attorney-client privilege does not apply . . . unless the communication in question was with an individual "admitted to practice *at the bar of a state or federal court*"); *In re Grand Jury Subpoenas Dated Jan. 20, 1998*, 995 F. Supp. 332, 337 (E.D.N.Y. 1998) (noting the "strict parameters of the attorney-client privilege" and citing Proposed Rule of Evidence 503's definition of "lawyer"). Tellingly, Gucci is unable to cite to a

---

[10] Rather, *Beacon Hill* merely quotes a passage originally penned by Judge Wyzanski in *U.S. v. United Shoe Mach. Corp.*, 89 F. Supp. 357 (D. Mass. 1950) for the purpose of addressing an entirely different issue relating to the attorney-client privilege. Judge Wyzanski did not elaborate further on the "lawyer" requirement as the question before the court was whether the attorney-client privilege applied to communications with *bona fide* attorneys who were employed principally to provide business or technical expertise, not legal advice. *See id.* at 361.

[11] Indeed, numerous state statutes have adopted Rule 503's definition of "lawyer" for purposes of determining the scope of the attorney-client privilege. *See, e.g.*, ALASKA R. EVID. § 503 (2009) ("a lawyer is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation"); ARK. CODE. ANN. § 16-41-101 (2009); CAL. EVID. CODE § 950 (2009); FLA. STAT. ANN. § 90.502 (2010); ME. R. EVID. § 502 (2010); MISS. R. EVID. § 502 (2010); NEB. REV. STAT. ANN. § 27-503 (2010); NEV. REV. STAT. ANN. § 49.065 (2009); N.D. R. EVID. RULE 502 (2010); 12 OKLA. STAT. § 2502 (2009); OR. REV. STAT. ANN. § 40.225 (2009); WIS. STAT. ANN. § 905.03 (2009).

single federal decision in which an attorney who was not permitted to practice in any state or federal court was found to satisfy the federal common law's "authorized to practice" requirement.

**B.** **By Failing To Conduct Any Investigation Into Moss's Qualifications, Gucci Did Not Exercise "Reasonable Precaution" And Therefore Cannot Satisfy The "Reasonable Belief" Requirement of Federal Common Law.**

Gucci's various affidavits and exhibits make one thing perfectly clear:  No one at or acting for Gucci, including those in Gucci's Human Resources Department, conducted any investigation into Moss's qualifications.  Rather, the declarations present a vivid picture of inattention and indifference:

- "Neither Art [Leshin] nor anyone associated with Gucci asked me to check Jonathan's legal qualifications, and I did not do so, since Art had said that the job for which he was considering Jonathan was not a lawyer position."  Decl. of George Borababy ("Borababy Decl.") ¶ 7;

- "I do not recall whether [Moss] ever worked in a legal capacity."  Decl. of Timothy A. Chorba ("Chorba Decl.") ¶ 8;

- "Because I did not hire Jonathan to serve as an in-house lawyer, I did not inquire further about his legal background.  In particular, I did not make any inquiry as to whether he was a member of the bar of California (or any other state), and I did not ask anyone inside or outside of the company to make any such inquiry."  Decl. of Arthur Leshin ("Leshin Decl.") ¶ 9;

- "When I was promoted to the position of Director of Human resources at [Gucci America], it did not occur to me that I, or anyone at [the company], needed to

check Jonathan's qualifications to practice law." Decl. of Christy Leleck ("Leleck Decl.") ¶ 6; and

- "I did not feel the need to investigate [Moss's] legal qualifications, including his bar status." Decl. of Karen Lombardo ("Lombardo Decl.") ¶ 8.

Federal common law makes clear that the failure to conduct any inquiry compels the conclusion that the party's belief was not reasonable. The leading case on the issue of reasonable belief in the attorney-client privilege context is *U.S. v. Boffa*, 513 F. Supp. 517 (D. Del. 1981). In *Boffa*, certain defendants sought to suppress evidence obtained by law enforcement on the ground the information was communicated to an individual the defendants mistakenly believed was an attorney. *Id.* at 519. Though noting the possibility of circumstances where "the [attorney-client] privilege should be extended to those who make confidential communications to an individual in the genuine, but mistaken, belief that he is an attorney," *id.* at 523, the *Boffa* court cautioned that "[p]rudence dictates that such a belief should be reasonable in order to lay claim to the protections of the privilege and that a respectable degree of precaution in engaging in the services of the attorney must be demonstrated." *Id.* In order to meet its burden of proof, the party claiming privilege must demonstrate not only "that [he] genuinely and reasonably believed that [the person] was an attorney," but also "demonstrate . . . what precautions, if any, [were taken] to ascertain [the person's] status [as an attorney]." *Id.* at 525. Where evidence of having taken reasonable precautions is absent, the moving party has failed to shoulder its burden of establishing that the privilege applies. *Id.*

