UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUCCI AMERICA, INC.,

        Plaintiff,

-against-

GUESS?, INC., MARC FISHER FOOTWEAR LLC, THE MAX LEATHER GROUP/CIPRIANI ACCESSORIES, INC., SEQUEL AG, K&M ASSOCIATES L.P., VIVA OPTIQUE, INC., SIGNAL PRODUCTS, INC. and SWANK, INC.,

        Defendants.

Civil Action No. 09cv4373 (SAS)(JLC)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GUESS?, INC.'S OPPOSITION TO PLAINTIFF GUCCI AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DISCLOSURE OF THE PRIVILEGED COMMUNICATIONS OF NON-PARTY GUCCIO GUCCI S.P.A.'S IN-HOUSE INTELLECTUAL PROPERTY COUNSEL VANNI VOLPI**

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
ROBERT C. WELSH
ANDREW J. FRACKMAN
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., and Swank, Inc.*

# TABLE OF CONTENTS

                                       **Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

    I.    TRADITIONAL CHOICE-OF-LAW "CONTACTS" ANALYSIS MANDATES THAT ITALIAN LAW DETERMINES WHETHER VOLPI'S COMMUNICATIONS ARE PRIVILEGED ............................................................... 3

    II.    VOLPI'S COMMUNICATIONS ARE NEITHER PRIVILEGED NOR SHIELDED FROM DISCOVERY UNDER ITALIAN LAW ................................... 6

    III.    PRINCIPLES OF INTERNATIONAL COMITY DO NOT SUPPORT APPLICATION OF U.S. PRIVILEGE LAW TO VOLPI'S COMMUNICATIONS ....................................................................................... 7

    IV.    VOLPI'S COMMUNICATIONS ARE NOT PROTECTED UNDER FEDERAL COMMON LAW ........................................................................... 9

    V.    THE ATTORNEY-CLIENT PRIVILEGE DOES NOT APPLY TO COMMUNICATIONS OF A NON-LAWYER WHO IS ACTING IN EVERY RESPECT LIKE A LAWYER .................................................................... 11

CONCLUSION ........................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page**

**Federal Cases**

*2M Asset Mgmt., LLC v. Netmass, Inc.*,
  No. 2:06-CV-215, 2007 WL 666987 (E.D. Tex. Feb. 28, 2007) .............................................. 6
*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*,
  208 F.R.D. 92 (S.D.N.Y. 2002) ..................................................................................... *passim*
*Cuno, Inc. v. Pall Corp.*,
  121 F.R.D. 198 (E.D.N.Y. 1988) ............................................................................................ 11
*Golden Trade, S.r.L. v. Lee Apparel Co.*,
  143 F.R.D. 514 (S.D.N.Y. 1992) ................................................................................ 5, 10, 13
*Honeywell, Inc. v. Minolta Camera Co., Ltd.*,
  No. 87-4847, 1990 WL 66182 (D.N.J. May 15, 1990) ......................................................... 14
*In re Rivastigmine Patent Litig.*,
  237 F.R.D. 69 (S.D.N.Y. 2006) ..................................................................................... *passim*
*In re Rivastigmine Patent Litig.*,
  239 F.R.D. 351 (S.D.N.Y. 2006) ............................................................................................. 9
*Malletier v. Dooney & Bourke, Inc.*,
   No. 04 Civ. 5316, 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006) ................................. *passim*
*Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.*,
  No. M8-85, 1999 WL 378337 (S.D.N.Y. June 10, 1999) ..................................................... 13
*S.E.C. v. Beacon Hill Asset Mgmt.,*
  *LLC*, 231 F.R.D. 134 (S.D.N.Y. 2004) ................................................................................... 5
*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
  No. Civ.A. 00-981, 2002 WL 31556497 (D. Del. Nov. 18, 2002) .......................................... 5
*U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*,
  852 F. Supp. 156 (E.D.N.Y. 1994) ................................................................................. 12, 13
*U.S. v. Ackert*,
  169 F.3d 136 (2d Cir. 1999) .................................................................................................. 12
*U.S. v. Alvarez*,
  519 F.2d 1036 (3d Cir. 1975) .......................................................................................... 11, 13
*U.S. v. Goldberger & Dublin, P.C.*,
   935 F.2d 501 (2d Cir. 1991) .................................................................................................. 10
*U.S. v. Kovel*,
  296 F.2d 918 (2d Cir. 1961) ............................................................................................ 11, 12
*VLT Corp. v. Unitrode Corp.*,
  194 F.R.D. 8 (D. Mass. 2000) ............................................................................................. 3, 4

