**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUCCI AMERICA, INC.,

Plaintiff,

-against-

GUESS?, INC., MARC FISHER FOOTWEAR LLC, THE MAX LEATHER GROUP/CIPRIANI ACCESSORIES, INC., SEQUEL AG, K&M ASSOCIATES L.P., VIVA OPTIQUE, INC., SIGNAL PRODUCTS, INC. and SWANK, INC.,

Defendants.

Civil Action No. 09cv4373 (SAS)(JLC)

**DECLARATION OF SILVIA GIUDICI IN SUPPORT OF GUESS?, INC.'S OPPOSITION TO GUCCI AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DISCLOSURE OF THE PRIVILEGED COMMUNICATIONS OF NON-PARTY GUCCIO GUCCI S.P.A.'S IN-HOUSE INTELLECTUAL PROPERTY COUNSEL VANNI VOLPI**

I, SILVIA GIUDICI, declare and state as follows:

1. I am an Encharged Professor of Industrial Property law at the University of Milan and a practicing attorney (*avvocato*) admitted to practice before the Italian Superior Courts. My resume is attached as Appendix A to this declaration.

2. I am being compensated at an hourly billing rate of € 800 for my services in connection with drafting this statement, and being reimbursed for expenses, although my compensation and reimbursement do not depend on the outcome of these proceedings.

3. I understand that plaintiff Gucci America, Inc. ("GA") is taking the position in this litigation that written communications between Vanni Volpi, in-house Intellectual Property Counsel of Guccio Gucci S.p.A. ("GG"), an Italian-based corporation, and employees at GG and other Gucci entities are privileged, and should not be provided to defendant Guess?, Inc. ("Guess") in the litigation pending between the parties in the United States District Court for the Southern District of New York.

4. I also understand that GA has filed a motion with the Court seeking to protect from disclosure the aforementioned communications involving Mr. Volpi, as well as a supporting declaration written by Professor Fausto Pocar.

5. I have been asked to review Prof. Pocar's declaration and to clarify certain of his statements concerning Italian law. In particular, I have been asked to provide the Court this declaration in order to explain how the Italian legal system operates, as well as the operation of the attorney-client privilege and the courts' discovery powers under Italian law.

6. I understand the attorney-client privilege, as it is recognized in the United States and in other countries, to be a rule of law that prevents attorneys from revealing "communications, conversations and letters between himself/herself and his/her client." (Law.com Dictionary, http://dictionary.law.com/Default.aspx?selected=2467). I understand further that, in the U.S., "the attorney is required and the client is entitled to refuse to answer any question or produce any document which was part of the attorney-client contact" (*id.*), but that

other jurisdictions that recognize the attorney-client privilege may view these requirements and entitlements slightly differently.

7. In his declaration, Prof. Pocar states that "In Italy … there is no law of privilege that is in any way co-extensive with privilege rules under U.S. law. In fact, Italy has no law that allows a client to invoke the attorney-client privilege with respect to communications it has had with his attorney, in order to prevent those communications from being made available in discovery to an adversary in civil litigation." Declaration of Fausto Pocar ("Pocar Decl." ¶ 6). In my opinion, which is based on my experience and knowledge of Italian law, Prof. Pocar's statement is misleading in that it suggests that Italian law does not provide any type of privilege for communications between attorneys and their clients. This is not accurate.

8. As discussed in the succeeding paragraphs of this declaration, Italian law provides for an attorney-client privilege that is very similar to what is available in the U.S. with regard to communications between clients and their outside lawyers (*avvocati*). However, unlike U.S. law, the attorney-client privilege under Italian law does not apply to communications between companies and their in-house counsel (that is, salaried professionals who are employees of their companies and who therefore cannot be members of the Italian bar association).

9. In Italy, the applicable rules of disclosure in civil litigation are contained in articles 210 and 118 of the Italian Code of Civil Procedure ("cpc"):

> *Article 210 cpc – Order for production of documents to a party to the proceedings or to a third party*
>
> 1. Upon request of a party to the proceedings, the Court may order the other party or a third party to produce a document or a thing which the court regards as necessary for the outcome of the case, provided that the requirements set forth in article 118 with respect to the inspection of things in the possession of a party or a third party are complied with.
>
> 2. In ordering the production of a document or a thing, the court shall give

directions with respect to the time, place and mechanics of the production.

