**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------

GUCCI AMERICA, INC.,

        Plaintiff,

    -against-

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

        Defendants.

----------------------------------------

Civil Action No. 09cv4373
(SAS)(JLC)

**DECLARATION OF FRANCO
FERRARI IN SUPPORT OF GUESS?,
INC.'S OPPOSITION TO GUCCI
AMERICA, INC.'S MOTION FOR A
PROTECTIVE ORDER AGAINST THE
DISCLOSURE OF THE PRIVILEGED
COMMUNICATIONS OF NON-PARTY
GUCCIO GUCCI S.P.A.'S IN-HOUSE
INTELLECTUAL PROPERTY
COUNSEL VANNI VOLPI**

I, FRANCO FERRARI, hereby declare as follows under penalty of perjury:

1.    I am a Full Professor of International Law at Verona University School of Law. Since 2008, I

have also been the Inge Rennert Distinguished Visiting Professor of Law at New York

University School of Law, where I have just been appointed professor of law on a full-time

basis. Previously, from 1995 to 1998, I was a Full Professor of Comparative Law and Uniform

Law at Tillburg University School of Law (the Netherlands), after which I was Full Professor of

Comparative Private Law at Bologna University School of Law. I am also a practicing attorney

(*avvocato*) and, thus, a member of the Italian bar association. From 2000-2002, I was Legal

Officer at the United Nations Office of Legal Affairs, International Trade Law Branch. In

addition, I have acted as both a court-appointed expert and a party-appointed expert in conflict

of laws matters and matters relating to the application of foreign law since 1995. I conduct

research and teach in the areas of Conflicts of Laws, International Commercial Arbitration,

Transnational Civil Litigation and International Sales Law. My curriculum vitae is attached as

Appendix A to this declaration.

2.  I have been asked by Guess?, Inc. ("**Guess**") to draft this declaration to explain the Italian law provisions on the attorney-client privilege and, specifically, to clarify how the same provisions operate in Italy. In this regard, I have been provided with the statement of Prof. Fausto Pocar filed before the Court on April 2nd, 2010 and have been asked to respond to and clarify some of Prof. Pocar's statements.

3.  As Prof. Pocar stated in his declaration, the applicable rules of disclosure under the Italian Code of Civil Procedure are Articles 210 and 118, which provide as follows:

    *Article 210 Code of Civil Procedure – Order for production of documents to a party to the proceedings or to a third party*

    *1.- Upon request of a party to the proceeding, the court may order the other party or a third party to produce a document or a thing which the court regards as necessary for the outcome of the case, provided that the requirements set forth in Article 118 with respect to the inspection of things in the possession of a party or a third party are complied with.*

    *2.- In ordering the production of a document or a thing, the court shall give directions with respect to the time, place and mechanics of the production.*

    *3.- In any event, the requesting party shall advance any costs that may be incurred by the other party or the third party in connection with the production.*

    *Article 118 Code of Civil Procedure – Order for inspection of persons or things*

    *1.- The court may order a party to the proceedings or a third party to consent to the inspection of their body or a thing in their possession insofar as the inspection is necessary for the ascertainment of the facts of the case, and provided that the inspection is carried out without causing serious harm to the requested party or the third party, and enforcement thereof does not result in a breach of one of the duties of secrecy set forth by Articles 200 and 201 of the Code of Criminal Procedure.*

2

*2. If the requested party refuses to comply with an order of inspection without cause, the court may draw adverse inferences against that party pursuant to Article 116.2.*

*3.- If the requested third party refuses to comply with an order of inspection, that third party shall be ordered to pay a fine varying from Euro 250.00 to Euro 1,500.00.*

4.    On the basis of Article 210 of the Italian civil procedure code, it is possible to ask the judge to order production of a document from another party, if the request is *specific* and clearly shows the document is *relevant* and *material* to the dispute (this was recognized by the Italian supreme Court and an extract of the decision can be found at page 3 of the Pocar declaration). In addition, Article 118 of the Italian civil procedure code allows judges to subject a party to inspection of their body or a thing in their possession (which for example would authorize the judge to require inspection of certain documents in the possession of the litigating party). Thus, even though discovery powers in the Italian system are less extensive than in the U.S. system, it is entirely possible that Gucci could be ordered to produce certain documents in an Italian court, if the request was specific and properly motivated. This does not appear to be clear from Prof Pocar's statements, who appears to state that there are no circumstances under which Gucci could be ordered to produce relevant documents.

5.    Also, while it is unusual, as stated by Prof. Pocar, that a Court would decide a case solely on an adverse inference drawn from a refusal to comply to the order for production, it is not rare that such a refusal be negatively assessed by the Court and contribute to the Court's ultimate disposition of the case (see *Corte di Cassazione* January 12 1996, No. 188 and November 18, 1994 n. 9797). Under a practical point of view, in the Italian judicial procedure the request for production of documents is a typical petition and it is often granted by the Courts, provided that it is compliant with the requirements set forth by the law and interpreted by jurisprudence as mentioned above (the request has to be detailed and circumstantial).

6.    In case of refusal of a party to comply to the order for production of documents issued by the court, article 118.2 of Code of Civil Procedure (which is specifically referred to in article 210 of Code of Civil Procedure) provides: (a) the power of the judge to draw an adverse inference from such refusal pursuant to article 116.2 of Code of Civil Procedure, (b) the power of the judge to impose a fine ranging from Euro 250.00 to Euro 1,500.00.

7.    It must be noted that Italian law has its own system of attorney-client privilege as regards communication which must be regarded as confidential. The Code of Civil Procedure contains some material provisions as regards the limits of discovery: article 118.1 (referred to in article 210 of the Code of Civil Procedure) provides for restrictions to the power of inspection granted to the court and, specifically, clarify that (a) the inspection has to be essential to the court to acknowledge the fact circumstances of the case (see *Corte di Cassazione* Aprile 16 1997, No 3260) and there are no other different evidences to gain such knowledge (see *Corte di Cassazione,* March 27, 1996, No 2760; see also *Corte di Cassazione*, October 6 2005, No 19.475); (b) it also specifies that the inspection may be carried out without causing any serious damages to the party or to the third parties concerned. However, the last are not compelled to infringe the duty of secrecy deriving from their office, function or profession, provided for by "*articles 351 and 352* (now article 200 and 201) *of the Code of Criminal Procedure*"

8.    As explained above, articles 210.1 and 118.1 provide that a party or a third party ordered to produce a document may refuse to comply to the order if the production would result in the "*breach of one of the duties of secrecy set forth by Articles 351 and 352* (now article 200 and 201) *of the Code of Criminal Procedure*". Those provisions provide certain privileges to the professionals therein strictly listed, who could violate the professional secrets revealing certain information; in material part, the article 200 of the Italian Code of Criminal Procedure states as follows:

*Article 200 of Code of Criminal Procedure – Professional secrets*

*1.- The professional listed below shall not be or compelled to testify in court with respect to the confidential information they have knowledge of due to their [...] office or profession, unless they have a duty to report it to the judicial authorities:*

*[...]*

*b) attorneys [avvocati], private investigators, expert witnesses and notaries;*

*[...]*

9.    The privilege accorded under these provisions is limited to certain professional categories (see Constitutional Court April 8, 1997, n. 87, referred to also by Prof. Pocar). As regards lawyers, such privilege is based on the "need to ensure that the technical defense, based on the knowledge of events and situations, unconditioned to an obligation to pass on such knowledge in a litigation" (see Constitutional Court April 8, 1997, n. 87 cited above).

10.    Of particular relevance here, the privilege is limited to "attorneys," which under Italian law is limited to outside attorneys (*avvocati*) and does not include in-house counsel who are salaried employees. According to article 3.3 Law November 27, 1993 n. 1578, the lawyer profession is incompatible with any other paid employment, even if it consists in providing assistance or legal advice, unless it is purely scientific or literary.

11.    Therefore, even if Mr. Vanni Volpi were considered an in-house counsel (I understand he is not a member of the Italian Bar), he is not entitled to raise any privilege. As a result, communications involving Mr. Volpi are potentially discoverable under Italian law if, as noted above, they are found by a court to be relevant to the subject matter of the proceeding.

