UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUCCI AMERICA, INC., <br><br> Plaintiff, <br><br> -against- <br><br> GUESS?, INC., MARC FISHER FOOTWEAR LLC, THE MAX LEATHER GROUP/CIPRIANI ACCESSORIES, INC., SEQUEL AG, K&M ASSOCIATES L.P., VIVA OPTIQUE, INC., SIGNAL PRODUCTS, INC. and SWANK, INC., <br><br> Defendants. | Civil Action No. 09cv4373 (SAS)(JLC) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GUESS?, INC.'S OPPOSITION TO PLAINTIFF GUCCI AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DISCLOSURE OF THE PRIVILEGED COMMUNICATIONS OF PLAINTIFF'S IN-HOUSE LEGAL COUNSEL JONATHAN MOSS**

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
ROBERT C. WELSH
ANDREW J. FRACKMAN
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., and Swank, Inc.*

On April 16, 2010, Jonathan Moss, plaintiff Gucci America, Inc.'s ("Gucci") former in-house legal counsel, filed an affidavit with the Court to address certain factual allegations made in Gucci's briefing and declarations that Moss avers are "contrary to my recollection," "inconsistent with the facts," and "untrue."  Moss Aff. ¶¶ 2, 11.  Moss's testimony provides further evidence undermining Gucci's contentions that it "reasonably believed" Moss was authorized to practice law, and calls into serious question the credibility of Gucci's witnesses.  Moss's affidavit also confirms what defendant Guess?, Inc. ("Guess") has established in its opposition papers—namely, that Gucci failed to take any reasonable precautions whatsoever and failed to undertake any investigation into Moss's legal qualifications before hiring him to perform the duties of a lawyer.

Gucci's central argument was that it was excused from undertaking any investigation into Moss's background because "he was [originally] hired to fill a non-lawyer role."  Moss Br. at 11.  Moss disputes this contention, saying he joined Gucci with the understanding that he would be acting as a lawyer.  Moss Aff. ¶ 11.  As corroboration, Moss points to the terms of his offer letter; an introductory email describing him as a "legal associate" that was sent to Gucci employees on his first day of work; and his salary, which was "substantially in excess" of what a paralegal or other non-lawyer would have been paid.[1]  *Id*.  If Moss is correct, such documents would further establish that, contrary to the statements of Gucci's declarants, Moss was indeed hired to render legal services for Gucci—even though no one at Gucci had ever bothered to check whether he was admitted to the bar of any State, much less authorized to practice law.  *See* Leshin Decl. ¶ 9 ("Because I did not hire Jonathan to serve as an in-house lawyer, I did not inquire further about his legal background.  In particular, I did not make any inquiry as to

---

[1] In its filings, Gucci has not included the documents referenced in Moss's affidavit, or any other documents concerning Moss's hiring in 2002.

whether he was a member of the bar of California (or any other state), and I did not ask anyone inside or outside of the company to make any such inquiry."). Indeed, this same conclusion was readily apparent based on the documents submitted by Gucci in support of its motion. *See* Guess's Opp. Br. at 10-11.

Moreover, Gucci could easily have ascertained that Moss was not authorized to practice law by simply looking at the annual card he received from the State Bar of California, which states clearly and unequivocally that "Only *active* members are entitled to practice law." Supp. Welsh Decl. ¶ 2, Ex. A (emphasis added). Apparently, neither Moss nor Gucci bothered to look at Moss's card. As for Moss's belief that, even though he was ineligible to practice law "in California," it was nonetheless "permissible [to practice] . . . so long as the inactive member is not practicing law 'in California'" (*id*. at ¶4), a glance at New York law would have quickly disabused him of any such pretensions. N.Y. Jud. Law § 478 (only persons "duly and regularly licensed and admitted to practice law in the courts of the record of this state" may practice law).

Gucci also attempts to justify its failure to conduct any inquiry into Moss's qualifications by claiming that company executives were "deceived" by Moss and that he later "admitted he had withheld [information concerning his inactive status] from the company for years, and had not been forthcoming." Moss Br. at 12. Here, again, Moss's affidavit rebuts Gucci's version of events. Moss Aff. ¶ 3. Moss states that he "never admitted . . . that I was not forthcoming to Gucci." *Id*. According to Moss, "I did not act in an untruthful or misleading manner." *Id*. Indeed, Moss indicates that Gucci was fully aware of his inactive status: Gucci "paid my annual bar fees to California based upon annual statements *which indicated my inactive status and which were submitted to Gucci for payment*." *Id*. (emphasis added).[2]

---

[2] Moss's reliance on *People v. Tin Trung Ngo*, 14 Cal. 4th 30 (1996) for the proposition that his inactive status should not affect whether his communications were privileged is misplaced. In *Ngo*, the California Supreme

In short, Moss's testimony provides additional, corroborating evidence that Gucci inexcusably neglected to determine whether Moss was authorized to practice law before hiring him as a lawyer. Moreover, it now appears that Gucci was fully aware of Moss's inactive status yet continued to allow him to represent Gucci in legal proceedings. Accordingly, Gucci's actions were well below the standard required to show that it reasonably believed Moss was permitted to engage in the practice of law. *United States v. Boffa*, 513 F. Supp. 517, 525 (D. Del. 1981) (party must "demonstrate . . . what precautions, if any, [were taken] to ascertain [the person's] status [as an attorney]"); *FTI v. Smith*, No. 99 Civ. 9351, 2000 WL 1855131, at *6 (S.D.N.Y. Dec. 19, 2000) ("it is not unduly burdensome to require a corporation to determine whether their general counsel … are licensed to perform the functions for which they have been hired"). Thus, Moss's affidavit provides further evidence that Gucci's motion for a protective order should be denied.

Dated: Los Angeles, California  
April 20, 2010

O'MELVENY & MYERS LLP

By: _____

Daniel M. Petrocelli (dpetrocelli@omm.com)  
Robert C. Welsh (rwelsh@omm.com)  
Andrew J. Frackman (afrackman@omm.com)  
1999 Avenue of the Stars, Suite 700  
Los Angeles, California 90067  
Tel: (310) 553-6700  
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., and Swank, Inc.*

---

Court rejected a *per se* rule that a criminal defendant's attorney's failure to comply with the state's MCLE continuing education requirements constituted ineffective assistance of counsel. *Id.* at 32. The Court never addressed the issue of the attorney-client privilege under California law, let alone under federal common law. Indeed, Guess is unaware of any case applying the holding of *Ngo* to a determination of whether the attorney-client privilege should apply. Moreover, Guess has never argued that the attorney-client privilege does not apply where a client can demonstrate that he reasonably believed his attorney was authorized to practice law. Rather, as Guess's opposition papers make clear, and as further confirmed by Moss's affidavit, Gucci can make no such showing here.

-3-