UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

GUCCI AMERICA, INC.,

                Plaintiff,

        - against -

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

                Defendants.

------------------------------------------------------------ x

Civil Action No. 09cv4373
(SAS)(JLC)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF GUCCI AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DISCLOSURE OF THE PRIVILEGED COMMUNICATIONS OF NON-PARTY GUCCIO GUCCI S.P.A.'S IN-HOUSE INTELLECTUAL PROPERTY COUNSEL VANNI VOLPI

ARNOLD & PORTER LLP
Louis S. Ederer, Esq.
399 Park Avenue
New York, New York 10022
Tel: (212) 715-1000
Fax: (212) 715-1399

*Attorneys for Plaintiff*
*Gucci America, Inc.*

Guess' brief in opposition to Gucci America, Inc. ("GA")'s motion for a protective order against the disclosure of the confidential communications of Vanni Volpi, Intellectual Property Counsel to GA's Italian affiliate, Guccio Gucci S.p.A. ("GG"), is based on several false premises. *First*, contrary to Guess' assertion, Volpi is not engaged in the practice of law. On the contrary, the record is clear that Volpi is a trained intellectual property specialist who carries out infringement and counterfeiting investigations, so that bar-admitted attorneys can advise GG on intellectual property issues. Under U.S. law, so long as a specialist like Volpi is acting as an agent for, and under the supervision and direction of a bar-admitted attorney, for the purpose of assisting that attorney in formulating legal strategy and rendering legal advice, his communications may be protected under the attorney-client privilege. Moreover, contrary to Guess' argument, the case law does not require that such a specialist be "non-legal."

*Second*, there is no rule that in order for U.S. privilege law to apply, Volpi's communications must have originated in the U.S. The issue is whether Volpi's communications "touch base" with the U.S. On the instant record, they do.

*Third*, Guess' experts mischaracterize the state of Italian law both on privilege and disclosure. Contrary to what they say, Italy has no privilege law co-extensive with the U.S. — indeed, as Gucci's expert, Prof. Pocar, states, Italy has no privilege scheme at all, because there is no need for one — communications of this nature are not discoverable in Italian civil litigation. This is also the case in Italian intellectual property litigation, where, as Gucci's expert, Prof. Adriano Vanzetti, states, a claimed infringer, like Guess, would not be able to discover the communications Guess seeks here.

The bottom line is that Volpi's communications, which relate to investigations conducted and proceedings contemplated in the U.S., were carried out to assist bar-admitted attorneys in formulating legal strategy against Guess, and are privileged.

I.    **U.S. Privilege Law Applies**

Guess argues that because Volpi's communications took place in Italy, Italian law applies. This is incorrect. In determining whether U.S. privilege law applies to communications of a foreign national, the issue is not where the communications took place, but whether they "touch base" with the U.S. *See Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) ("*any* communications touching base with the United States will be governed by the federal discovery rules while any communications related to matters *solely* involving [a foreign country] will be governed by the applicable foreign statute.") (quoting *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992)) (emphasis added).

Thus, regardless of where Volpi was physically located, the critical question is whether his communications touch base with the U.S., that is, whether they related to a U.S. legal matter, proceeding or initiative. *Id.*; *see also In re Philip Servs. Corp. Sec. Litig.*, No. 98 Civ. 0835, 2005 WL 2482494, at *1–2 (S.D.N.Y. Oct. 7, 2005) (opinion letter written by a Canadian attorney regarding a public offering in the U.S. found to touch base with the U.S.). Indeed, in *Astra*, communications between Swedish employees and Korean counsel relating to patent prosecutions in the U.S. were found to "touch base" with the U.S., and the Court applied U.S. privilege law. *Astra*, 208 F.R.D. at 98. So long as a communication has more than an incidental connection to the U.S., it may touch base with the U.S., in which case the U.S. has the most direct and compelling interest in whether the communication remains confidential. *Id.*; *see also VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8, 16 (D. Mass. 2000).[1]

