UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x

GUCCI AMERICA, INC.,

        Plaintiff,

    - against -

GUESS?, INC., MARC FISHER FOOTWEAR LLC, THE MAX LEATHER GROUP/CIPRIANI ACCESSORIES, INC., SEQUEL AG, K&M ASSOCIATES L.P., VIVA OPTIQUE, INC., SIGNAL PRODUCTS, INC. and SWANK, INC.,

        Defendants.

--------------------------------------------------------------- x

Civil Action No. 09cv4373
(SAS)(JLC)

## REPLY DECLARATION OF DANIELA DELLA ROSA

1.     I am General Counsel of Guccio Gucci S.p.A., a non-party affiliate of plaintiff Gucci America, Inc. I submit this declaration in reply to the opposition papers filed by defendant Guess?, Inc., and in further support of Gucci America's motion for a protective order with respect to the communications of Vanni Volpi.

2.     I understand that, in its opposition papers, Guess is arguing that Italian law should apply to the determination of whether Mr. Volpi's communications are subject to the attorney-client privilege. More specifically, I understand Guess is arguing that Mr. Volpi's communications do not "touch base" with the U.S., because they took place in Italy, not the U.S., and related, in more substantial part, to proceedings contemplated against Guess in Italy. That is not correct.

3.     As the Court is aware, this action was filed, in May 2009, in parallel with an action brought by Guccio Gucci in Italy asserting similar claims against Guess. I was the

1

attorney who ultimately recommended to Guccio Gucci the legal strategy that it proceed with the Italian action, and that this be done on a joint basis with Gucci America's suit in the U.S.

4. It was my understanding, at the time I recommended this strategy, that Guess was a U.S.-based company whose sales and marketing activities originated in the U.S. It was further my belief, based on what I understood about Guess' operations, that Guess' sales and marketing activities were substantially greater in the U.S. than in Italy. Moreover, I understood that the volume of sales of Gucci products is greater in the U.S. than in Italy. Therefore, in recommending that Guccio Gucci proceed with an action for infringement in parallel with a U.S. action, I considered the U.S. component of this strategy to be the more important component.

5. Based on my understanding of the law, any injunctive relief obtained by Guccio Gucci in its action against Guess in Italy would only prevent Guess' infringing goods from being imported into Italy and sold there. On the other hand, if Gucci America succeeded in its U.S. action against Guess, my understanding was that not only would Guess be enjoined from selling its infringing goods in the U.S., but to the extent Guess was selling and/or exporting infringing products from the U.S. to any international markets, it would be enjoined from doing so as well. Accordingly, it was my belief, when I recommended this strategy to my client, that a U.S. injunction would have a far greater impact on Guess' infringing activities than an Italian injunction.

6. Accordingly, I would not have recommended that Guccio Gucci sue Guess in Italy without a parallel action being brought in the U.S. Overall, while I considered both litigations to be important, for the reasons indicated above I considered the U.S. component of the litigation strategy to be more important than the Italian component.

7. Therefore, when I assigned Mr. Volpi to conduct an investigation of Guess' activities in preparation for these proceedings, my instructions were not limited to the prospective Italian proceeding. I also instructed Mr. Volpi to conduct an investigation of Guess' activities in the U.S., working together with Gucci America's U.S. legal department, so that I could determine whether the joint litigation strategy I was considering made sense.

8. Based on my near-daily contact and face-to-face discussions with Mr. Volpi during the period that he was investigating Guess' activities at my instruction (approximately March 2008 to May 2009), it was my understanding that Mr. Volpi was communicating with numerous business and legal personnel, both within Guccio Gucci and at various Gucci affiliates, in particular Gucci America, all in furtherance of my objective to formulate and recommend the most effective legal strategy to stop Guess' infringing activities on a global basis. As I expected, after Mr. Volpi completed his investigation, it was clear to me that centerpiece of that strategy would have to be litigation in the U.S.

Declared under penalty of perjury this 23 day of April, 2010.

_____
DANIELA DELLA ROSA