UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

GUCCI AMERICA, INC.,

          Plaintiff,

    - against -

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

          Defendants.

------------------------------------------------------------ x

Civil Action No. 09cv4373
(SAS)(JLC)

## REPLY DECLARATION OF LOUIS S. EDERER

    1.    I am a partner in the law firm of Arnold & Porter LLP, attorneys for Plaintiff Gucci America, Inc. ("Gucci") in the above-captioned action. I submit this Reply Declaration in further support of Gucci's two motions for protective order with respect to the privileged communications of Jonathan Moss and Vanni Volpi.

    2.    In Defendant Guess?, Inc. ("Guess")'s opposition to Gucci's motions, Guess argues that Gucci should be required to produce the communications that are the subject of those motions because Gucci's privilege log is inadequate. This is the first time that Guess has made this argument.

    3.    The privilege log which Guess refers to was first produced to Guess on the morning of February 23, 2010, the second day of the deposition of Vanni Volpi.

    4.    Three weeks later, on March 16, 2010, Guess submitted a pre-motion conference letter to Judge Scheindlin, in which it first presented its arguments that the communications of

Moss and Volpi are not subject to attorney-client privilege. There was no mention in this letter of the purported inadequacy of Gucci's privilege log.

5. Gucci responded to Guess' March 16, 2010 letter by letter dated March 19, 2010. Gucci did not address any issue concerning the adequacy of its privilege log in its March 19, 2010 letter, as there was no reason to do so.

6. On March 22, 2010, Guess' counsel Robert Welsh sent another letter to Judge Scheindlin, in response to Gucci's March 19, 2010 letter. In that letter, Guess made additional arguments in support of its position that Gucci should not be entitled to invoke the attorney-client privilege with respect to the communications of Moss and Volpi. Guess further urged the Court to conduct an *in camera* inspection of the documents listed on Gucci's privilege log. There was no mention in this letter, however, of the purported inadequacy of Gucci's privilege log.

7. On March 25, 2010, Judge Scheindlin issued an order referring the issues raised in Guess' March 16, 2010 letter to Magistrate Judge Fox.

8. On March 26, 2010, an order was entered reassigning the March 25, 2010 referral to Magistrate Judge Cott.

9. On March 26, 2010, Guess' counsel sent a letter to Magistrate Judge Cott. In that letter, Guess again urged the Court to conduct an *in camera* inspection of the documents listed on Gucci's privilege log. Once again, however, there was no reference in Guess' March 26, 2010 letter to the purported inadequacy of Gucci's privilege log.

10. On March 30, 2010, Magistrate Judge Cott convened a conference call to discuss with counsel the issues that had been referred to him for consideration, and to set a briefing schedule for Gucci's motions. During this call, Mr. Welsh once again urged the Court to

conduct an immediate *in camera* inspection of the documents listed on Gucci's privilege log. Magistrate Judge Cott, however, declined to do so, indicating that the first issue to be determined was whether Gucci had the right to invoke the attorney-client privilege with respect to Moss and Volpi.

11. In addition to the privilege issues raised in the parties' March 16, 2010 and March 19, 2010 letters that precipitated the order of reference, Magistrate Judge Cott, at the end of the conference call, gave Mr. Welsh the opportunity to raise any other issues that he believed to have been referred to the Court.

12. In response, Mr. Welsh indicated that his March 16, 2010 letter raised an issue concerning Gucci's production of a supplemental privilege log that would identify not only the communications of Volpi as to which Gucci claimed privilege, but also the communications of Moss. The Court then asked counsel for Gucci whether it was prepared to produce such an amended privilege log. Gucci's counsel indicated that Gucci would produce such an amended privilege log by April 2, 2010.

13. Thereafter, Magistrate Judge Cott once again asked Mr. Welsh whether he believed there were any additional issues raised in the parties' March 16 and 19, 2010 letters that had not been discussed on the conference call. Mr. Welsh responded that there were not.

14. At no time during the conference call did Mr. Welsh indicate that Guess had ever raised any issue as to the adequacy of Gucci's privilege log, or that this issue had been referred to Magistrate Judge Cott for consideration.

15. On April 2, 2010, Gucci produced an amended privilege log, in which it added six entries to the more than 150 entries that appeared on its February 23, 2010 privilege log. A copy of Gucci's amended privilege log is attached as Exhibit G to the April 16, 2010 Declaration in

Opposition of Guess' counsel, Robert Welsh, to Gucci's motion for protective order with respect to Volpi. On the same day, Gucci filed its two motions for protective order.

16. Thereafter, at no time did Guess raise any issue concerning the adequacy of Gucci's privilege log until it filed its opposition papers on April 23, 2010, two months after it first received a copy of the privilege log.

