UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

GUCCI AMERICA, INC.,

                Plaintiff,

        - against -

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

                Defendants.

------------------------------------------------------------------ x

Civil Action No. 09cv4373
(SAS)(JLC)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF
GUCCI AMERICA, INC.'S MOTION FOR A PROTECTIVE ORDER
AGAINST THE DISCLOSURE OF THE PRIVILEGED COMMUNICATIONS
OF PLAINTIFF'S IN-HOUSE LEGAL COUNSEL JONATHAN MOSS**

ARNOLD & PORTER LLP
Louis S. Ederer, Esq.
399 Park Avenue
New York, New York 10022
Tel: (212) 715-1000
Fax: (212) 715-1399

*Attorneys for Plaintiff
Gucci America, Inc.*

This motion is not about whether plaintiff Gucci America, Inc. ("Gucci")'s former in-house counsel Jonathan Moss had the right to practice law, or maintain federal bar memberships, while on inactive status with the California bar. This motion is about attorney-client privilege. More particularly, it is about whether Gucci should be deprived of the most sacred right a litigant enjoys under U.S. law — the right to protect against disclosure of confidential communications with its attorney — because Moss, a duly admitted member of the California bar who was never disbarred, suspended or disciplined, voluntarily placed himself on inactive status before joining Gucci, and then neglected to pay the additional funds required to go active when he later became Gucci's in-house counsel. No federal court has ever deprived a client of this right under these circumstances; indeed, no federal court, in any published decision, has found, under these circumstances, that the individual acting as an attorney was not an attorney.

What defendant Guess?, Inc. ("Guess") is asking this Court to do is not only unprecedented, but far-reaching. The attorney-client privilege, shielding, as it does, the most frank and open communications between attorney and client from any apprehension of disclosure, is "one of the bastions of [] ordered liberty", "largely sacrosanct", and therefore "carefully guarded by the courts."[1] Consequently, the privilege should never be forfeited because of some undue conduct on the part of the attorney to whom the communication is made. *See Nesse v. Pittman*, 202 F.R.D. 344, 354 (D.D.C. 2001) (it would be "perverse to visit the sins of the lawyer on the client's head" and deprive a corporate client of the attorney-client privilege).

## I. Moss Was an Attorney for Purposes of Applying the Attorney-Client Privilege

On the critical question whether Moss qualifies as an attorney for purposes of applying the attorney-client privilege, Guess attacks Gucci's position that *S.E.C. v. Beacon Hill Asset*

---

[1] *See Tikkun v. City of New York*, No. 05 Civ. 9901, 2010 WL 550542, at *5 (S.D.N.Y. Feb. 17, 2010) (quoting *S. Scrap Material Co. v. Fleming*, No. Civ.A. 01-2554, 2003 WL 21783318, at *1 (E.D. La. July 30, 2003), and *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 722 n.24 (D. Md. 2009)).

*Mgmt. LLC*, 231 F.R.D. 134, 138 (S.D.N.Y. 2004), sets out the test in this Circuit, namely, that he be "a member of the bar of a court". Apparently, Guess claims this is not the law in this Circuit. However, the Second Circuit has cited this very test approvingly, noting that it is a "much quoted formulation." *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962). Indeed, the test in *Beacon Hill* is one of the most "widely-quoted" formulations of the attorney-client privilege. 8 Charles A. Wright *et al.*, *Federal Practice and Procedure* § 2017 (3d ed. 1998). Moss, a member at all times of the California bar and two federal court bars, meets this test.[2]

Guess further argues that Gucci cites no cases in which an attorney not authorized to practice law was nevertheless deemed an attorney for purposes of the attorney-client privilege.[3] Guess' argument, however, misses the point. In fact, it is Guess that fails to cite any case where a client was deprived of the privilege when communicating with an attorney who was a member of a bar, was licensed to practice law, had not been disbarred, suspended or disciplined, and met all the qualifications of an attorney authorized to practice law. The only cases that have ever dealt with the issue of whether someone in Moss' situation (a bar member admitted to practice law, but voluntarily on inactive status) is still an attorney, have held that he is.

