UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                             :

GUCCI AMERICA, INC.,                                 :       Civil Action No. 09cv4373
                                                    :       (SAS)(JLC)
           Plaintiff,                   :

           - against -                  :

GUESS?, INC., MARC FISHER FOOTWEAR          :
LLC, THE MAX LEATHER GROUP/CIPRIANI         :
ACCESSORIES, INC., SEQUEL AG, K&M           :
ASSOCIATES L.P., VIVA OPTIQUE, INC.,        :
SIGNAL PRODUCTS, INC. and SWANK, INC.,      :

           Defendants.                  :

-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF GUCCI AMERICA, INC.'S MOTIONS FOR PROTECTIVE ORDER AGAINST THE DISCLOSURE OF WORK PRODUCT

ARNOLD & PORTER LLP
Louis S. Ederer
399 Park Avenue
New York, New York 10022
Tel: (212) 715-1000
Fax: (212) 715-1399
Louis.Ederer@aporter.com

*Attorneys for*
*Plaintiff Gucci America, Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

FACTS AND PRIOR PROCEEDINGS .....................................................................1

ARGUMENT ...............................................................................................................4

I.    The Standards Governing the Protection of Work Product ................................4

II.   Documents Relating to Gucci's Pre-2008 Investigations of Guess ...................6

III.  Documents Relating to Gucci's Post-October 2008 Investigations
of Guess .............................................................................................................8

IV.  Gucci's Privilege Log Complies with the Federal Rules and the
June 29 Decision...............................................................................................10

CONCLUSION ...........................................................................................................10

## TABLE OF AUTHORITIES

## CASES

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 1994 WL 510043
(S.D.N.Y. Sept. 16, 1994) ...................................................................................6,7

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 3156382
(S.D.N.Y. Nov. 15, 2002) .....................................................................................7

*Bank of NY v. Meridien BIAO Bank Tanzania Ltd.*, 1996 WL 490710
(S.D.N.Y. Aug. 27, 1996) .....................................................................................4

*Bovis Lend Lease v. Seasons Contracting Corp.*, 2002 WL 31729693
(S.D.N.Y. Dec. 5, 2002)........................................................................................7

*Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93 (W.D.N.Y. 1999) .............................9

*ECDC Envtl, L.C. v. New York Marine & Gen. Ins. Co.*, 1998 WL 614478
(S.D.N.Y. June 4, 1998).......................................................................................5,7

*Fin. Tech. Int'l, Inc. v. Smith*, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000) ................5

*FTC v. Grolier Inc.*, 462 U.S. 19 (1983)........................................................................5

*Goff v. Harrah's Operating Co.*, 240 F.R.D. 659 (D. Nev. 2007)...................................5

*Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508 (S.D.N.Y. 1992) .............................7

*Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514 (S.D.N.Y. 1992)....................9

*Hertzberg v. Veneman*, 273 F. Supp. 2d 67 (D.D.C. 2003) ...........................................5

*Hickman v. Taylor*, 329 U.S. 495 (1947)........................................................................4

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8 (2d Cir. 1989) ................................7

*In re Application Pursuant to 28 U.S.C. § 1782 for an Order Permitting Christen
Sveaas to take Discovery from Dominique Levy, L & M Galleries and Other Non-
Participants for Use in Actions Pending in Norway*, 249 F.R.D. 96
(S.D.N.Y. 2008) ....................................................................................................9

*In re Copper Market Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001) ........................4

*In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir. 2000) ........................................6

*In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321
(S.D.N.Y. 2003) ....................................................................................................6

*In re LDK Solar Secs. Litig.*, 2010 WL 114009 (N.D.Cal. Jan. 7, 2010) ......................5

*In re Natural Gas Commodity Litig.*, 2005 WL 1457666
　　(S.D.N.Y. June 21, 2005)..........................................................................7

*In re Omeprazole Patent Litig.*, 2005 WL 818821 (S.D.N.Y. Feb. 18, 2005) ...........................6

*Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566
　　(S.D.N.Y. July 24, 2002) ....................................................................4,5

*Kent Corp. v. NLRB*, 530 F.2d 612 (5th Cir. 1976) ....................................................5

*S.E.C. v. Treadway*, 229 F.R.D. 454 (S.D.N.Y. 2005) ...............................................7

*Strougo v. BEA Assocs.*, 199 F.R.D. 515 (S.D.N.Y. 2001) .........................................2,5

*Tribune Co. v. Purcigliotti*, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998)..........................7

*United States v. Adlman*, 68 F.3d 1495 (2d Cir. 1995)............................................4,5

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998)..........................................4,5

*United States v. Nobles*, 422 U.S. 225 (1975) ......................................................4

*Vardon Golf Co., Inc. v. BBMG Golf, Ltd.*, 156 F.R.D. 641
　　(N.D.Ill. 1994)..........................................................................10

## STATUTES AND RULES

Fed. R. Civ. P. 26(b)(3).........................................................................4,5

Fed. R. Civ. P. 26(b)(5).........................................................................10

Fed. R. Civ. P. 72(a) ..........................................................................3

Restatement (Third) of the Law Governing Lawyers § 87 .........................................5

## PRELIMINARY STATEMENT

Plaintiff Gucci America, Inc. ("GA" or "Gucci") respectfully submits this memorandum of law in further support of its pending motions for protective order against the disclosure of communications involving Jonathan Moss, its former in-house counsel, and Vanni Volpi, the Intellectual Property Specialist employed by its Italian affiliate, Guccio Gucci S.p.A. ("GG").  At issue here is whether the Moss and Volpi documents appearing on Gucci's July 19, 2010 Further Revised Amended Privilege Log (the "Log") are protected from disclosure under the work product doctrine.  The documents consist of communications within GA or GG, or between GA and GG, in which Moss and/or Volpi were (i) reviewing Guess products for the purpose of determining whether to pursue legal claims against Guess, and (ii) conducting investigations and preparing for litigation.  As discussed below, these documents are classic work product and fall squarely within the doctrine.  Accordingly, the only issue is whether Guess can demonstrate a "substantial need" for these documents.

The answer is a resounding "No."  Throughout this case, Guess has stated that the sole reason it seeks access to these documents is that they may contain evidence supporting its delay defense.  In particular, Guess has repeatedly indicated that all it needs are "the dates" when Gucci first became aware of Guess products bearing the designs at issue in this case.  As the Court will see, however, Gucci has now provided Guess with the information it seeks, and, in any event, Guess has the ability to obtain any other information of this nature through depositions of the principal individuals involved.

## FACTS AND PRIOR PROCEEDINGS

As the Court is aware, on April 2, 2010, Gucci sought protection against the disclosure of Moss and Volpi communications on two grounds: first, that they were protected by the attorney-client privilege, and second, that they constituted work product.  This Court, in its June 29, 2010

decision (Dkt. 112), found that Moss' communications were not protected by the attorney-client privilege. Whether Volpi's communications are so protected remains to be determined (Dkt. 111). This memorandum addresses only the work product issue, although it remains Gucci's position that all documents on the Log are protected by the attorney-client privilege.

The documents in question fall into two categories. The first consists of pre-2008 communications between Moss and other personnel within GA's and/or GG's legal departments concerning Guess products brought to Moss' attention as possible infringements.[1] In all such instances, Gucci has now provided, in the Log, information sufficient to identify the Guess products under review, and confirmed whether the Guess products contained any of the designs at issue in this case. Ederer Decl. ¶¶ 6-11, Ex. B, Doc. Nos. 1, 3-5, 34-38.

