UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

GUCCI AMERICA, INC.,

               Plaintiff,

       -against-

GUESS?, INC., MARC FISHER FOOTWEAR
LLC, THE MAX LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG, K&M
ASSOCIATES L.P., VIVA OPTIQUE, INC.,
SIGNAL PRODUCTS, INC. and SWANK, INC.,

               Defendants.

------------------------------------------

Civil Action No. 09cv4373
(SAS)(JLC)


**MEMORANDUM OF LAW BY DEFENDANT GUESS?, INC. IN OPPOSITION TO
PLAINTIFF GUCCI AMERICA'S RULE 72(a) OBJECTIONS TO THE JUNE 29, 2010
MEMORANDUM AND ORDER OF MAGISTRATE JUDGE JAMES L. COTT**

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
ROBERT C. WELSH
ANDREW J. FRACKMAN
1999 Avenue of the Stars, Suite 700
Los Angeles, California  90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max
Leather Group/Cipriani Accessories, Inc.,
Sequel AG, K&M Associates L.P., Viva Optique,
Inc., Signal Products, Inc., and Swank, Inc.*

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND OVERVIEW OF ARGUMENT.................................................. 1

II.  MAGISTRATE JUDGE COTT CORRECTLY DETERMINED THAT UNDER
     FEDERAL COMMON LAW, THE ATTORNEY-CLIENT PRIVILEGE ONLY
     PROTECTS COMMUNICATIONS WITH PERSONS WHO MAY
     LAWFULLY PRACTICE LAW ...................................................................... 5

     A.   Supreme Court Standard 503 Is Considered By Courts And Commentators
          Alike To Be An Accurate Statement Of The Attorney-Client Privilege
          Under Federal Common Law............................................................... 7

     B.   Beacon Hill Fully Supports Magistrate Judge Cott's Decision ........................... 12

     C.   The Standard For Determining Whether A Criminal Defendant Receives
          The "Effective Assistance of Counsel" Within The Meaning Of The Sixth
          Amendment Is Not Comparable To Whether The Person Providing That
          Assistance Is A Lawyer For Purposes Of Application Of The Attorney-
          Client Privilege ................................................................................ 15

III. HAVING FAILED TO CONDUCT ANY INVESTIGATION TO DETERMINE
     WHETHER MOSS HAD THE QUALIFICATIONS FOR WHICH HE WAS
     HIRED, GUCCI DID NOT EXERCISE REASONABLE PRECAUTION AND
     THEREFORE CANNOT SATISFY THE "REASONABLE BELIEF"
     REQUIREMENT OF FEDERAL COMMON LAW ..................................................... 17

IV.  CONCLUSION................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.,*
No. 97 Civ. 4978, 2002 WL 31385824 (S.D.N.Y. Oct. 21, 2002) ..................................... 21

*Applebaum v. Rush Univ. Med. Ctr.,*
231 Ill. 2d 429 (Ill. 2008) ....................................................................................................... 12

*Carter v. Bell,*
218 F.3d 581 (6th Cir. 2000) .................................................................................................. 17

*Diversified Group, Inc. v. Daugerdas,*
304 F. Supp. 2d 507 (S.D.N.Y. 2003) .................................................................................... 24

*Elfgeeh v. U.S.,*
No. 09 CV 2015, 2010 WL 3780216 (E.D.N.Y. Sept. 21, 2010) ......................................... 16

*Fin. Tech. Int'l, Inc. v. Smith,*
No. 99 CIV. 9351, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000) ........................... 20, 21, 22

*Fisher v. U.S.,*
425 U.S. 391 (1976) ................................................................................................................ 24

*Ford Motor Credit Co. v. Sperry,*
214 Ill. 2d 371 (2005) ............................................................................................................. 12

*Freeman v. Indian Spring Land Co.,*
No. FSTCV054002991S, 2007 WL 127699 (Conn. Super. Ct. Jan. 8, 2007) ............... 21, 22

*H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,*
106 F.R.D. 551 (S.D.N.Y. 1985) ............................................................................................. 2

*In re Asia Global Crossing, Ltd.,*
322 B.R. 247 (Bankr. S.D.N.Y. 2005) ................................................................................... 3, 7

*In re Bieter Co.,*
16 F.3d 929 (8th Cir. 1994) ...................................................................................................... 8

*In re Copper Mkt. Antitrust Litig.,*
200 F.R.D. 213 (S.D.N.Y. 2001) ........................................................................................... 3, 7

*In re Grand Jury Investigation,*
399 F.3d 527 (2d. Cir. 2005)..................................................................................................... 7

*In re Grand Jury Proceedings,*
219 F.3d 175 (2d. Cir. 2000)..................................................................................................... 2

*In re Grand Jury Proceedings,*
434 F. Supp. 648 (E.D. Mich. 1977) ........................................................................................ 9

*In re Grand Jury Subpoenas,*
995 F. Supp. 332 (E.D.N.Y. 1998) ........................................................................................ 7, 8

*In re Horowitz,*
482 F.2d 72 (2d Cir. 1980)........................................................................................................ 2

*In re North Plaza, LLC,*
395 B.R. 113 (Bankr. S.D. Cal. 2008) ...................................................................................... 8

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
No. 04 Civ. 5316, 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006) ......................................... 14

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Marx v. Loral Corp.,*
87 F.3d 1049 (9th Cir. 1996) ........................................................... 4

*Mitchell v. Century 21 Rustic Realty,*
233 F. Supp. 2d 418 (E.D.N.Y. 2002) .............................................. 2

*NXIVM v. O'Hara,*
241 F.R.D. 109 (N.D.N.Y. 2007) .................................................... 22

*Ross v. City of Memphis,*
423 F.3d 596 (6th Cir. 2005) ........................................................... 8

*Royal Tire & Auto Center, Inc. v. Town of Woodbury,*
445 F.3d 136 (2d Cir. 2006) ............................................................ 4

*S.E.C. v. Beacon Hill Asset Mgmt. LLC,*
231 F.R.D. 138 (S.D.N.Y. 2004) ............................................ *passim*

*Theard v. U.S.,*
354 U.S. 278 (1957) ...................................................................... 11

*Tyree v. Dance,*
No. 88-15775, 1990 WL 40298 (9th Cir. Apr. 4, 1990) ............ 10, 11, 12

*U.S. v. (Under Seal),*
748 F.2d 871 (4th Cir. 1984) ........................................................... 8

*U.S. v. BDO Seidman, LLP,*
492 F.3d 806 (7th Cir. 2007) ........................................................... 8

*U.S. v. Boffa,*
513 F. Supp. 517 (D. Del. 1981) .............................................. *passim*

*U.S. v. Hoffman,*
733 F.2d 596 (9th Cir. 1984) ......................................................... 11

*U.S. v. Mackey,*
405 F. Supp. 854 (E.D.N.Y. 1975) .................................................. 7

*U.S. v. Ross,*
338 F.3d 1054 (9th Cir. 2003) ....................................................... 16

*U.S. v. Spector,*
793 F.2d 932 (8th Cir. 1986) ........................................................... 3

*U.S. v. Suggs,*
531 F. Supp. 2d 13 (D.D.C. 2008) ................................................. 16

*U.S. v. United Shoe Mach. Corp.,*
89 F. Supp. 357 (D. Mass. 1950) ........................................ 13, 14, 15

*von Bulow v. von Bulow,*
811 F.2d 136 (2d Cir. 1987) ............................................................ 2

