UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

GUCCI AMERICA, INC.,

                Plaintiff,

- against -

GUESS?, Inc. et al.,

                Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

09 Civ. 4373 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

      Gucci America, Inc. ("Gucci") is suing Guess?, Inc. ("Guess") and others for trademark infringement arising out of defendants' use of certain trademarks, logos, and designs. During discovery, Gucci submitted a privilege log identifying communications to and from Jonathon Moss, its in-house legal counsel. When Moss was deposed he testified that he was an "inactive" member of the California Bar. Indeed, investigation by the parties has revealed that he was on inactive status at the time of all the communications identified on the privilege log. As a result, Guess demanded that Gucci produce all of the Moss communications, arguing that they were not protected by the attorney-client privilege, as Moss was

not covered by the privilege.

I referred this matter, and other discovery matters, to a Magistrate Judge. Gucci moved for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure to prevent the disclosure of the Moss communications. After extensive briefing that included four briefs and ten affidavits (or declarations), the Magistrate Judge denied Gucci's motion, finding that Gucci had forfeited its right to invoke the privilege based on its failure to discover that Moss was not entitled to practice law based on his inactive status as a member of the California Bar.[1]

Gucci has timely filed objections to the Magistrate Judge's Order pursuant to section 636(b)(1)(A) of title 28 of the United States Code and Rule 72(a) of the Federal Rules of Civil Procedure. In addition to the extensive record before the Magistrate Judge, the parties have filed briefs in support of and in opposition to the objections. For the reasons set forth below, I hereby set aside the Order of the Magistrate Judge and grant Gucci's motion for a protective order.

## II.   APPLICABLE LAW

### A.   Review of a Nondispositive Order

Rule 72(a) provides that "a district judge in the case must consider timely objections [to a nondispositive order] and modify or set aside any part of the

---

[1] *See Gucci America, Inc. v. Guess?, Inc. et al.*, No. 09 Civ. 4373, 2010 WL 2720079 (S.D.N.Y. June 29, 2010) ("*Gucci I*").

order that is clearly erroneous or contrary to law." A Magistrate Judge's order is considered "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure."[2] Further, if "on the entire evidence, [the court] is left with the definite and firm conviction that a mistake has been committed," such an order is deemed "clearly erroneous."[3] Guess does not dispute that this is the applicable standard of review.[4]

B. **The Attorney-Client Privilege**

1. **Undisputed Principles**

The leading case setting forth the standard for the invocation of the attorney-client privilege was written by District Judge Charles E. Wyzanski in 1950. In *United States v. United Shoe Machinery Corporation*, the court held that

---

[2] *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2007 WL 680779, at *2 (E.D.N.Y. Mar. 2, 2007) (cited in Plaintiff Gucci's Memorandum of Law in Support of Its Rule 72(a) Objections to the June 29, 2010 Memorandum and Order of Magistrate Judge James L. Cott Denying in Part Plaintiff's Motion for a Protective Order Against the Disclosure of the Written Communications of Its Former In-House Attorney Jonathan Moss ("Pl. Mem") at 7.

[3] *Id.* (quotation marks omitted). The party asserting objections under Rule 72(a) bears the "heavy burden of showing that the ruling was 'clearly erroneous or contrary to law.'" *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 553 (S.D.N.Y. 1985).

[4] *See* Defendant Guess's Memorandum of Law in Opposition to Plaintiff Gucci's Rule 72(a) Objections to the June 29, 2010 Memorandum and Order of Magistrate Judge James L. Cott ("Def. Mem.") (containing no discussion of the applicable standard of review).

in order to prevail on an assertion of the attorney-client privilege the party invoking the privilege must demonstrate that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) is a *member of the bar of a court*, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.[5]

The attorney-client privilege is intended to "encourage full and frank communication between attorneys and their clients."[6] The privilege serves the dual purpose of shielding "from discovery advice given by the attorney as well as communications from the client to the attorney, made in pursuit of or in facilitation of the provision of legal services."[7] However, because the attorney-client privilege "stands in derogation of the public's 'right to every man's evidence' . . . '[i]t ought to be strictly confined

---

[5] 89 F. Supp. 357, 358-59 (D. Mass. 1950) (emphasis added). *Accord SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 138 (S.D.N.Y. 2004) (citing *United Shoe*). Gucci agrees that the party invoking the privilege bears the burden of establishing its existence. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000).