In *FTI v. Smith*, No. 99 Civ. 9351, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000)—a case remarkably similar to this case—the court addressed *Boffa*'s "reasonable precautions" requirement in the context of a corporation's communications with in-house counsel. In *FTI*,

plaintiff corporation asserted the attorney-client privilege with respect to communications with in-house counsel who, despite graduating law school and passing the New York bar exam, was not admitted to practice before any state or federal court.  *Id.* at *1.  As in *Boffa*, the court ruled the communications were not privileged because the corporation had failed to undertake any investigation into the attorney's qualifications to practice law:

> Here, [plaintiff] employed Smith as their general counsel. This is strong evidence that they believed him to be an attorney.  There is, however, no indication that FTI checked Smith's background to ascertain whether or not he was a duly licensed attorney or even asked Smith for credentials proving admission to the bar.  Such an investigation would undoubtedly have revealed, as it did to defendants, that Smith was not admitted to the bar of New York or any other state.

*Id*. at *6.  Recognizing that corporations are far more familiar than individuals with the necessity of "conduct[ing] investigations to determine whether a potential employee's credentials are commensurate with the corporation's needs," the court concluded that "it is not unduly burdensome to require a corporation to determine whether their general counsel, or other individuals in their employ, are licensed to perform the functions for which they have been hired." *Id.* [12]

Like the plaintiff in *FTI*, Gucci has a Human Resources Department whose job is to screen prospective employees.[13]  And like the plaintiff in *FTI*, Gucci simply failed to conduct

---

[12] Gucci's attempt to discredit the *FTI* opinion based on *NXIVM v. O'Hara*, 241 F.R.D. 109 (N.D.N.Y. 2007) is unavailing.  The issue in *NXIVM* was whether the corporation had retained an attorney, who at all times was admitted to practice law in Washington, D.C. but not in New York, to provide non-legal strategic or legal advice. *Id.* at 59-60.  Plaintiff attempted to rely on a "reasonable belief" that counsel was acting in a legal capacity to invoke the privilege as to all documents during that time period.  *Id.* at 60.  The court properly rejected the corporation's contention that its "subjective beliefs" were the determining factor as to whether the attorney was providing legal and non-legal advice and instead noted that courts instead have developed "objective elements to . . . determine whether an attorney-client relationship truly exists" and cited *FTI* as an example of such an "objective" approach.  As there was no question that the attorney in *NXIVM* was at all times authorized to practice in Washington, D.C., it had no occasion to follow *FTI*.  Instead, the court ordered a document by document determination whether counsel was acting in a legal or business capacity.  *Id.* at 61.  The court also noted that were it to apply *FTI*, NXIVM would have to demonstrate that it ensured counsel was properly licensed.  *Id.* at 61 n.23.

[13] *See* Leleck Decl. ¶ 1; Lombardo Decl. ¶ 2.

any reasonable investigation into Moss's background.  This omission is particularly egregious,

given how easily Guess was able to determine that Moss was not authorized to practice law:

> Q.   And were you admitted to any state Bars?
> A.   California.
> Q.   Any others?
> A.   No.
> Q.   And are you currently an active member of the California State Bar?
> A.   No.
> Q.   You're on inactive status?
> A.   Yes.

Decl. of Robert C. Welsh ("Welsh Decl.") ¶ 2, Ex. A, at 30:13-22 (Tr. of Moss Depo.).  There is

no reason to believe that had Gucci asked the same questions, Moss's answers would have been

any different.  All Gucci had to do was ask.

 Additionally, Gucci easily could have determined whether Moss was authorized to

practice law with just a few clicks of a mouse.  The State Bar of California website has an easy-

to-use search function that allows the public to search for attorneys admitted to the California

bar.  Had anyone at Gucci typed "Jonathan Moss" into the search box on the website and clicked

on Jonathan Moss's name, his profile bearing his inactive membership status would have

instantly appeared.[14]  *See* Ederer Decl. ¶ 2, Ex. A.  Furthermore, to the extent that Gucci was

uncertain what restrictions were placed on inactive members, another simple search of "inactive

status" would have produced membership rules clearly stating that inactive members are not

authorized to practice law.  Welsh Decl. ¶ 8, Ex. G.  A quick call to the State Bar of California

would have confirmed the same information.