**Other Sources**

ABA Model Rule 5.5 .................................................................................................................. 13
BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS
  (Robert L. Haig ed., 2d ed.) § 18.103 ..................................................................................... 3
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 ............................................................. 3, 4

**INTRODUCTION**

Vanni Volpi holds the title of Intellectual Property ("IP") Counsel for the Italian company Guccio Gucci S.p.A. ("GG"). GG is not a party to this lawsuit. Nor is Volpi an officer or employee of Gucci America, Inc. ("GA"), the plaintiff here. GG is, however, a party to a separate lawsuit that it commenced against defendant Guess?, Inc. ("Guess"), which is currently pending in the Court of Milan, Italy. In that lawsuit, GG is asserting trademark-related claims and other claims against Guess arising out of Guess's use in Italy of the trademarks, logos and designs that are also the subject of this lawsuit.[1]

As GG's IP Counsel, Volpi performs a lawyer's job, but he is not a lawyer. Nonetheless, GA claims that the entirety of Volpi's communications is privileged. As GA's Amended Privilege Log shows,[2] Volpi's communications occurred outside of the U.S. and a substantial number of them involved communications with others at GG outside of the U.S. Volpi also had communications with representatives of GA in the U.S.

The descriptions contained in GA's privilege log are entirely unhelpful in determining whether the communications involve the communication of legal advice, much less whether any of the communications pertained to the U.S. lawsuit. However, GA previously advised the Court that documents held by GG and other Gucci affiliates "have nothing to do with this case" and that GG and the other Gucci affiliates "are not involved in this case."[3]

Despite such representations to the Court, GA now argues that *all* of Volpi's communications are privileged under U.S. law. From beginning to end, GA's arguments are unavailing. First, GA tries to convince the Court that Italian law does not recognize an attorney-client privilege. This is clearly erroneous, as the declarations of Guess's Italian law experts

---

[1] *See* Decl. of Robert C. Welsh ("Welsh Decl.") ¶ 2, Ex. A.
[2] *See* Welsh Decl. ¶ 8, Ex. G.
[3] *See* Welsh Decl. ¶ 3, Ex. B.

make clear.  Next, GA argues that, even though Volpi's communications are not privileged, they would not be discoverable in an Italian lawsuit because of the limited discovery afforded under Italian law.  From this GA contends it would violate international comity to permit the wholesale discovery in a U.S. proceeding of communications that would not be discoverable in the jurisdiction in which they occurred.  GA is mistaken.  Volpi's communications *are* potentially discoverable in an Italian proceeding.  Moreover, federal courts have held that where, as here, the foreign jurisdiction recognizes an attorney-client privilege but has carved out communications with in-house counsel from the scope of the privilege, the communications should equally be discoverable in a U.S. proceeding.  Lastly, GA argues that, contrary to what it previously told the Court, Volpi's communications involve "gathering information relating to Guess' infringing activities in the U.S. as well as other jurisdictions."  Plaintiff's Motion (Memo. re: Vanni Volpi, hereinafter "Volpi Br.") at 5.

      Putting aside the obvious implausibility of GA's about-face regarding GG's involvement in this case, GA's arguments are legally untenable.  Under "traditional choice-of-law 'contacts' analysis" utilized by federal courts in deciding privilege issues involving foreign communications, the fact that the communications are not shielded from discovery under the laws of the jurisdiction in which they occurred *weighs in favor* of application of foreign law and of the communications being discoverable in a U.S. proceeding.  *See, e.g.*, *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 78 (S.D.N.Y. 2006).  Moreover, even assuming *arguendo* that U.S. law applied here (which it clearly does not), unprivileged communications made in Italy are not protected under U.S. law because they were not made with any reasonable expectation that the communications would be privileged.  *See, e.g.*, *Malletier v. Dooney & Bourke*, *Inc.,* No. 04 Civ. 5316, 2006 WL 3476735, at *17 (S.D.N.Y. Nov. 30, 2006).