3. In any event the requesting party shall advance any costs that may be incurred by the other party or the third party in connection with the production.

*Article 118 cpc – Order for inspection of persons and things.*

1. The Court may order a party to the proceedings or a third party to consent to the inspection of their body or a thing in their possession insofar as the inspection is necessary for the ascertainment of the facts of the case, and provided that the inspection is carried out without causing serious harm to the requested party or the third party, and enforcement thereof does not result in a breach of one of the duties of secrecy set forth by articles 200 and 201 of the code of criminal procedure.

2. If the requested party refuses to comply with an order of inspection without cause, the Court may draw adverse inferences against that party pursuant to Article 116.2.

3. If the requested third party refuses to comply with an order for inspection, that third party shall be ordered to pay a fine varying from Euro 250.00 to Euro 1.500.

10. In this regard, it should be noted that, according to the Italian Supreme Court, an order for the production of documents by virtue of article 210 cpc may be issued only insofar as it relates to documents specifically indicated by the requesting party. (Cass. N. 12023/02).

11. On the other hand, according to article 118.2 cpc (which applies for the requests for production by virtue of article 210.1), while an Italian Court may order a party to a civil proceeding to produce specific documents for inspection, the party ordered to produce such documents may refuse to comply and the only consequence of refusing to comply is that the Court may draw an adverse inference to such failure to produce pursuant to article 116.2 cpc.

12. It has, thus, to be concluded that discovery powers provided to the Court by general rules of civil procedure are not particularly strong.

13. The situation is quite different in terms of the discovery powers granted by Italian law to Courts in proceedings regarding Intellectual Property cases. In this regard, specific reference has to be made to articles 121 and 121 bis of the Italian Intellectual Property Rights Code which provide the courts with extensive discovery powers.[1]

14. In particular article 121.2 provides:

> When a party has provided a series of circumstantial evidence establishing its requests and has identified documents, elements or information held by the other party confirming such circumstantial evidence, it may obtain an order that the other party disclose the documents or provide the information. Furthermore, it may also obtain an order that the other party provide data for the identification of subjects involved in the production and distribution of the products or of the services constituting violation of the industrial property rights.

15. Article 121.1 bis provides that:

> [T]he competent judicial authorities may order that information on the origin and distribution networks of the goods and services which infringe an intellectual property right be provided by the infringer and or any other person who:
>
> (a) was found in possession of the infringing goods on a commercial scale;
>
> (b) was found to be using the infringing services on a commercial scale;
>
> (c) was found to be providing on a commercial scale services used in infringing activities.
>
> The information in paragraph hereinabove may also include names and addresses of the manufacturers and producers, retailers, suppliers and prior holders of the products or services, wholesalers, distributors as well as information on the quantities produced, manufactured, delivered, received or ordered and on the price of the products and services in question.

[1] The abovementioned articles where adopted in Italy by Legislative decree n. 140 of march 16, 2006 in execution of articles 43 and 47 of the Trips agreement signed on April 15, 1994 and article 6 and 8 of Directive CE of April 29 2004, n. 48.

16. It is thus not accurate to say, as Prof. Pocar states, that "only minimal pretrial discovery is allowed" in civil litigation in Italy (Pocar Decl. ¶ 7). As the abovementioned articles show, discovery in IP litigations, such as cases involving trademark infringement, can involve broad discovery. For example, a Court could rely on these articles to order a party (whether a plaintiff or a defendant) to produce log books, stock inventory books, records of the purchase and sales invoices and relative folders, stock records, catalogs and price lists with item codes, customs bill of entry, documents relating to press advertising and reports on commercial activity, analyses sheets of the costs of production and distribution and other relevant documents (see Court of Bologna, October 20, 2005; in the same sense Court of Turin, March 1, 2005; Court of Milan, June 22, 2009, Court of Salerno, May 7, 2009). In all of the cases I have reviewed, the parties have produced the documents requested by the Courts because, in my opinion, not doing so carries the risk that a Court would rule against a party in the overall case on the basis that the party failed to produce the requested-for documents. Thus, in practice, the discovery rules provided by the Italian Intellectual Property Rights Code can be quite strong.