12.    The privilege that outside attorneys have under Italian law is given additional force by article 249 of the Italian Code of Civil Procedure, which refers to article 200 of the Italian Code of Criminal Procedure and states as follows:

*Article 249 of Code of Civil Procedure – Faculty of abstention*

*I.- Articles 200, 201 and 202 of the Code of Criminal Procedure concerning the faculty of abstention of the witnesses apply to the examination of witnesses* [in the civil proceedings, editor's note].

13. The Code of Criminal Procedure contains other provisions which allow outside attorneys to assert a privilege concerning certain categories of subjects. Article 256 of Code of Criminal Procedure establishes a duty for the subjects indicated in article 200 of Code of Criminal Procedure to provide the judicial authority with documents and things which they detain due to their appointment or profession, unless they declare a professional secrecy. In the material part, article 256 of the Code of Criminal Procedure states as follows:

*Article 256 of Code of Criminal Procedure – Duty of production and secrets*

*1.- The persons listed in Articles 200 and 201 must surrender immediately to the court, upon his request, records and documents, including original if they have been ordered so, and the data, information and computer programs, including a copy of them on an adequate support, and everything else in their possession by reason of their office, ministry, art or profession, unless they declare in writing that it is a state secret [202, 204] or a secret inherent to their office or profession [103].*

[…]

14. In addition, Italian Intellectual Property Code (Law February 10, 2005, n. 30) provides under Articles 120.3 that in ordering to the defendant the disclosure of documents, *the judge takes all appropriate measures aimed at assuring the protection of confidential informations*; article 121 of the same Code refers to art. 249 of the Italian Code of Civil Procedure (see above).

15. Consistently with the above provisions, article 13 of the Professional Law ("*Regio Decreto-Legge 27 November, 1933 No. 1578*") reads as follows:

6

*Article 13 of the Professional Law*

*1.- The attorneys [avvocati] […] can not be compelled to testify in the proceedings whatsoever on the circumstances which have been entrusted to them or they have otherwise received due to their profession, save for what provided for by article 351 [now article 200] of the Code of Criminal Procedure.*

**16.**   In order to define the attorney's professional secret according to the Italian law, article 9 of the Attorneys' Code of Conduct (*Codice di Deontologia*) approved by the Central Governing board of the Italian Bar (*Consiglio Nazionale Forsense*) on April 17, 1997, has to be examined, which states as follows:

*Article 9 of Attorneys' Code of Conduct – Duties of secrecy and confidentiality*

*1.- Attorneys have the duty and the fundamental right not to disclose the subject matter of the professional services provided to clients or information received from clients, or otherwise obtained in connection with the carrying out of the professional mandate.*

*I.- Attorneys shall also owe a duty of secrecy and confidentiality to former clients, both for contentious and non-contentious activities.*

*II.- A duty of secrecy shall also be owed to anyone requesting the attorneys' services, even if the professional mandate is not ultimately accepted.*

*III.- Attorneys must ensure that their assistants and employees comply with the attorneys' duty of secrecy.*

*IV.- By way of exception to the general rule, attorneys may disclose information regarding their clients, or prospective clients, if the disclosure is necessary to:*

   *a.   Carry out the client's legal representation in the best interest of the client;*

   *b.   Prevent the commission of a serious criminal offense by the client;*

    c.   *Produce evidence in a dispute between the client and the attorney; and*

    d.   *Conduct proceedings relating to the modalities of the legal representation of the client by the attorney.*

*In any event, the disclosure of information shall be strictly limited insofar as it is necessary to achieve the above-mentioned objectives.*

17.    The above provision is an ethical rule of the Italian Bar regulating the conduct of attorney, but it should not be understood as being merely a guideline for attorneys. In fact, the Italian legal writing has interpreted the provision as *"right and a defence for the assisted party"*, considering that the *"secrecy is something more that privacy, which is also a legal interest protected by several provisions: while privacy is a way to exclude the knowledge of a specific aspect of a person, the secret involves all the acts and the behaviours carried out* (Remo Danovi, *"Ordinamento Forense e deontologia"* (2006) p. 106 *et seq.*).

18.    In my opinion, there are other reasons to consider said provision as an actual ruling of the attorney-client privilege: the professional secrecy provided for by article 9 of Attorneys' Code of Conduct is protected also by Italian Criminal Code. Article 622 of the Italian Criminal Code, in fact, punishes whoever discloses a secret without any legitimate cause, stating in particular as follows:

*Art. 622 Criminal Code – Disclosure of a professional secret*

*I.- Anyone having news, by reason of his status, office, profession or art, of a secret [200 c.p.p.], reveals it without just cause, or uses it for their own or another's profit, is punished, if harm may result, with the imprisonment up to one year or a fine of 30 euros to 516 euros [326] (1).*

*[...]*

17.    I have been provided and have reviewed an American decision, In re Rivastigmine Patent

Litigation, 237 F.R.D. 69 (2006), which denied the application of U.S. law in a case involving confidentiality protection for communications between clients and in-house attorneys or patent agents in Switzerland. I understand that the American court's decision was based on the recognition that Switzerland has a specific client-attorney privilege, although not co-extensive with the U.S. one, that specifically excluded in-house counsel from asserting the privilege.

18. After reviewing various Swiss rules, including those referenced in the In re Rivastigmine Patent Litigation decision, I believe that Swiss law is very similar to the Italian law of privilege as described above. For example, Article 221.100 section 116 of the Basel-City Civil Procedure ("Right to Refuse Testimony") provides that, "Testimony may be denied by: *clergy members, doctors, attorneys, notaries, a child's counsel according to Art. 146 ZGB, as well as those contracted by the complaint body (ombudsman), in reference to facts that were learned in the exercise of their profession and which by their nature are to be kept secret.*".

19. It is my opinion that the same analysis of Swiss law that led the U.S. court in the In re Rivastigmine Patent Litigation case to conclude that communications with Swiss in-house counsel were not subject to any privilege would equally apply to communications with Italian in-house counsel. Swiss law, like Italian law, recognizes a specific attorney-client privilege from which in-house counsel are excluded.

20. In conclusion, there are no provisions in Italian law that would support the assertion of any

privilege to communications between clients and in-house counsel in Italy.


       I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


Executed on April 15, 2010, at Verona Italy.

FRANCO FERRARI

<u>**APPENDIX A**</u>

**Franco Ferrari**

40 Washington Square South 302A - NewYork, NY 10012
Phone: (212) 9928123 - Email: franco.ferrari@nyu.edu

**Curriculum vitae**

**Citizenship:** Italian

*Education*:

| | |
|---|---|
| Master of Laws (LL.M.), Augsburg University, Germany | July 1992 |
| Juris Doctor (Honors), Bologna University, Italy | December 1990 |
| Friedrich Dessauer Gymnasium, Aschaffenburg, Germany | June 1985 |

*Current Employment*:

Since June 2008, *Inge Rennert Distinguished Visiting Professor of Law – Director*, Center for Transnational Litigation and Commercial Law, New York University School of Law, New York, USA

Since October 2002, *Full Professor, with tenure, of International Law*, Verona University School of Law, Verona, Italy

*Previous Employments*:

August 2000 – April 2002, *Legal Officer*, United Nations Office of Legal Affairs, International Trade Law Branch, Vienna, Austria

November 1998 – September 2002, *Full Professor, with tenure, of Comparative Private Law*, Bologna University School of Law, Bologna, Italy

1 May 1995 – 31 October 1998, *Full Professor, with tenure, of Comparative Private Law*,

*Franco Ferrari*

Tilburg University, Faculty of Law, Tilburg, the Netherlands

***Visiting Professorships and other positions***:

28 August – 25 September 2009, *Visiting Professor of Law*, National University of Singapore, Singapore

5 January – 10 June 2009, *Visiting Professor of Law*, Columbia Law School, New York, USA

25 August – 22 September 2008, *Visiting Professor of Law*, National University of Singapore, Singapore

2 January – 31 May 2008, *Global Hauser Visiting Professor of Law*, New York University School of Law, New York, USA

4 August – 1 October 2007, *Visiting Professor of Law*, National University Singapore, Singapore

7 January– 25 May 2005, *Global Hauser Visiting Professor of Law*, New York University School of Law, New York, USA

16 August – 8 September 2004, *Visiting Professor of Law,* Louisiana State University, Baton Rouge, Louisiana, USA

2 – 21 September 2003, *Visiting Professor of Law,* Louisiana State University, Baton Rouge, Louisiana, USA

6 January– 10 February 2003, *Visiting Professor of Law*, University of Pittsburgh School of Law, Pittsburgh, Pennsylvania, USA