---

[1] Further, contrary to Guess' suggestion, the communication need not relate exclusively to a U.S. legal matter in order to "touch base" with the U.S. Guess' cases on this issue are not on point. In *Tulip Computer Int'l B.V. v. Dell Computer Corp.*, No. Civ. A. 00-981, 2002 WL 31556497 (D. Del. Nov. 18, 2002), a touching base analysis was not performed, because the court found that U.S. and Dutch privilege law would treat the documents the same. *Id.* at *2. Nevertheless, the court stated that many of the documents touched base with the U.S., even though they related to both European and U.S. patents. *Id.* at *2 n.8. In *2M Asset Mgmt., LLC v. Netmass, Inc.*, No. 2:06 Civ. 215, 2007

Footnote continued on next page

The Volpi communications in question touch base with the U.S. As the record establishes, these communications relate to two investigations Volpi was assigned to conduct by bar-admitted attorneys: the first, in 2007, concerned Guess' use of the term "Twirl" for watches, and the second, in 2008-2009, related to Guess' infringing activities that are the subject of this suit. In the case of the "Twirl" watch, Volpi's communications clearly "touched base" with the U.S. — indeed, ultimately, Volpi wrote to Guess in the U.S. asking that it stop using the "Twirl" name in the U.S. and elsewhere, and Guess wrote back from the U.S. saying it would agree to do so. Ederer Reply Decl. ¶¶27–28, Exs. C–D. As for the investigations leading to this lawsuit, the record demonstrates that while parallel proceedings were instituted in the U.S. and Italy, the U.S. case was the driver, since Guess is a U.S.-based company, and U.S. injunctive relief would be the only way to stop Guess' infringing activity on a global basis, which was Gucci's overall objective. Della Rosa Reply Decl. ¶¶2–8. On this record, the U.S. has the most compelling interest in Volpi's communications, and U.S. privilege law should apply.[2]

## II. Volpi's Communications Are Protected from Disclosure Under U.S. Privilege Law

In its opposition (Guess Opp. Br. at 11–15), Guess argues that Gucci's theory of privilege, based on principles of agency, should not apply, because Volpi was not merely assisting bar-admitted counsel, and was not acting in a "non-legal" capacity. This argument, again, is belied by the record, and contrary to the law.

First, there is no dispute that Volpi is not a lawyer — he holds no law degree, and is not

---

Footnote continued from previous page
WL 666987 (E.D. Tex. Feb. 28, 2007), the court was merely responding to the argument that because one document touched base with the U.S., all documents touch base with the U.S. *Id.* at *3. Gucci does not make this argument.

[2] As for Guess' contention (Guess Opp. Br. at 1–2) that Volpi changed his story in midstream, that is not the case. Volpi never testified, as Guess suggests, that he had nothing to do with investigating Guess' activities in the U.S. — all he said was that GG is not responsible for maintaining U.S. trademarks, because GG is not the registered owner. On the other hand, Volpi's declaration makes clear that he, at attorney Della Rosa's direction and under her supervision, coordinated the worldwide investigation of Guess, working closely with GA's in-house legal team. Volpi Decl. ¶¶2–3, 8, 10–11, 13–19; *see also* Della Rosa Reply Decl. ¶¶7–8. Further, Volpi clearly states that it has always been his job to coordinate global trademark investigations and enforcement initiatives of this kind, working with GA's U.S. legal team when the investigation involves infringements in the U.S. Volpi Decl. ¶¶4–5.

3

eligible to practice law. Rather, he was hired by GG as an intellectual property specialist, with, at the time, over 10 years experience investigating intellectual property infringements and counterfeiting for luxury goods companies. He is no different than other non-lawyers who work in this area, including in-house security directors, loss prevention managers and investigators, whose sole job it is to assist lawyers with intellectual property infringement and counterfeiting investigations.[3] There is also no evidence that Volpi operates as a *de facto* lawyer — the fact that he has received awards for his work simply means he is good at what he does. Indeed, the evidence is to the contrary — as Guess itself has previously said, Volpi is a "non-lawyer who was retained by Guccio Gucci to oversee IP enforcement." Ederer Reply Decl. ¶17.