17. In its opposition to Gucci's motion for protective order with respect to the communications of Volpi, Guess contests that Volpi is an intellectual property specialist whose job it is to conduct and coordinate intellectual property and counterfeiting investigations, in order to assist bar-admitted attorneys in formulating legal strategy and rendering legal advice. Among other things, Guess argues that there really is no such thing as an intellectual property specialist, and that Volpi is a *de facto* lawyer. Guess takes this position notwithstanding that in its March 22, 2010 letter to Judge Scheindlin, Mr. Welsh described Volpi to the Court as a "non-lawyer who was retained by Guccio Gucci to oversee IP enforcement."

18. I have been prosecuting intellectual property infringement and counterfeiting cases for more than 30 years. Over this period, I have become aware that many law firms practicing in the area of intellectual property enforcement have employed non-lawyer intellectual property specialists like Volpi to assist in gathering information, coordinating investigations with outside investigators, and interfacing with law enforcement officials.

19. In addition, I am aware that many companies employ intellectual property specialists such as Volpi to assist their in-house lawyers, as well as outside counsel, in conducting intellectual property investigations and prosecutions. Often these individuals are not lawyers, but rather specialists experienced in dealing with investigators and law enforcement

4

officials. Attached as Exhibit A hereto are biographical references to certain such individuals that were located on the Internet.

20. On April 16, 2010, at 4:32 p.m., and then again at 5:02 p.m., I received telephone calls from a New York Law Journal reporter named Noeleen G. Walder. I was not at my desk for either of these calls. On the second call, Ms. Walder left me a voicemail indicating she was writing a story on the motion for protective order with respect to Jonathan Moss, and wanted to know whether I wished to comment on Guess' opposition papers to that motion and to the Volpi motion.

21. As Guess' opposition papers to these two motions, which were due to be filed on April 16, had not yet been posted on the Court's electronic docket (ECF), I called Ms. Walder back at 5:10 p.m. to ask her what she was calling about. Ms. Walder indicated to me that she was, in fact, referring to Guess' opposition papers to the two motions. When I told Ms. Walder that these papers had not yet been posted on the Court's electronic docket, she expressed surprise, indicating to me that she had been assured by Guess' counsel that the papers had been filed. I then asked Ms. Walder how long she had been in possession of Guess' opposition papers, and she said the papers had been provided to her hours earlier. Ms. Walder then indicated she planned to contact Guess' counsel to find out why the papers had not yet appeared on the Court docket.

22. Within minutes following my telephone conversation with Ms. Walder, the first filing of Guess' opposition papers was posted on the Court's electronic docket. I received notice of this filing at 5:17 p.m. The filing itself indicated that it had been entered on the docket by Guess' counsel, Mr. Welsh, at 5:15 p.m.

23. Thereafter, Guess' counsel made six additional filings on the Court's electronic docket, all relating to Guess' opposition to Gucci's motions for protective order. The last such filing was made at 6:25 p.m., 25 minutes after the New York Law Journal's deadline.

24. The next morning, on April 17, 2010, a three page story appeared on the New York Law Journal website concerning Guess' opposition to Gucci's motions for protective order. A copy of that story is attached as Exhibit B. While the story is dated April 19, 2010, it first appeared on the New York Law Journal's website the morning of April 17.

25. In addition to quoting from Guess' opposition papers, the April 17, 2010 New York Law Journal story also quotes from an April 16, 2010 letter submitted by Guess' counsel to Magistrate Judge Cott on Friday, April 16, 2010, in which counsel requests that Guess be given additional time to submit a supplemental brief to the Court with respect to an affidavit filed earlier in the day by Mr. Moss.

26. A copy of the April 16, 2010 letter submitted by Guess' counsel to Magistrate Judge Cott was not provided to me until 5:45 p.m. on April 16, 2010, fifteen minutes before the New York Law Journal's 6:00 p.m. deadline. Further, this letter was not filed by Guess on the Court's electronic docket on April 16, 2010, so the only way the New York Law Journal could have obtained possession of that letter on that day was through Guess' counsel.

27. Attached as Exhibit C is a true copy of a letter dated April 18, 2007 from Vanni Volpi to Guess Inc. and Guess Watches Inc.

28. Attached as Exhibit D is a true copy of a letter dated May 2, 2007 from Frank A. Sherer, Jr., Timex (Guess watch licensee), to Vanni Volpi.

29. Attached as Exhibit E is a side-by-side comparison of certain Gucci products and allegedly infringing Guess products at issue in this case.

Declared under penalty of perjury this 27th day of April, 2010.

_____
LOUIS S. EDERER