Thus, in *Tyree v. Dance*, No. 88-15775, 1990 WL 40298 (9th Cir. Apr. 4, 1990), cited by

---

[2] Guess apparently also argues that the *Beacon Hill* standard, long accepted in the Second Circuit, is different from that set out in Supreme Court Standard 503, requiring the putative attorney to be "a person authorized to practice law in any state or nation." Gucci believes that the two standards are the same; in both cases, the issue is whether an individual has met all of the qualifications to practice law. Indeed, the Advisory Committee Notes to the Supreme Court Standard define a "lawyer", for purposes of the Standard, as a "person licensed to practice law," which Moss was at all times. Advisory Committee Note to Supreme Court Standard 503(a)(2), 56 F.R.D. 183, 238 (1973). Were it otherwise, the literal application of Supreme Court Standard 503 would lead to absurd results, as one could imagine any number of circumstances under which a bar member, even for a short time, is not "authorized to practice" in the location in which he finds himself.

[3] Indeed, at page 5 of its opposition brief, Guess asserts there are decisions going the other way. However, in *Brink v. DaLesio*, 82 F.R.D. 664, 673–74 (D. Md. 1979), the Court declined to invoke the attorney-client privilege not because the putative attorney was on inactive status, but because he at all times acted as the party's accountant, not as the party's attorney, and an earlier attempt to invoke the accountant-client privilege was unsuccessful. In *Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 3476735, at *17 (S.D.N.Y. Nov. 30, 2006), and *In re Grand Jury Subpoenas Dated Jan. 20, 1998*, 995 F. Supp. 332, 337 (E.D.N.Y. 1998), the client's representatives had never been admitted to any bar, much less gone inactive.

Gucci and addressed only briefly by Guess, the attorney in question was a member of the federal district court in Utah, practicing as an assistant U.S. attorney. In denying a criminal's attempt to overturn his conviction on the basis that the attorney was on inactive status in the California bar, the Court found that the attorney was a member of the California bar, and "[h]is status in California would not have determined his status as a member of the federal bar in any event, 'even if the state bar membership was the predicate upon which [he] was admitted to the federal court.'" *Tyree*, 1990 WL 40298 at *2 (quoting *United States v. Hoffman*, 733 F.2d 596, 599 (9th Cir. 1984)).[4] Similarly, in *Applebaum v. Rush Univ. Med. Ctr.*, 231 Ill. 2d 429 (2008), cited by Gucci but ignored by Guess, the Illinois Supreme Court denied a defendant's attempt to nullify a complaint on the grounds that the plaintiff's attorney was on inactive status in the Illinois bar, a status he, like Moss, could have corrected at any time by writing a larger check, stating:

> [I]t is a fundamental error to equate such a status change ["active" to "inactive"] with stripping the attorney of his or her license to practice law. A change in an individual's ARDC [Attorney Registration and Disciplinary Commission] *registration status* has no relation to, and does not call into question, that person's skill, fitness or competency to practice law, which is assured through his or her initially meeting the requirements to obtain - and thereafter to retain - a valid *license* to practice law.

*Applebaum*, 231 Ill. 2d at 441 (emphasis in original).

## II.     Gucci Had a More Than Reasonable Belief that Moss Was an Attorney

On the issue of whether Gucci's belief that Moss was an attorney was reasonable, Guess' arguments are similarly unavailing. Guess' contention that Judge Ellis' decision in *Fin. Tech. Int'l, Inc. v. Smith*, No. 99 Civ. 9351, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000), controls, ignores the diametrically different circumstances in that case. *Id.* at *1. In *Fin. Tech.*, the

---

[4] Guess' discussion of *Tyree* is limited to an attempt to distinguish the membership rules of the District Court of Utah from those of the District Courts for the Central and Southern Districts of California, of which Moss has at all times been an active member. Guess Opp. Br. at 4 n.8. However, while the Utah District Court does not, apparently, have written rules stating that an active state bar membership is a predicate to continued membership in the district court bar, obviously the Court in *Tyree* assumed this was the case.