The second category consists of post-2008 communications between Volpi and other GG and/or GA personnel, or between Volpi and GG management, concerning Gucci's preparations for litigation against Guess — Gucci's investigation of Guess' activities, discussions of legal strategy, and compilation of necessary evidence. *Id.* ¶¶ 12-15, Ex. B. These communications can be further divided into two subsets. The first consists of communications relating solely to preparation for the U.S. litigation. As to these communications, Guess has withdrawn its objection to Gucci's assertion of work product, but continues to seek access to them, claiming substantial need. *Id.* ¶ 13, Ex. B. The second subset, consisting of internal communications between Volpi and members of GG's legal department and/or senior management, concern Gucci's preparations for this litigation and a parallel infringement suit in Italy. Certain of these communications, in turn, actually make reference to the U.S. proceeding. *Id.* ¶ 14, Ex. B.

---

[1] In all but one instance, the products came to Moss' attention in connection with communications with outside counsel; indeed, certain of these documents are direct communications between GA and counsel, and, therefore, are separately protected by the attorney-client privilege. Ederer Decl. ¶¶ 10-11. In addition, certain of these documents, consisting of internal review of the contents of privileged communications with outside counsel, are also protected by attorney-client privilege. *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519-20 (S.D.N.Y. 2001).

As noted above, Guess has repeatedly asserted that it seeks access to all these documents for one reason — to determine when Gucci first became aware of Guess products bearing the designs at issue in this case.  Indeed, when asked by Judge Scheindlin why it needed this discovery, Guess' counsel stated: "I just simply want to know the dates, your Honor . . . .  I would like to know the date [Gucci] had any communications about a Guess? mark or product, just the date."  *Id.* ¶ 18, Ex. D.  Similarly, in a June 30, 2010 letter to this Court, Guess' counsel stated that Guess needed such documents to show that "Gucci knew of Guess' use of the marks, logos and designs [at issue in this case] for several years before commencing this lawsuit," and that such evidence is "highly relevant to Guess' . . . affirmative defenses of laches, waiver, estoppel and acquiescence."  *Id.* ¶ 19, Ex. E.

As discussed below, to gain access to Gucci's work product, Guess must show substantial need, that is, it cannot obtain the factual information contained in these documents any other way.  However, aside from the fact that Gucci has now, in the Log, provided detailed descriptions of the documents in question, and, where Guess products were under review, indicated whether they contained any of the designs at issue in this case (*id.* ¶¶ 6-11, Ex. B), whatever additional information Guess claims it needs, it can obtain (or already has obtained) in discovery.  Indeed, Guess has issued subpoenas to both Moss and another former member of GA's legal department, paralegal Jessica Murray, who sent or received several of the documents at issue.[2]  *Id.* Exs. F, H.  Further, Guess' counsel has conceded that Guess will be able to obtain the information it purportedly needs through these depositions.[3]  Thus, as Guess cannot

---

[2] In addition, Guess has already deposed Moss and Volpi extensively, for two full days each, and asked numerous questions about the documents at issue, and Gucci's claimed delay.  Ederer Decl. ¶ 20.

[3] Indeed, in his July 2, 2010 letter opposing Gucci's request for an adjournment of its time to file FRCP 72(a) objections to the Court's June 29, 2010 decision with respect to Moss, Guess' counsel stated "[t]he work product doctrine only applies to the production of documents and will not prevent Mr. Moss from discussing [at his

Footnote continued on next page

demonstrate substantial need, the Moss and Volpi documents should be protected from disclosure.

## ARGUMENT

### I.     The Standards Governing the Protection of Work Product

The work product doctrine, embodied in FRCP 26(b)(3), states in pertinent part:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

This procedural rule, broader than attorney-client privilege, "reflects the strong public policy underlying the orderly prosecution . . . of legal claims." *U.S. v. Nobles*, 422 U.S. 225, 236-37 (1975); *see also U.S. v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) ("*Adlman I*").  It allows parties and their attorneys to "prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by [their] adversaries." *U.S. v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) ("*Adlman II*").  Accordingly, a litigant seeking access to work product bears a heavy burden. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