*Waterhouse v. Rodriguez,*
848 F.2d 375 (2d Cir. 1988) .......................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page

**STATUTES**

18 U.S.C. § 2510(7) ................................................................................ 10

18 U.S.C. § 2518(1)(a) ........................................................................... 10

28 U.S.C. § 547(1) ................................................................................. 10

CAL. BUS. & PROF. CODE § 6126(a) ......................................................... 1

FED. R. EVID. 501 .................................................................................. 5

N.Y. JUD. LAW § 478 ........................................................................ 1, 14

N.Y. JUD. LAW § 485 ........................................................................ 1, 14

**RULES**

9th Cir. R. 36-3(a) ................................................................................ 10

9th Cir. R. 36-3(c) ................................................................................ 10

C.D. Cal. Civ. L.R. 83-2.2 ..................................................................... 11

C.D. Cal. Civ. L.R. 83-3.3 ..................................................................... 11

Model Code of Evidence, Rule 209(b) .................................................... 13

S.D. Cal. Civ. L.R. 83.3(c)(1)(a) ........................................................... 11

S.D. Cal. Civ. L.R. 83.3(d) .................................................................... 11

Supreme Court Standard 503 ............................................................*passim*

**OTHER AUTHORITIES**

8 WIGMORE ON EVIDENCE § 2300 ..................................................... 9, 24

CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND
    PROCEDURE § 5480 (1st ed. 1986) ..................................................... 9

DAVID M. GREENWALD ET AL., TESTIMONIAL PRIVILEGES § 1:4 (2010) ........ 9

GLEN WEISSENBERGER & JAMES J. DUANE, WEISSENBERGER'S FEDERAL
    EVIDENCE § 501.5 (6th ed. 2009) .................................................. 9, 10

JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE
    § 503.02 (2d ed. 2010) ...................................................................... 9

Mason Ladd, *Privileges*,
    LAW & THE SOC. ORDER 555 (1969) ................................................. 13

Minutes of the Advisory Committee on Rules of Evidence,
    Meeting of July 6-8, 1967,
    http://www.uscourts.gov/uscourts/
    RulesAndPolicies/rules/Minutes/EV07-1967-min.pdf ........................... 9

I.    **INTRODUCTION AND OVERVIEW OF ARGUMENT.**

During the entire period Jonathan Moss ("Moss") was employed as Legal Counsel for

Gucci America, Inc. ("Gucci"), he could not lawfully provide legal advice or practice law in any

state or federal court anywhere in the country.  Indeed, both California and New York law made

it a misdemeanor, punishable by up to one year of imprisonment, for Moss to practice as an

attorney.[1]  Nonetheless, Gucci contends that Moss was an "attorney" within the meaning of

federal common law, and that although it was a criminal act for Moss to provide legal advice, his

communications were protected under the attorney-client privilege.  Alternatively, Gucci asserts

that even though it admittedly conducted no investigation into Moss's background or legal

qualifications, it acted reasonably in allowing Moss to appear in court on Gucci's behalf and

therefore its communications with him are protected under the attorney-client privilege.

Magistrate Judge James L. Cott, in a Memorandum and Order dated June 29, 2010,

denied Gucci's motion for protective order.[2]  Following a review of Supreme Court Standard 503

and the standard employed by Magistrate Judge Pitman in *S.E.C. v. Beacon Hill Asset Mgmt.*

*LLC*, 231 F.R.D. 138 (S.D.N.Y. 2004) (*Beacon Hill*), Magistrate Judge Cott concluded that

"Moss did not possess a bar membership authorizing him to practice in *any* jurisdiction [and

therefore] Gucci's communications with Moss do not satisfy any standard of the attorney-client

privilege."  Dkt. 112 at 12 (emphasis in original).[3]  Regarding Gucci's alternative argument,

Magistrate Judge Cott concluded that in light of all the facts, including an unsolicited affidavit

---

[1] *See* CAL. BUS. & PROF. CODE § 6126(a) (2010); N.Y. JUD. LAW §§ 478, 485 (2010).

[2] Gucci erroneously describes Magistrate Judge Cott's decision as only "denying in part" Gucci's Motion for Protective Order.  Dkt. 127 at 1.  The Memorandum and Order states clearly that "Gucci's motion is denied."  Dkt. 112 at 2, 16.

[3] Internal citations are omitted and emphases are added unless otherwise noted.  All citations to page numbers in briefing papers are to the internal page numbers in the briefs, and not to the page numbers assigned by the ECF system.

submitted by Moss himself,[4] "Gucci's belief that Moss was an attorney authorized to practice law was not reasonable given the circumstances of this case." Dkt. 112 at 12.

Gucci does not challenge Magistrate Judge Cott's observation that as the party invoking the privilege, Gucci "bears the burden of establishing its existence." Dkt. 112 at 6 (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d. Cir. 2000), and *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)). Nor does Gucci quarrel with Magistrate Judge Cott's statement that "[b]ecause the attorney-client privilege 'stands in derogation of the public's "right to every man's evidence" . . . "[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of principle."'" Dkt. 112 at 7 (quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1980)). Finally, it is well-established that as the party asserting objections under Rule 72(a), Gucci bears the "heavy burden of showing that the ruling was 'clearly erroneous or contrary to law.'" *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 553 (S.D.N.Y. 1985); *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 439 (E.D.N.Y. 2002) (overruling plaintiffs' objection to magistrate's discovery ruling where they "did not satisfy their heavy burden of showing that [the ruling] was clearly erroneous or contrary to law").

Gucci's arguments to this Court fail to satisfy any of these evidentiary requirements, much less all of them. Gucci is unable to provide any credible legal authority that federal common law extends the attorney-client privilege to persons who are statutorily prohibited from practicing law. Indeed, as discussed below, Gucci's arguments to this Court are predicated on a misreading of the standard set forth in *Beacon Hill*, as well as a failure to appreciate the origins

---

[4] Recognizing that Moss "ha[d] submitted an affidavit on his own, [and] not at the behest of either party," Magistrate Judge Cott exercised his discretion to consider the affidavit. Dkt. 112 at 3 n.2. Gucci does not object to the Court's consideration of Moss's affidavit.

of the standard, which make clear that it was intended to complement the prevailing view under federal law that a lawyer must be "authorized to practice law" in order to enjoy the protection of the attorney-client privilege.

Gucci employs what can only be considered a self-defeating attack on Magistrate Judge Cott's legal reasoning. The thrust of Gucci's attack is to *take Magistrate Judge Cott to task for adopting the legal principles that Gucci championed in its initial briefing*. Specifically,

- Gucci argues to this Court that "[w]ithout any support . . . and for no good reason, the Magistrate Judge went on to impose a further requirement—that the attorney be 'authorized to engage in the practice of law' . . . [which] is derived from Supreme Court Standard 503." Dkt. 127 at 9. However, in its briefing to Magistrate Judge Cott, Gucci quoted Section 503's "authorized to practice law" requirement, and stated that "*Standard 503 is generally considered an authoritative restatement of federal common law.*" Dkt. 70 at 10 & n.4 (citing *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 255 n.6 (Bankr. S.D.N.Y. 2005); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217-18 n.2 (S.D.N.Y. 2001); and *U.S. v. Spector*, 793 F.2d 932, 938 (8th Cir. 1986)).