[6] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[7] *Diversified Group, Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 512 (S.D.N.Y. 2003).

within the narrowest possible limits consistent with the logic of the principle.'"[8] Finally, there is no dispute that federal common law governs privilege issues in federal question cases.[9]

### 2. Disputed Issues

#### a. Member of the Bar of a Court

As noted above, the *United Shoe* test requires that in order to sustain the assertion of the privilege the proponent must show that the person to whom the communication was made "is a member of the bar of a court."[10] Courts in this circuit have often cited this now iconic language.[11] Nonetheless, Guess argues that the correct test is whether a person is "authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation."[12] The Magistrate

---

8 *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1980) (quoting 8 JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE § 2192, at 70, § 2291, at 554 (McNaughton rev. 1961)).

9 *See* Fed. R. Evid. 501 ("the privilege of a witness . . . shall be governed by the principles of the common law"). *See also von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

10 89 F. Supp. at 358-59.

11 *See Gucci I*, 2010 WL 2720079, at *4 (citing *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962); *In re Rivestigmine Patent Litig.*, 237 F.R.D. 69, 73 (S.D.N.Y. 2006)).

12 Def. Mem. at 6 (quoting Supreme Court Standard 503(a)(2), reprinted in 56 F.R.D. 183, 235-36 (West 1972) (Proposed Rule of Evidence 503 which was never adopted)).

Judge concluded that in order for the privilege to attach the communication must be made to a person who is authorized to engage in the practice of law.[13]

### b. Reasonable Belief

Even if the communications at issue were not made to an attorney, the privilege may be successfully claimed if the client reasonably believed that the person to whom the communications were made was in fact an attorney.[14] While the reasonable belief exception is undisputed, the parties are at odds about two aspects of this exception: (i) whether a corporation can claim a reasonable belief; and (ii) whether the reasonable belief test requires the party asserting it to take reasonable precautions to determine whether the person to whom it is communicating is an attorney. The Magistrate Judge determined that because Gucci failed to exercise "due diligence" in determining whether Moss was authorized to practice law, it could not successfully assert the privilege with respect to its communications with him.[15]

---

[13]   See *Gucci I*, 2010 WL 2720079, at *7.

[14]   See *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997); *United States v. Rivera*, 837 F. Supp. 565, 568 n.1 (S.D.N.Y. 1993) ("It is common ground among the parties that the attorney-client privilege attaches to confidential communications made to an individual in the genuine, but mistaken, belief that he is an attorney.").

[15]   *Gucci I*, 2010 WL 2720079, at *8 (citing *Financial Tech. Int'l, Inc. v. Smith*, No. 99 Civ. 9351, 2000 WL 1855131, at *6-7 (S.D.N.Y. Dec. 19, 2000)).

## III. RELEVANT FACTS

### A. Undisputed Facts

In 1993, Moss graduated from Fordham Law School. Following graduation Moss passed the California bar examination and, on December 14, 1993, was admitted to the California bar. In December 1994, Moss became a member of the bars of the U.S. District Courts for the Southern and Central Districts of California. On September 1, 1996, Moss voluntarily changed his California bar status to inactive, but remained a member of the California bar, paying the annual required fee to maintain inactive status.

In 2002, Gucci hired Moss. Gucci was aware that Moss had obtained a law degree. In 2003, Moss was promoted to the position of legal counsel and in 2005 he became the director of legal services. In 2008, he was promoted to Vice President, Director of Legal and Real Estate. Throughout these years Moss provided various legal services to Gucci – including appearing before courts and administrative agencies, filing trademark applications, handling employment matters, and negotiating leases. No one at Gucci investigated Moss' status as a practicing attorney or his qualifications to practice law.[16]

### B. Disputed Facts

---

[16] *See id.* at *1-2 (citing various affidavits and declarations).