 Unable to show that it undertook any reasonable precautions, Gucci resorts to after-the-

fact conclusory statements of various Gucci representatives.  These statements are not only

---

[14] A telephone conversation with a representative of the California bar confirmed that the search function of the website was similarly active in 2002 and would have produced similar results.  The State Bar of California can be reached at (888) 800-3400.

unavailing as a matter of law, but they raise more questions than they answer. For example, Gucci relies on the fact that Moss was originally hired to perform in a non-lawyer capacity to excuse the lack of any background check or inquiry into Moss's authorization to practice law. Moss. Br. at 11. According to Gucci, Moss was hired to assist with "financial modeling of proposed real estate leases" and other activities "previously handled by other non-legal personnel in the company." Leshin Decl. ¶6. Only about a year later was Moss recommended to "be promoted to the position of legal counsel." *Id*. at ¶11.

Gucci has the significance of these facts completely backwards. Gucci's knowledge that Moss had not worked in a legal capacity for at least six years prior to joining Gucci and indeed had not practiced as a lawyer for the vast majority of his post-law school career[15] should have prompted Gucci to take special care when it contemplated transferring him to its in-house Legal Department. By no means did these facts excuse Gucci's failure to conduct any investigation.

Moreover, Gucci's account of Moss's transition from non-lawyer to lawyer does not square with its own exhibits. According to Gucci, it was not until "sometime in mid-2003," after Moss had been employed "for approximately a year or so," that Moss was recommended to the position of legal counsel. *See* Leshin Decl. ¶¶ 9-11; Lombardo Decl. ¶ 4 ("In or about mid-2002, Jonathan Moss was hired by [Gucci America]"). But, in fact, Moss began acting as Gucci's counsel mere months after being hired by the company. Exhibit D to the Declaration of Gucci's counsel, Louis Ederer, is Moss's Motion For Admission to Practice, *Pro Hac Vice*, which was filed with the U.S. Bankruptcy Court on December 23, 2002. Guess has learned that Moss also filed papers in the same bankruptcy proceeding dated December 19, 2002, in which he represented himself as Gucci's "In-House Counsel." *See* Welsh Decl. ¶ 4, Ex. C. Thus, within a few months of hiring him, Gucci permitted Moss to file papers in federal court as its legal

---

[15] *See* Welsh Decl. ¶ 3, Ex. B (copy of Moss's LinkedIn resume).

counsel even though no one at Gucci *knew whether he had ever been admitted to any bar, much less authorized to practice law*.

In effect, Gucci asks this court to adopt a rule that would eliminate the need for a corporation, having a dedicated personnel department, to conduct any investigation before allowing someone they hire as in-house counsel to practice law on their behalf. Such a rule eliminates the "reasonable" from the "reasonable belief" requirement and would run afoul of the mandate that the attorney-client privilege be strictly confined within the narrowest possible limits. *Allen v. West Point-Pepperell*, 848 F. Supp. 423, 426 (S.D.N.Y. 1994) (the "attorney-client privilege . . . impinge[s] on the production of relevant evidence and thus function[s] as [an] obstacle[] to the fact-finder in the pursuit of the truth. Consequently, the Supreme Court has indicated that such evidentiary privileges should not be expansively construed."). Accordingly, Moss was not an attorney within the meaning of federal common law and Gucci's communications with Moss are not protected by the attorney-client privilege.

## II.    <u>GUCCI'S PRIVILEGE LOG FAILS TO MEET THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 26(B)(5).</u>

Not only does Gucci fail to shoulder its burden of establishing that Moss's communications are privileged, many of Gucci's privilege log entries fail to meet the basic requirements set forth in Federal Rule of Civil Procedure 26(b)(5). Rule 26 requires a party withholding documents on grounds of privilege to describe the nature of the documents and communications it is withholding in a manner that "will enable other parties to assess the applicability of the privilege or protection." FED. R. CIV. PROD. 26(B)(5); *see also Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D. Conn. 1985) (party asserting privilege should identify documents with enough particularity that the opposing counsel can "intelligently argue" the privilege should not apply). Courts in the Second Circuit interpret Rule 26 to require that a

privilege log "identify each document and the individuals who were parties to the communications, providing *sufficient detail* to permit a judgment as to whether the document is at least potentially protected from disclosure." *Beacon Hill*, 231 F.R.D. at 144; *accord, U.S. v. Constr. Prods., Research*, *Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). Where, as here, the party asserting the privilege fails to provide details allowing for an assessment of the applicability of the privilege, courts order production of all inadequately described documents. *See Beacon Hill*, 231 F.R.D. at 145; *Constr. Prods., Research, Inc.*, 73 F.3d. at 473-74.