Finally, federal law only extends the attorney-client privilege to non-attorneys who fall into two discrete categories: an attorney's staff who serve as a conduit for the transmission of legal advice; or those with specialized non-legal expertise who assist the attorney in rendering legal advice, typically by interpreting complex material. GA's own description of Volpi's responsibilities shows that he does not fall into either of these categories. Instead, Volpi was hired in a cost-saving measure by GG to transfer work originally performed by the company's higher-priced outside Italian law firm to a lower-priced non-attorney.[4] Tellingly, GA cannot cite to a single federal decision in which the privilege has been extended to someone who, like Volpi, operates as a *de facto* attorney. As demonstrated below, the law is to the contrary.

## ARGUMENT

**I. TRADITIONAL CHOICE-OF-LAW "CONTACTS" ANALYSIS MANDATES THAT ITALIAN LAW DETERMINES WHETHER VOLPI'S COMMUNICATIONS ARE PRIVILEGED.**

The case on which GA principally relies, *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92 (S.D.N.Y. 2002), recognizes that federal courts "appl[y] a traditional choice-of-law 'contacts' analysis to determine the law that applies to claims of privilege involving foreign documents." *Id*. at 98. Among other things, "courts evaluating whether to recognize foreign privileges may look to Section 139 of the Restatement (Second) of Conflict of Laws, which provides that the state with the 'most significant relationship' with the communications at issue should dictate the law applicable to matters of privilege." BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS (Robert L. Haig ed., 2d ed.) § 18.103 (Privileges under foreign law); *see also VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8, 17-18 (D. Mass. 2000) (relying on the

---

[4] *See* Decl. of Daniela Della Rosa ("Della Rosa Decl.") ¶ 15.

-3-

Restatement in applying the privilege laws of Japan and England, respectively, to communications in which each country had "the most direct and compelling interest").[5]

Application of Section 139 to this case compels the conclusion that Italian law governs. Section 139 provides:

> Privileged Communications
>
> (1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.
>
> (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 (1989). Further, Comment e to Section 139 provides that "[t]he state which has the most significant relationship with a communication will usually be the state where the communication took place, which, as used in the rule of this Section is the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing."

Here, Italy has the "most significant relationship" with Volpi's communications because they occurred in Italy where Volpi maintains his office at GG's headquarters outside of Florence, Italy. Welsh Decl. ¶ 4, Ex. C, at 28:25 – 29:2. Copies of Volpi's communications are located at GG's headquarters, either in hard copy files or maintained electronically on Volpi's computer. *Id.* at 28:22 – 29:2. All of Volpi's communications occurred as part of his duties as GG's IP Counsel. Additionally, although Volpi "interfaces" with GA's IP enforcement team, he is

---

[5] GA misapprehends the Court's decision in *VLT Corp.* In that case, the Court did not opt to use U.S. law instead of foreign law out of principles of comity. Rather, the Court applied Japanese law to the communication at issue, and found it to be privileged under Japanese law. 194 F.R.D. at 17-18. Indeed, the Court clearly stated that it "[found] it unnecessary to decide whether or not United States law on privilege would accord communication with benrishi the same protections accorded attorneys in this country." *Id.* at 18.

-4-

primarily responsible for managing the protection of GG's trademarks and intellectual property everywhere in the world except the United States.  Volpi Decl. ¶¶ 4-5.  As Volpi stated at his deposition, "Guccio Gucci does not deal with the United States, nor does it have authority to do so."  Welsh Decl. ¶ 5, Ex. D, at 299:24 – 300:1.