17. It should also be noted that article 121.3 of the Italian Intellectual Property Rights Code provides that:

> The judge, while rendering the above indicated provisions, shall adopt measures to guarantee the protection of confidential information, after the other party has been heard.

18. However, the broad discovery permitted in IP cases has its limits. Specifically, communications between a client and its outside lawyer (*avvocati*) are not discoverable. Of relevance here are the abovementioned article 121.3 and, more specifically, the aforementioned article 118.1 cpc, which permit a party to a proceeding or a third party ordered to

produce a specific document to ***refuse to produce a document*** if compliance with the Court's order would result in the breach of one of the duties of secrecy set forth by articles 200 and 201 of the Italian Code of Criminal Procedure ("cpp").

19. In particular, article 200 cpp states as follows:

> The professionals listed below shall not be compelled to testify in Court with respect to the confidential information they have knowledge of due to their office or profession, unless they have a duty to report it to the judicial authorities:
>
> (.....)
>
> (b) attorneys (*avvocati*), private investigators, expert witnesses and notaries;
>
> (.....)

20. Applying article 118.1 cpc together with article 200 cpp creates a rule, very similar to the U.S. rule of attorney-client privilege, that requires an attorney not to testify concerning information that he or she learned from his or her client due to his or her profession.

21. As noted above, Italy's attorney-client privilege does not extend to in-house counsel, or salaried professionals who work in a legal capacity for companies. Such counsel are not considered to be attorneys for purposes of article 200 cpp, because article 3 of the Italian Attorneys Code of Conduct provides that "Any salaried profession, including professions whose scope is the provision of legal services, is incompatible with the attorney profession."

22. It should be added that for purposes of article 200 cpp, the information that an outside lawyer is obligated to protect is the same knowledge that falls within the scope of the professional secrecy provisions of article 9 of the Attorneys Code of Conduct. Article 9 of the Attorneys Code of Conduct states as follows:

> Attorneys have the duty and the fundamental right not to disclose the subject matter of the professional services provided to clients or

> information received from clients, or otherwise obtained in connection with the carrying out of the professional mandate.
>
> Attorney shall also owe a duty of secrecy and confidentiality to former clients, both for contentious and non-contentious activities.
>
> A duty of secrecy shall also be owed to anyone requesting the attorneys services, even if the professional mandate is not ultimately accepted.
>
> Attorney must ensure that their assistants and employees comply with the attorneys duty of secrecy.
>
> By way of exception to the general rule, attorneys may disclose information regarding their clients, if the disclosure is necessary to:
>
> a. carry out the client's legal representation in the best interest of the client;
>
> b. prevent the commission of serious criminal offense by the client;
>
> c. produce evidence in a dispute between the client and the attorney; and
>
> d. conduct proceedings relating to the modalities of the legal representation of the client by the attorney.
>
> In any event, the disclosure of information shall be strictly limited insofar as it is necessary to achieve the above mentioned objectives.

23. It is very important to note that the abovementioned article 9 applies only to lawyers who are members of the Italian Bar and not to other professionals such as in-house counsel, as articles 1 and 3 of the Italian Attorneys Code of Conduct make clear. Thus, article 1 states that "[t]he deontological norms set forth herein apply to all attorneys and trainee attorneys providing legal services as well as within their reciprocal relationships and vis a vis third

parties." And article 3 states that "[a] ny salaried profession, including professions whose scope is the provision of legal services, is incompatible with the attorney profession."

24. Even though in-house counsel may possess the same educational requirements as outside lawyers and perform the same job duties, Italian law does not recognize them as equal for purposes of the attorney-client privilege out of concern that in-house counsel, as salaried employees of their companies, are not able to exercise the necessary independent judgment from their employers.