29 May – 9 July 2002, *Visiting Professor of Law*, Loyola Law School, Los Angeles, California, USA

26 August – 14 September 2002, *Visiting Professor of Law*, Louisiana State University, Baton Rouge, Louisiana, USA

*Franco Ferrari*

7 December 2001 – 6 January 2002, *Visiting Professor of Law*, Paris X Nanterre University School of Law, Paris, France

9 – 17 February 2001, *Visiting Professor of Law*, University of Georgia School of Law, Athens, Georgia, USA

7 August 2000 – 31 March 2002, *Legal Officer* at the United Nations Office of Legal Affairs, International Trade Law Branch, Vienna, Austria

12 June - 7 July 7 2000, *Member of the Italian Delegation* to the XXXIIIrd Session of the UN Commission on International Trade Law, New York, USA

11 October– 22 October 1999, *Member of the Italian Delegation* to the UN Commission on International Trade Law Working Group on International Contract Practices, Vienna, Austria

23 August – 5 September 1999, *Visiting Professor of Law*, University of Georgia School of Law, Athens, Georgia, USA

5 October – 16 October 1998, *Member of the Italian Delegation* to the UN Commission on International Trade Law Working Group on International Contract Practices, Vienna, Austria

August 1998, *Visiting Professor of Law*, University of Georgia School of Law, Athens, Georgia, USA

20 March – 20 July 1998, *Visiting Professor of Law*, University Pompeu Fabra, Barcelona, Spain

2 March – 13 March 1998, *Member of the Italian Delegation* to the UN Commission on International Trade Law Working Group on International Contract Practices, New York, USA

15 August – 15 December 1997, *Visiting Professor of Law*, University of Missouri at Kansas City School of Law, Kansas City, Missouri, USA

7 July – 30 July 1997, *Visiting Professor of Law*, Augsburg University School of Law, Augsburg, Germany

*Franco Ferrari*

1 April – 7 April 1997, *Visiting Professor of Law*, Paris X Nanterre University School of Law, Paris, France

February 1997, *Member of the Italian Delegation* to the UN Commission on International Trade Law Working Group on Electronic Commerce, New York, USA

January 1997, *Visiting Professor of Law*, Paris X Nanterre University School of Law, Paris, France

11 November – 22 November 1996, *Member of the Italian Delegation* to the UN Commission on International Trade Law Working Group on International Contract Practices, Vienna, Austria

August - September 1996, *Visiting Professor of Law*, University of Georgia School of Law, Athens, Georgia, USA

7 July – 16 July 1996, *Member of the Italian Delegation* to the UN Commission on International Trade Law Working Group on International Contract Practices, New York, USA

June - July 1996, *Visiting Professor*, Loyola Law School, Los Angeles, USA

27 May – 3 June 1996, *Member of the Italian Delegation* to the XXIXth Session of the UN Commission on International Trade Law, New York, USA

April 1996, *Visiting Professor*, Paris X Nanterre University School of Law, Paris, France

January 1996, *Visiting Professor*, Paris X Nanterre University School of Law, Paris, France

November 1995, *Member of the Italian Delegation* to the United Nations Commission on International Trade Law Working Group on International Contract Practices, Vienna, Austria

August - September 1995, *Visiting Professor of Law*, University of Georgia School of Law, Athens, Georgia, USA

February 1994 - April 1995, *Research Fellow of Civil Law*, Ferrara University School of Law, Ferrara, Italy

4

*Franco Ferrari*

August 1992 - December 1994, *Visiting Professor of Comparative Law*, Golden Gate University, School of Law, San Francisco, USA

November 1994, *Visiting Professor of Comparative Law*, University of Georgia, School of Law, Athens, Georgia, USA

May 1994, *Visiting Professor of Law*, The Hebrew University, School of Law, Jerusalem, Israel

December 1993, *Member* of the United Nations Commission on International Trade Law Expert Group on International Assignment in Receivables Financing

November 1991 - July 1993, *Assistant*, Augsburg University, Augsburg, Germany

February 1991 - February 1992, *Instructor of Italian Law and Language*, Munich University, Germany

March 1991 - February 1992, *Researcher,* Institute of International and Comparative Law, Munich, Germany

*Awards*:

1999 Zweigert Scholarship granted by the Max Planck Institute of Foreign Law and Private International Law, Hamburg, Germany

1994 Faculty Award for Scholarship and Teaching granted by the Pace University School of Law Institute of International Commercial Law

*Teaching Experience*:

I have taught classes on the Private International Law, International Civil Litigation, International Commercial Sales, International Commercial Arbitration, Law of Obligations, Comparative Legal Systems, Comparative Law of Torts, Comparative Law of Contracts, Comparative Private Law, Uniform Law, International Business Transactions

5

*Franco Ferrari*

**Practical Experience:**

For the last fifteen years, I have been serving as an arbitrator on numerous arbitral tribunals both on a domestic and international level; I have drafted contracts for international corporations as well as expert opinions for major corporations and financial institutions as well as US and Italian courts

*Administrative Experience*:

Setting up and chairing the "Verona Lectures on International Commercial Law" Program, Verona, Italy

April 1996, Setting up and chairing the Tilburg Lectures Program on "The Unification of International Commercial Law", Tilburg, The Netherlands

May - July 1994, Setting up and directing Golden Gate University School of Law's International Summer Program in Bologna, Italy

*Affiliations*:

Member of the Board of Trustees of the Center for Transnational Law (CENTRAL), Cologne, Germany

Member of the Board of Trustees of the Institute of International Commercial Law of the Pace University School of Law, White Plains, NY, USA

Member of the Advisory Board of the German peer reviewed law review ZEITSCHRIFT FÜR EUROPÄISCHES PRIVATRECHT

Member of the Editorial Board of the French peer reviewed law review REVUE DE DROIT DES AFFAIRES INTERNATIONALES

Member of the Editorial Board of the Belgian peer reviewed law review EUROPEAN REVIEW OF PRIVATE LAW

Member of the Editorial Board of the German peer reviewed law review INTERNATIONALES HANDELSRECHT

Member of the Editorial Board of the Italian peer reviewed law reviews CONTRATTO E IMPRESA and CONTRATTO E IMPRESA/EUROPA

Co-Founder and former Editor-in-Chief of the US law review ANNUAL SURVEY OF INTERNATIONAL AND COMPARATIVE LAW

*Franco Ferrari*

**Languages**:

English, French, German, Italian

*Franco Ferrari*

**List of publications**

**Articles**

*United States*

*Remarks on the UNCITRAL Digest's Comments on Article 6 CISG*, in JOURNAL OF LAW AND COMMERCE, 2006, 13 ss.

*Fundamental Breach of Contract under the UN Sales Convention - 25 Years of Article 25 CISG*, in JOURNAL OF LAW AND COMMERCE, 2006, 489 ss.

*International Sales Law and the Inevitability of Forum Shopping*, in 23 JOURNAL OF LAW AND COMMERCE, 2004, 169 ss. = *International Sales Law and the Inevitability of Forum Shopping*, in VINDOBONA JOURNAL OF INTERNATIONAL COMMERCIAL LAW AND ARBITRATION 2004, 1 ss.

*The Relationship Between International Uniform Contract Law Conventions*, in 22 JOURNAL OF LAW AND COMMERCE, 2003, 57 ss.

*Tribunale di Vigevano: Specific Aspects of the CISG Uniformly Dealt With*, in 20 JOURNAL OF LAW AND COMMERCE, 2001, 225 ss.

*Burden of Proof under the CISG*, in REVIEW OF THE CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS 2001, 1 ss

*CISG Case Law: A New Challenge for Interpreters?*, in 17 JOURNAL OF LAW AND COMMERCE 1998, 245 ss.

*General Principles and International Uniform Law Conventions: A Study of the 1980 Vienna Sales Convention and the 1988 Unidroit Conventions on International Factoring and Leasing*, 10 PACE INTERNATIONAL LAW REVIEW 157 ff. (1998)

*Remarks on the Autonomy and the Uniform Application of the CISG on the Occasion of Its Tenth Anniversary*, in 4 INTERNATIONAL CONTRACT ADVISOR 1998, 33 ss.