Second, as for Guess' argument that *U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961) holds that only the communications of "non-legal" specialists may be privileged under an agency theory, *Kovel* says nothing of the sort. The communications of a non-lawyer skilled at conducting intellectual property investigations are as eligible for privilege protection as those of a patent agent (also a trained "legal" professional), an accountant or a psychiatrist. *See Lugosch v. Congel*, No. 1:00 Civ. 0784, 2006 WL 931687, at *17 (N.D.N.Y. Mar. 6, 2006) (finding communications of investigators retained by attorney privileged). Further, the individual in question need not be a mere conduit for the communications of others. Under agency principles, a specialist such as Volpi is afforded a high degree of autonomy in carrying out his assigned tasks, and the supervising attorney need not be involved in every communication in order for the privilege to apply. *See In re Rivastigmine Patent Litig.*, 05 MD 1661, slip op., at 6–7 (S.D.N.Y.

---

[3] Gucci is, of course, not advocating, as Guess suggests, that this Court render a decision that will allow U.S. law firms to restructure to employ one attorney and hundreds of non-attorneys. Many U.S. law firms and corporate legal departments employ specialists like Volpi, who assist in intellectual property infringement investigations and similar activities. Ederer Reply Decl. ¶¶18–19, Ex. A. Under the circumstances of this case, the communications of those specialists may be privileged as well.

Jan. 5, 2006); Ederer Decl. Ex. D.[4]

### III. Under Italian Law, Volpi's Communications Should Not be Disclosed

Guess also argues that if Volpi's communications do not touch base with the U.S., they should be disclosed, because, as a non-lawyer, his communications are not protected from disclosure in Italy. As noted in *Astra*, however, where, the country in question has no privilege law co-extensive with the U.S., and the communications in issue are not discoverable under local civil rules, under principles of comity a U.S. court will not order their wholesale production. *Astra*, 208 F.R.D. at 101–02. Those principles apply here, since, as Prof. Pocar states, Italy has no law of privilege, the reason being there is no need for one, as the documents in question would not be discoverable in Italian civil litigation. Pocar Decl. ¶¶6-18; Pocar Reply Decl. ¶¶3-6.

Guess' experts argue two things: first, that Italy has a privilege scheme — just not one that covers the communications of an in-house counsel — and second, the communications Guess seeks would be discoverable in Italy, especially in intellectual property litigation. Both arguments are wrong. As Prof. Pocar reconfirms in his reply declaration, the Italian rule, which Guess' expert, Ferrari, refers to as a privilege, is not a rule of privilege at all; rather, it is an ethical code that prohibits outside counsel from disclosing communications with their clients. Pocar Reply Decl. ¶¶4–5. Unlike U.S. privilege law, this rule is neither an evidentiary rule, nor a right held by the client.[5] The fact remains that, like Korea, Italy has no privilege scheme.

---

[4] Guess also contends that Volpi's communications with respect to the "Twirl" watch should be disclosed because Della Rosa had not yet joined the company, and, therefore, Volpi was not acting as the agent for any bar-admitted attorney. However, as the record shows, at all times, including the period in which he was working on the "Twirl" watch investigation, Volpi was also operating under the supervision and direction of Solomon, a bar-admitted attorney, to whom Della Rosa and Della Rosa's predecessor reported. Solomon Decl. ¶¶4–7; Della Rosa Decl. ¶22.