3

putative attorney was initially hired as a lawyer, and had never been admitted to any bar — essentially, he was a poseur who defrauded his employer. *See id.* Here, Moss was hired by Gucci as a non-lawyer, on the referral and recommendation of its outside counsel, and was a bar member. As noted in Gucci's moving brief (*see* Point III.B), in cases where a client's "reasonable belief" is at issue, that belief must be determined based on all of the circumstances, and there is no bright line rule that, no matter what, unless a corporation investigates its counsel's bar status, it loses the privilege.[5]

Moss' recently filed affidavit changes nothing. Indeed, Moss supports Gucci's motion, indicating that at all times he communicated internally, he expected these communications to be confidential and subject to privilege. Moss Decl. ¶1. He further concurs that at all relevant times he was a licensed, bar-admitted attorney who met all the requirements to practice law. *Id.* at ¶¶4, 6, 10. In addition, although Moss, who has been terminated by Gucci, disputes that he "withheld" from Gucci the fact that he was on inactive status in the California bar, he does not contest that he was aware of his inactive status at all times (that is, his decision to remain inactive was conscious, not inadvertent), and never disclosed this to Gucci. *Id.* at ¶¶6, 10. On the contrary, his affidavit confirms that all he ever told Gucci was that he was a bar member (which he was), and that he was authorized to practice law (which he believed he was).[6]

---

[5] Guess' reliance on *U.S. v. Boffa*, 513 F. Supp. 517 (D. Del. 1981) is also misplaced. Guess Opp. Br. at 7. Aside from the fact that no court or scholar has ever referred to *Boffa* as "[t]he leading case on the issue of reasonable belief," and notwithstanding Guess' misleading quotations of that decision (Guess Opp. Br. at 7; Guess Supp. Br. at 3), *Boffa* requires no separate showing of the "precautions" the movant took to ascertain the putative attorney's status. Rather, in determining "reasonable belief," the *Boffa* Court looked at the totality of the circumstances. Further, Guess ignores the other, far more compelling circumstances the *Boffa* Court took into consideration, such as the facts that the putative attorney was a "con man" with an extensive criminal record who became a "jailhouse lawyer" during his 15 years of incarceration; the "clients" had many overt reasons to suspect he was not actually a lawyer; and the communications at issue involved planned future crimes. Moreover, ultimately the Court rejected the movant's privilege arguments because the communications themselves were not eligible for protection under the attorney-client privilege.

[6] Moss also says it was not he, but Gucci, that paid his California bar fees, and that the form he submitted for payment indicated he was on inactive status. Moss Decl. ¶13. However, Moss does not say that when he processed
Footnote continued on next page

As for Moss' claim that he was initially hired as a lawyer, four Gucci witnesses directly involved in his hiring process, three of whom are not employed by Gucci (two senior partners at the Patton Boggs law firm, and Gucci's former Executive Vice President and CFO, Arthur Leshin), and therefore have no personal or professional interest in this matter, state to the contrary. Indeed, Mr. Leshin, who hired Moss, and to whom Moss reported prior to his promotion to in-house counsel, has not worked for Gucci for seven years.[7]

The bottom line is that under these unique circumstances, Gucci had a more than reasonable belief that Moss was, at all times that he served as Gucci's in-house counsel, a lawyer authorized to practice law. Further, while, according to Guess, "all Gucci had to do was ask," under the circumstances of this case, it had no reason to — Moss was, in fact, a duly admitted bar member; was referred to Gucci by outside counsel; was hired as a non-lawyer; always held himself out as a lawyer; performed legal work competently; and continued to maintain his bar membership throughout his entire tenure, simply failing, for whatever reason, to process the right-sized check. Further, even if Gucci had asked about Moss' bar status, it is quite clear what Moss would have said, which is what he believed to be the truth — that he was a member of the bar, and that he was authorized to practice law. Moss Decl. ¶¶6, 10.

Once again, Guess can cite no case where a court has stripped a corporation (or any party, for that matter) of the protections afforded by the attorney-client privilege in circumstances

---

Footnote continued from previous page
these payments through Gucci, he called anyone's attention to his inactive status, nor does he suggest the company would have refused to pay the additional $300 a year that it would have taken to transfer him to active status.