Gucci expects Guess will argue that as Moss and Volpi are not attorneys, their documents cannot be protected as work product.  However, work product protection is not limited to materials prepared by attorneys, *see In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) ("documents prepared in anticipation of litigation need not be created at the request of an attorney");[4] to the contrary, materials prepared by a ***party*** in anticipation of

---

Footnote continued from previous page

deposition] when he and others at Gucci first became aware of the Guess marks, logos and designs at issue in this lawsuit." *See* Ederer Decl. ¶ 24, Ex. J.  Further, Guess' counsel has repeatedly stated that Guess needs discovery of Murray for the same reason — to determine whether, and to what extent, she was monitoring Guess' infringing activity.  *Id.* ¶¶ 21-22, Exs. F, G.

[4] *See also Bank of NY v. Meridien BIAO Bank Tanzania Ltd.*, 1996 WL 490710, at *2 (S.D.N.Y. Aug. 27, 1996) ("the [work product] doctrine encompasses documents prepared by the party, whether or not it is done for that party's attorney"); *Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566, at *9 (S.D.N.Y. July 24, 2002)

Footnote continued on next page

potential litigation is protected to the same degree. *See Fin. Tech. Int'l, Inc. v. Smith*, 2000 WL 1855131, at *7 (S.D.N.Y. Dec. 19, 2000) (FRCP 26(b)(3) was amended "to give equal protection to the work product of non-attorneys"); *ECDC Envtl, L.C. v. New York Marine & Gen. Ins. Co.*, 1998 WL 614478, at *15 (S.D.N.Y. June 4, 1998) (work product applies "to documents prepared by a 'party' and 'representatives' of that party").[5]

Thus, regardless of whether the material was prepared by an attorney or a party representative, the touchstone for work product protection is whether it was prepared "in anticipation of litigation." *Adlman II*, 134 F.3d at 1195. Further, such material does not have to be created to "aid in the conduct of litigation," *id.* at 1198; rather, work product may include "documents created prior to the events giving rise to the litigation," *Adlman I*, 68 F.3d at 1501. Indeed, work product may be protected even if litigation does not ensue, so long as it was prepared "because of" litigation that was reasonably anticipated. *Adlman II*, 134 F.3d at 1195.[6]

Finally, in evaluating work product claims, a distinction is drawn between "non-opinion" and "opinion" work product. *See* FRCP 26(b)(3). "Non-opinion" work product, such as documents compiling facts and other evidence, *see Strougo*, 199 F.R.D. at 521, may be subject to disclosure, but only where the party seeking production demonstrates a "substantial need," and would suffer "undue hardship" if it were required to obtain the information in another manner,

---

Footnote continued from previous page
("[t]he fact that the privilege log does not list an attorney as an author or recipient of any of [the] documents does not mean that work product protection is unavailable").

[5] *See also In re LDK Solar Secs. Litig.*, 2010 WL 114009, at *1 (N.D.Cal. Jan. 7, 2010) (documents created by an employee of a party that lacked an attorney's mental impressions were protected); *Goff v. Harrah's Operating Co.*, 240 F.R.D. 659, 660 (D. Nev. 2007) ("[i]t may be surprising to long-time practitioners that 'a lawyer need not be involved at all for the work product protection to take effect'"); *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 78 (D.D.C. 2003) ("[E]mployees are by definition, 'party representatives' under Rule 26(b)(3). . . . And defendants need not demonstrate that its employees were acting at the direction of or under the supervision of an attorney").

[6] *See Kent Corp. v. NLRB*, 530 F.2d 612, 623 (5th Cir. 1976), *cited with approval in*, *FTC v. Grolier Inc.*, 462 U.S. 19, 26–27 & n.8 (1983); Restatement (Third) of the Law Governing Lawyers § 87 cmt. i ("The fact that litigation did not actually ensue does not affect the immunity").