- Gucci also argues to this Court that Magistrate Judge Cott "improperly conflated the . . . test [in *Beacon Hill*] with Supreme Court Standard 503." Dkt. 127 at 10 n.6. However, Gucci made precisely this point in its briefing to Magistrate Judge Cott, arguing that "Gucci believes that the two standards *are the same*; in both cases, the issue is whether an *individual has met all of the qualifications to practice law.*" Dkt. 97 at 2 n.2. As Gucci now recognizes, it cannot prevail under

this common standard because Moss did not meet the qualifications to practice law as a result of his inactive status.

Though improper,[5] the reason Gucci feels compelled to reverse field is readily apparent. Gucci simply cannot credibly contend that Magistrate Judge Cott's decision was "contrary to law" when the legal authorities that refute Gucci's position are the very ones it cited to the Court. As a result, Gucci has no choice but to ignore its prior arguments.

Gucci also challenges Magistrate Judge Cott's determination that Gucci could not have reasonably believed Moss was authorized to practice law because it failed to conduct the "relatively minimal undertaking" of checking to see whether he was licensed to perform the functions for which he was hired. Dkt. 112 at 15. It is undisputed that Gucci undertook no investigation of Moss's legal qualifications even though it had a personnel department, staffed by HR professionals,[6] whose job was to investigate the background of those who worked for the company. Gucci seeks to excuse its complete lack of diligence on the ground that Moss was hired into a "non-legal position," which it claims is "an important consideration" in evaluating the reasonableness of its conduct. Dkt. 127 at 20 n.21. However, Magistrate Judge Cott was not persuaded, and referenced the contrary evidence set forth in Moss's affidavit[7] as well as the

---

[5] Federal law does not permit a losing party to claim legal error based on arguments that are inconsistent with the ones asserted by that party below. *See, e.g., Royal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 152 (2d Cir. 2006) (rejecting plaintiff's claim of error in dismissal of its cause of action where its theory on appeal was inconsistent with its pleading in the district court below); *Marx v. Loral Corp.*, 87 F.3d 1049, 1056 (9th Cir. 1996) (holding that plaintiffs should be barred from asserting a theory on appeal that was "[i]n direct contradiction" to what they had asserted below).

[6] *See* Dkt. 67 at ¶ 1; Dkt. 68 at ¶¶ 2-3.

[7] Among other things, Moss stated that he was "introduc[ed] to others at Gucci on my first day of work as a legal associate (via email)," that his "salary was substantially in excess of what would be paid to a paralegal or other non-lawyer, and at that stage in my career I would not have moved from California to New Jersey simply to work as a paralegal." Dkt. 79 at ¶ 11. Gucci had the opportunity to introduce evidence contradicting Moss's statements following the submission of his affidavit to the Court but, tellingly, did not do so. *See* Dkt. 96-97.

documents produced by Gucci showing that Moss appeared in federal bankruptcy court as

Gucci's counsel within a few months of being hired.  Dkt. 112 at 3-4.

Gucci did not then, and cannot now, challenge the accuracy of Moss's statements.  In

short, Gucci has not come close to satisfying the "heavy burden" of showing that Magistrate

Judge Cott's conclusions were "clearly erroneous."  As for Gucci's lament that it should not be

penalized for Moss's indiscretion, it is difficult to improve on Magistrate Judge Cott's

conclusion:

> The Court is mindful that the attorney-client privilege serves salutary purposes, and can provide significant protection to litigants.  But this is not a case where Gucci is forfeiting its right to invoke the privilege due simply to the conduct of its former in-house counsel. Gucci itself bears responsibility for allowing its counsel to represent its interests without ensuring that he was authorized to do so.

Dkt. 112 at 16.

Gucci cannot establish that its communications with Moss were privileged or that

Magistrate Judge Cott committed any "clear error" or acted "contrary to law" in denying Gucci's

motion for protective order.  Magistrate Judge Cott's decision should be confirmed by this Court.

II.     **MAGISTRATE JUDGE COTT CORRECTLY DETERMINED THAT UNDER FEDERAL COMMON LAW, THE ATTORNEY-CLIENT PRIVILEGE ONLY PROTECTS COMMUNICATIONS WITH PERSONS WHO MAY LAWFULLY PRACTICE LAW.**

There is no dispute that federal common law governs the application of the attorney-

client privilege in this case.  Dkt. 112 at 6; *see also* FED. R. EVID. 501.  Rather, Gucci challenges

Magistrate Judge Cott's finding that federal common law requires that an attorney be authorized

to practice law for purposes of the attorney-client privilege.  Gucci's objection to this portion of

Magistrate Judge Cott's Memorandum and Order is predicated on three propositions.  First,

Gucci contends that Magistrate Judge Cott erred by imposing an "authorized to practice law"

requirement on the basis of Supreme Court Standard 503(a)(2), even though, as noted above,[8] Gucci had cited this provision approvingly in its briefing to Magistrate Judge Cott.[9]  Gucci urges the Court to reject the "Magistrate Judge's so-called 'authorized to practice law' requirement" on the grounds that it "appears nowhere in the *Beacon Hill* formulation, or in any test recognized in this Circuit." Dkt. 127 at 9.  As discussed below, Gucci is wrong on both counts.

Second, citing *Beacon Hill*, Gucci contends that this Circuit has adopted the position that an attorney need only be "a member of the bar of a court" in order for the privilege to apply. Dkt. 127 at 7-8.  Gucci's entire argument on this point amounts to little more than a sterile repetition of these eight words.  But words have meaning.  The clear meaning of these words— when considered with the remaining requirement that Gucci ignores (that the attorney is "acting as a lawyer"), and in light of the development of the standard—is that the attorney must be able to lawfully provide legal advice in order for the attorney's communications to be protected by the attorney-client privilege.

Finally, Gucci argues by analogy from certain Sixth Amendment ineffective assistance of counsel cases that the privilege necessarily extends to inactive lawyers.  Gucci's analogy fails as the two standards are not remotely equivalent.  Not only have courts found licensed counsel (to whom the privilege clearly applies) to have provided "ineffective assistance of counsel," but courts also have held that the representation provided by disbarred attorneys (who are no longer members of any bar and to whom the privilege would not apply even under Gucci's theory) nonetheless passed constitutional muster.

---

[8] *See* p. 3, *supra.*

[9] Supreme Court Standard 503(a)(2) provides that for purposes of applying the attorney-client privilege, an attorney is "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation."  Reprinted in 56 F.R.D. 183, 235-36 (West 1972).  Some courts refer to Supreme Court Standard 503 as "Proposed Rule of Evidence 503."