The parties dispute Moss' current status as an attorney in at least two significant respects. *First,* the parties dispute whether Moss is "a member of the bar of a court."[17] Moss was admitted to two federal district courts in California based on his admission to the California Bar. Local Rule 83.3(c)(1)(a) of the Southern District of California states that "[a]dmission to *and continuing membership* in the bar of the court is limited to attorneys of good moral character who are *active members* in good standing of the State Bar of California" (emphasis added). Local Rule 83.3(d) goes on to state that "[i]n the event the attorney is no longer eligible to practice in another jurisdiction by reason of . . . enrollment *as an inactive member,* the attorney will immediately be suspended from practice before this court without any order of court . . ." (emphasis added).

On the other hand, Local Rule 83-2.2.1 of the Central District of California states that "[a]dmission to and continuing membership in the Bar of this Court is limited to persons . . . who are *active* members in good standing of the State Bar of California . . . . If the attorney ceases to meet these criteria, the attorney *is subject to* the disciplinary rules of the court" (emphasis added). Local Rule 83-3.4 goes on to state that "[a]ny attorney previously admitted to the Bar of this Court who no longer is enrolled as an *active member* of the Bar . . . shall not

---

[17]   *United Shoe,* 89 F. Supp. at 358-59.

practice before this Court. Upon receipt of reliable information that such attorney is practicing before the Bar of this Court, this Court shall issue an Order to Show Cause why the attorney should not be disbarred from this Court . . . " (emphasis added). No party has offered proof that an Order to Show Cause was issued by the Central District of California as to why Moss should not be disbarred. Thus, it appears that Moss was automatically suspended from practicing in the Southern District of California, but remained a member of the bar of the Central District of California.

*Second*, the parties dispute whether Moss was authorized to practice law. Moss was based in New Jersey during his employment with Gucci. Section 6125 of the California Business and Professional Code states that "[n]o person shall practice law *in California* unless the person is *an active member* of the State Bar" (emphasis added).[18] Section 6126 of the Code further provides that "[a]ny person . . . practicing law who *is not an active member of the State Bar*, or otherwise authorized pursuant to statute or court rule to practice law *in this state* at the time of doing so, is guilty of a misdemeanor . . ." (emphasis added). Based on these provisions, Moss believed that his inactive membership in the California Bar

---

[18] *See also Z.A. v. San Bruno Park Sch. Dist.*, 165 F.3d 1273, 1275 (9th Cir. 1999) ("*In the state of California*, a person must be an active member of the California State Bar in order to practice law.") (emphasis added)).

did not preclude him from practicing law outside California.[19]

The parties also dispute Gucci's original intention in hiring Moss. Gucci asserts that it did not investigate Moss' qualifications to practice law because it did not originally hire him to perform legal duties.[20] Moss, on the other hand, states that he was hired as a legal associate.[21] However, whatever Gucci's original intent in hiring Moss may have been, there is no question that he acted as Gucci's attorney from 2003 until he was terminated in 2010.

The Magistrate Judge concluded that Gucci originally hired Moss to work in a legal capacity, that it did not exercise due diligence to investigate whether or not he was authorized to practice law before it hired him or during his employment, and that Moss was not authorized to practice law in any jurisdiction.[22] As a result of these findings, the Magistrate Judge concluded that Gucci had forfeited its entitlement to assert the attorney-client privilege with respect to its communications with Moss.[23]

---

[19]   *See* 4/16/10 Affidavit of Jonathan Moss, submitted in connection with Gucci's motion for a protective order ("Moss Aff.") ¶¶ 4, 10 (Docket No. 79).

[20]   *See* 3/22/10 Declaration of Arthur Leshin, former Executive Vice-President, Finance, Real Estate and Logistics for Gucci, ¶ 6 (Docket No. 66).

[21]   *See* Moss Aff. ¶ 11.

[22]   *See Gucci I*, 2010 WL 2720079, at *7-10.

[23]   *See id.*

## IV.  DISCUSSION

### A.  Moss Was an Attorney for the Purpose of Invoking the Attorney-Client Privilege

Moss, a law graduate, was admitted to the bar in three jurisdictions: California, the Southern District of California, and the Central District of California. Although he voluntarily assumed inactive status, he remained a member of the bar in at least two of those jurisdictions. In addition, the language of the California Business and Professional Code is less than clear as to whether his inactive status as a member of the California bar prohibited him from practicing law outside the jurisdiction.[24] Indeed, because the operative language of sections 6125-6126 is ambiguous, I find that Moss' belief that he was permitted to provide legal advice outside of California was not unreasonable. While I do not think it is necessary to decide Gucci's original intent in hiring Moss, I cannot say that the Magistrate Judge's finding that he was hired to perform legal work is clearly erroneous. However, as explained below, I draw a different legal conclusion from this finding.