In *Beacon Hill*, a case on which Gucci relies, a number of withheld documents were described as "transmitting or reflecting 'communications' with counsel." 231 F.R.D. at 145. The court found these descriptions "insufficient to establish even the minimal showing required in a privilege log" as they did not "permit the adversary to make an intelligent assessment as to the applicability of a privilege." *Id.* Additionally, the *Beacon Hill* court found that a document described as "Attachment-letter to investors" did not even "remotely suggest that any privilege or protection is applicable" and ordered production of all inadequately described documents. *Id.*

Numerous entries in Gucci's Amended Privilege Log provide even less description than the defective privilege log in *Beacon Hill*. *See* Welsh Decl. ¶ 5, Ex. D. For these entries, the only descriptions Gucci provides are: "Review of Guess Product," "Guess Twirl Watch," and "Investigation into Guess Products."[16] These descriptions negate any inference that the communications involved the giving or receiving of legal advice and instead support the conclusion that they contain merely non-privileged factual information. Even Gucci's three other descriptions—"Strategic Review and Preparation of Evidence," "Preparation for Litigation Against Guess," and "Final Preparation for Litigation Against Guess"—fail to indicate whether

---

[16] The Court may rely on affidavits and other documentation to remedy inadequate descriptions in a privilege log. *See Constr. Prods., Research*, *Inc.*, 73 F.3d. at 473-74. Here, Gucci submitted declarations with its brief. None of them address, much less cure, the deficiencies in their privilege log.

legal advice was being sought or transmitted, which appears to be necessary under *Beacon Hill* in order to comply with Rule 26. *Beacon Hill*, 231 F.R.D. at 34 (holding "seeking, transmitting or reflecting legal advice" adequately described documents withheld on attorney-client privilege grounds, but ordering production of documents withheld on the same grounds that failed to provide such descriptions). Accordingly, production of the inadequately described documents should be ordered.[17] Alternatively, the Court should conduct an *in camera* inspection of all documents and order production of all non-privileged material.

## III.   GUCCI HAS FAILED TO ESTABLISH THAT THE WORK-PRODUCT DOCTRINE APPLIES TO MOSS'S COMMUNICATIONS.

Gucci purports to "reserve" its ability to assert the work-product doctrine in the event the Court concludes that Moss's communications are not protected by the attorney-client privilege. Such a reservation is improper as the Court made it clear at the parties' pre-motion conference that the parties were limited to a maximum of 15 pages in the opening and opposition briefs. Gucci did not seek and the Court never approved *seriatim* briefing on the privilege issue. As a result, if Gucci believed it had compelling arguments for the application of the work-product doctrine it would have presented them here. That it did not do so simply confirms that Gucci fails to meet its "heavy burden" of establishing the facts essential to prove the applicability of work-product doctrine. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).[18] *See also Constr. Prods., Research, Inc.*, 73 F.3d. at 473-74 (rejecting a claim of work-product based on insufficient detail demonstrating application of the doctrine).

---

[17] Gucci should not be allowed another chance to amend its privilege log to cure these deficiencies. Gucci has already submitted an amended privilege log with the same defective descriptions. *See* Welsh Decl. ¶¶ 5-6, Exs. D-E.

[18] In order to adequately assert the work-product protection, a party must enumerate each document it seeks to withhold, assert the privilege as to each document, and establish the reasons for why it believes each document qualifies as work product. *See Condon v. Stephan Mach. Corp.*, No. 90 CIV. 0823, 1990 WL 311599, at *2 (S.D.N.Y. June 18, 1990). Gucci's sweeping assertion that Moss's communications "fall under the work product

13

Additionally, to the extent the Court gives any credence to Gucci's work product claim, it should nonetheless order production of the underlying facts of the communications. *See SR Int'l Bus. Ins. Co. LTD v. World Trade Ctr. Prop. LLC*, No. 01 Civ. 9291, 2002 WL 1455346, at *4 (S.D.N.Y. July 3, 2002). Discovery of the underlying documents is warranted here because, as Gucci's counsel has acknowledged, documents relating to Gucci's prior knowledge of Guess's long-standing use of many of the trademarks, logos and designs at issue in this lawsuit have been withheld on grounds of privilege.[19] The Court has already indicated that such information is directly relevant to Guess's defenses and has expressed concern regarding any attempt to conceal such prior knowledge under the cloak of the attorney-client and work product privileges.[20]

## CONCLUSION

For all the foregoing reasons, Guess respectfully submits that Gucci's Motion for Protective Order must be denied.

Dated: Los Angeles, California
        April 16, 2010

O'MELVENY & MYERS LLP

By: _____

Daniel M. Petrocelli (dpetrocelli@omm.com)
Robert C. Welsh (rwelsh@omm.com)
Andrew J. Frackman (afrackman@omm.com)
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., and Swank, Inc.*

---

privilege" because they are "related to" or "in contemplation" of litigation (Moss Br. at 14, 15) "is inadequate to prevent discovery." *Condon*, 1990 WL 311599, at *2.

[19] Welsh Decl. ¶ 7, Ex. F, at 28:5-32:1; 36:2-10 (Tr. of Jan. 13, 2010 Proceedings).

[20] *Id.*