Moreover, despite GA's conclusory statement that Volpi's communications involve "gathering information relating to Guess' infringing activities in the U.S. as well as other jurisdictions," Volpi Br. at 5, neither GA's declarations nor its Amended Privilege Log identifies any communications that did not relate, in whole or in part, to GG's claims against Guess in Italy.  It is well-established that where, as here, the privilege log fails to adequately set forth the basis of the claimed privilege, courts may order production of the documents.[6]

Equally important, none of the cases cited by GA supports its contention that U.S. law should apply to communications that have their "most significant relationship" to other countries, simply because there may be some incidental relation to the U.S.  For example, in *Astra*, only documents that related exclusively to the U.S. (*i.e.*, patent prosecution and litigation in the U.S.) were deemed to "touch base" with the U.S., while documents concerning Korean and German proceedings were not.  208 F.R.D. at 98-99.  And in *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514 (S.D.N.Y. 1992), none of the communications at issue "touched base" with the U.S., which led the Court to apply the privilege rules of Norway, Germany, and Israel because the communications related to patents in each country.  *Id.* at 520-21.

Indeed, courts have applied the law of foreign jurisdictions having "the predominant interest" even though the communications involved the U.S.  *See, e.g.*, *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. Civ.A. 00-981, 2002 WL 31556497, at *3 (D. Del. Nov. 18, 2002) (applying Dutch privilege law to documents involving a Dutch patent attorney that related

---

[6] *See, e.g.*, *S.E.C. v. Beacon Hill Asset Mgmt., LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004).

to European and also to U.S. patents); *2M Asset Mgmt., LLC v. Netmass, Inc.*, No. 2:06-CV-215, 2007 WL 666987, at *2-3 (E.D. Tex. Feb. 28, 2007) (applying German law because, even though the documents also addressed a U.S. patent, "the vast majority of documents" did not relate to the U.S.; rejecting defendants' argument "that if one document touches the U.S., all documents are governed by U.S. law"). In short, Italian law clearly governs whether Volpi's communications are privileged.

## II. VOLPI'S COMMUNICATIONS ARE NEITHER PRIVILEGED NOR SHIELDED FROM DISCOVERY UNDER ITALIAN LAW.

GA would have this Court believe that Italian law does not recognize an attorney-client privilege, and therefore if Italian law were allowed to govern, it would require the wholesale production of documents that would not have been discoverable under Italian law. Volpi Br. at 12-13. Citing *Astra*, GA argues that such a result violates international comity. *Id.* at 13. Starting from an incorrect premise, GA reaches a legally indefensible conclusion.

In fact, Italian law recognizes an attorney-client privilege that permits parties to avoid producing documents and lawyers to refuse to testify if doing so would breach a lawyer's confidentiality obligations. Decl. of Silvia Giudici ("Giudici Decl.") ¶¶ 8, 18-20, 26; Decl. of Franco Ferrari ("Ferrari Decl.") ¶¶ 7-9. However, that privilege is limited by Italian statutes to outside attorneys (or *avvocati*), and does not apply to in-house counsel, such as Volpi. Giudici Decl. ¶¶ 8, 18-21; Ferrari Decl. ¶¶ 10-11, 19. Italian law does not provide a privilege for communications with in-house counsel because it is believed that in-house counsel are too dependent on their corporate "clients" for their livelihood and thus unable to provide truly independent, objective legal advice. Giudici Decl. ¶ 24. Thus, as a member of GG's in-house legal team, Volpi's communications are afforded no special privilege or protection under Italian law. The same lack of privilege applies to communications with Daniela Della Rosa, GG's

-6-

General Counsel. Accordingly, regardless of whether Volpi was acting under the direction of Della Rosa, his communications are not privileged under Italian law.

GA next argues that Volpi's communications are not discoverable under Italian law. Volpi Br. at 12. GA relies on the assertions of its Italian law expert, Prof. Fausto Pocar (Decl. of Fausto Pocar ("Pocar Decl.") ¶¶ 6-21). The implausibility of Professor Pocar's conclusion is made readily apparent by the very Italian statutes he cites. For example, article 210 of the Italian Code of Civil Procedure provides that a court may order a party "to produce a document or a thing which the court regards as necessary for the outcome of the case." Pocar Decl. ¶ 8; Giudici Decl. ¶ 9; Ferrari Decl. ¶ 3. Moreover, Italy's Intellectual Property Rights statutes, which GA and Prof. Pocar completely ignore, permit courts in trademark infringement cases such as this one to order the production of all "relevant documents." Giudici Decl. ¶¶ 13-16 (noting that these discovery rules "can be quite strong"). Thus, to the extent that Volpi's communications contain information that an Italian court determined to be relevant—*e.g.*, such as documents relevant to Guess's defenses—they would not be shielded from production under Italian law.