25. In view of the above, there is no doubt that the communications of Mr. Volpi, in-house Intellectual Property Counsel of GG, would not be covered by the abovementioned Italian attorney-client privilege or professional secrecy provisions.

26. Two conclusions may be drawn from the aforementioned analysis. First, according to Italy's civil procedure rules, and more specifically according to articles 121 and 121 bis of the Italian Intellectual Property Rights Code, with special reference to IP proceedings, in Italy, there are effective means to ensure the obtaining and preserving of evidence in pretrial discovery. Second, the Italian system also provides (by virtue of the abovementioned articles 210 and 118 cpc, articles 200 and 201 cpp, and articles 121, 121 bis of the Italian Intellectual Property Rights Code, and more specifically article 9 of the Italian Code of Conduct), the protection of confidential information in a manner that is in line with the American attorney-client privilege. Thus, Italian law provides a rule by which outside lawyers can refuse to testify regarding confidential information received from their clients, as well as a rule that permits clients to refuse to produce documents if doing so would result in a breach of the attorney's

obligation to keep client information confidential under article 200 cpp. However, these protections apply to confidential communications between outside attorneys and not to other salaried professionals such as in-house counsel.

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on April 14, 2010, at Milan, Italy.

SILVIA GIUDICI

# APPENDIX A

## CURRICULUM VITAE PROF. AVV. SILVIA GIUDICI

Dr. Silvia Giudici, born in Bergamo, Italy on March 23, 1963.

Degree in Law obtained from the University of Milan in 1988.

In 1992 admitted to practice before the Italian Superior Courts.

PhD in industrial property.

Research fellow at the University of Milan since 2002.

IP professor on contract at the University of Como from 1996 to 2002.

IP lecturer at the University of Milan from 2002 to 2009.

IP professor at the Milan University in 2010.

Member of the editorial board and regular contributor to the Rivista di diritto industriale. Member of the control committee of the Istituto dell'Autodisciplina Pubblicitaria.

Publications:

- Dall'opera d'arte applicata all'industrial design, in Riv. dir. ind., (From art work applied to industrial design), 1989, II, 268.
- Brevi note in tema di titolarità del diritto di marchio, in Riv. dir. ind., (short notes relating to

trademark ownership), 1990, II, 71.

- Nota alla Corte d'Appello di Firenze 19 gennaio-1 giugno 1990, in Riv. dir. ind., (Note to the Florence Court of Appeals 19 January- 1 June 1990), 1990, II, 33.

- Osservazioni alla sentenza della Corte di Giustizia n. 235/89, in Riv. dir. ind., (Remarks on the Judgment by the Court of Justice n. 235/89), 1992, II, 188.

- Il problema della decettività marchio, in Nuova giurisprudenza civile commentata, (The problem of deceptiveness of a trademark), 1994, 56.

- Nota a Trib. Milano, 3 marzo 1994, in Riv. dir. ind., (Note on the Judgment awarded by the Court of Milan, 3 March 1994), II, p. 293.

- Marchi: volgarizzazione e secondary meaning, in La tutela della proprietà industriale - Seminari Aprile-Giugno 1995 (Trademarks: genericness and secondary meaning in The protection of industrial property – Seminars April-June 1995), Treviso 1996, p. 159 ss.

- Osservazioni in tema di provvedimenti cautelari, in Riv. dir. ind., (Considerations in relation to interim measures), 1996, II, 387.

- Il monogramma Chanel é marchio forte, in Il dir. ind. (The Chanel monogram is a strong trademark), 1996, 682.

- Commento agli articoli 5, 6, 7 e 8 della legge sui modelli industriali, (Remarks on articles 6, 6, 7 and 8 of the law on industrial designs) in Commentario Breve di diritto industriale (a cura di Marchetti e Ubertazzi), Padova 1997, pp. 1576-1584.