*The International Sphere of Application of the 1988 Ottawa Convention on International Factoring*, in 31 THE INTERNATIONAL LAWYER 1997, 41 ss. = *The International Sphere of*

8

*Franco Ferrari*

*Application of the 1988 Ottawa Convention on International Factoring*, in DEVELOPMENTS IN EUROPEAN, ITALIAN AND ISRAELI LAW edited by A.M. Rabello and A. Zanotti, Bologna, 2001, p. 235 ss.

*The Relationship between the UCC and the CISG and the Construction of Uniform Law*, in 29 LOYOLA OF LOS ANGELES LAW REVIEW 1996, 1021 ss.

*Uniform Application and Interest Rates under the 1980 Vienna Sales Convention*, in 1995 REVIEW OF THE CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS 1995, 3 ss.

*Specific Topics of the CISG in the Light of Judicial Application and Scholarly Writing*, in 15 JOURNAL OF LAW AND COMMERCE 1995, 1 ss.

*Uniform Law of International Sales: Issues of Applicability and Private International Law*, in 15 JOURNAL OF LAW AND COMMERCE 1995, 159 ss.

*Uniform Application and Interest Rates under the 1980 Vienna Sales Convention*, in 24 GEORGIA JOURNAL OF INTERNATIONAL AND COMPARATIVE LAW 1995, 467 ss.

*Defining the Sphere of Application of the 1994 "UNIDROIT Principles of International Commercial Contracts"*, in 69 TULANE LAW REVIEW 1995, 1225 ss.

*Uniform Interpretation of the 1980 Uniform Sales Law*, in 17 GEORGIA JOURNAL OF INTERNATIONAL AND COMPARATIVE LAW 1994, 183 ss.

*International Business, Law Merchant and Law School Curricula*, in 6 YALE JOURNAL OF LAW & THE HUMANITIES 1994, 95 ss.

*Formation of Contracts in South American Legal Systems*, in 16 LOYOLA OF LOS ANGELES INTERNATIONAL AND COMPARATIVE LAW JOURNAL 1994, 629 ss.

*Donoghue v. Stevenson's 60th Anniversary*, in 1 ANNUAL SURVEY OF INTERNATIONAL AND COMPARATIVE LAW 1994, 81 ss.

*Comparative Remarks on Liability for One's Own Acts*, in 15 LOYOLA OF LOS ANGELES INTERNATIONAL AND COMPARATIVE LAW JOURNAL 1993, 813 ss.

*Franco Ferrari*

*Comparative Ruminations on the Foreseeability of Damages in Contract Law*, in 53 LOUISIANA LAW REVIEW 1993, 1257 ss.

*A Comparative Overview on Offer and Acceptance Inter Absentes*, in 10 BOSTON UNIVERSITY INTERNATIONAL LAW JOURNAL 1992, 171 ss.

### England

*Have the Dragons of Uniform Sales Law Been Tamed? Ruminations on the CISG's Autonomous Interpretation by Courts*, in SHARING INTERNATIONAL COMMERCIAL LAW ACROSS NATIONAL BOUNDARIES. FESTSCHRIFT FOR ALBERT H KRITZER ON THE OCCASION OF HIS EIGHTIETH BIRTHDAY edited by C.B. Andersen and U. Schroeter, London, 2008, p. 134 ss.

*Hadley v Baxendale v Foreseeability under Article 74 CISG*, in CONTRACT DAMAGES. DOMESTIC AND INTERNATIONAL PERSPECTIVES edited by D. Saidov and R. Cunnington, Oxford,  2008, p. 305-327

*Choice of Forum and CISG: Remarks on the Latter's Impact on the Former*, in DRAFTING CONTRACTS UNDER THE CISG edited by H.M. Flechtner et al., Oxford, 2007, p. 103 ss.

*Offer and Acceptance Inter Absentes*, in ELGAR ENCYCLOPEDIA OF COMPARATIVE LAW edited by J. Smits, Cheltenham/Northhampton, 2006, p. 497 ss.

*CISG Case Law: A New Challenge for Interpreters?*, in THE CREATION AND INTERPRETATION OF COMMERCIAL LAW edited by C.P. Gilette, Dartmouth, 2003, p. 445 ss.

*Forum shopping despite international uniform contract law conventions*, in INTERNATIONAL AND COMPARATIVE LAW QUARTERLY 2002, 689 ss.

### Italy

*Hadley v. Baxendale: La prevedibilità dell'art. 74 CISG*, in TRATTATO DELLA RESPONSABILITÀ CONRATTUALE, vol. 3, IL RISARCIMENTO DEL DANNO CONTRATTUALE. LA RESPONSABILITÀ PER RITARDO E PER FATTO DEGLI AUSILIARI edited by G. Visintini, Padova, 2009, p. 365 ss.

*Franco Ferrari*

*Contratti dei consumatori, diritto comunitario e convenzionale: i criteri di collegamento*, in OBBLIGAZIONI E CONTRATTI 2007, 972-979

*Ancora in materia di regolamento n. 44/2001/CE e del concetto di "luogo di consegna dei beni" di cui all'art. 5, n. 1, lett. b*, in GIUSTIZIA CIVILE 2007, 1397 ss.

*L'applicabilità della disciplina internazionalprivatistica relativa ai contratti del consumatore (Art. 5 Conv. Roma del 1980)*, in OBBLIGAZIONI E CONTRATTI 2007, 681 ss.

*Il diritto oggettivamente applicabile ex art. 4 della Proposta di Regolamento del Parlamento europeo e del Consiglio sulla legge applicabile alle obbligazioni contrattuali (Roma I)*, in GIURISPRUDENZA ITALIANA 2007, 1549 ss.

*Review of Handbuch des internationalen Wirtschaftsrechts*, in UNIFORM LAW REVIEW 2007, 198 ss.

*Condizioni generali di cotnratto nei contratti di vendita internazionale di bnei mobili*, in OBBLIGAZIONI E CONTRATTI 2007, 308-319

*Tipicità e atipicità del fatto illecito. I contrapposti modelli ftancese e tedesco*, in ATLANTE DI DIRITTO PRIVATO COMPARATO edited by F. Galgano et al., 4th ed., Bologna, 2006, p. 147 ss.

*La formazione del contratto*, in ATLANTE DI DIRITTO PRIVATO COMPARATO edited by F. Galgano et al., 4th ed., Bologna, 2006, p. 61 ss.

*L'interpretazione autonoma del Regolamento CE 44/2001 e, in particolare, del concetto di "luogo di adempimento" di cui all'art. 5, n. 1, lett. b*, in GIURISPRUDENZA ITALIANA 2006, 1016 ss.

*Review of Festschrift für Erik Jame*, in UNIFORM LAW REVIEW 2005, 930 ss.

*L'inadempimento essenziale nell vendita internazionale. 25 anni di articolo 25 della Convenzione delle Nazioni Unite sui contratti di vendita internazionale di beni mobili*, in DIRITTO DEL COMMERCIO INTERNAZIONALE 2005, 59 ss.

*La disciplina sostanziale della vendita internazionale ed il saggio d'interessi*, in GIURISPRUDENZA DI MERITO 2004, 1069 ss.

*Franco Ferrari*

*Contrattazione via mezzi informatici e la Convenzione delle Nazioni Unite sui contratti di vendita internazionale di beni mobili*, in DIRITTO COMUNITARIO E DEGLI SCAMBI INTERNAZIONALI, 2004, 1 ss.

*Nuove e vecchie questioni in materia di vendita internazionale tra interpretazione autonoma e ricorso alla giurisprudenza straniera*, in GIURISPRUDENZA ITALIANA 2004, 1405 ss.

*CISG and Private International Law*, in THE 1980 UNIFORM SALES LAW. OLD ISSUES REVISISTED IN THE LIGHT OF RECENT EXPERIENCES. VERONA CONFERENCE 2003 edited by F. Ferrari, Milan/Munich, 2003, p. 19 ss.

*Universal and Regional Sales Law: Can they Coexist?*, in UNIFORM LAW REVIEW 2003, 177 ss.

*Vendita internazionale tra forum shopping e diritto internazionale privato: brevi note in occasione di una sentenza esemplare relativa alla Convenzione delle Nazioni Unite del 1980*, in GIURISPRUDENZA ITALIANA 2003, 896 ss.

*Forum shopping e diritto contrattuale uniforme*, in RIVISTA TRIMESTRALE DI DIRITTO E PROCEDURA CIVILE 2002, 575 ss.