[5] This is not a novel concept. Many U.S. courts have recognized the difference between an ethical code prohibiting an attorney from disclosing client confidences, and the attorney-client privilege, which is a right held by the client, not an obligation of the attorney. One reason for this distinction is that courts cannot order production of communications protected by attorney-client privilege, whereas they have the power to order production of communications protected by lawyer confidentiality codes or secrecy laws, if there are compelling reasons to do so. Pocar Decl. ¶¶12–18 (discussing Article 200 of the Italian Code of Criminal Procedure and Article 9 of the Attorney's Code of Conduct). See *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 188 F.R.D. 189, 199

Footnote continued on next page

Guess' argument that Volpi's communications would be discoverable in Italian litigation, especially in intellectual property cases, is also wrong. First, as Prof. Pocar states (Pocar Decl. ¶7; Pocar Reply Decl. ¶¶6–11), and as Guess' experts Ferrari and Giudici concede (Ferrari Decl. ¶¶4, 6; Giudici Decl. ¶¶11–12), Gucci could not be compelled to produce these documents under Italian general litigation rules. Second, as Gucci's expert Prof. Vanzetti states, Volpi's communications could not be discovered in Italian intellectual property litigation, where discovery rights are equally limited, and in any event extend only to the claimant, not the infringer. Vanzetti Reply Decl. ¶¶5–22. In particular, Article 121, the section of the Intellectual Property Code relied on by Giudici, has never been extended to infringers. *Id.* at ¶¶15–22. Further, even if an Italian court were to issue a production order under Article 121, GG still could not be compelled to produce any documents. *Id.* at ¶¶13–14. Therefore, under *Astra*, since Italy has no privilege scheme, and as Volpi's communications would not be discoverable in Italian litigation, under principles of comity they should not be discoverable here.

Magistrate Judge Francis' decision in *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69 (S.D.N.Y. 2006) is not to the contrary. In that case, Judge Francis ruled that the principles set forth in *Astra* should not apply because, first, as the parties in *Rivastigmine* agreed (and as Guess concedes), Switzerland has an attorney-client privilege scheme, and second, the documents in question would be discoverable under Swiss law. On the first point, Judge Francis stated that "[i]n this case, [] the absence of privilege results not from the lack of comparability of the Swiss and U.S. legal systems, but from the fact that Swiss law specifically excludes the documents at issue from the privilege it recognizes." *Rivastigmine*, 237 F.R.D at 78. On the second point, Judge Francis found that even if there was no privilege scheme in Switzerland, the documents at

---

Footnote continued from previous page
(S.D.N.Y. 1999) ("Many of the experts on French law do not appear to have been advised that the attorney-client privilege in the United States is separate from the duty of secrecy . . . .").

issue would have been discoverable under Swiss rules of civil procedure. *Id.* However, as Prof. Pocar confirms (Pocar Reply Decl. ¶¶12–13), contrary to the statements of Guess' expert Prof. Ferrari, Italian law and Swiss law are not similar in this regard — in Italy, there is neither a privilege scheme nor discovery rules that would require disclosure of Volpi's communications.[6] Accordingly, the two central elements of Judge Francis' decision are not present here.[7]

For the foregoing reasons, GA's motion for a protective order as to the communications of Volpi should be granted in all respects.[8]

---

[6] In fact, while Italian civil rules do not require the production of any documents, Swiss rules allow broad document discovery. For example, under Basel-City Civil Procedure, which was the subject of the Court's analysis in *Rivastigmine*, 237 F.R.D. at 77–78, a party "is obliged to disclose" documents "in its possession . . . [that are] in favor of the opposite party." Art. 221.100, § 109. No such discovery rule exists in Italy. Pocar Reply Decl. ¶13.

[7] As for Guess' reliance on *Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006), in that case the Court never addressed the question whether principles of comity should trump foreign law, because the parties agreed that U.S. privilege law should apply. The "segments of French law" Guess refers to in its brief relate not to any conflict of law argument, but rather to the plaintiff's argument that its French in-house counsel were the functional equivalents of U.S. in-house counsel. Gucci makes no such argument here.

[8] As for Guess' argument with respect to Gucci's preservation of its assertion of the work product privilege, for the reasons set forth in Point III of the Moss Reply Brief, Guess' argument is unavailing.

7

Dated: New York, New York
April 27, 2010

                                                    ARNOLD & PORTER LLP

By: *(signature)* Louis S. Ederer
Louis S. Ederer
louis.ederer@aporter.com
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiff Gucci America, Inc.*