[7] To the extent Moss claims he acted as Gucci's lawyer, or that Gucci treated him as a lawyer, from the time he was hired, all this proves is what Gucci witnesses have already said, namely, that from the beginning, Moss frequently told others within the company that he was a lawyer authorized to practice law. Lombardo Decl. ¶10; Leleck Decl. ¶¶2–5; Vitale Decl. ¶9. Further, Moss's starting salary says nothing about whether he was hired as a lawyer, since, as he stated, he served in high level, non-legal financial roles at PricewaterhouseCoopers and McKesson before he came to Gucci, and was initially hired because of his financial expertise, not his law degree. Leshin Decl. ¶¶6, 9–10. As for the fact that Moss filed papers in Bankruptcy Court in late 2002 stating that he was a bar member, again, this is consistent with the way he held himself out to other employees at Gucci during this period.

5

similar to these, that is, where the putative attorney was not a poseur. Neither Gucci nor any company should suffer the dire consequences of losing the privilege (here, spanning seven years of communications) under circumstances such as these — otherwise, they would be at risk of losing the privilege every time one of their licensed and qualified in-house lawyers fails to pay his bar dues on time, sends in the wrong form, or for whatever reason goes inactive, before or after he is hired. If Gucci were to lose the privilege under these circumstances, that would be precedent-setting, and the implications would be far-reaching.

### III.   Guess' Other Arguments are Unavailing

Gucci briefly addresses Guess' other arguments. First, the adequacy of Gucci's privilege log is not, at this time, before the Court. The only issue Guess raised to the Court, in its pre-motion conference letter to Judge Scheindlin, in subsequent letters to Judge Scheindlin and Magistrate Judge Cott, and during the conference call with the Court on March 30, 2010, was whether Gucci could assert the attorney-client privilege with respect to Moss. Ederer Reply Decl. ¶¶4–14. Indeed, while Guess has repeatedly argued that the Court should, as a preliminary matter, review the communications listed on Gucci's privilege log *in camera* (an argument this Court rejected during the March 30, 2010 conference), it has never before questioned the adequacy of the log itself. *Id.* at ¶¶2–16.[8] Second, and similarly, with respect to Gucci's work product objections, Gucci did not raise this issue because it was asking the Court to decide the issue now. Rather, it was simply acknowledging that the question whether an individual communication should be protected from disclosure is to be decided, as the Court indicated, in a

---

[8] In any event, Gucci's privilege log complies with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure ("[d]escribe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim" of privilege), and Local Civil Rule 26.2(a)(2)(A) ("[s]uch other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and where not apparent, the relationship of the author, addressees, and recipients, to each other").

two-step process, that is, only after the Court determines whether Gucci has the right to invoke attorney-client privilege with respect to Moss. That remains the threshold issue, and the only issue before the Court at this time.

Finally, while this motion is about attorney-client privilege, this case, lest anyone forget, is about Guess' blatant infringement and counterfeiting of some of Gucci's most important trademarks and designs.[9] Unfortunately, however, to Guess' apparent amusement,[10] this case has become mired in discovery issues that are preventing the Court and the parties from addressing Gucci's substantive claims. After a year of litigation, it is time to decide these issues and move on to the part of the case defendants do not wish to talk about — the merits.

---

[9] A simple comparison of certain Gucci products and just a few of the allegedly infringing Guess products involved in this case, leaves little doubt as to how these Guess products came to be "designed" and manufactured. Ederer Reply Decl. ¶29, Ex. E.

[10] Indeed, while there is nothing to prevent the media from taking an interest in this motion, Guess has been encouraging that interest by releasing its opposition papers and related correspondence to the press before submitting them to the Court. Ederer Reply Decl. ¶¶20–26.

7

Dated: New York, New York
April 27, 2010

                              ARNOLD & PORTER LLP

                    By: _____
                              Louis S. Ederer
                              louis.ederer@aporter.com
                              399 Park Avenue
                              New York, New York 10022
                              (212) 715-1000

                              *Attorneys for Plaintiff Gucci America, Inc.*