*see In re Grand Jury Proceedings*, 219 F.3d 175, 192 (2d Cir. 2000). "Opinion" work product, on the other hand, consists of the "mental impressions, conclusions, opinions and theories" of a party or its counsel, *see In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 333 (S.D.N.Y. 2003), and is subject to disclosure "only in rare and extraordinary circumstances," *see In re Omeprazole Patent Litig.*, 2005 WL 818821, at \*9 (S.D.N.Y. Feb. 18, 2005); *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 1994 WL 510043, at \*10 (S.D.N.Y. Sept. 16, 1994) (even if substantial need is shown opinion work product is "beyond . . . reach").

Applying these principles, it is clear that the documents at issue were created in anticipation of litigation, and contain protected work product. To the extent such work product consists of "opinion," that is, the mental impressions of Moss, Volpi and their colleagues, it is absolutely protected. To the extent it is of the "non-opinion" variety, Guess cannot demonstrate "substantial need," as the information Guess claims it needs has already been provided, or, as Guess has conceded, can be obtained by other means.

## II.   Documents Relating to Gucci's Pre-2008 Investigations of Guess

As noted above, the first category of documents to which Guess seeks access consists of pre-October 2008 communications involving Moss. Ederer Decl. Ex. B, Doc. Nos. 1, 3-5, 34-38. In each document, Moss and others at GA and/or GG are reviewing Guess products brought to Moss' attention as potential infringements. For each communication, Gucci has identified the Guess products under discussion, and indicated whether they contained any of the marks or designs at issue in this case. *Id.* ¶¶ 6-11. While litigation did not immediately ensue following the creation of these documents,[7] nevertheless, to the extent they were prepared by a ***party*** in

---

[7] It is expected Guess will argue that this category of documents does not qualify as work product because litigation did not immediately follow their creation. However, as noted above, the cases are clear that this is not the test for work product. Indeed, in a case such as this one, also involving a laches defense, Magistrate Judge Francis rejected this very argument, finding that "[the documents] were prepared because of the prospect of litigation and therefore

Footnote continued on next page

6

*anticipation of potential litigation*, they are work product-protected.

Notwithstanding that these documents contain work product, Guess contends they should be produced because it has a "substantial need" to discover facts supporting its delay defense, namely, "the dates" Gucci learned of the existence of Guess products bearing designs at issue in this case.[8]  Apparently, Guess also claims it would be unduly difficult to obtain this information any other way.  However, Guess cannot meet its heavy burden to demonstrate "substantial need."

The protection afforded non-opinion work product may only "be set aside if the discovering party demonstrates a sufficiently pressing need for the data."  *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508, 510 (S.D.N.Y. 1992).  Courts have repeatedly held that there is no substantial need, and no undue hardship, where the protected information has already been provided, *see In re Natural Gas Commodity Litig.*, 2005 WL 1457666, at *8 (S.D.N.Y. June 21, 2005) (no "substantial need" where "the data used in defendants' analyses [was] provided"), or where it can be obtained through depositions or other discovery, *see Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir. 1989) (depositions "provide a satisfactory alternative").[9]

Time and again, Guess has indicated it needs the information contained in these pre-2008

---

Footnote continued from previous page
constitute work product.  [The Plaintiff's] ultimate decision not to pursue any third party claims does not remove work product protection, which is determined by the purpose for which the document was prepared, not by the eventual outcome of any particular course of litigation."  *Arkwright*, 1994 WL 510043, at *9.

[8] As noted above, to the extent these documents contain Gucci's opinions about the Guess products under review, that is, Gucci's mental impressions about potential claims against Guess, they are absolutely immune from production.  *See Arkwright*, 1994 WL 510043, at *10.