**A.**     **Supreme Court Standard 503 Is Considered By Courts And Commentators Alike To Be An Accurate Statement Of The Attorney-Client Privilege Under Federal Common Law.**

Gucci contends that Magistrate Judge Cott's Memorandum and Order is "contrary to law" because it follows the "authorized to practice law" requirement set forth in Supreme Court Standard 503.  Ignoring its own prior briefing on the subject, Gucci asserts without any legal support that Supreme Court Standard 503 is not an accurate reflection of the contours of the attorney-client privilege under federal common law.  That Gucci is unable to cite a single federal decision rejecting Supreme Court Standard 503 is not surprising, given the many decisions in this Circuit (some of which were previously cited by Gucci) holding that Standard 503 provides an authoritative benchmark regarding the requirements of the attorney-client privilege.  *See, e.g.*, *In re Grand Jury Investigation*, 399 F.3d 527, 532 (2d Cir. 2005) ("While Proposed Rule 503 was not adopted by Congress, courts and commentators have treated it as a source of general guidance regarding federal common law principles."); *In re Copper Market Antitrust Litig.*, 200 F.R.D. at 217 ("Proposed Rule of Evidence 503, also known as Supreme Court Standard 503, establishes a benchmark for determining the scope of the attorney-client privilege under federal common law."); *In re Asia Global Crossing, Ltd.*, 322 B.R. at 255 n.6 ("Proposed Rule 503, and the other privilege standards, were not adopted as part of the Federal Rules of Evidence.  They were, however, promulgated by the Supreme Court of the United States, and together with the accompanying advisory committee notes, 'should be regarded as an authoritative source of the principles of [federal] common law.'"); *U.S. v. Mackey*, 405 F. Supp. 854, 858 (E.D.N.Y. 1975) (Weinstein, J.) ("The specific Rules on privilege promulgated by the Supreme Court are reflective of 'reason and experience.'  They are the culmination of three drafts prepared by an Advisory Committee consisting of judges, practicing lawyers and academicians."); and *In re Grand Jury Subpoenas*, 995 F. Supp. 332, 337 (E.D.N.Y. 1998) (relying in part on Supreme

Court Standard 503's definition of "lawyer" to reject the contention that communications between police officers and union officials were protected from disclosure under the federal attorney-client privilege).

Federal courts in other circuits have expressed similar views. *See, e.g., U.S. v. (Under Seal)*, 748 F.2d 871, 874 n.5 (4th Cir. 1984) (Supreme Court Standard 503 provides a "comprehensive guide to the federal common law of attorney-client privilege."); *Ross v. City of Memphis*, 423 F.3d 596, 601-02 (6th Cir. 2005) ("While Congress did not adopt any of the proposed rules concerning various privileges, courts have observed that Proposed Rule 503 is a useful starting place for an examination of the federal common law of attorney-client privilege."); *U.S. v. BDO Seidman, LLP*,  492 F.3d 806, 815 (7th Cir. 2007) ("Although it ultimately was not adopted by Congress, the rule of attorney-client privilege promulgated by the Supreme Court in 1972 as part of the Proposed Federal Rules of Evidence has been recognized as a source of general guidance regarding federal common law principles."); *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) ("Although not enacted by Congress, courts have relied upon [Supreme Court Standard 503] as an accurate definition of the federal common law of attorney-client privilege."); and *In re North Plaza, LLC*, 395 B.R. 113, 123 (Bankr. S.D. Cal. 2008) ("Because the Federal Rules of Evidence do not define the scope of the attorney-client privilege, courts start with proposed Federal Rule of Evidence 503 ('Supreme Court Standard 503') in analyzing the extent of the attorney-client privilege under federal law.").  Such unanimity of opinion is not surprising.  As one court observed:

> The fact that Congress did not enact rule [503] into law when it adopted the Federal Rules of Evidence does not lessen the value of the rule as a source to define the scope of the privilege.  Rule 501, Federal Rule of Evidence, provides that the privileges of witnesses "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience."  The draft of Rule 503 referred to was not rejected by the Congress because of any decision

that it was in error on the merits, but on the theory that rules of privilege should not be enunciated by rule. *What more accurate expression of the principles of the common law and of the application of reason and experience could exist than a draft that was developed by a representative committee of bench, bar and scholars, twice published and commented on by the bench and bar, adopted by the Judicial Conference and finally forwarded by the Supreme Court to Congress for promulgation.*

*In re Grand Jury Proceedings*, 434 F. Supp. 648, 650 n.1 (E.D. Mich. 1977), *aff'd*, 570 F.2d 562 (6th Cir. 1978). *See also* JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 503.02 (2d ed. 2010) ("Supreme Court Standard 503 restates, rather than modifies, the common law lawyer-client privilege.")[10]; DAVID M. GREENWALD ET AL., TESTIMONIAL PRIVILEGES § 1:4 (2010) ("Proposed Federal Rule of Evidence 503, which deals with the attorney-client privilege, has been used by a number of courts as a guide to interpreting the common law 'in the light of reason and experience.'").

Gucci does not dispute that Supreme Court Standard 503's "authorized to practice law" requirement means what it says, namely that the attorney must be able to lawfully provide legal services. *Accord*, 8 WIGMORE ON EVIDENCE § 2300, at 580 ("There is no ground for encouraging the relation of client and legal adviser except when the adviser is one who has been formally *admitted to the office of attorney or counselor* as duly qualified to give legal advice.") (emphasis in original); CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5480, at 242 (1st ed. 1986) ("An inactive or retired membership that does not permit the member to practice law" is insufficient for purposes of being a "lawyer" under Standard 503.); JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, *supra*, § 503.12 ("A lawyer for purposes of the privilege is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation."); and GLEN

---

[10] It bears noting that Judge Weinstein was a member of the Advisory Committee that drafted Supreme Court Standard 503.  Minutes of the Advisory Committee on Rules of Evidence, Meeting of July 6-8, 1967, at 1, 4-5,
http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Minutes/EV07-1967-min.pdf.

WEISSENBERGER & JAMES J. DUANE, WEISSENBERGER'S FEDERAL EVIDENCE § 501.5, at 233 (6th ed. 2009) (the privilege only vests if the communication is with an attorney who is "authorized to practice law in some jurisdiction").  As a result, Gucci does not even argue that Moss satisfied Supreme Court Standard 503.

Gucci instead ignores this authority and relies on an unpublished Ninth Circuit disposition with no precedential value, *Tyree v. Dance*, No. 88-15775, 1990 WL 40298, at *1 (9th Cir. Apr. 4, 1990).[11]  Gucci's reliance on *Tyree* is unavailing because the case does not concern interpretation of federal common law, much less application of the attorney-client privilege.  Instead, *Tyree* involves the narrow question of whether, under the terms of a federal wiretap statute, an Assistant United States Attorney (Dance) could properly request a wiretap while he was a voluntarily inactive member of the California State Bar.  *Id.*  The statute provided that the wiretap had to be authorized by an "investigative or law enforcement officer," defined as "any attorney authorized by law to prosecute or participate in the prosecution of such offenses." *See* 18 U.S.C. § 2518(1)(a); 18 U.S.C. § 2510(7).  The court determined that, despite his inactive status, Dance met the statute's requirements under three alternative theories.  First, the court relied upon letters from the Department of Justice stating that the Department considered Dance licensed at the time of his appointment and never rescinded that appointment.  *Id.*  Accordingly, Dance was still an Assistant United States Attorney with authority to "prosecute all offenses against the United States."  *Id.*; *see also* 28 U.S.C. § 547(1).  Second, the court determined that Dance "remained a member of the federal bar of the District of Utah throughout his period of inactive status in California."  *Tyree*, 1990 WL 40298 at *2.  Finally, the court found that,

---

[11] 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").  Additionally, since *Tyree* was issued before January 1, 2007, except for limited purposes that do not apply here, it cannot even be cited to courts in the Ninth Circuit.  *See* 9th Cir. R. 36-3(c).

according to the Department of Justice, even if Dance had been "unlicensed," he still could have requested the wiretap, so long as he was supervised by others within the Department. *Id.*

Gucci suggests that *Tyree* is relevant because it supports the contention that Moss, also a voluntarily inactive member of the California bar, nonetheless remained an active member of a federal bar. Not so. As Magistrate Judge Cott correctly concluded, the only two federal courts to which Moss claimed to be a member—the Central and Southern districts of California—both have rules requiring "active membership in the California State Bar [as] a prerequisite to membership in the federal district courts." Dkt. 112 at 12 (citing C.D. Cal. Civ. L.R. 83-2.2 (providing that "[a]dmission to and *continuing membership in the Bar of this Court is limited to persons* of good moral character *who are active members* in good standing of the State Bar of California"), and S.D. Cal. Civ. L.R. 83.3(c)(1)(a) (same)).[12]  Apparently, no such rule applied to Dance's practice as a Department of Justice lawyer in the federal court for the District of Utah. Moreover, nothing in the *Tyree* disposition suggests that its holding would apply to a non-governmental lawyer, such as Moss, who was neither operating as an Assistant United States Attorney nor subject to the supervision of an attorney who was an active member of a state bar.