The Magistrate Judge reached the conclusion that for the privilege to attach the person to whom communications are made must be "actually authorized

---

[24]  *See supra*, at 9-10.

-11-

to engage in the practice of law."[25]  I find this conclusion "contrary to law."[26]  The seminal case, *United Shoe*, directs only that the person be a "a member of the bar of a court."[27]  Moss clearly held that status.  More importantly, throughout the operative period, Moss held the position of legal counsel and director of legal services.  Gucci was his sole client.  Every communication on legal matters (as opposed to business advice) between Moss and his employer were clearly *intended* to be protected attorney-client communications.  The purpose of the privilege is to protect the client's communication, and to encourage full and frank disclosure when seeking legal advice, which is why the client holds the privilege and only the client can assert or waive it.  Gucci should not be penalized because its attorney, a member of the bar in two jurisdictions, may not have been "authorized to practice law" based on his "inactive" status as a member of the California bar.[28]

---

[25]   *Gucci I*, 2010 WL 2720079, at *5.

[26]   Fed. R. Civ. P. 72(a).  The Magistrate Judge relied on a single case from this district in support of this conclusion.  In *Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006), the court used the phrase "members of any bar" in the context of two attorneys who were never admitted to the practice of law in any jurisdiction.  *Id.* at *17.  It is also noteworthy that in deciding that the privilege did not apply, the *Malletier* court did not discuss the "reasonable belief" exception.

[27]   *United Shoe*, 89 F. Supp. at 358-59.

[28]   Gucci argues that many cases support this conclusion.  However, all of them are inapposite or easily distinguished.  For example, in *Applebaum v. Rush*

### B.   Gucci Had a Reasonable Belief that Moss Was Its Attorney

The Magistrate Judge found that in order to invoke the reasonable belief exception Gucci, as a corporation, must have conducted due diligence, or taken reasonable precautions to determine that its counsel was authorized to practice law.[29] I find this principle "contrary to law," and the concomitant outcome

---

*Univ. Med. Ctr.*, 231 Ill. 2d 429 (Ill. 2008), the court concluded that a complaint filed by an attorney on inactive status would not be declared void because the attorney could not practice law. But that case turned on the interpretation of the state law of Illinois, not federal common law. In addition, the attorney there brought suit on his own behalf as the only interested party in a contested estate. *See also Tyree v. Dance*, No. 88-15775, 1990 WL 40298, at *1 (9th Cir. Apr. 4, 1990) (finding that an attorney admitted to the federal bar in Utah, despite his inactive status in California, could authorize a wiretap under the federal wiretap statute which provides that "any attorney authorized by law to prosecute or participate in the prosecution of such offenses" may authorize a wiretap).
        Gucci also relies on a number of criminal cases in which defendants argued that their convictions should be vacated because of the "ineffective assistance" of their counsel – who, it turned out, were never members of the bar or who had been suspended or disbarred. In rejecting defendants' motions based on their Sixth Amendment right to counsel, courts have held that the defendants should not get a windfall if they cannot prove that a licensed attorney would have done anything differently from the person who provided representation. Such cases are applying a different test in a different context. To prove a Sixth Amendment violation a defendant must prove that his rights were violated and he was prejudiced by "errors and omissions . . . that a conscientious advocate would not have made." *United States v. Ross*, 338 F.3d 1054, 1056 (9th Cir. 2003). *Accord Elfgeeh v. United States*, No. 09 CV 2015, 2010 WL 3780216, at *1, 4, 6 (E.D.N.Y. Sept. 21, 2010) (observing that "suspension or disbarment alone is not enough to make an attorney per se ineffective").