### III. PRINCIPLES OF INTERNATIONAL COMITY DO NOT SUPPORT APPLICATION OF U.S. PRIVILEGE LAW TO VOLPI'S COMMUNICATIONS.

GA tries to convince the Court that the legal situation involving Volpi's communications are analogous to the situation in *Astra*. It is not. In *Astra*, the Court determined that Korea was the jurisdiction having the most significant relationship with communications between a Swedish client and its outside Korean counsel, and therefore Korean law governed whether the communications were privileged. 208 F.R.D. at 99. At the same time, the Court expressed concern that, since Korean law did not recognize an attorney-client privilege, application of Korean law would result in "the wholesale production of all of the Korean documents in their entirety." *Id.* at 102. Such a result stood in stark contrast to what would have occurred had the

proceedings been held in Korea, where the communications in question would not have been discoverable as a result of Korea's minimal discovery rules. In light of this disparity, the Court concluded that permitting such wholesale discovery "would offend the very principles of comity that choice-of-law rules were intended to protect." *Id*. As a result, the Court did not permit discovery of the communications. *Id*.

Though the *Astra* decision has been raised in subsequent cases involving foreign privilege claims, courts in this Circuit have declined to follow *Astra* where the law of the foreign jurisdiction is directly analogous to the situation here. *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69 (S.D.N.Y. 2006) is illustrative. There, Magistrate Judge James C. Francis analyzed whether communications with Swiss in-house counsel, under a Swiss statutory scheme nearly identical to the Italian codes relevant here,[7] were privileged from discovery in a U.S. lawsuit. As here, the Court concluded that Swiss law recognizes an attorney-client privilege but that the privilege is limited to outside attorneys and does not apply to communications with in-house counsel. *Id*. at 78. The plaintiffs argued—as GA does here—that even if the communications were not privileged, they were not discoverable in a Swiss legal proceeding because of Switzerland's limited disclosure requirements. As a result, plaintiffs contended—as GA does here—that international comity dictated that the communications should not be discoverable in the U.S. proceeding. *Id*. Judge Francis rejected this argument, holding that:

> [T]he "contacts" approach to determinations of privilege involving foreign legal professionals does not adopt wholesale the discovery rules and procedures of the foreign jurisdiction. Its aim is only, as a matter of comity, to recognize a privilege where one has

---

[7] *Compare id*. at 77-78 (citing Basel-City Civil Procedure 221.100, § 116 ("Testimony may be denied by … attorneys … in reference to facts that were learned in the exercise of their profession and which by their nature are to be kept secret.")), *with* Giudici Decl. ¶ 19 (citing article 200 of the Italian Code of Criminal Procedure ("The professionals listed below shall not be compelled to testify in Court with respect to the confidential information they have knowledge of due to their office or profession, unless they have a duty to report it to the judicial authorities … (b) attorneys …")); *see also* Ferrari Decl. ¶ 18 (noting similarity between Swiss law cited in *In re Rivastigmine Patent Litig*. and the Italian statutes at issue here).

-8-

>been carved out under the foreign law.  Whether Swiss discovery procedures are generally comparable to those in the United States is not the focus of the analysis: *the precise legal question is whether a special evidentiary privilege, comparable to the American attorney-client privilege, has been recognized in Swiss law.*

*Id.* (emphasis added).  Magistrate Francis then distinguished *Astra*, observing that it involved a situation where the "absence of privilege result[ed] from the lack of comparability" between the Korean and U.S. legal systems.  By contrast, no such "lack of compatibility" existed where Swiss law merely recognized a more limited attorney-client privilege that excluded communications with in-house counsel.  *Id*.  The district court upheld Judge Francis's ruling, concluding that it would not "imply privilege from discovery procedures where none exists."  *In re Rivastigmine Patent Litig.*, 239 F.R.D. 351, 359 (S.D.N.Y. 2006).