- Commento agli articoli 6, 6 bis, 6 ter, 6 quater, 6 quinquies, 6 sexies, 6 septies, 7, 7 bis, 8, 9 della Convenzione di Unione di Parigi, (Remarks on articles 6, 6 bis, 6ter, 6 quater, 6 quinquies, 6 sexies, 6 septies, 7, 7 bis, 8, 9 of the Paris Convention), in Commentario Breve di diritto industriale (a cura di Marchetti e Ubertazzi), Padova 1997, 790-798.

- La nuova disciplina del disegno industriale, in Riv. dir. ind., (The new law of industrial design), 1997, 113.

- Breve commento al D.LGS. 8 ottobre 1999, n. 447, in materia di marchi di impresa, in Riv. Dir. ind. (Short comment to the Legislative Decree 8 October, 1999, n. 447 in trademark matters), 2000, I, 87 (limitatamente alle parti I° e IV°).

- Autodisciplina pubblicitaria e concorrenza sleale, in Riv. dir. ind., (Self-regulation advertising and unfair competition), 1999, II, 79.

- Autodisciplina pubblicitaria e concorrenza sleale: una recente decisione della Suprema Corte, in Riv. dir. ind., (Self-regulation advertising and unfair competition: a recent judgment by the Supreme Court), 1999, II, 196.

- Disposizioni in materia di marchi di impresa per la applicazione del Protocollo relativo all'intesa di Madrid sulla registrazione internazionale dei marchi, (Dispositions in trademark matters for the application of the Protocol relating to the Madrid agreement on the international registration of trademarks), in Le Nuove Leggi Civili Commentate, 2000, 503 (limitatamente alla parte III°).

- La tutela giuridica del design (The juridical protection of designs), in Brevetti del design italiano, Milano 2000.

- La protezione giuridica dei disegni e dei modelli, in Riv. dir. ind., (The juridical protection of designs and models ), 2001, III, 60.

- Brevi note sul caso Budweiser, in Riv. dir. ind., (Short notes on the Budweiser case), 2001, II, 113.

- Codice di diritto industriale, Milano, (Industrial Property Code), Ipsoa-Kluwer, I°, II° e III° e IV edizione.

- Alcune riflessioni sui marchi di forma alla luce della nuova disciplina sui disegni e modelli, in Riv. Dir. ind., (Some considerations on shape trademarks in view of the new law on designs and models), 2002, II, 153.

- Commento al Reg. CE n. 2245/2002 del 21 ottobre 2002, in Riv. Dir. Ind., (Comment on the EC Regulation n. 2245/2002 of October 21, 2002), 2003, III, 74.

- Commento agli artt. 65-71 quinquies l.d.a., (Comments on articles artt. 65-71 quinquies of the copyright law), in AAVV, Diritto d'autore e diritti connessi nella società dell'informazione, Milano 2003.

- Codice di diritto industriale, Appendice annotata, (Industrial Property Code, notation Appendix), Milano 2005.

- Brevi note sulle procedure di concessione dei titoli di proprietà industriale, in Riv. Dir. Ind.(Short notes on the procedures relating to the grant of industrial property patents), 2005, I, 330.

- La capacità distintiva, il secondary meaning e la decadenza per volgarizzazione dei marchi di forma alla luce delle nuove norme del codice della proprietà industriale, in Riv. Dir. Ind.. (The distinctive capacity, the secondary meaning and the lapsing due to genericness of trademarks in view of the new rules of the industrial property code), 2006, I, 84.

- Il design non registrato, in Riv. Dir. Ind. (The non registered design) 2007, I, p. 199 ss.

- Codice di diritto industriale (Industrial Property Code) Milano, Giuffrè, 2007.

- EPC 2000: una prima lettura, in Riv. Dir. Ind. (European Patent Convention 2000: A glance), 2007, I, p. 205 ss. .

- Note al D.M. 27 giugno 2008, in Riv. Dir. Ind., (Notes on Ministerial Decree June 27, 2008), 2009, III, p. 1 ss.

- Design: Modelli e Diritto d'Autore, Studi in memoria di prof. Paola A.E. Frassi (Design: Models and Copyright, Studies in memory of prof. Paola A.E. Frassi), Milano, Giuffrè 2010.