*La determinazione del foro competente in materia di compravendita internazionale: breve guida agli errori da evitare*, in CORRIERE GIURIDICO 2002, 372 ss.

*Applying the CISG in a truly uniform manner: Tribunale di Vigevano (Italy), 12 July 2000*, in UNIFORM LAW REVIEW 2001, 203 ss.

*The International Sphere of Application of the 1988 Ottawa Convention on International Factoring*, in DEVELOPMENTS IN EUROPEAN, ITALIAN AND ISRAELI LAW edited by A.M. Rabello and A. Zanotti, Bologna, 2001, p. 235 ss. = *The International Sphere of Application of the 1988 Ottawa Convention on International Factoring*, in 31 THE INTERNATIONAL LAWYER 1997, 41 ss.

*Problematiche tipiche della Convenzione di Vienna sui contratti di vendita internazionale di beni mobili risolte in una prospettiva uniforme*, in GIURISPRUDENZA ITALIANA 2001, 281 ss.

*I rapporti tra le convenzioni di diritto materiale uniforme in materia contrattuale e la necessità di un'interpretazione interconvenzionale*, in RIVISTA DI DIRITTO INTERNAZIONALE PRIVATO E

*Franco Ferrari*

PROCESSUALE 2000, 669 ss.

*Contratti di distribuzione, ambito di applicazione ratione materiae della Convenzione di Vienna del 1980: gli insegnamenti che si possono trarre dalla giurisprudenza straniera*, in GIUSTIZIA CIVILE 2000, 2334 ss.

*Diritto applicabile alla vendita internazionale, tasso degli interessi sulle somme non pagate e questioni affini*, in CORRIERE GIURIDICO 2000, 932 ss.

*The Relationship Between International Uniform Contract Law Conventions*, in UNIFORM LAW REVIEW 2000, 69 ss.

*Principi generali inseriti nelle convenzioni internazionali di diritto uniforme: l'esempio della vendita, del factoring e del leasing internazionali*, in CLAUSOLE E PRINCIPI GENERALI NELL'ARGOMENTAZIONE GIURISPRUDENZIALE DEGLI ANNI NOVANTA edited by L. Cabella Pisu and L. Nanni, Padova, 1998, p. 121 ss.

*Brevi considerazioni critiche in materia di interpretazione autonoma ed applicazione uniforme della Convenzione di Vienna*, in RIVISTA DI DIRITTO CIVILE 1998, p. 81 ss.

*Principi generali inseriti nelle convenzioni internazionali di diritto uniforme: l'esempio della vendita, del factoring e del leasing internazionali*, IN RIVISTA TRIMESTRALE DI DIRITTO E PROCEDURA CIVILE 1997, 651 ss. = CONTRATTO E IMPRESA EUROPA 1997, p. 109 ss.

*General Principles and International Uniform Commercial Law Conventions: A Study of the 1980 Vienna Sales Convention and the 1988 Ottawa Conventions*, in UNIFORM LAW REVIEW 1997, 451 ss.

*L'ambito di applicazione della Convenzione di Ottawa sul "Factoring" Internazionale*, in RIVISTA TRIMESTRALE DI DIRITTO E PROCEDURA CIVILE 1996, 195 ss.

*I "Principi per i contratti commerciali internazionali" dell'UNIDROIT ed il loro ambito di applicazione*, in CONTRATTO E IMPRESA EUROPA 1996, 300 ss.

*Diritto uniforme della vendita internazionale: questioni di applicabilità e diritto internazionale privato*, in RIVISTA DI DIRITTO CIVILE 1995, 669 ss.

*Franco Ferrari*

*Tasso degli interessi ed applicazione uniforme della convenzione di Vienna sui contratti di vendita internazionale*, in RIVISTA DI DIRITTO CIVILE 1995, 277 ss.

*Commento alla Convenzione di Vienna. Art. 1-13*, in COMMENTARIO BREVE AL CODICE CIVILE. LEGGI COMPLEMENTARIedited by v G. Alpa and P. Zatti, Padova, 1995, p. 2649 ss.

*L'ambito di applicazione della Convenzione di Vienna sulla vendita internazionale*, in RIVISTA TRIMESTRALE DI DIRITTO E PROCEDURA CIVILE 1994, 893 ss.

*La rilevanza degli usi nella Convenzione di Vienna sulla vendita internazionale di beni mobili*, in CONTRATTO E IMPRESA 1994, 239 ss.

*Responsabilità civile e danno* (note comparatistiche in occasione di una recente pubblicazione), in CONTRATTO E IMPRESA 1993, 381 ss.

*Prevedibilità del danno e contemplation rule*, in CONTRATTO E IMPRESA 1993, 760 ss.

*Abstraktionsprinzip, Traditionsprinzip e consensualismo nel trasferimento di beni mobili. Una superabile divaricazione?*, in RIVISTA DI DIRITTO CIVILE 1993/I, 729 ss.

*Brevi considerazioni in materia di autorità parentale nel diritto tedesco*, in FORO ITALIANO 1992/IV, 194 ss.

*La convivenza more uxorio nei paesi di lingua tedesca: una comparazione*, in IL DIRITTO DI FAMIGLIA E DELLE PERSONE 1992, 425 ss.

*La tutela aquiliana della convivenza "more uxorio"*, in CORRIERE GIURIDICO 1992, 931 ss.

*Principio consensualistico ed Abstraktionsprinzip: un'indagine comparatistica*, in CONTRATTO E IMPRESA 1992, 889 ss.

*Obblighi d'informazione e responsabilità del produttore in Svizzera*, in CONTRATTO E IMPRESA 1992, 359 ss.

*Formazione del contratto*, in ATLANTE DI DIRITTO PRIVATO COMPARATO edited by F. Galgano and F. Ferrari, Bologna, 1992, p. 67 ss.

*Franco Ferrari*

*Tipicità ed atipicità dell'illecito civile. I contrapposti modelli francese e tedesco*, in ATLANTE DI DIRITTO PRIVATO COMPARATO edited by F. Galgano and F. Ferrari, Bologna, 1992, p. 135 ss.

*Quale posto spetta al diritto dei paesi ex-socialisti*, in SOCIOLOGIA DEL DIRITTO 1992, 77 ss.

**Germany**

*From Rome to Rome via Brussels, Remarks on the Law Applicable to Contractual Obligations Absent a Choice by the Parties*, RABELSZ 2009, 750-769

*Homeward Trend: What, Why and Why Not*, in CISG METHODOLOGY edited by A. Janssen and O. Meyer, Munich, 2009 , p. 171-206

*UNIDROIT Übereinkommen über Internationales Factoring (Ottawa 1988). Einleitung, Anwendungsbereich und allgemeine Bestimmungen*, in MÜNCHENER KOMMENTAR ZUM HANDELSGESETZBUCH, Munich, 2009, p. 1771-1840

*Eigentumsübertragung*, in HANDBUCH DES EUROPÄISCHEN PRIVATRECHTS edited by J. Basdow et al., Munich, 2009, p. 367-371

*Einheitsrecht*, in HANDBUCH DES EUROPÄISCHEN PRIVATRECHTS edited by J. Basdow et al., Munich, 2009, p. 376-380

*Factoring*, in HANDBUCH DES EUROPÄISCHEN PRIVATRECHTS edited by J. Basdow et al., Munich, 2009, p. 569-573

*Leasing*, in HANDBUCH DES EUROPÄISCHEN PRIVATRECHTS edited by J. Basdow et al., Munich, 2009, p. 1001-1005

UNCITRAL, in HANDBUCH DES EUROPÄISCHEN PRIVATRECHTS edited by J. Basdow et al., Munich, 2009, p. 1531-1534

*Homeward Trend: What, Why and Why Not?*, in INTERNATIONALES HANDELSRECHT 2009, 8 ss.