[9] Other courts have made clear that where the information could be available by alternative means, no showing of "substantial need" can be made.  *See, e.g.*, *S.E.C. v. Treadway*, 229 F.R.D. 454, 456 (S.D.N.Y. 2005) (no showing of substantial need where party was "free to question each of the witnesses at their depositions, and at trial"); *Bovis Lend Lease v. Seasons Contracting Corp.*, 2002 WL 31729693, at *18 (S.D.N.Y. Dec. 5, 2002) (no substantial need where party failed to show that "such information is not available through depositions and interrogatories"); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 3156382, at *7 (S.D.N.Y. Nov. 15, 2002) (substantial need cannot be shown where persons with equivalent information are available for deposition); *Tribune Co. v. Purcigliotti*, 1998 WL 175933, *4 (S.D.N.Y. Apr. 14, 1998) (substantial need cannot be shown "where persons with equivalent information are available for deposition"); *ECDC Envtl.*, 1998 WL 614478, at *15-16 ("the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories").

documents to support its delay defense.  Now, however, in the Log, Gucci has provided Guess with all the information it says it needs.  Ederer Decl. Ex. B, Doc. Nos. 1, 3-5, 34-38.  Moreover, to the extent Guess seeks access to Gucci's work product for some other (yet to be articulated) reason, Guess must first try to obtain this information through discovery.  Here, Guess has subpoenaed Moss and Murray, and concedes it can (or at least intends to) obtain the information it needs through their depositions (*id.* Exs. F, H and J).  Accordingly, Guess' attempt to access Gucci's pre-2008 work product-protected documents should be rejected.

## III.    Documents Relating to Gucci's Post-October 2008 Investigations of Guess

As noted above, there is a second category of documents to which Guess seeks access — communications dated October 2008 forward, which relate to Gucci's preparations for the parallel infringement litigations filed against Guess in May 2009.  *Id.* ¶¶ 12-15.  These documents, in turn, fall into two subsets — (i) documents which relate directly to the U.S. case, and (ii) documents which relate to Gucci's preparation for the filing of parallel litigations in the U.S. and Italy.  The first subset involves communications among GA personnel, including Moss and Murray, as well as Volpi, about the claims Gucci was preparing to assert against Guess in the U.S.  The second subset, all of which involve Volpi, consists of communications within GG about investigations being conducted in preparation for the parallel lawsuits.  *Id.*

As for the first subset, Guess has now dropped its claim that such documents are not work product-protected.  Nevertheless, Guess contends it is entitled to their production based on substantial need, that is, to the extent they relate to Guess' delay defense.  *Id.* ¶ 13.  However, for the same reasons set forth in Section II above, Guess can establish no such need.  Accordingly, the Court should deny access to this subset of post-October 2008 documents.

As for the second subset, *i.e.*, documents relating to Gucci's preparations for filing

parallel suits in the U.S. and Italy, many of these actually make reference to the U.S. litigation,[10] and, as Volpi and GG's general counsel, Daniela Della Rosa, have stated, all relate to investigations Volpi was coordinating in anticipation of filing simultaneous suits. *Id.* ¶¶ 14-16; *see also* Dkt. 73 ¶¶ 13-20; Dkt. 74 ¶¶ 23-26; Dkt. 95 ¶ 8. Notwithstanding this, Guess apparently takes the position that these documents are not protected because they do not relate exclusively to the U.S. case, and, therefore, Italian law, which does not recognize the concept of work product, should apply. Guess is wrong.

First, this Court need not conduct a choice of law analysis. The work product doctrine is procedural in nature, *see Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93, 95 n.3 (W.D.N.Y. 1999) ("the work product doctrine is a device providing qualified immunity from discovery rather than a traditional substantive privilege, [therefore] Rule 501 of the Federal Rules of Evidence does not require [a choice of law analysis]"), and, accordingly, applies even if a document relates to activities outside of the U.S., so long as it is in anticipation of litigation, *see In re Application Pursuant to 28 U.S.C. § 1782*, 249 F.R.D. 96, 103 (S.D.N.Y. 2008) (documents created by Romanian counsel in preparation for Romanian legal proceedings are work product-protected). Further, to the extent choice of law is an issue, as Gucci explained in its Volpi moving papers (Dkt. 77 at 6-7), "any communications **touching base** with the United States will be governed by the federal rules." *Id.* (emphasis added) (citing *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992)). Here, all Volpi documents "touch base" with the U.S., as all relate to the commencement of simultaneous, parallel suits in the U.S. and Italy. Ederer Decl. ¶ 16. Further, as Della Rosa has indicated, the U.S. case was the