---

[12] Magistrate Judge Cott emphasized that because of Moss's inactive status with the California State Bar, "[b]y operation of law, Moss was constructively suspended from practicing in California federal courts" and he "was not authorized to practice in either district." Dkt. 112 at 12.  Continuing to disregard the clear language of the local rules of the federal courts of the Central and Southern districts of California, Gucci cites cases addressing automatic disbarment—*Theard, Reese, Hoffman,* and *Steele*—to argue, erroneously, that Moss's inactive status in the California bar had no impact on his status in the bars of those federal courts. Dkt. 127 at 14 & n.15. These cases, however, are unavailing. They hold simply that disbarment from a state bar is not conclusively binding on federal courts because "an attorney facing disbarment from a federal court is entitled to procedural due process." *U.S. v. Hoffman*, 733 F.2d 596, 599 (9th Cir. 1984); *Theard v. U.S.*, 354 U.S. 278, 282 (1957) ("Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred."). By contrast, due process is not a concern where, as in Moss's case, the attorney voluntarily takes on inactive status, and, by operation of local district court rules, his or her federal-bar status is deactivated as well. *See* C.D. Cal. Civ. L.R. 83-3.3; S.D. Cal. Civ. L.R. 83.3(d).

Gucci's reliance on *Applebaum v. Rush Univ. Med. Ctr.*, 231 Ill. 2d 429 (Ill. 2008), is equally misplaced as that case does not purport to interpret federal common law or the attorney-client privilege.  Rather, this case involves application of Illinois's so-called nullity rule, under which the defendant medical center sought dismissal of the medical malpractice case that Applebaum, an inactive member of the Illinois State Bar, brought on behalf of his deceased father's estate.[13]  *Id.* at 433.  The court concluded that "in light of the specific facts in this case"—namely, that the plaintiff was the real party in interest and had "at no time offered legal services to the public or engaged in the practice of law on behalf of any real party in interest other than himself"—the purposes served by applying the nullity rule were absent.  *Id.* at 446-47. *Applebaum* is simply inapposite to Gucci's contention that, under federal law, the attorney-client privilege extends to communications between Moss and Gucci.

**B.      Beacon Hill Fully Supports Magistrate Judge Cott's Decision.**

Gucci tries to convince this Court that, as compared to Supreme Court Standard 503, *Beacon Hill* sets forth a materially different and less stringent standard for determining who is a lawyer for purposes of applying the attorney-client privilege.  Whereas Supreme Court Standard 503 would not automatically extend the attorney-client privilege to attorneys who are not "authorized to practice law,"[14] Gucci contends that under *Beacon Hill* the privilege applies to persons who are "members of a bar" even though, like Moss, they may be prohibited from

---

[13] As the court explained, "where a person who is not licensed to practice law in Illinois attempts to represent another party in legal proceedings, th[e nullity] rule permits dismissal of the cause, thereby treating the particular actions taken by that person as a nullity." *Id.* at 435 (citing *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 390 (2005)).

[14] To be sure, Supreme Court Standard 503 would extend the attorney-client privilege where the attorney is not "authorized to practice law" but where the putative client "reasonably believes" the attorney is authorized to practice law.  As discussed in Section III, *infra*, Magistrate Judge Cott correctly determined that Gucci could not establish that it acted "reasonably" in retaining Moss to perform legal work without conducting any inquiry into his legal background or qualifications.

actually practicing law or providing legal advice. Nonsense. In truth, the approach adopted in *Beacon Hill* is fully consistent with the "authorized to practice law" requirement set forth in Supreme Court Standard 503.

This conclusion is supported on several grounds. First, the origins of what Gucci calls the *Beacon Hill* standard support Magistrate Judge Cott's interpretation of the federal common law. As Gucci acknowledges, the standard set forth in *Beacon Hill* derives from Judge Wyzanski's oft-cited opinion in *U.S. v. United Shoe Mach. Corp.*, 89 F. Supp. 357 (D. Mass. 1950). As Judge Wyzanski's decision makes clear, he looked to the American Law Institute's Model Code of Evidence for guidance in formulating what he referred to as the "general" outlines of the attorney-client privilege. *Id.* at 358. This is significant because the A.L.I.'s Model Code of Evidence defined "lawyer" in virtually the identical language contained in Supreme Court Standard 503:

> "lawyer" means *a person authorized*, or reasonably believed by the client to be authorized, *to practice law in any state or nation* the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer.

Rule 209(b) Model Code of Evidence, American Law Institute (1942).[15] Significantly, Judge Wyzanski gives no indication that he is articulating a standard that is materially different from what is contained in the Model of Code of Evidence.

Second, Judge Wyzanski's application of the attorney-client privilege to the facts in *United Shoe* lends further support to this conclusion. Of particular significance is Judge Wyzanski's analysis of whether the attorney-client privilege extended to members of United Shoe's patent department who "are not members of the bar of this Court or of the courts of this

---

[15] In developing the Proposed Federal Rules of Evidence, a portion of which would come to be referred to as Supreme Court Standard 503, the drafters "had the benefit of considering the Model Code of Evidence, the Uniform Rules of Evidence, and the new codes or rules upon evidence of California, Kansas, and New Jersey." Mason Ladd, *Privileges*, LAW & THE SOC. ORDER 555, 574 (1969).

commonwealth but are members of other judicial bars." *Id.* at 360.  Contrary to the gloss Gucci

tries to put on Judge Wyzanski's words, the fact that these attorneys were "members of a bar"

did not mean their communications were privileged.  Instead, Judge Wyzanski ruled the privilege

did not apply to them because, "though resident in Massachusetts and regularly working here,

[they] have never received a license to practice law here" and therefore "are not acting as

attorneys for United." *Id.*[16]

It is undisputed that, as an inactive member of the California bar, Moss was not

authorized to practice law in California or New York.  Indeed, it was a crime for Moss to "act as

an attorney" in New York.  N.Y. JUD. LAW §§ 478, 485 (2010).  Under these circumstances,

Judge Wyzanski would have had no difficulty concluding that the attorney-client privilege did

not extend to Gucci's communications with Moss because, as a matter of law, he was incapable

of "acting as a lawyer." *Accord, Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ.

5316, 2006 WL 3476735, at \*17 (S.D.N.Y. Nov. 30, 2006) (noting that the attorney-client

privilege does not apply unless the communication in question was with an individual "admitted

to practice *at the bar of a state or federal court*").[17]

It is no accident that Gucci lifts the "member of the bar of a court" phrase from Judge

Wyzanski's language and otherwise ignores the remainder of what is required to be considered

an "attorney" to whom the privilege attaches.  As Judge Wyzanski stated, there is a *two-fold*

*requirement*:  the attorney must be a "member of [a] bar" and "acting as a lawyer."  89 F. Supp.