[29]     *See Gucci I*, 2010 WL 2720079, at *8 ("[O]nce [Gucci] promoted Moss from a non-legal to a legal position, Gucci was obligated to conduct some due diligence to confirm his professional status as an attorney to ensure that he

reached by the Magistrate Judge pursuant to it "clearly erroneous."[30]

As noted earlier, the reasonable belief exception is well established. A number of courts have sustained invocation of the privilege even when the communications were not made with a member of the bar, if the client reasonably believed that it was communicating with an attorney.[31] Nonetheless, based on a single decision by a Magistrate Judge in this district – which applied New York law – the Magistrate Judge here held that a corporation must conduct due diligence in order to invoke the reasonable belief exception.

In *Financial Technologies International, Inc. v. Smith,* the court

---

faced no disciplinary or administrative impediment to engaging in the practice of law. It could not simply rely on representations that Moss made to the company, or the fact that he 'held himself out' as an attorney. Minimal due diligence includes confirming that Moss was licensed in some jurisdiction, that the license he held in fact authorized him to engage in the practice of law, and that he had not been suspended from practicing, or otherwise faced disciplinary sanctions.").

[30] Fed. R. Civ. P. 72(a).

[31] *See supra,* at 6 n.14. *See also United States v. Mullen & Co.,* 776 F. Supp. 620, 621 (D. Mass. 1991) ("[T]he attorney-client privilege may apply to confidential communications . . . when the client is under the mistaken, but reasonable, belief that the professional from whom legal advice is sought is in fact an attorney."); *United States v. Tyler,* 745 F. Supp. 423, 425 (W.D. Mich. 1990) (same); *United States v. Boffa,* 513 F. Supp. 517, 523 (D. Del. 1981) (stating that a client who reasonably believes that an individual is an attorney "should not be compelled to bear the risk of his 'attorney's' deception and [] should be entitled to the benefits of the privilege as long as his bona fide belief in his counsel's status is maintained.").

-14-

addressed the question of whether a corporation could assert the attorney-client privilege with respect to its in-house counsel who it turned out was *never admitted to the bar of any court.* In this diversity jurisdiction case, the court was required to predict how New York courts would rule on this issue. The court held that the reasonable belief exception applies to individuals but not to corporations. Specifically, the court held that "even if New York would apply the reasonable belief exception to individuals, corporations would have to make sure their attorneys are in fact attorneys."[32] Thus, the court went far beyond requiring merely a reasonable belief or reasonable precautions, instead requiring actual knowledge of the status of in-house attorneys.

The Magistrate Judge's reliance on *Financial Technologies* is misplaced. *First,* as noted, it does not purport to apply federal common law. *Second,* it is, in my view, wrongly decided. Nowhere in the federal law of privilege have I located a due diligence requirement that applies to corporations as distinct from individuals.[33] The test remains whether the client had a reasonable

---

[32]   *Fin. Tech. Int'l,* 2000 WL 1855131, at *7.

[33]   Guess argues that a "reasonable precaution" test allegedly found in *Financial Technologies International* was established in *United States v. Boffa,* a criminal case in which defendants sought legal counsel from a person who turned out to be a con man with no legal training. This man was eventually arrested, cooperated with the Government, and provided prosecutors with information given to him by defendants. The court rejected defendants' claim that the Government

-15-

belief that it was communicating with an attorney.[34] The question, then, is whether Gucci has demonstrated that it had a reasonable belief that Moss was its attorney when it communicated with him in the course of his employment as its in-house

---

improperly invaded their attorney-client privilege with respect to communications with this individual. In denying defendants' motion to suppress the information, the court noted that defendants had failed to meet their burden of proving their reasonable belief that the con man was an attorney. "Virtually no evidence was adduced at the hearing to demonstrate what [defendant's] state of mind actually was with respect to [the con man] or what precautions, if any, [defendant] took to ascertain [the con man's] status . . . . [The] evidence is too insubstantial to justify the conclusion that [defendant] actually believed that [the con man] was an attorney and consulted him in that capacity." 513 F. Supp. at 525. The *Boffa* court did, in fact, reference the reasonable belief test, citing section 2302 of the Wigmore treatise: "Prudence dictates that such a belief should be reasonable in order to lay claim to the protections of the privilege and that a 'respectable degree of precaution' in engaging the services of the 'attorney' must be demonstrated." *Id.* at 523. Based on these two quotations from a 1981 Delaware criminal case, Guess argues that federal courts in this Circuit have adopted a "reasonable precautions" test that somehow supplements, if not displaces, the reasonable belief test. *See* Def. Mem. at 20. This is simply not the case. Moreover, whereas criminal defendants could theoretically abuse a rule that their incriminating statements be suppressed upon a showing that they believed their "counsel" was a member of a bar (when in fact he was not), it is unreasonable to think that a corporation would deliberately turn a blind eye to the status of in-house counsel's bar membership in order to some day invoke the "reasonable belief" exception to the rule that only communications between "attorneys" and clients are privileged. This provides further reason not to shift the burden of ensuring attorneys' compliance with complicated bar membership rules from attorneys to corporations.