A similar result was reached by the district court in *Malletier*.  There, the Court concluded that international comity did not preclude the discovery of the plaintiff's communications with its French in-house counsel that were not privileged under French law.  2006 WL 3476735, at *17-18.  The Court observed that since the communications occurred in a situation where they would have been potentially discoverable, refusal to permit their discovery in the U.S. proceeding "amounts to cherry-picking segments of French law in support of a legal protection afforded by neither French nor American law."  *Id*. at *18.  Thus, international comity will not preclude application of Italian law here.  *See also* Ferrari Decl. ¶ 19 (opining that "the same analysis of Swiss law that led the U.S. court in the In re Rivastigmine Patent Litigation case to conclude that communications with Swiss in-house counsel were not subject to any privilege would equally apply to communications with Italian in-house counsel").

## IV. VOLPI'S COMMUNICATIONS ARE NOT PROTECTED UNDER FEDERAL COMMON LAW.

Moreover, even if GA could somehow convince this Court that U.S. law applies, the result would be the same—Volpi's communications would not be privileged.  As noted above,

-9-

the attorney-client privilege only extends to communications involving "legal advice . . . *that would not be made without the privilege.*" *Golden Trade*, 143 F.R.D. at 518, *quoting U.S. v. Goldberger & Dublin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) (emphasis added). Here, GA cannot satisfy this essential requirement. Precisely because the communications with Volpi were never privileged under Italian law, participants to those conversations could not reasonably expect that confidentiality could be maintained.

*Malletier* reached just this conclusion. As noted above, the relevant portion of this case involved plaintiff's attempt to shield from discovery communications with its in-house counsel in France. 2006 WL 3476735, at *16. Concluding that "under French law, these communications [with the plaintiff's in-house counsel] are not protected by any privilege," *id*. at *17, the Court then addressed whether the communications should be shielded from discovery under American law. The Court concluded there was "no compelling reason" to apply U.S. law because neither French nor American law protected the communications from discovery:

> [O]ne key premise for assertion of the privilege is that the participants in the assertedly protected communication expect it to be treated as confidential. *See, e.g.*, *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (communication must have been intended to be confidential). Given the fact that communications of [the French in-house counsel] that are at issue apparently took place in France . . . , there is no reason to believe that there was any expectation by the participants that confidentiality could be maintained in the face of French law.

*Id*. Likewise here, given the absence of any attorney-client privilege applicable to in-house counsel under Italian law, the participants to Volpi's communications could not reasonably expect their statements to be immune from discovery. Absent a reasonable basis to believe the communications were privileged at the time they were made, Volpi's communications do not qualify for protection under federal common law.

-10-

V. **THE ATTORNEY-CLIENT PRIVILEGE DOES NOT APPLY TO COMMUNICATIONS OF A NON-LAWYER WHO IS ACTING IN EVERY RESPECT LIKE A LAWYER.**

Volpi is a not a lawyer. He has no law degree and is not a member of any bar association. Volpi Decl. ¶¶ 7-8. Nonetheless, he is doing work that was previously outsourced to GG's outside law firm, Studio Jacobacci, one of the most respected IP firms in Italy. Volpi Decl. ¶ 10; Della Rosa Decl. ¶ 19. GA contends that, even though Volpi is not a lawyer and clearly could not practice law in the U.S., the privilege should nonetheless apply to him because he performed all of his lawyerly duties "under the supervision and direction" of Della Rosa, GG's General Counsel. Volpi Br. at 9. GA's argument fails as a matter of law and fact.

Though GA is quick to point out that courts have extended the attorney-client privilege to encompass communications with certain representatives of an attorney, Volpi Br. at 8-10, GA is unable to cite a single decision in which the privilege has been extended to persons acting as *de facto* attorneys. Indeed, the rationale supporting the limited extension of the privilege to non-attorneys is incompatible with the idea of extending the privilege to non-lawyers, like Volpi, who carry out tasks traditionally performed by real lawyers. The two instances in which courts have extended the privilege to non-lawyers are: (1) employees with "menial or ministerial responsibility that involves relating communications to an attorney," such as legal assistants; and (2) individuals whose specialized non-legal knowledge helps the attorney provide legal services to the client, such as accountants, patent agents, and medical experts. *U.S. v. Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961) (communications with an accountant hired by an attorney could be privileged); *U.S. v. Alvarez*, 519 F.2d 1036, 1046 (3d Cir. 1975) (psychiatrist); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988) (patent agent). Though the situations are different, the unifying rationale is that the privilege extends to those who assist a lawyer in rendering legal advice to his or her client. *Kovel*, 296 F.2d at 922.