*Franco Ferrari*

*The CISG and its Impact on National Legal Systems : General Report*, in THE CISG AND ITS IMPACT ON NATIONAL LEGAL SYSTEMS edited by F. Ferrari, Munich, 2008, p. 413-483

*Anwendungsbereich. Kommentar zu den Artt. 1-6 CISG*, in KOMMENTAR ZUM EINHEITLICHEN UN-KAUFRECHT – CISG edited by P. Schlechtriem and I. Schwenzer, Munich, 2008 , p. 54-156

*Auslegung des Übereinkommens. Kommentar zu Art. 7 CISG*, in KOMMENTAR ZUM EINHEITLICHEN UN-KAUFRECHT - CISG edited by P. Schlechtriem and I. Schwenzer, Munich, 2008, p. 157-188

*Schlußbestimmungen. Kommentar zu den Artt. 89-101 CISG*, in KOMMENTAR ZUM EINHEITLICHEN UN-KAUFRECHT – CISG edited by P. Schlechtriem and I. Schwenzer, Munich, 2008, p. 987-1015

*Abschluß des Vertrages. Kommentar zu den Artikeln 14-24 CISG*, in MÜNCHENER KOMMENTAR ZUM HANDELSGESETZBUCH, Munich, 2007, p. 440-514

*Allgemeine Bestimmungen. Kommentar zu den Artikeln 7-13 CISG*, in MÜNCHENER KOMMENTAR ZUM HANDELSGESETZBUCH, Munich, 2007, p. 379-439

*Schlußbestimmungen. Kommentar zu den Artikeln 89-101 CISG*, in MÜNCHENER KOMMENTAR ZUM HANDELSGESETZBUCH, Munich, 2007, p. 844-866

*Zinsen. Kommentar zu Art. 78 CISG*, in MÜNCHENER KOMMENTAR ZUM HANDELSGESETZBUCH, Munich, 2007, p. 775-786

*Schlußbestimmungen. Art. 13-23 FactÜ*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 1097-1103

*CMR. Haftung des Frachtführers für andere Personen*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 773-779

*CMR. Geltungsbereich*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 755-773

*CISG. Erhaltung der Ware*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al.,

16

*Franco Ferrari*

Munich, 2007, p. 714 ss.

*CISG. Wirkungen der Aufhebung*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 695-714

*CISG. Zinsen*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 674-685

*CISG. Vertragsmäßigkeit der Ware sowie Rechte oder Ansprüche Dritter*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 413-496

*CISG. Warenkauf. Allgemeine Bestimmungen*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 349 ss.

*Einheitliche Auslegung,* in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 181-188

*EGBGB. Geltungsbereich des auf den Vertrag anzuwendenden Rechts,* in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 126-146

*EGBGB. Einigung und materielleWwirksamkeit,* in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 109-126

*EGBGB. Mangels Rechtswahl anzuwendendes Recht,* in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 25-79

*EGBGB. Freie Rechtswahl*, in INTERNATIONALES VERTRAGSRECHT edited by F. Ferrari et al., Munich, 2007, p. 1-25

*Objektive Anknüpfung*, in EIN NEUES INTERNATIONALES VERTRAGSRECHT FÜR EUROPA edited by F. Ferrari and S. Leible, Gottmadingen, 2007, p. 57-87

*The interaction between the United Nations Convention on Contracts for the International Sale of Goods and Domestic Remedies (Rescission for Mistake and Remedies in Tort)*, in RABELSZ 2007, 52-80

17

*Franco Ferrari*

*Zur autonomen Auslegung der EuGVVO, insbesondere des Begriffs des "Erfüllungsortes der Verpflichtung" nach Art. 5 Nr. 1 lit.*, in PRAXIS DES INTERNATIONALEN PRIVAT- UND VERFAHRENSRECHTS 2007, 61-67

*Short notes on the impact of the Article 95 reservation on the occasion of Prime Start Ltd. v. Maher Forest Products Ltd. et al., 17 July 2006*, in INTERNATIONALES HANDELSRECHT 2006, 248-252

*Fundamental Breach of Contract under thew UN Sales Convention: 25 Years of Article 25 CISG*, in LIBER MEMORIALIS PETAR SARCEVIC. UNIVERSALISM, TRADITION AND THE INDIVIDUAL edited by J. Erauw et al., Munich, 2006, p. 439-456

*What sources of law for contracts for the international sale of goods? Why one has to look beyond the CISG*, in INTERNATIONALES HANDELSRECHT 2006, 1 ss.

*The CISG's Uniform Interpretation by courts – An Update*, in VINDOBONA JOURNAL OF INTERNATIONAL COMMERCIAL LAW AND ARBITRATION 2005, 233 ss.

*Do Courts Interpret the CISG Uniformly?*, in QUO VADIS CISG? Edited by F. Ferrari, Munich/Paris/Brussels, 2005, p. 3 ss.

*Wesentliche Vertragsverletzung nach UN-Kaufrecht*, in INTERNATIONALES HANDELSRECHT 2005, p. 1 ss.

*Divergences in the application of the CISG's rules on non-conformity of goods*, in RABELSZ 2004, p. 473 ss.

*International Sales Law and the Inevitability of Forum Shopping*, in VINDOBONA JOURNAL OF INTERNATIONAL COMMERCIAL LAW AND ARBITRATION 2004, 1 ss. = *International Sales Law and the Inevitability of Forum Shopping*, in 23 JOURNAL OF LAW AND COMMERCE 2004, p. 169 ss.

*Form und UN-Kaufrecht*, in INTERNATIONALES HANDELSRECHT 2004, p. 1 ss.

*The CISG's sphere of application: Articles 1-3 and 10*, in THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION edited by F. Ferrari, H.M. Flechtner and R.A. Brand, Munich, 2004, p. 21 ss.

*Franco Ferrari*

*Scope of application: Articles 4-5*, in THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION edited by F. Ferrari, H.M. Flechtner and R.A. Brand, Munich, 2004, p.96 ss.

*CISG rules on exclusion and derogation: Article 6*, in THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION edited by F. Ferrari, H.M. Flechtner and R.A. Brand, Munich, 2004, p. 114 ss.

*Interpretation of the Convention and gap-filling: Article 7*, in THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION edited by F. Ferrari, H.M. Flechtner and R.A. Brand, Munich, 2004, p. 138 ss.

*Interpretation of statements: Article 8*, in THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION edited by F. Ferrari, H.M. Flechtner and R.A. Brand, Munich, 2004, p. 172 ss.

*Trade usage and practices established between the parties*, in THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION edited by F. Ferrari, H.M. Flechtner and R.A. Brand, Munich, 2004, p. 191 ss.

*Writing requirements: Articles 11-13*, in THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION edited by F. Ferrari, H.M. Flechtner and R.A. Brand, Munich, 2004, p. 206 ss.

*Verzugszinsen nach Art. 78 UN-Kaufrecht*, in INTERNATIONALES HANDELSRECHT 2003, 153 ss.

*Auslegung von Parteierklärungen und –verhalten nach UN-Kaufrecht*, in INTERNATIONALES HANDELSRECHT 2003, 10 ss.

*Gap-filling and Interpretation of the CISG: Overview of International Case Law*, in VINDOBONA JOURNAL OF INTERNATIONAL COMMERCIAL LAW AND ARBITRATION 2003, 63 ss.

*"Forum shopping" Despite International Uniform Contract Law Conventions*, in FESTSCHRIFT FÜR PETER SCHLECHTRIEM ZUM 70. GEBURTSTAG edited by I. Schwenzer and G. Hager, Tübingen, 2003, p. 353 ss.

*Franco Ferrari*

*Zur Bedeutung von Handelsbräuchen und Gepflogenheiten nach UN-Kaufrecht*, in THE EUROPEAN LEGAL FORUM 2002, 272 ss.

*Zum vertraglichen Ausschluss des UN-Kaufrechts,* in ZEITSCHRIFT FÜR EUROPÄISCHES PRIVATRECHT 2002, 737 ss.

*Brief Remarks on Electronic Contracting and the United Nations Convention on Cotnracts for the International Sale of Goods (CISG)*, in VINDOBONA JOURNAL OF INTERNATIONAL COMMERCIAL LAW AND ARBITRATION 2002, 289 ss.

*"Forum shopping" trotz internationaler Einheitssachrechtskonventionen*, in RECHT DER INTERNATIONALEN WIRTSCHAFT 2002, 169 ss.

*Italienische CISG Rechtsprechung- Eine Übersicht*, in INTERNATIONALERS HANDELSRECHT 2001, 179 ss.

*Das UN-Kaufrecht – seit 10 Jahren in Kraft, aber immer noch unbekannt*, in *Wirtschaft und Recht. Fakten und Trends 2002*, Frankfurt/Munich, 2002, p. 81 ss. (co-author Uwe Schneider)

*Overview on the Sphere of Application of the 1980 UN Convention on Contracts for the International Sale of Goods*, in *Law and Practice of Export Trade* edited by the Center for Transnational Law, Münster, 2001, p. 53 ss.