---

[10] For example, certain of these documents consist of Volpi's reports to senior GG management regarding the status of Gucci's preparations for filing suit in the U.S., while others relate to the drafting of a press statement about the filing of the U.S. and Italian suits. Ederer Decl. ¶¶ 14-16. *See also* Dkt. 73 ¶ 18; Dkt. 74 ¶ 26.

"centerpiece" of Gucci's legal strategy against Guess (Dkt. 95 ¶ 8),[11] so the interest of the U.S. predominates (Dkt. 92 at 2-3).  Therefore, U.S. law applies, and the documents are protected.

## IV.    Gucci's Privilege Log Complies with the Federal Rules and the June 29 Decision

Finally, Gucci anticipates Guess will rehash its argument that the document descriptions in Gucci's Log do not comply with FRCP 26(b)(5), or with this Court's June 29, 2010 decision, and, therefore, Gucci should produce the documents in their entirety.  However, as discussed above, Gucci has now not only "further particularized" its document descriptions, as the Court directed it to do, but provided excruciating detail about each document — including all "underlying facts" that may impact Guess' delay defense — stopping just short of disclosing protected information.  Ederer Decl. ¶¶ 2-15, Ex. B.  The issue, then, is not adequacy of Gucci's Log, but whether the documents are work product-protected.  As indicated above, they are.[12]

## CONCLUSION

For all the foregoing reasons, Gucci is entitled to a protective order against the disclosure of documents sent or received by Jonathan Moss and Vanni Volpi, as these documents contain protected work product under FRCP 26(b)(3).

---

[11] As Della Rosa stated in her Reply Declaration on the Volpi motion, the U.S. action was more important to Gucci than the Italian action.  Indeed, Gucci would not have brought the Italian case without the U.S. case, as Guess is a U.S. company, so in order to obtain a global result, injunctive relief in the U.S. was a necessity.  (Dkt. 95 ¶¶ 3-8).

[12] Gucci expects Guess will argue that in addition to directing Gucci to provide descriptions "sufficient to indicate its basis for designating each of the communications" as work product-protected, this Court also ordered Gucci, in its June 29, 2010 decision, to produce redacted copies of the documents to the extent they contained unprotected "underlying facts."  For example, it is anticipated Guess will argue that rather than merely identifying the Guess products under review, Gucci was required by the Court to produce redacted copies of its pre-2008 documents, including, for example, any photographs of Guess products.  Guess is wrong.  First, while the Court directed Gucci to provide more detailed descriptions of the documents, it did not order Gucci to produce any documents, redacted or otherwise.  Second, it remains Gucci's position that photographs of Guess products, to the extent they were selected for review by an attorney or a party representative, are themselves work product, since they reflect the attorney's or party's mental impressions about what may constitute an infringement of Gucci marks.  *See Vardon Golf Co., Inc. v. BBMG Golf, Ltd.*, 156 F.R.D. 641, 646-47 (N.D.Ill. 1994) (attorney's selection of products for legal analysis is opinion work product).  Accordingly, Gucci did what this Court required it to do, and nothing more: it provided information sufficient for Guess to identify the products, and indicated whether they contained one or more of the designs at issue in this case.  Any photographs or other material of a similar nature constitute "opinion" work product, and, in any event, since Guess has no need for them, they need not be produced.

Dated:  New York, New York
        July 23, 2010

ARNOLD & PORTER LLP,


*/s/ Louis S. Ederer*
Louis S. Ederer
399 Park Avenue
New York, NY  10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
Email:  Louis.Ederer@aporter.com

*Counsel for Plaintiff Gucci America, Inc.*