---

[16] Judge Wyzanski also ruled that communications between employees of United Shoe and its outside lawyers were privileged because "[t]he members of the law partnership in each case were acting as attorneys giving legal advice." *Id.* at 359 (emphasis added).  By contrast, Moss was prohibited by law from acting as an attorney and giving legal advice.

[17] *Malletier* simply presents another way of stating the common standard embodied in Supreme Court Standard 503 and the requirements set forth by Judge Wyzanski in *United Shoe*.  Indeed, during his entire tenure at Gucci, Moss was never able to practice at the bar of any court.

at 358.[18] As Magistrate Judge Cott found, Moss does not satisfy both these requirements

because he "did not possess the type of bar membership that authorized him to engage in the

practice of law." Dkt. 112 at 10. The so-called *Beacon Hill* standard provides no support for

Gucci's position.[19]

**C. The Standard For Determining Whether A Criminal Defendant Receives The "Effective Assistance Of Counsel" Within The Meaning Of The Sixth Amendment Is Not Comparable To Whether The Person Providing That Assistance Is A Lawyer For Purposes Of Application Of The Attorney-Client Privilege.**

Gucci tries to analogize to the rulings in a handful of Sixth Amendment "ineffective

assistance of counsel" cases to support the proposition that Moss did not have to be able to

lawfully provide legal services in order to be considered an attorney for purposes of the attorney-

client privilege. The analogy fails because the standard for determining whether a criminal

defendant received effective assistance of counsel is not dependent on whether the attorney was

or was not "a member of a bar" or "authorized to practice law."

---

[18] The full text of the standard penned by Judge Wyzanski states:

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 358-359.

[19] In a footnote, Gucci attempts, without success, to address *Beacon Hill*'s "acting as a lawyer" requirement. Gucci acknowledges, as Judge Wyzanski also made clear, that this requirement precludes application of the attorney-client privilege where the lawyer "is discussing business strategy" or other non-legal advice. Dkt. 127 at 10 n.6. As Judge Wyzanski recognized, however, if the privilege does not apply in instances where the lawyer is not "acting as a lawyer" because he or she is providing business advice, then it equally does not apply where, as in Moss's situation, he or she is not "licensed to practice" and therefore cannot "act as an attorney" under any circumstances.

The Sixth Amendment cases assess whether a criminal defendant's constitutional rights were violated due to any prejudicial "errors and omissions by counsel that a conscientious advocate would not have made." *U.S. v. Ross*, 338 F.3d 1054, 1056 (9th Cir. 2003). To avoid "awarding defendant[s] a windfall even if [they] can't identify a single thing a licensed attorney would have done differently," *Ross*, 338 F.3d at 1057, courts have rejected any *per se* rule equating ineffective assistance of counsel with the fact that the attorney was suspended or even disbarred from practicing law. *Id.* at 1056 (even though "counsel's disbarment or suspension may raise doubts about his competence ... the actual effects of any such doubts are appropriately addressed under the same rubric generally applicable to claims of ineffective assistance of counsel: ... actual deficient performance plus prejudice"); *Elfgeeh v. U.S.*, No. 09 CV 2015, 2010 WL 3780216, at *1, 4, 6 (E.D.N.Y. Sept. 21, 2010) (representation in pretrial matters by disbarred felon did not constitute ineffective assistance of counsel because, *inter alia*, he was "once qualified to practice law"; observing that "suspension or disbarment alone is not enough to make an attorney per se ineffective"); *Waterhouse v. Rodriguez*, 848 F.2d 375, 382-83 (2d Cir. 1988) (counsel who was disbarred during pretrial proceeding was not *per se* ineffective). In short, governing Sixth Amendment law establishes that the constitutional standard of affording criminal defendants "effective assistance of counsel" can be satisfied by "attorneys" who are neither "a member of the bar of a court" nor "authorized to practice law." By contrast, not even Gucci contends that the attorney-client privilege extends to disbarred attorneys who, by definition, are not members of a bar of a court. *Accord, U.S. v. Suggs*, 531 F. Supp. 2d 13, 22 & n.14 (D.D.C. 2008) (phone call with disbarred attorney was not protected by the attorney-client privilege).

Gucci's analogy also fails because attorneys who *are* "members of the bar of a court" and *are* "authorized to practice law" (and whose communications would clearly be covered by the attorney-client privilege) have been found to have provided ineffective assistance of counsel. *See, e.g., Carter v. Bell*, 218 F.3d 581, 588, 595-600 (6th Cir. 2000) (holding that performance of defendants' licensed attorneys during sentencing phase "constituted representation at a level below an objective standard of reasonableness" and was constitutionally deficient). It is not surprising, then, that Gucci is unable to cite a single federal case equating the standard for determining an attorney for purposes of the attorney-client privilege with the constitutional standard for determining ineffective assistance of counsel.

**III.   HAVING FAILED TO CONDUCT ANY INVESTIGATION TO DETERMINE WHETHER MOSS HAD THE QUALIFICATIONS FOR WHICH HE WAS HIRED, GUCCI DID NOT EXERCISE REASONABLE PRECAUTION AND THEREFORE CANNOT SATISFY THE "REASONABLE BELIEF" REQUIREMENT OF FEDERAL COMMON LAW.**

Gucci acknowledges that under governing federal law,[20] it must demonstrate that it "reasonably" believed that Moss was an attorney in order to satisfy this prong of the test for application of the attorney-client privilege. Dkt. 127 at 16. Gucci also acknowledges that the determination of "whether Gucci's belief was reasonable" will be based on "the unique facts and circumstances of this case." *Id.* at 17. Gucci's own account of its conduct demonstrates it did not act "reasonably" in hiring Moss without any inquiry into his legal background or qualifications.

Gucci initially suggests that it held a reasonable belief that Moss was an attorney because "Moss was recommended by Gucci's outside counsel," and criticizes Magistrate Judge Cott for "[i]gnoring . . . [such] singular facts and circumstances." *Id.* But Magistrate Judge Cott did not

---

[20] In its earlier briefing to Magistrate Judge Cott, Gucci relied on Supreme Court Standard 503, which it described as "an authoritative restatement of federal common law," as the basis for the "reasonable belief" test. *See* Dkt. 70 at 10 & n.4.

ignore this fact.  Indeed, he carefully considered the declarations submitted by the Patton Boggs

attorneys, all of whom admitted that they had no substantive knowledge of Moss's legal

background and qualifications:

> In an effort to justify its mistaken belief, Gucci makes much of the fact that Moss was recommended by its outside counsel, Patton Boggs.  Leleck Decl., ¶ 6; Lombardo Decl., ¶ 5; Leshin Decl., ¶¶ 4-5.  Perhaps if Moss had ever worked as an attorney at Patton Boggs, then the argument might have some force.  But this is not the case.  The Patton Boggs attorneys knew little, if anything, about Moss other than that he was the son of a friend of the firm.  Chorba Decl., ¶¶ 4-8; Borab[ab]y Decl., ¶ 5.  Absent any misrepresentation by Moss, Gucci was well aware when it hired Moss that he had not worked in a legal capacity for several years.  Leshin Decl., ¶ 6.  Gucci cannot now cloak itself in a veil of ignorance to avoid its discovery obligations.

Dkt. 112 at 15-16.