[34]   *See supra*, at 14 n.31. *See also Freeman v. Indian Spring Land Co.*, No. FSTCV054002991S, 2007 WL 127699 (Conn. Super. Jan. 8, 2007) (unpublished opinion) (applying Connecticut law and holding that corporation's reasonable belief that it was communicating with an attorney allowed it to invoke the attorney-client privilege).

counsel.[35]

Applying the reasonable belief test rather than the discredited due diligence requirement, there can be no real dispute that Gucci has proven that it had a reasonable belief that Moss was an attorney. As the Magistrate Judge found, it knew when it hired Moss that he had a law degree and hired him to do legal work.[36] After his first position he was promptly promoted first to legal counsel, then to director of legal services, and then to Vice President, Director of Legal and Real Estate. Throughout these years Moss provided various legal services to Gucci – including appearing before courts and administrative agencies, filing trademark applications, handling employment matters, and negotiating leases. These are functions routinely handled by an attorney. He performed all of these duties competently over a lengthy period of time. In addition, Gucci paid Moss' California bar membership fees throughout the years of his employment.[37] Finally, Gucci produced the declarations of six current and former executives and its

---

[35] A corporation's failure to demonstrate a "respectable degree of caution" in hiring an individual to serve as in-house counsel may in some cases shed light on the reasonableness of its belief that the individual was its attorney, but that does not translate into a requirement that a corporation conduct due diligence in hiring and/or promoting an attorney who represents that he is a member of a bar.

[36] *See Gucci I*, 2010 WL 2720079, at *2-3.

[37] *See* Moss Aff. ¶ 13.

outside counsel stating that they all considered Moss to be an attorney.[38] This is more than sufficient evidence to support the conclusion that Gucci had a reasonable belief that Moss was its attorney throughout the relevant period; any other conclusion would be clearly erroneous.

        Moreover, as Gucci has convincingly argued, any other result would place an unfair and potentially disruptive burden on corporate entities. To require businesses to continually check whether their in-house counsel have maintained active membership in bar associations before confiding in them simply does not make sense. While an attorney has an obligation to ensure that he is properly practicing law – and faces the specter of disciplinary action if he engages in unauthorized practice – the sins of the attorney must not be visited on the client so long as the client has acted reasonably in its belief that its counsel is, in fact, an attorney. Judging reasonableness in hindsight is never easy. But "on the entire evidence," I am "left with the definite and firm conviction that a mistake has been committed," that Gucci's belief that Moss was its attorney was more than reasonable, and that the Magistrate Judge's order denying Gucci's motion for a protective order was therefore "clearly erroneous."[39]

---

[38]    *See Gucci I*, 2010 WL 2720079, at *2.

[39]    *In re Comverse Tech.*, 2007 WL 680779, at *2 (quotation marks omitted).

## V.  CONCLUSION

For the reasons set forth above, the Order of the Magistrate Judge is set aside and Gucci's motion for a protective order is hereby granted. All communications between Gucci and Moss that were made for the purpose of giving legal advice are entitled to protection pursuant to the attorney-client privilege.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         January 3, 2011

## - Appearances -

**For Plaintiff:**

Louis E. Ederer, Esq.
Arnold & Porter
399 Park Ave.
New York, NY 10022-4690
(212) 715-1000

**For Defendants :**

Robert C. Welsh, Esq.
O'Melveny & Myers LLP
1999 Ave. of the Stars, 7th Fl.
Los Angeles, CA 90067-6035
(310) 553-6700