That is not what is going on here. For all the conclusory statements about Volpi reporting to Della Rosa and Gucci Group's Cheryl Solomon, who are apparently the only two *bona fide* lawyers in the entire Gucci organization, GA's declarations fail to establish that the 253 communications involving Volpi on the privilege log involve specific requests for legal advice from Della Rosa or Solomon, or the communication of specific legal advice formulated by Della Rosa or Solomon.[8] Indeed, only a small percentage of the challenged communications are written directly to or by Della Rosa or Solomon. Although Della Rosa or Solomon may be copied on other emails along with others, it is well-established that communications do not become privileged merely because an attorney may have received a copy of the communication. *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994).

Nor does GG claim that Volpi merely plays a ministerial role in which he is relegated to transmitting the legal advice formulated by others. Instead, GA asserts that Volpi is a "trained professional." Volpi Br. at 10-11. Notably absent from GA's description is any evidence that Volpi possesses significant ***non-legal*** expertise or background that is "necessary" for the effective consultation between Della Rosa or Solomon and the client.[9] *See, e.g.*, *Kovel*, 296 F.2d at 922 (protecting communications with an accountant because accounting practices are akin to a "foreign language," and therefore accountants, like linguists, could serve to "interpret" the client's information "so that the lawyer may better give legal advice"); *U.S. v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) ("the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client"). As a result, there is no

---

[8] The single exception concerns an email sent from Volpi to GG's President Patrizio Di Marco in March 2009. Volpi Decl. ¶ 18.

[9] GA's description of Volpi's job as "handling intellectual property matters" (Volpi Br. at 10) is legal work by another name, nothing more.

recognized basis for extending the privilege to Volpi's communications. *See, e.g.*, *U.S. Postal Serv.*, 852 F. Supp. at 161 (holding that communications with consultants were not protected because they did not "put information gained from defendants into usable form for [defendants'] attorneys to render legal advice"); *Alvarez*, 519 F.2d at 1046.[10]

Moreover, the policy implications of GA's novel extension of the attorney-client privilege are both breathless and disturbing. Under GA's theory, the attorney-client privilege would extend not only to Volpi but to the entirety of GG's legal department, which is comprised of only one *bona fide* attorney and upwards of 20 *de facto* attorneys. Della Rosa Decl. ¶¶ 14-17 (describing GG's 20-person department as handling "legal issues of all kinds and varieties," including intellectual property, transactional matters, distribution, and real estate). But the policy implications of its theory do not stop there. Under GA's theory, American law firms could organize themselves on the GG model—namely, one *bona fide* attorney and tens if not hundreds of non-attorneys operating as *de facto* attorneys—and likewise assert that all of their non-attorneys' communications are privileged.[11] Wisely, courts have declined to adopt such an unprecedented extension of the privilege. *See, e.g.*, *Malletier*, 2006 WL 3476735, at *17-18 (communications with plaintiff's U.S. and French in-house counsel were not privileged under U.S. law because, although they carried out the same responsibilities "that are the equivalent of what American in-house lawyers do," neither of them was "admitted to practice at the bar" of

---

[10] The cases GA offers in support of its theory are all inapposite. *Golden Trade*, 143 F.R.D. 514 and *In re Rivastigmine Patent Litig.*, No. 05 MD 1661, slip op. (S.D.N.Y. Jan. 5, 2006), both involved attorney-supervised patent agents, who, unlike Volpi, have significant technical skill and background. *See* 37 C.F.R. § 11.7(a)(2)(ii) (requiring registered patent agents to possess "the legal, scientific, and technical qualifications necessary … to render applicants valuable service"). GA's reliance on *Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.*, No. M8-85, 1999 WL 378337 (S.D.N.Y. June 10, 1999) is also misplaced. That case involved a purported agent of a client, not an attorney, and specifically rejected the argument that the communications were privileged because the agent's attendance at a meeting involving attorney-client communications was "useful and convenient." *Id*. at *4.