*How to Create One Uniform Contract Law*, in VINDOBONA JOURNAL OF INTERNATIONAL COMMERCIAL LAW AND ARBITRATION 2001, 3 ss.

*Ausschluß des UN-Kaufrechts, Rügefrist und Beweislast in einem italienischen Urteil zum deutsch-italienischen Rechtsverkehr*, in PRAXIS DES INTERNATIONALEN PRIVAT- UND VERFAHRENSRECHTS 2001, 354 ss.

*Einige kurze Anmerkungen zur Awendbarkeit des UN-Kaufrechts beim Vertragsschluss über das Internet*, in THE EUROPEAN LEGAL FORUM 2001, 301 ss.

*Internationales Kaufrecht einheitlich ausgelegt*, in INTERNATIONALES HANDELSRECHT 2001, 56 ss.

*Kommentar zum Ottawa Übereinkommen über internationales Factoring. Art. 1-4, 13-23*, in

MÜNCHENER KOMMENTAR ZUM HANDELSGESETZBUCH, vol. 5, edited by K. Schmidt, Munich, 2001, p. 1561-1618, 1666-1671

*Der Vertriebsvertrag als vom CISG (nicht) erfaßter Vertragstyp*, in THE EUROPEAN LEGAL FORUM 2000, 7 ss.

*Kommentar zu den Artikel 1-7, 10, 89-101*, in KOMMENTAR ZUM EINHEITLICHEN UN-KAUFRECHT edited by P. Schlechtriem, 3rd ed., Munich, 2000, p. 37-129, 849-871

*Applicability and Applications of the CISG*, in INTERNATIONAL LEGAL FORUM 1998, 137 ss.

*Der Begriff des "Internationalen Privatrechts" nach Art. 1 Abs. 1 lit.b) des UN-Kaufrechts*, in ZEITSCHRIFT FÜR EUROPÄISCHES PRIVATRECHT 1998, 162 ss.

*Das Verhältnis zwischen den Unidroit-Grundsätzen und den allgemeinen Grundsätzen internationaler Einheitsprivatrechtskonventionen. Zugleich ein Beitrag zur Lückenfüllung in staatlichen Gerichten*, in JURISTENZEITUNG 1998, 9 ss.

*Wer ist deliktischer Gläubiger? - Der Schutz des Lebensgefährten und die Systematik des Deliktsrechts*, in ZEITSCHRIFT FÜR EUROPÄISCHES PRIVATRECHT 1997, 1122 ss.

*Schuldübernahme als vom  UN-Kaufrecht nicht geregelte Rechtsmaterie*, in FORUM DES INTERNATIONALEN RECHTS 1997, 89 ss. = *Assumption of debts as a subject matter excluded from the UN Sales Convention*, in THE INTERNATIONAL LEGAL FORUM 1997, 90 ss.

*Rezension von U. Magnus, Wiener UN-Kaufrecht (CISG)*, in PRAXIS DES INTERNATIONALEN PRIVAT- UND VERFAHRENSRECHTS 1997, 64 ss.

*Der internationale Anwendungsbereich des Ottawa-Übereinkommens von 1988 über Internationales Factoring*, in RECHT DER INTERNATIONALEN WIRTSCHAFT 1996, 181 ss.

*Rezension von C.M. Bianca, La vendita e la permuta*, in ARCHIV FÜR DIE CIVILISTISCHE PRAXIS 1996, 305 ss.

*Das italienische Recht der außervertraglichen Verschuldenshaftung als Beispiel für einen Ausgangspunkt zur Umdeutung der Rolle des § 823 I BGB*, in 8 JAHRBUCH FÜR ITALIENISCHES RECHT, Heidelberg, 1995, p. 191 ss.

*Franco Ferrari*

*Eheähnliche Lebensgemeinschaft und Nachfolge in den Mietvertrag. Ein Beispiel für Rechtsvereinheitlichung durch Richterrecht*, in ZEITSCHRIFT FÜR EUROPÄISCHES PRIVATRECHT 1994, 151 ss.

*Vom Abtraktionsprinzip und Konsensualprinzip zum Traditionsprinzip - Zu den Möglichkeiten der Rechtsangleichung im Mobiliarsachenrecht*, in ZEITSCHRIFT FÜR EUROPÄISCHES PRIVATRECHT 1993, 52 ss.

*Produkthaftung und Negligence: Sechzig Jahre Donoghue v. Stevenson*, in ZEITSCHRIFT FÜR EUROPÄISCHES PRIVATRECHT 1993, 354 ss.

*Informationspflichten im Rahmen der Produkthaftung: Ein Vergleich*, in JAHRBUCH JUNGER ZIVILRECHTSWISSENSCHAFTLER edited by H. Weber, Stuttgart, 1992, p. 191 ss.

*Rezension von Renato Speciale, Contratto preliminare ed intese precontrattuali*, in ARCHIV FÜR DIE CIVILISTISCHE PRAXIS 1992, 151 ss.

*Hinweise zum Italienischen Ehe- und Kindschaftsrecht*, in INTERNATIONALES EHE- UND KINDSCHAFTSRECHT edited by M. Ferid, Munich, 1992, p. I ss.

*Der neue deliktische Schutz der eheähnlichen Lebensgemeinschaft in Italien*, in RABELSZ 1992, 757 ss.

*Die gesamtschuldnerische Haftung des Fahrzeugeigentümers in Italien*, in NEUE ZEITSCHRIFT FÜR VERKEHRSRECHT 1992, 19 ss.

*Zwanzig Jahre Generalklausel im italienischen Deliktsrecht*, in ZEITSCHRIFT FÜR SCHADENSRECHT 1992, 2 ss.

*Das Familienunternehmen im italienischen Recht*, in RECHT DER INTERNATIONALEN WIRTSCHAFT 1991, 907 ss.


**France**

22

*Franco Ferrari*

*Quelques remarques sur le droit applicable aux obligations contractuelles en l'absence de choix des parties (art.4 du règlement Rome I)*, in REVUE CRITIQUE DE DROIT INTERNATIONAL PRIVÉ 2009, 459-482

*Homeward Trend and Lex Forism in International Sales Law*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2009, 333-352

*La loi applicables aux contrats conclus par les consommateurs (Article 5 de la Convention de Rome)*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2008, 234-262

*Remarques sur l'interprétation autonome du Règlement de Bruxelles 1, notamment du concept de lieu de livraison au sens de l'article 5 paragraphe 1-b, et de la CVIM*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2007, 83-99

*Quelles sources de droit pour les contrats de vente internationale de marchandises? Des raisons pour lesquelles il faut aller au-delà de la CVIM*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2006, 403-429

*La Convention de Vienne sur la vente internationale et le droit international privé*, in JOURNAL DU DROIT INTERNATIONAL 2006, 27-61

*Fundamental Breach of Contract under the UN Sales Convention - 25 Years Article 25 CISG* in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2005, 389-400

*La place de la régionalisation dans l'unification du droit de la vente*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2004, 445-460

*The Formal Validity of Contracts for the International Sale o fGoods Governed by the CISG – An Overview of Case Law*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2004, 85-90

*Les rapports entre les conventions de droit matériel uniforme en matière comntractuelle et la necessité d'une interprétation interconventionelle*, in JOURNAL DU DROIT INTERNATIONAL 2003, 793-809

*Trade Usage and Practices Established Between the Parties under the CISG*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2003, 571-580

*Franco Ferrari*

*Gap-Filling and Interpretation of the CISG: Overview of International Case Law,* in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2003, 221-239 = *Gap-filling and Interpretation of the CISG: Overview of International Case Law*, in VINDOBONA JOURNAL OF INTERNATIONAL COMMERCIAL LAW AND ARBITRATION 2003, 63-92

*Interpretation of Statements and Construction under the Convention for the International Sale of Goods (CISG) in the Light of Case Law*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2003, 96-107

*Overview of Case Law on the CISG's International Sphere of Aplication and Its Applicability Requirements (Articles 1(1)(a) and 1(1)(b))*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2002, 961-975

*Forum shopping et droit matériel uniforme*, in JOURNAL DU DROIT INTERNATIONAL 2002, 383-408

*The OHBLA Draft Uniform Act on Contracts for the Carriage of Goods by Road. First Remarks on Its Sphere of Application*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2001, 898-905