Gucci cannot challenge the accuracy of Magistrate Judge Cott's findings as its own

declarations establish that it was aware at the time that Moss was hired that he had previously

been working as a financial analyst for Pricewaterhouse Coopers and McKesson Corporation,

not as a lawyer.  *See* Dkt. 66 at ¶ 6.  The declarations submitted by the Patton Boggs attorneys

state unequivocally that they were unaware of Moss's legal qualifications and made no attempt

to find out whether he had such qualifications.  Dkt. 65 at ¶¶ 8-9 ("I knew at the time that

Jonathan had graduated from law school, but I do not recall whether he ever worked in a legal

capacity.... Neither Leshin nor anyone else at Gucci asked me to verify Jonathan's legal

credentials, and I did not do so."); Dkt. 64 at ¶ 7.  Equally significant, the declarations of the

Patton Boggs attorneys establish that they *did not recommend that Gucci hire Moss to be its

attorney.  See* Dkt. 64 at ¶ 7; Dkt. 65 at ¶ 9.  Indeed, there is no evidence in the record that the

Patton Boggs attorneys even advised Gucci that Moss was an attorney.  *See* Dkt. 64-66.

Gucci next argues that its failure to investigate Moss's legal qualifications was reasonable because Moss was hired "to fill a non-lawyer role."[21] Dkt. 127 at 20.  Magistrate Judge Cott likewise considered this purported fact and concluded it did not show Gucci acted reasonably. Indeed, Magistrate Judge Cott found that the "record is hardly clear" that Moss had been hired for a non-lawyer position in light of Moss's testimony to the contrary.  Dkt. 112 at 14; *see also* Dkt. 79 at ¶ 11.  Continuing, Magistrate Judge Cott reasoned, "[e]ven assuming that Gucci hired Moss into a non-legal position . . . , once it promoted Moss from a non-legal to a legal position, Gucci was obligated to conduct *some* due diligence to confirm his professional status as an attorney to ensure that he faced no disciplinary or administrative impediment to engaging in the practice of law." *Id*. at 14-15 (emphasis in original).  As Magistrate Judge Cott correctly concluded, even if Gucci had originally hired Moss for a non-legal role, this further confirms that Gucci acted unreasonably because it never conducted any inquiry into Moss's background or qualifications when it purportedly promoted him from a non-legal to a legal position.

Unable to provide any facts showing that it acted reasonably, Gucci is left with arguing that it was perfectly reasonable to hire Moss to serve as its in-house counsel without conducting any inquiry into his background or qualifications.  Dkt. 127 at 17.  In short, Gucci proposes to satisfy the "reasonable belief" requirement by contending that it does not have to show its conduct was reasonable.

Federal law says otherwise.  *U.S. v. Boffa*, 513 F. Supp. 517, 523 (D. Del. 1981), discussed by Guess at length in its initial briefing and cited by Magistrate Judge Cott in his

---

[21] Gucci has been unable to tell a consistent story regarding its hiring of Moss.  This is evident from the fact that it never bothers to address the obvious inconsistency between arguing, on the one hand, that it was reasonable for Gucci to hire Moss as Legal Counsel because he was purportedly "recommended by Gucci's outside counsel" (when in fact there was no recommendation, as shown above), and in the next breath asserting that it was reasonable not to check into Moss's legal qualifications because he was being hired to fill a non-legal position (which Moss himself disputes in his declaration (Dkt. 79 at ¶ 11)).

Memorandum and Order, holds that a party's failure to conduct any inquiry supports the conclusion that the party's belief was not reasonable. In *Boffa*, certain defendants sought to suppress evidence obtained by law enforcement on the ground that the information was communicated to an individual the defendants mistakenly believed was an attorney. *Id*. at 519. Though noting the possibility of circumstances where "the [attorney-client] privilege should be extended to those who make confidential communications to an individual in the genuine, but mistaken, belief that he is an attorney," *id*. at 523, the *Boffa* court cautioned that "[p]rudence dictates that such a belief should be reasonable in order to lay claim to the protections of the privilege and that a 'respectable degree of precaution' in engaging the services of the 'attorney' must be demonstrated." *Id*. In order to meet its burden of proof, the party claiming privilege must demonstrate not only "that [he] genuinely and reasonably believed that [the person] was an attorney," but also "demonstrate . . . what precautions, if any, [were taken] to ascertain [the person's] status [as an attorney]." *Id*. at 525. Where evidence of having taken reasonable precautions is absent, the moving party has failed to shoulder its burden of establishing that the privilege applies. *Id*. Incredibly, though Gucci discusses *Boffa* in its Objections, it completely ignores this part of the court's holding—apparently believing that addressing *Boffa* holding's that a party must show that it took "reasonable precautions" would undermine Gucci's attempt to portray Magistrate Judge Cott as having done something extraordinary, which he clearly did not.

Equally unavailing is Gucci's criticism of Magistrate Judge Ellis' analysis in *Fin. Tech. Int'l, Inc. v. Smith*, No. 99 CIV. 9351, 2000 WL 1855131 (S.D.N.Y. Dec. 19, 2000). *Fin. Tech.*—a case remarkably similar to this one—addressed *Boffa*'s "reasonable precautions" requirement in the context of a corporation's communications with in-house counsel who, despite graduating law school and passing the New York bar exam, was not admitted to practice

before any state or federal court. *Id.* at *1. As is the case here, the corporation had failed to check the attorney's background to ascertain whether or not he was a duly licensed attorney or to ask for credentials proving admission to the bar—even though such an investigation readily would have revealed that the attorney was not admitted to the bar of New York or any other state. *Id.* at *6. Recognizing that corporations are far more familiar than individuals with the necessity of "conduct[ing] investigations to determine whether a potential employee's credentials are commensurate with the corporation's needs," the court concluded that "[i]t is not unduly burdensome to require a corporation to determine whether their general counsel, or other individuals in their employ, are licensed to perform the functions for which they have been hired." *Id.*

Gucci raises a number of objections to Magistrate Judge Cott's reliance on *Fin. Tech.*, none of which are valid. First, Gucci asserts that *Fin. Tech.* has "never [been] followed by any court." Dkt. 127 at 18. This is not true. *Fin. Tech.* was followed by Magistrate Judge Pitman in *A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.*, No. 97 Civ. 4978, 2002 WL 31385824 (S.D.N.Y. Oct. 21, 2002), in which the court ruled that "in the absence of an excusable mistake of fact, even if all the other requirements of the privilege are met, communications between a 'client' and an unadmitted law school graduate are not privileged even where the putative 'attorney' has passed the bar examination." *Id.* at *4. In any event, as discussed above, *Fin. Tech.* is merely an application of *Boffa*'s "reasonable precautions" requirement applied in the context of a corporation's employment of in-house counsel—and thus directly relevant to the situation here.[22]

---

[22] Gucci's reliance on *Freeman v. Indian Spring Land Co.*, No. FSTCV054002991S, 2007 WL 127699 (Conn. Super. Ct. Jan. 8, 2007), an unpublished opinion of the Superior Court of Connecticut, to cast doubt on the holdings of *Fin. Tech.* and *Boffa* is misplaced. *Freeman* involved the application of the attorney-client privilege under Connecticut state law, and nowhere addressed federal common law.