[11] Such a rule would seem to contradict the ethical obligation that lawyers have to steadfastly avoid aiding and abetting the unauthorized practice of law. *See, e.g.*, ABA Model Rule 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.")

any state, federal, or foreign court); *Honeywell, Inc. v. Minolta Camera Co., Ltd.*, No. 87-4847, 1990 WL 66182, at *1-4 (D.N.J. May 15, 1990) (reversing Magistrate's ruling that attorney-client privilege applied to a Japanese witness acting as "de facto attorney").

Finally, GA's attempt to portray Volpi as someone who merely takes orders from Della Rosa and Solomon cannot bear scrutiny. GA acknowledges that Volpi was hired by GG in July 2006 to perform legal work that was previously outsourced to an outside law firm, including "supervising" name searches and clearance, trademark oppositions, and anti-counterfeiting enforcement efforts. Volpi Decl. ¶¶ 1, 10. However, Della Rosa was not hired until over a year later. Della Rosa Decl. ¶ 1 (stating she started as GG's General Counsel in September 2007).

In that interval, an issue arose with Guess pertaining to the use of the name "G-Twirl" on a Guess-branded watch. Welsh Decl. ¶ 4, Ex. C, at 61:3-25. GA's Amended Privilege Log contains dozens of entries dated between March 13, 2007 and June 4, 2007 involving Volpi that concern the G-Twirl watch. Volpi testified that he "reviewed, drafted" and "prepared" a warning letter to Guess concerning the G-Twirl watch (*id*. at 71:5-9), all without assistance from any other attorneys, other than Jonathan Moss—GA's legal counsel, who also was not authorized to practice law—who only provided a single grammatical suggestion. *Id*. at 71:3-9, 79:16-80:11.

Further evidence that Volpi is not someone who just follows the directions of lawyers can be found in various public statements about Volpi. Illustrative is the 2009 Industry Award Volpi received as "In-house Counsel of the Year" from the World Trademark Review ("WTR"), a leading international publication for trademark professionals. In reciting the reasons for giving the award to Volpi, the WTR described him as "the architect of Gucci's current success in the IP field," who "coordinates and manages an international network of lawyers and investigators" and is "the major driving force behind the IP department's impressive enforcement." Welsh Decl. ¶

6, Ex. E. This description is echoed in profiles of Volpi promoting his numerous speaking engagements around the world on intellectual property topics, such as the Web site of the Global Secure Summit, an international anti-counterfeiting conference, which describes Volpi as follows:

> Mr. Vanni Volpi is Intellectual Property Counsel of the Gucci Group. Based in Italy Mr. Volpi *directs and coordinate [SIC] worldwide all Intellectual Property aspects and provide legal counsel over all facets of protecting IP assets and law policy issues.* In particular, Mr. Volpi is responsible for the management of GUCCI's, BOTTEGA VENETA's and SERGIO ROSSI's patent, design and trademark portfolios; anti-counterfeiting, litigation, protecting and licensing all intellectual property rights…

Welsh Decl. ¶ 7, Ex. F. Clearly, Volpi is someone who "coordinates," "manages," and "directs" lawyers, not someone who merely takes directions from them.[12]

## CONCLUSION

For all the foregoing reasons, Guess respectfully submits that GA's Motion For A Protective Order should be denied.

Dated: Los Angeles, California
April 16, 2010

O'MELVENY & MYERS LLP

By: _____

Daniel M. Petrocelli (dpetrocelli@omm.com)
Robert C. Welsh (rwelsh@omm.com)
Andrew J. Frackman (afrackman@omm.com)
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., and Swank, Inc.*

---

[12] For the reasons set forth in Section III of Guess's Opposition to Gucci's Motion For A Protective Order Regarding Jonathan Moss, Volpi's communications are also not protected under the work product doctrine.