*International Sales Law in the Light of the OHBLA Uniform Act Relating to General Commercial Law and the 1980 Vienna Sales Convention*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2001, 599-607

*Exclusion et inclusion de la CVIM*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2001, 401-414

*Recent Italian Court Decisions on the CISG*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2001, 224-230

*Charge de la preuve dans la Convention des Nations Unies sur le contrat de vente internationale de marchandises*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 2000, 665-670

*La sphère internationale d'application de la Convention d'Ottawa de 1988 sur l'affacturage international*, in REVUE DE DROIT DES AFFAIRES INTERNATIONALES 1999, 895-916

*Le taux d'intérêt applicable au montant des arriérés dans la jurisprudence concernant la CVIM*, REVUE DE DROIT DES AFFAIRES INTERNATIONALES 1999, 86-93

*Franco Ferrari*

*Jurisprudence concernant les questions non abordées par la CVIM*, in Revue de droit des affaires internationales 1998, 835-839

*La jurisprudence sur la CVIM: un nouveau défi pour les interprètes?*, in Revue de droit des affaires internationales 1998, 495-508

*Interprétation uniforme de la Convention de Vienne de 1980 sur la vente internationale*, in Revue internationale de droit comparé 1996, 813-852

*Le champ d'application des "principes pour les contrats commerciaux internationaux" élaborés par Unidroit*, in Revue international de droit comparé 1995, 985 ss.

**Argentina**

*Estudios comparativos en materia de conclusión del contrato en los paises de América del Sur con referencias a la Convención de Viena sobre la venta internacional*, in Revista del Derecho Comercial y de las Obligaciones 1992, 51-84

**Austria**

*Verkäufergerichtsstand auch nach Art 5 Nr 1 lit b EuGVVO?*, in ECOLEX, 2007, p. 303-306

**Australia**

*The UNCITRAL Draft Convention on Assignment in Receivables Financing: Applicability, General Provisions and the Conflict of Conventions*, in 1 Melbourne Journal of International Law 2000, 1 ss.

**Belgium**

*What Sources of Law for Contracts for the International Sale of Goods? Why One has to Look Beyond the CISG*, in International Review of Law and Economics 2005, 314-341

*Remarks on the different methods in approaching liability for one's own acts on the occasion of*

25

*the publication of Von Bar's Gemeineuropäisches Deliktsrecht*, in EUROPEAN REVIEW OF PRIVATE LAW 1998, 439-452

### Canada

*Uniform Interpretation of International Commercial Law Conventions*, in THE EVOLUTION OF LEGAL SYSTEMS, BIJURALISM AND INTERNATIONAL TRADE edited by L. Perret et al., Montreal, 2002, p. 443-465

*Exclusion et inclusion de la Convention de Vienne sur les contrats de vente internationale de marchandises de 1980*, in REVUE GÉNÉRALE DE DROIT 2002, 335-357

### Israel

*Uniform Interpretation of the 1980 Uniform Sales Law*, in ESSAYS ON EUROPEAN LAW AND ISRAEL edited by A.M. Rabello, Jerusalem, 1997, p. 511-554

### Serbia

*General principles and international uniform law conventions*, in PRAVNI ZIVOT 2003, 211-236

### Spain

*La formacion del contrato*, in ATLAS DE DERECHO PRIVADO COMPARADO edited by F. Galgano, Madrid, 2000, p. 129-160

*Tipicidad y atipicidad del hecho ilicito. La contraposicion entre los modelos frances y aleman*, in ATLAS DE DERECHO PRIVADO COMPARADO edited by F. Galgano, Madrid, 2000, p. 243-261

*El ambito de applicacion del Convenio de Viena sobre la compraventa internacional*, in REVISTA DE DERECHO MERCANTIL 1996, 833-888

*Franco Ferrari*

*Switzerland*

*Die Rügeobliegenheit bei Vertragswidrigkeit nach Art. 39 CISG*, in ZEITSCHRIFT FÜR SCHWEIZERISCHES RECHT 2006, 533-562

*The Netherlands*

*The UNCITRAL Draft Convention on Assignment in Receivables Financing: Critical Remarks on Some Specific Issues*, in PRIVATE LAW IN THE INTERNATIONAL ARENA. LIBER AMICORUM KURT SIEHR edited by J. Basedow et al., The Hague, 2000, p. 179-196

*European Sales Law and International Sales Law: Can They Coincide?*, in TOWARDS A EUROPEAN CIVIL CODE, 2nd ed., The Hague, 1998, p. 363-370

*CISG Art. 1(1)(b) and Related Matters: Brief Remarks on the Occasion of a Recent Dutch Court Decision*, in NEDERLANDS INTERNATIONAAL PRIVAATRECHT 1995, 317-328

*Specific Topics of the CISG in the Light of Judicial Application and Scholarly Writing*, in 10 PREADVIEZEN UITGEBRACHT VOOR DE VERENIGING VOOR BURGERLIJK RECHT 1995, 81-176

*Textbooks*

FONDAMENTI DELLA VENDITA INTERNAZIONALE, Padova, 1998

*Monographs*

FUENTES APLICABLES A LA COMPRAVENTA INTERNACIONAL DE MERCADERIAS, Barcelona, 2009

LA VENDITA INTERNAZIONALE. TOMO II. ART. 14-24. FORMAZIONE DEL CONTRATTO, Bologna/Rome, 2006

LA VENDITA INTERNAZIONALE. APPLICABILITÀ ED APPLICAZIONI DELLA CONVENZIONE DELLE NAZIONI UNITE SUI CONTRATTI DI VENDITA INTERNAZONALE DI BENI MOBILI, 2nd ed., Padova, 2006

27

*Franco Ferrari*

CONTRAT DE VENTE INTERNATONALE. APPLICABILITÉ ET APPLICATIONS DE LA CONVENTION DE VIENNE SUR LES CONTRATS DE VENTE INTERNATIONALE DE MARCHANDISES, Basle/Brussels//Paris, 2nd ed., 2005

INTERNATIONAL SALE OF GOODS, Basle/Brussels, 1999

CONTRAT DE VENTE INTERNATIONALE, Basle/Brussels, 1999

COMPRAVENTA INTERNACIONAL. APLICABILIDAD Y APLICACIONES DE LA CONVENCION DE VIENA DEL 1980, Valencia, 1999

LA VENDITA INTERNAZIONALE. APPLICABILITÀ ED APPLICAZIONI DELLA CONVENZIONE DI VIENNA DEL 1980, Padova, 1997

THE SPHERE OF APPLICATION OF THE VIENNA SALES CONVENTION, The Hague, 1995

LA VENDITA INTERNAZIONALE. TOMO I. ART. 1-13. AMBITO DI APPLICAZIONE. DISPOSIZIONI GENERALI, Bologna/Roma, 1994

ATIPICITÀ DELL'ILLECITO CIVILE - UNA COMPARAZIONE, Milan, 1992

### *Books edited and co-authored*

INTERNATIONALES VERTRAGSRECHT, Munich, 2007

EIN NEUES INTERNATIONALES VERTRAGSRECHT FÜR EUROPA, Gottmadingen, 2007

QUO VADIS CISG?, Brusells/Paris/Basle, 2005

THE DRAFT UNCITRAL DIGEST AND BEYOND: CASES, ANALYSIS AND UNRESOLVED ISSUES IN THE U.N. SALES CONVENTION, Munich, 2004

THE 1980 UNIFORM SALES LAW. OLD ISSUES REVISISTED IN THE LIGHT OF RECENT EXPERIENCES.

*Franco Ferrari*

VERONA CONFERENCE 2003, Milan/Munich, 2003

LE CONVENZIONI DI DIRITTO DEL COMMERCIO INTERNAZIONALE, Milan, 1st ed. 2001, 2nd ed. 2002

IL FACTORING INTERNAZIONALE. COMMENTO ALLA CONVENZIONE UNIDROIT SUL FACTORING INTERNAZIONALE, Padua, 1999

ATLANTE DI DIRITTO PRIVATO COMPARATO, co-editor and co-author, 1st ed., Bologna, 1992; 2nd ed., Bologna, 1993; 3rd ed., Bologna, 1999; 4th ed., Bologna, 2006

THE UNIFICATION OF INTERNATIONAL COMMERCIAL LAW. TILBURG LECTURES, Baden-Baden, 1998