Next, Gucci asserts that Magistrate Judge Cott followed *Fin. Tech.*, a diversity case involving New York law, because he "incorrectly believed that Magistrate Judge Ellis was applying federal law, or assumed that New York and federal law on this issue were the same." Dkt. 127 at 18 n.18. It is Gucci, not Magistrate Judge Cott, who failed to carefully read the *Fin. Tech.* decision. As noted above, Magistrate Judge Ellis looked to *Boffa* and other cases applying federal law in his analysis of whether New York law would apply a similar reasonableness requirement. Not even Gucci disputes that the holding in *Boffa*, which was decided almost 30 years ago, is an accurate statement of federal law regarding the contours of the attorney-client privilege.[23]

Gucci's final criticism is that Magistrate Judge Cott "erred in considering the relative ease or difficulty with which Gucci could have discovered that Moss was on inactive status at the California bar." Dkt. 127 at 21. That Gucci could have easily determined Moss's bar status and its significance with a few clicks of a mouse or a single telephone call to the California State Bar office is highly relevant to whether Gucci "reasonably" believed Moss was qualified to do the work for which he was hired.[24] It is undisputed that Gucci had a personnel department, staffed

---

[23] Gucci attempts, unsuccessfully, to discredit *Fin. Tech.* based on *NXIVM v. O'Hara*, 241 F.R.D. 109 (N.D.N.Y. 2007). However, the issue in *NXIVM* was whether the corporation had retained an attorney, who at all times was admitted to practice law in Washington, D.C. but not in New York, to provide non-legal strategic or legal advice. *Id.* at 59-60. Plaintiff attempted to rely on a "reasonable belief" that counsel was acting in a legal capacity to invoke the privilege as to all documents during that time period. *Id.* at 60. The court properly rejected the corporation's contention that its "subjective belief[]" was the determining factor as to whether the attorney was providing legal or non-legal advice, and noted that courts instead have developed "objective elements to . . . determine whether an attorney-client relationship truly exists," citing *FTI* as an example of such an "objective" approach. As there was no question that the attorney in *NXIVM* was at all times authorized to practice in Washington, D.C., the court had no occasion to follow *FTI*. Instead, the court ordered a document-by-document determination of whether counsel was acting in a legal or business capacity. *Id.* at 61. But the court also noted that were it to apply *FTI*, NXIVM would have to demonstrate that it ensured counsel was properly licensed. *Id.* at 61 n.23.

[24] Forgetting that it has the burden of proof, Gucci criticizes Magistrate Judge Cott for concluding that Gucci could have easily determined Moss's bar status because "there is no

with trained HR personnel. *See* Dkt. 67 at ¶ 1; Dkt. 68 at ¶¶ 2-3. It is undisputed that no one at Gucci conducted any investigation into Moss's background and legal qualifications. *See* Dkt. 112 at 5 ("Gucci presents six declarations from current and former executives and its outside counsel stating, collectively, that they never confirmed Moss's background or bar status as an attorney, but that they considered him to be an attorney."). As a matter of both law and fact, it was manifestly unreasonable for Gucci, a large corporation with a dedicated HR department, to hire Moss to perform legal work without conducting at least "some due diligence" using freely available public resources to inquire into his legal qualifications.[25]

## IV.   CONCLUSION.

Gucci urges the Court to "be mindful of the underlying purpose of the [attorney-client] privilege" in its consideration of Magistrate Judge Cott's decision. Dkt. 127 at 23. The U.S.

---

competent evidence that in 2002 or 2003, . . . Gucci would have learned anything other than that Moss was a bar member." Dkt. 127 at 22 n.23. In Guess's initial briefing, it reported on a "telephone conversation with a representative of the California bar [who] confirmed that the search function of the website was similarly active in 2002 and would have produced similar results" and provided the phone number of the State Bar. Dkt. 80 at 9 n.14. Gucci had the opportunity to confirm this statement and submit any contrary evidence, yet it did not do so. In any event, Gucci cannot run away from the fact that all it had to do was ask Moss, as Guess had done. *See id.*

[25] As an alternative ground, Gucci has also failed to establish that at least six of the seven documents on its various privilege logs involving Moss that Magistrate Judge Cott ordered produced are privileged because they are not communications between an attorney and client or they involve non-client third parties. These are Document Nos. 5, 34-35, and 37-38 discussed in Magistrate Judge Cott's Sept. 23, 2010 Memorandum and Order (Dkt. 126 at 32-34), and the June 3, 2007 email referenced on Gucci's Second Amended Privilege Log. Document Nos. 5, 34-35, and 37-38 involve communications between Moss and others at Guccio Gucci, such as Carlo Imo and Vanni Volpi. Even if Moss had been an active member of the California bar at the time these communications took place, the attorney-client privilege would not apply because they are not communications between an attorney and client. *See, e.g., Beacon Hill,* 231 F.R.D. at 138 (privilege applies only to communications between clients and their attorneys). Not even Gucci has asserted that Moss was Guccio Gucci's attorney. As for the June 3, 2007 email, which involved Moss, Volpi, and Mr. Ederer, in the absence of any evidence showing that Mr. Ederer was representing Guccio Gucci as well as Gucci, then it would appear that Volpi's presence in the communication destroyed the privilege. *Id.* Given that Magistrate Judge Cott determined that none of these communications are fully protected by the work-product privilege and Gucci has not challenged that determination, these communications (or portions thereof) are not privileged. (Magistrate Judge Cott concluded that two of the June 4, 2007 communications were privileged in part. Dkt. 126 at 33-34.)

Supreme Court agrees: "since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. U.S.*, 425 U.S. 391, 403 (1976). The privilege serves the dual purpose of shielding "from discovery advice given by the attorney as well [as] communications from the client to the attorney, made in pursuit of or in facilitation of the provision of legal services." *Diversified Group, Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 512 (S.D.N.Y. 2003).

As this case demonstrates, the goal of protecting a client's receipt of *bona fide* legal advice is not furthered by extending the privilege to those, like Moss, who are lawfully prohibited from practicing law or providing legal advice. Just the opposite. "There is no ground for encouraging the relation of client and legal adviser except when the adviser is one *who has been formally admitted to the office of attorney or counselor as duly qualified to give legal advice.*" 8 WIGMORE ON EVIDENCE, *supra*, at § 2300.

In light of what Gucci concedes are the "the unique facts and circumstances of this case," Dkt. 127 at 17, no good-faith basis supports extension of the attorney-client privilege to Gucci's communications with Moss. Gucci permitted Moss to become its in-house counsel without conducting any investigation into whether he had the qualifications to perform the functions for which he was hired. Gucci offers no reasonable justification for its reckless conduct—and none exists. As Magistrate Judge Cott correctly concluded, Gucci has only itself to blame: "Gucci itself bears responsibility for allowing its counsel to represent its interests without ensuring that he was authorized to do so." Dkt. 112 at 16. As a result, "Gucci cannot now cloak itself under a veil of ignorance to avoid its discovery obligations." *Id.*

For all the foregoing reasons, this Court should affirm Magistrate Judge Cott's measured and thoughtful decision that the attorney-client privilege does not extend to Gucci's communications with Moss.

Dated:  Los Angeles, California
        October 15, 2010

O'MELVENY & MYERS LLP

By: _____

Daniel M. Petrocelli (dpetrocelli@omm.com)
Robert C. Welsh (rwelsh@omm.com)
Andrew J. Frackman (afrackman@omm.com)
1999 Avenue of the Stars, Suite 700
Los Angeles, California  90067
Tel: (310) 553-6700
Fax: (310) 246-6779

*Attorneys for Defendants Guess?, Inc., The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., and Swank, Inc.*