UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

GUCCI AMERICA, INC.,

              Plaintiff,

    - against -

GUESS? , INC., MARC FISHER
FOOTWEAR LLC, THE MAX
LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG,
J&M ASSOCIATES L.P., VIVA
OPTIQUE, INC., SIGNAL PRODUCTS,
INC., and SWANK, INC.,

              Defendants.

------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/14/12
```

**OPINION AND ORDER**

**09 Civ. 4373 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.      INTRODUCTION**

      Gucci America, Inc. ("Gucci") brings this action against Guess?, Inc.,

Marc Fisher Footwear LLC ("MFF"), the Max Leather Group/Cipriani

Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal

Products, Inc, and Swank, Inc. (collectively, "Guess"), alleging various violations

of the Lanham Act and New York state law.[1]  Guess now moves for summary

judgment.  MFF has filed a similar motion with respect to Gucci's claims against

it.  For the reasons stated below, the motions are denied in part and granted in part.

## II.    BACKGROUND[2]

This dispute began in 2009, when Gucci sued Guess, stating that it

engaged in "a sophisticated and elaborate scheme . . . to target Gucci, to create

products that are similar in appearance to the most popular and best-known Gucci

products, and trade upon the goodwill and reputation associated with Gucci and its

high-quality, distinctive product lines."  Proceeding under both federal and state

law, Gucci seeks a permanent injunction preventing Guess from using the allegedly

infringing marks, monetary relief (including actual damages, statutory damages,

and an accounting of profits) and destruction of all allegedly infringing products on

the basis of the following claims: 1) a trademark counterfeiting claim based on

Guess's use of Gucci's Green-Red-Green Stripe ("GRG Stripe") design; 2) a

trademark infringement claim based on Guess's use of the GRG Stripe, Script

_____

[1]    *See* Second Amended Complaint at ¶¶ 64-119.  As noted below in
more detail, the federal claims include trademark counterfeiting, infringement,
dilution, and false designation of origin.  The state law claims are based on
common law trademark infringement and unfair competition, as well as statutory
trademark dilution.

[2]    Unless otherwise noted, the material in this section is drawn from the
Second Amended Complaint.

Guess, and Square G designs, as well as a related trade dress infringement claim based on Guess's use of the Quattro G design;[3] and 4) claims for dilution, false designation of origin, and unfair competition based on Guess's use of all four designs.  Gucci also seeks cancellation of Guess's "4G Square Repeating Logo" trademark on the basis of abandonment.[4]  Guess timely denied all of Gucci's claims, and approximately six months after the Complaint was filed, suggested that this dispute was amenable to summary disposition.[5]  Nonetheless, the parties conducted full-scale discovery and engaged in settlement negotiations.

At a hearing on June 6, 2011, Guess persisted in its view that it was entitled to summary judgment.  Nonetheless, I directed the parties to separate the *Daubert* expert-exclusion process from the summary judgment process, hoping that the decision on these motions would eliminate the need for summary judgment motions, or at least significantly reduce the scope of such motions.[6]  Thereafter,

---

[3]     Pictures of each design, along with examples of their use by both Gucci and Guess, are found in Exhibits A through D, annexed to this opinion.

[4]     Although Gucci originally alleged point-of-sale confusion as well as post-sale confusion, it now proceeds solely on the latter theory.  *See Gucci America, Inc. v. Guess?, Inc.*, 09 Civ. 4373, 2011 WL 5825206, at *8 (S.D.N.Y. Nov. 16, 2011)("Gucci I").

[5]     *See* Letter of Robert J. Welsh to the Court, Ex. H to Declaration of Louis S. Ederer ("Ederer Decl."), Counsel for Gucci, at H1-H4.

[6]     *See* 6/6/11 Conference Transcript, Ex. A to Ederer Decl., at 28:9-12.

this Court excluded all of Guess's confusion surveys as irrelevant to the issue of post-sale confusion.  One of these – the Scott Survey – was nonetheless admitted on the issue of laches.[7]  Gucci's confusion survey was ultimately admitted for certain limited purposes,[8] while its dilution survey was admitted in its entirety.[9]

Although Guess previously stated that its summary judgment motion would "rely largely on [the confusion] surveys,"[10] it was not deterred by their exclusion or by this Court's frequent warnings that many of the issues in this case were inherently fact intensive and not amenable to summary judgment. Accordingly, Guess's counsel has now brought the motion that it could not waive "in good conscience."[11]  A careful consideration of the voluminous submissions with which the parties have inundated this Court confirms that large portions of these motions were – as predicted – not amenable to summary disposition.[12]  With

---

[7]   *See Gucci I*, 2011 WL 5825206, at *16.

[8]   *Gucci America, Inc. v. Guess?, Inc.*, 09 Civ. 4373, 2011 WL 6326032, at *2 (S.D.N.Y. Dec. 16, 2011) ("Gucci II").

[9]   *See Gucci I*, 2011 WL 5825206, at *16.

[10]   6/6/11 Conference Transcript, Ex. A to Ederer Decl., at 17:19-21.

[11]   8/4/11 Conference Transcript, Ex. A to Ederer Decl., at 7:15-19.

[12]   This Court's individual rules limit parties to fifteen exhibits of fifteen pages each – an implicit limit of two-hundred twenty-five pages – on any motion, unless permission to exceed is given in advance.  The parties have completely disregarded the spirit of these rules.  The Welsh Declaration, while within the

few exceptions, the motions are denied.

## III.   APPLICABLE LAW

### A.   Summary Judgment

#### 1.   General Standards

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[13] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[14] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[15] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact

---

implicit page limit, includes portions of forty different documents. The Ederer Declaration contains excerpts of more than one hundred documents and contains over fourteen hundred pages. All other page limits were properly observed.

[13]     Fed. R. Civ. P. 56(c).

[14]     *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (citation omitted).

[15]     *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

on an essential element of the non[-]movant's claim."[16]

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[17]  The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[18] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[19] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[20]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[21]  However, "'only admissible evidence need be considered by the trial court in ruling on a motion for

---

[16]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[17]     *See id.*

[18]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (citation omitted).

[19]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted).

[20]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (citation omitted).

[21]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citation omitted).

summary judgment.'"[22]  "'Credibility assessments, choices between conflicting

versions of the events, and the weighing of evidence are matters for the jury, not

for the court on a motion for summary judgment.'"[23]  Summary judgment is

therefore "appropriate only if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law."[24]

### 2.    Expert Reports

"Entirely conclusory" expert reports are not sufficient to ward off

summary judgment.[25]  Indeed, even a non-conclusory expert report may not be "a

talisman against summary judgment."[26]  It does not follow, however, that an expert

report is *never* sufficient to defeat summary judgment.  Instead, deciding whether

an expert report raises a genuine issue of material fact is a task left to the sound

---

[22]    *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[23]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted).

[24]    *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[25]    *Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008).

[26]    *Raskin*, 125 F.3d at 66 (citations omitted).

discretion of the court.[27]  In cases where credible expert reports conflict the case for

summary judgment on the disputed issue is very weak.[28]

**B.    Post-Sale Confusion**[29]

The Second Circuit has recognized a claim for post-sale confusion for

more than fifty years.[30]  This type of confusion harms the owner of a trademark in

that a potential purchaser, knowing that the public is likely to be confused or

deceived by the allegedly infringing product, will choose to purchase that product

---

[27]    *See*, *e.g.*, *Brown v. County of Nassau*, 736 F. Supp. 2d 602, 620 (E.D.N.Y. 2010) (quoting *Webster v. Offshore Food Serv.*, Inc., 434 F.2d 1191, 1193 (5th Cir. 1970)).

[28]    *See In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (citation omitted).

[29]    Regardless of the name given to the infringement claim – false designation of origin, unfair competition, or simply "infringement" – the question under the Lanham Act and state law infringement claims is the same: is there a likelihood of confusion?  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).  However, trademark infringement claims are distinct from trademark dilution claims, which may exist even if there is no confusion at all.  *See Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 309-10 (S.D.N.Y 2007).

[30]    *See Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-le Coultre Watches, Inc.*, 221 F.2d 464, 466 (2d Cir. 1955).  There is no doubt that the theory remains viable to this day.  *See Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 n.2 (2d Cir. 2005) ("Burlington Coat Factory").

instead of a genuine one in order to gain the same prestige at a lower price.[31]

While courts have long recognized that the Lanham Act only protects against confusion that affects purchasing decisions,[32] the Second Circuit has never required a trademark owner proceeding under a post-sale theory of confusion to show that sales were actually lost to the allegedly infringing user, as such evidence is not easily obtained.  Instead, the Second Circuit has held that post-sale confusion is actionable when members of the public are confused as to the origin of the products,[33] as the existence of such confusion is precisely what would lead a potential purchaser to choose the cheaper infringing product over the more expensive genuine article.

Accordingly, instead of focusing on whether any sales were actually diverted, courts in the Second Circuit look at all of the traditional *Polaroid* factors in analyzing claims of post-sale confusion.[34]  Such factors include (1) the strength

---

[31]     *See Hermes Intern. v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 108 (2d Cir. 2000).

[32]     *See*, *e.g.*, *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991).

[33]     *See Hermes*, 219 F.3d at 108.

[34]     *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)*. See also Burlington Coat Factory*, 426 F.3d at 537 n.2; *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir. 1997) (reversing the district court's weighing of the *Polaroid* factors in assessing a claim of post-sale confusion

of plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the proximity of the products; (4) the likelihood that plaintiff will "bridge the gap"; (5) actual confusion between products; (6) defendant's good or bad faith in adopting the mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.[35] "No single factor is dispositive, nor is a court limited to consideration of only these factors."[36] "Further, 'each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product.'"[37]

### C.   Monetary Relief

In order to obtain monetary relief for damages stemming from trademark infringement, the owner of a trademark normally must prove "actual consumer confusion or deception resulting from the violation [of the Lanham

---

on the basis of incorrect balancing)*; Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 876 (2d Cir. 1986).

[35]      *See Polaroid Corp.*, 287 F.2d at 495.

[36]      *Brennan's, Inc. v. Brennan's Restaurant, LLC.*, 360 F.3d 125, 130 (2d Cir. 2004) (citing *Polaroid*, 287 F.2d at 495).

[37]      *Id.* (quoting *Lois Sportswear*, 799 F.2d at 872).

Act]."[38]  Damages may include lost sales,[39] a reasonable royalty[40], and harm to

brand value.[41]  In the absence of such a showing, the owner may nonetheless obtain

monetary relief by proving that the alleged infringer acted with an intent to

deceive, because such an intent gives rise to a rebuttable presumption of actual

confusion.[42]  While an intent to copy is distinct from an intent to deceive, it

nonetheless creates a presumption of an intent to deceive, unless there is evidence

to the contrary.[43]

　　　　Monetary relief may also be granted in the form of an accounting of a

defendant's profits arising from the sale of allegedly infringing products.[44]  To

---

[38]　　*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 646
(S.D.N.Y. 2007) ("Malletier II").

[39]　　*See George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540
(2d Cir. 1992).

[40]　　*See* 5 McCarthy on Trademarks § 30:85.

[41]　　*See id.* at § 30:72.

[42]　　*See George Basch Co., Inc.*, 968 F.2d at 1537.

[43]　　*See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97,
118 (2d Cir. 2009).

[44]　　For an accounting of profits, a plaintiff need only prove defendant's
infringing sales.  Thereafter, the defendant is entitled to a reduction of that amount
based on costs and expenses associated with the infringing sales, but only if it can
prove that there is "a sufficient nexus" between the two that warrants such a
reduction.  *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 8 (2d
Cir. 1989).  Furthermore, it is important to note that a defendant's profits are

obtain an accounting, the plaintiff must show that the infringer acted with "willful deceptiveness." Nonetheless, because an accounting of profits is an equitable remedy, willful deceptiveness, while a necessary factor, must be considered along with many others, including "'(1) the degree of certainty that the defendant benefited [sic] from the unlawful conduct, (2) [the] availability and adequacy of other remedies, (3) the role of a particular defendant in effectuating the infringement, (4) plaintiff's laches; and (5) plaintiff's unclean hands.'"[45] If a court does order an accounting, it should be limited to those profits attributable to the use of the allegedly infringing marks.[46]

### D.    Laches

Because the Lanham Act expressly incorporates the principles of equity, the equitable defense of laches is available in a trademark infringement action brought under the Lanham Act.[47]  As an equitable defense, however, it is

---

conceptually distinct from profits lost by the seller due to allegedly infringing sales, which are considered actual damages. *See George Basch Co., Inc.*, 968 F.2d at 1540.

[45]    *Malletier v. Dooney & Bourke, Inc.*, 500 F. Supp. 2d 276, 279 (S.D.N.Y. 2007) ("Malletier I") (quoting *George Basch Co., Inc.*, 968 F.2d at 1540).

[46]    *See Gucci America, Inc. v. Daffy's Inc.*, 354 F.3d 228, 242 (3d Cir. 2003); *Malletier II*, 525 F. Supp. 2d at 657.

[47]    *See* 6 McCarthy on Trademarks § 31:1.

-12-

also highly fact intensive and not typically amenable to summary judgment.[48]

In the context of a suit brought under the Lanham Act, the Second Circuit has stated that the likelihood that the defense of laches will apply increases as the plaintiff tolerates "the [defendant's] competition in the *same* market with a name similar to that of the [plaintiff]" over an extended period of time.[49]  Generally speaking, the court considers three factors in a laches analysis: (1) whether the senior user knew that the junior user was using its mark; (2) whether the senior user inexcusably delayed taking action; and (3) whether the junior user is harmed as a result.[50]

### E.    Standards of Proof For Trademark Dilution Claims

The standard by which a claim for trademark dilution is assessed depends on when the allegedly diluting mark was first used in commerce.  Where such use occurs before October 6, 2006, the dilution claim is governed by the Federal Trademark Dilution Act of 1995, under which the plaintiff must prove

---

[48]    *See, e.g.*, *U.S. Bank N.A. v. Ables & Hall Builders*, 528 F. Supp. 2d 605, 611 (S.D.N.Y. 2008).

[49]    *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir. 2003) (emphasis in original).

[50]    *See Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 06-3508-cv, 2007 WL 2914452, at *1 (2d Cir. Oct. 5, 2007).

actual dilution.[51]  If, however, the alleged diluting mark is first used in commerce after October 6, 2006, the Trademark Dilution Revision Act of 2005 applies, which allows the plaintiff to succeed upon a lesser showing of a "likelihood of dilution."[52]

## IV.    DISCUSSION

### A.    Gucci's Post-Sale Infringement Claims Do Not Fail as a Matter of Law

Guess argues that Gucci's post-sale trademark and trade dress infringement claims fail as a matter of law unless Gucci can produce evidence that a potential purchaser actually bought an allegedly-infringing Guess product instead of an authentic Gucci product in order to take advantage of confusion in the post-sale environment.[53]  As Guess points out, when discussing the "actual confusion" *Polaroid* factor in *Lang v. Retirement Living*, the Second Circuit noted that "there

---

[51]     *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003).

[52]     *See Malletier I*, 500 F. Supp. 2d at 279.

[53]     *See* Memorandum of Law in Support of Defendants' Motion For Summary Judgment ("Guess Mem.") at 5.
        Guess argues that Gucci could have developed evidence that the confusion at issue here would impact purchasing decisions by asking the respondents in its confusion survey precisely that question.  *See*  Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Guess Rep. Mem.") at 3.  However, as noted above, post-sale confusion is not concerned with the purchasing behavior of confused individuals.  Instead, it is concerned with the purchasing behavior of *unconfused* individuals seeking to take advantage of confusion in the post-sale environment.  *See* Part III.B, *supra* (citing *Hermes*, 219 F.3d at 108).

[was] no reason to believe that confusion represented by the phone calls could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation."[54]

Based on *Lang*, Guess posits a three-step approach to analyzing actual confusion.  *First*, it argues that the absence of diverted sales is sufficient to establish no actual confusion in the post-sale context.  *Second*, it argues that this absence of evidence regarding actual confusion is sufficient to establish that there is no likelihood of confusion in the post-sale context.  *Third*, if there is no likelihood of confusion in the post-sale context, a defendant is entitled to judgment as a matter of law on a plaintiff's trademark infringement claims.[55]

A careful reading of *Lang* and subsequent cases makes clear that the Second Circuit never adopted the second step delineated above.  Instead, even in post-sale confusion cases, the Second Circuit requires a court to weigh all of the relevant *Polaroid* factors in determining if there is a likelihood of confusion sufficient to support a cause of action under the Lanham Act.  Indeed, if the absence of evidence of actual post-sale confusion were sufficient to establish the absence of a likelihood of post-sale confusion, then the converse should also be

---

[54]     *Lang*, 949 F.2d at 582-83.

[55]     *See* Guess Rep. Mem. at 2-3.

true – that a positive finding of a likelihood of post-sale confusion could establish actual post-sale confusion. This would eliminate the *Polaroid* inquiry and make actual confusion the *sine qua non* of the likelihood of confusion analysis instead of one of many factors that must be weighed. That is simply not the rule enunciated in *MasterCrafters*, *Hermes*, *Lois Sportswear*, or any other post-sale confusion case of which this Court is aware. Instead, Gucci need only show that post-sale observers are likely to confuse the allegedly infringing Guess products with Gucci products in order to avoid summary judgment on its infringement claims.

Guess also argues that because Gucci admits that there is no evidence of lost sales or "passing off," Gucci must show that consumers are likely to believe that Gucci and Guess are "related entities." Guess cites *Lois Sportswear* in support of the claim that Gucci cannot make such a showing because it "concedes 'Guess's prominence in the fashion industry.'"[56] In *Lois Sportswear*, as in *Lang*, the Second Circuit conducted a full review of the district court's weighing of the *Polaroid* factors and found it to be correct.[57] Moreover, while Gucci acknowledges that Guess is a famous brand, it strongly denies that Guess is a "fashion" brand.[58]

---

[56]   *Id.* at 4.

[57]   *See Lois Sportswear*, 799 F.2d at 871-76.

[58]   *See* Gucci's Rule 56.1 Statement ("Gucci 56.1") ¶ 129.

In sum, Guess's argument that the absence of evidence of actual confusion is necessarily dispositive on post-sale confusion claims is incorrect. Instead, a likelihood of confusion analysis in the post-sale context requires the court to balance all relevant *Polaroid* factors.  Except for Gucci's failure to demonstrate "actual confusion," Guess makes no argument that any of the other *Polaroid* factors weigh in its favor.  Furthermore, the facts that Guess raises in support of its argument for summary judgment on Gucci's post-sale infringement claims are either irrelevant to post-sale confusion or disputed.  Accordingly, Guess's motion for summary judgment on Gucci's post-sale infringement claims is denied.

### B.   Guess Is Not Entitled to Summary Judgment on Gucci's Claims for Monetary Relief Based on Trademark Infringement

Gucci seeks two forms of monetary relief related to its trademark infringement claims: damages and an accounting of profits stemming from the sale of allegedly infringing products.  On this record, Gucci asserts that it is entitled to damages of approximately twenty-six million dollars.  This amount represents a "reasonable royalty" as calculated by Gucci's damages expert, Basil A. Imburgia.[59] Gucci also asserts that it is entitled to an accounting of profits from all of the defendants, which Imburgia calculated to be in excess of ninety-eight million

---

[59]     *See* Gucci 56.1 ¶ 145.

dollars.[60]  For the reasons given below, summary judgment on both forms of

monetary relief is denied.

> ### 1.    The Quattro G Design[61]

Gucci has evidence of actual confusion stemming from Guess's use of

the Quattro G design on bags in the form of the Mantis Survey.  Although

originally excluded, that survey was admitted for two limited purposes on

reconsideration: *first*, as evidence of the confusion associated with the actual

Mantis Test Bag, and *second*, as evidence of the confusion in those post-sale

situations where permanent Guess-identifying hardware is not visible.[62]  While

Guess challenges the weight that should be given to this survey on various

grounds,[63] that argument simply raises a genuine dispute of material fact, rather

than dispelling one.  Accordingly, Guess is not entitled to summary judgment on

---

[60]    *S*ee Gucci America, Inc.'s Memorandum in Opposition to Defendants' Motions for Summary Judgment ("Gucci Mem.") at 16.  Both of these amounts represent monetary relief sought for the alleged infringement of all four designs at issue.

[61]    *See* Ex. A, annexed to this Opinion, for a sample of the Gucci Diamond Motif trade dress, as well as exemplars of genuine and allegedly infringing products.

[62]    *See Gucci II*, 2011 WL 6326032, at *3.  As I noted in the Exclusion Opinion, surveys are indirect evidence of the existence of actual confusion.  *See Gucci I*, 2011 WL 5825206, at *7 n.79.

[63]    *See* Guess Rep. Mem. at 13-14.

Gucci's claims for damages stemming from Guess's use of this design.

Gucci has also produced substantial evidence from which a reasonable inference could be drawn that Guess acted in bad faith by meticulously copying Gucci's Diamond Motif trade dress in developing the Quattro G design, despite recognizing that consumers might confuse the two patterns.[64]  Guess attempts to rebut this evidence in two ways.  *First*, it points out that it places permanent Guess identifiers on its Quattro G products.  *Second*, it points out that the channels through which Quattro G products are sold clearly identify the products as coming from Guess, not Gucci.[65]

---

[64]      *See* Gucci 56.1 ¶¶ 196-198, 236-241.  For example, Guess's licensees repeatedly instructed their manufacturers to copy the color and appearance of the Quattro G fabrics with Gucci's Diamond Motif fabrics, and even sent samples of the latter to ensure the match.  Additionally, one licensee stated that the Quattro G and the Diamond Motif would seem similar to the layperson, while another admitted that whole products looked or were intended to look like Gucci ones. This gives rise to an issue of fact about whether Guess used the Quattro G trade dress with an intent to deceive, or at least with knowledge that some post-sale observers might be deceived.  Accordingly, the presumption that an intent to deceive arises from the intent to copy need not be applied with respect to this design.

[65]      *See* Guess Mem. at 28.  Guess also argues that the presumption of actual confusion is "rebutted by the uncontroverted evidence showing [that] there have been no reports of confusion concerning the Quattro G during the past seven years."  Guess Rep. Mem. at 14.  Because the presumption shifts the burden to Guess to show no actual confusion, merely pointing to this sort of "peaceful co-existence" between marks is not sufficient to warrant summary judgment.
Guess states that if the presumption of actual confusion is not rebutted in this way, "the 'rebuttable' presumption would "really be 'irrebuttable.'"  Guess

These arguments are plainly relevant to the issue of Guess's intent to confuse at the point of sale.  However, as I noted in the Exclusion Opinion, in those post-sale situations where a Guess identifier will not be seen, the use of that identifier will not dispel post-sale confusion, and therefore says nothing one way or the other about Guess's bad faith vis-a-vis post-sale confusion.[66]  The fact that Guess retail channels identify Quattro G products as coming from Guess is

_____

Mem. at 27.  If, however, Guess could demonstrate that there is *no* likelihood of confusion, the presumption would be rebutted.  While the cases that Guess cites clearly establish that the absence of actual confusion is relevant to the likelihood of confusion analysis – *see*, *e.g.*, *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999) (noting that peaceful co-existence is a "powerful indicator that the junior trademark does not cause a meaningful *likelihood* of confusion") (emphasis added)  – they do not establish that such an absence is dispositive.  Instead, as discussed above, determining that there is no likelihood of confusion requires a weighing of all the relevant *Polaroid* factors.  Because Guess does not provide sufficient facts from which this Court could conduct such an analysis on summary judgment, the presumption of actual confusion remains unrebutted.

[66]    *See Gucci I*,  2011 WL 5825206, at *13.  Guess's own citation supports this point.  As the court noted in *Skechers U.S.A., Inc. v. Vans, Inc.*, No. 07 Civ. 1703, 2007 WL 4181677, at *8 (C.D. Cal. Nov. 20, 2007), it was precisely because the Skechers brand markings were visible in the typical post-sale setting that such marks dispelled post-sale confusion.  Gucci argues – on the basis of one of Guess's own experts – that *at least* in one-third of post-sale situations, Guess identifiers are *not* visible.  *See* Gucci Mem. at 17.

Guess also submits the expert reports of Gabriele Goldpaper and Gary D. Krugman in support of the notion that it did not use the Quattro G pattern in bad faith.  *See* Guess Mem. at 28-30.  At best – as in the case of the Pham Report discussed below – expert reports may ward off summary judgment.  As I have explicitly warned Guess in the past, however, they seldom *support* summary judgment.  *See* 6/6/11 Conference Transcript at 4:6-14.  Accordingly, these expert opinions do not warrant summary judgment on the issue of bad faith.

likewise plainly irrelevant to the issue whether Guess acted with an intent to cause post-sale confusion.[67]

In the face of a clear issue of fact as to whether it acted with a bad faith intent to cause post-sale confusion, Guess argues that it is *still* entitled to summary judgment with respect to an accounting of profits because none of the three rationales for such an award – to remedy unjust enrichment, to serve as a "rough proxy" for damages, and to deter further willful infringement[68] – apply in this case. Guess is only partially correct.

Because there is no evidence that Gucci has actually lost any sales, Guess is correct that the unjust enrichment rationale does not apply.[69] As discussed above, however, Gucci has evidence of actual post-sale confusion with respect to the Quattro G design, thereby raising a genuine issue as to whether it is entitled to

---

[67]    If anything, the fact that Guess and Gucci products are sold through different channels may *increase* the likelihood of post-sale confusion, as "physical or temporal separation of exposures to the two sets of products obviously decreases consumers' ability to detect subtle differences between the two and therefore contributes to their perceived similarity." Expert Report of (Michel) Tuan Pham, Ph.D. ("Pham Report"), Ex. C to Ederer Decl., at 31.

[68]    Guess Rep. Mem. at 15 (citing *George Basch Co., Inc.*, 968 F.2d at 1538-39).

[69]    *See George Basch Co., Inc.*, 968 F.2d at 1538 (noting that on the unjust enrichment rationale, "a defendant becomes accountable for its profits when the plaintiff can show that, were it not for defendant's infringement, the defendant's sales would otherwise have gone to the plaintiff.").

damages.  Because the damages Gucci claims on this record – compensation for a reasonable royalty – are inherently speculative, using Guess's profits as a "rough proxy" for Gucci's damages may be appropriate.[70]

Finally, there is a question as to whether the deterrence rationale applies in this case.  In *George Basch Co, Inc.*, the Second Circuit held that this rationale, even standing alone, is sufficient to merit an accounting of profits.  The point of such an accounting is to "protect the public [by deterring] fraud regarding the source and quality of consumer goods and services."[71]  The concern that casual observers will attribute an infringing product's low quality to the owner of the mark is reduced in post-sale confusion cases, as such persons are not in a position to examine a product's construction and materials.  However, the concern that casual observers will be confused as to the *source* of the infringing products is at the heart of post-sale confusion.  As noted above, the likelihood that casual observers will be confused cannot be resolved on summary judgment.  Accordingly, the deterrence rationale remains viable.  For these reasons, summary judgment with respect to an accounting of profits stemming from Guess's allegedly

---

[70]     Gucci may not recover this "reasonable royalty" twice.  That is, if Gucci is compensated for this amount via an accounting of profits, it is not entitled to a separate award of actual damages.  This is necessary to avoid an improper double recovery.  *See* 5 McCarthy on Trademarks § 30:73.

[71]     968 F.2d at 1539.

infringing use of the Quattro G design is denied.[72]

### 2. Marks as to Which There Is No Evidence of Actual Confusion

Guess argues that it is entitled to summary judgment on monetary relief – both damages and an accounting of profits – with respect to its allegedly infringing use of the Square G, Script Guess, and GRG Stripe designs because "Gucci has no evidence of actual confusion or bad faith."[73] Because Gucci had registered all three marks, Guess is charged with constructive knowledge of each mark as of the date of registration and may not rely on lack of actual knowledge as a defense.[74] Although Gucci admits that it has no evidence of actual confusion stemming from Guess's use of these three marks, it strenuously argues that there are genuine issues of material fact that preclude summary judgment on monetary relief.

---

[72]    Guess makes one final attempt to argue that it is entitled to judgment on this issue as a matter of law, despite the clear dispute as to its bad faith intent to confuse. On the basis of the report of Dr. Alan Goedde, it argues that there is no dispute that Guess was not unjustly enriched by its use of the Quattro G design. *See* Guess Mem. at 5-6. Gucci, however, offers the rebuttal report of Basil A. Imburgia in response to Dr. Goedde. In such a "dueling experts" situation, summary judgment is inappropriate.

[73]    *Id.* at 22.

[74]    *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir. 1959) (holding that the Lanham Act eliminated lack of knowledge as a defense to trademark infringement based on a registered mark).

-23-

a.      The Square G Design[75]

Guess states "[t]here is no record evidence that . . . Gucci's Stylized G mark enjoyed an extensive reputation or goodwill that Guess could have sought to capitalize on when it introduced its own Square G Mark."[76]  The evidence shows, however, that Gucci's Stylized G was featured in an advertising campaign in 1995, well before Guess's first use of the Square G in 1996.[77]  The evidence also shows that Gucci has used the Stylized G mark on watches and clocks since 1966.[78]

Guess also notes it places permanent Guess identifiers "prominently or in close proximity to its Square G mark."[79]  As discussed above, the use of such identifiers is not relevant in many post-sale confusion cases.  Even if it were, however, Gucci provides more than a half dozen examples where Guess failed to do so, including a product that was sold as recently as January 5, 2012.[80]

Finally, Guess asserts that the report of Dr. Carol Scott shows that

---

[75]     *See* Ex. B, annexed to this Opinion, for the registered Gucci Stylized G design, as well as an exemplar of an allegedly infringing Guess product.

[76]     Guess's Rule 56.1 Statement ("Guess 56.1") ¶ 116.

[77]     *See* Gucci 56.1 ¶ 116.

[78]     *See* Second Amended Complaint at ¶ 29.

[79]     Guess 56.1 ¶ 117.

[80]     *See* Gucci 56.1 ¶ 37.

consumers are more likely to believe that Square G belts are produced by Guess, rather than Gucci.[81]  Beyond the fact that an expert opinion is almost never sufficient to justify granting summary judgment, Gucci presents its own expert in rebuttal to Dr. Scott, putting her conclusions directly in dispute.[82]

Based on the evidence discussed above, it is reasonable to infer that Guess knew about Gucci's Square G mark before introducing its own.  Because the marks are nearly identical in their overall appearance, it is also a reasonable inference that Guess had a bad faith intent to deceive consumers by using the mark. Because bad faith is a critical element in the determination of whether an accounting of profits is merited, Guess is not entitled to summary judgment as to damages from Guess's use of the Square G design.

Bad faith also gives rise to a rebuttable presumption of actual confusion, which is necessary to obtain damages. As noted above, this presumption is rebutted by showing that there is no likelihood of confusion based on the relevant *Polaroid* factors.  Such a showing cannot be made on this record. Accordingly, summary judgment with respect to damages stemming from the use

---

[81]    *See* Guess 56.1 ¶ 118.

[82]    *See* Gucci 56.1 ¶ 118.

of the Square G design is denied.[83]

### b.    The Script Guess Design[84]

The undisputed evidence shows that the Script Gucci mark was first used in 1967; it also shows that Guess has been using the word "Guess" rendered in a cursive font as a logo since the 1980s.  Furthermore, there is no dispute that, in 2006, Paul Marciano, the head of Guess, purchased a book entitled "Gucci by Gucci," which prominently featured the Script Gucci logo on its cover.[85]  As noted above, Gucci asserts that the Script Guess design of which it complains was first used two years later – in 2008.  Additionally, one of the licensees to whom Guess provided the complained-of Script Guess design explained to a footwear buyer at Guess that it was "the same logo font which is being used by Gucci, who is having

---

[83]    As noted in the Exclusion Opinion, surveys are typically considered evidence of the presence or absence of actual confusion. *See Gucci I*, 2011 WL 5825206, at *7 n.79.  The Scott Survey, which tested for point-of-sale confusion, was excluded on the issue of post-sale confusion, but admitted on the issue of laches. Had it been designed to test for post-sale confusion, and had it reported a very low level thereof, it would have weighed heavily in the *Polaroid* balance, and made the rebuttal of the presumption of actual confusion more likely.

[84]    *See* Ex. C, annexed to this Opinion, for the registered Script Gucci mark, as well as exemplars of allegedly infringing and admittedly non-infringing Guess products.

[85]    *See* Amazon.com Purchase Receipt for Paul Marciano, Ex. E to Ederer Decl. at 32.

great success with it."[86]

Based on the forgoing, and other materials in the record, there are two competing inferences that could be drawn. *First*, one could reasonably infer that Paul Marciano was reminded of the distinctiveness and sales potential of the Script Gucci mark after seeing it on the cover of the "Gucci by Gucci" book, and therefore directed the creative team at Guess and its licensees to copy it – thereby acting in bad faith. *Second*, one might reach the equally reasonable inference that the nearly thirty-year gap between Guess's founding and its first use of the complained-of Script Guess mark implies that it acted in good faith; that is, if Guess had any ill intent in adopting the complained-of Script Guess mark, it would have done so far earlier. A motion for summary judgment, however, cannot resolve competing reasonable inferences.[87] Accordingly, because there is a triable issue of fact as to whether Guess used the Script Guess design in bad faith, summary judgment with respect to an accounting of profits stemming from Guess's use of that design is denied.

As noted above, pointing to the absence of evidence on the issue of actual confusion does not rebut the presumption of actual confusion that arises

---

[86]     Gucci 56.1 at ¶ 18.

[87]     *See In re MTBE Prod. Liab. Litig.*, 676 F. Supp. 2d 139, 153 (S.D.N.Y. 2009).

-27-

from a finding of bad faith.  Instead, a party seeking to rebut the presumption must

show that there is no likelihood of confusion, based on all the relevant *Polaroid*

factors.  Guess makes no argument on the *Polaroid* factors beyond noting the

absence of actual confusion.  For all these reasons, summary judgment with respect

to damages stemming from Guess's use of the Script Guess design is denied.

### c.    The GRG Stripe Design[88]

Guess argues that it was not involved in the selection of the GRG

Stripe design for use on its licensed footwear, and that it did not discover such use

until November 2008.  Once it made that discovery, Guess directed its footwear

buyer to cancel future orders and recall current stock for all products bearing the

design, and directed its footwear licensee, MFF, not to use the design in the

future.[89]

Gucci disputes the evidentiary basis of all these claims.  Although Paul

Vando, a footwear designer at MFF, testified in his deposition that Guess was not

involved in the decision to use the GRG Stripe design, MFF stated that three high

ranking officials at Guess – the Chief Executive Officer, the Senior Licensing

---

[88]    *See* Ex. D, annexed to this Opinion, for the registered GRG Stripe design, as well as exemplars of products bearing that design from both Gucci and Guess.

[89]    *See* Guess 56.1 ¶¶ 124-128.

Design Manager, and the Product Licensing Manager – approved the products bearing it.[90]  Gucci has also produced overwhelming evidence to support the inference that MFF intended to copy Gucci shoes, including at least one bearing the GRG Stripe design.[91]  Furthermore, the evidence shows that products bearing the GRG Stripe design remained on Guess's e–commerce website for more than six months after the recall was ordered.[92]  This is more than sufficient to raise a disputed issue of material fact as to whether Guess used the GRG Stripe design with a bad faith intent to deceive.   Accordingly, Guess's motion for summary judgment with respect to an accounting of profits stemming from the allegedly infringing use of this design is denied.[93]

### C.    Guess Is Not Entitled to Summary Judgment on Gucci's Square G Claims Based on Laches

Guess asserts that it is entitled to summary judgment on Gucci's

---

[90]      *See* Gucci 56.1 ¶ 127.

[91]      *See id.* ¶¶ 253-275.  For example, a footwear designer at MFF described the Guess Macario shoe as "a copy of a GUCCI sneaker."  Indeed, the "spec sheet" sent by the factory to MFF describing the Macario had a picture of the underlying Gucci shoe on it, rather than a Guess prototype. Moreover, footwear designers at MFF instructed their manufacturer to "match" the GRG Stripe design, with explicit reference to Gucci shoes and boots.

[92]      *See id.* ¶ 125.

[93]      Summary judgment on the issue of damages is denied for the same reasons noted in the discussion of the Square G and Script Guess designs above.

-29-

claims relating to the Square G mark on the grounds of laches because "[t]here is no genuine issue of material fact that senior Gucci attorneys with direct oversight of and involvement in Gucci America's trademark enforcement matters in the U.S. had actual knowledge of Guess's Square G mark ***over seven years before Gucci commenced this lawsuit.***"[94]   The record, however, supports the inference that the attorneys to whom Guess refers – Alan Tuttle, Lorenza Bencini, and Iolanda Tursi – were in fact employees of Gucci's European affiliates that were not involved with trademark enforcement matters for Gucci in America.[95]   While Milton Springut, Gucci's outside counsel for trademark enforcement in America from 1984 to 2007, stated that Tuttle was his main contact at Gucci, he also stated that he never provided Gucci with "any representation or advice" relating to Guess's allegedly infringing activities.[96]   Furthermore, Karen Lombardo, Gucci America's legal co-ordinator during the relevant period, testified that she never spoke with Tuttle about trademark matters, and that Tuttle had nothing to do with Gucci's

---

[94]   Guess Mem. at 15 (emphasis in original).

[95]   *See* Gucci Mem. at 26.  While Tuttle was listed as an employee of Gucci America, Gucci asserts that this was for tax purposes only.  *See id.*

[96]   Gucci 56.1 ¶ 79.

American operations.[97]

      Drawing all reasonable inferences in Gucci's favor, I conclude that there is a genuine issue of material fact as to when Gucci itself was or reasonably should have been aware of Guess's allegedly infringing use of the Square G mark.[98]  As the laches inquiry is critically dependent on the issue of what the senior user knew of the junior user's allegedly infringing activity, and when it gained such knowledge, summary judgment based on laches is denied.

    **D.**    **Guess Is Entitled to Summary Judgment on Gucci's Dilution Claims with Respect to the Square G and Quattro G Designs, But Not with Respect to the Script Guess Logo and the GRG Stripe**

        **1.**    **Dr. Pham's Expert Report**

      The core of Guess's argument for summary judgment on Gucci's claims of trademark dilution is its repeated assertion that there is "***no evidence***" that its use of the marks at issue – the Square G design, the Quattro G pattern, the

---

[97]    *See* 2/14/11 Deposition of Karen Lombardo, Ex. B to Ederer Decl., at at 152:16-21 and 173:12-175:8.

[98]    Largely on the basis of the report of its expert Michael Kessler, Guess also concludes that the facts show that Gucci had *constructive* knowledge of the allegedly infringing use of the Square G design, independent of the knowledge of the above-mentioned attorneys.  *See* Guess Rep. Mem. at 7.  While Gucci does not dispute the facts on which Kessler and Guess base this conclusion, it strongly argues that the inference of constructive knowledge is not appropriate in this case. *See* Gucci 56.1 ¶¶ 89-96.  This Court will not resolve a dispute over which inferences are more reasonable on summary judgment.

Script Guess design, and the GRG Stripe design – tarnished or impaired the

distinctiveness of the relevant Gucci marks.[99]  Gucci argues that the report of Dr.

Michel Tuan Pham provides precisely such evidence, under either the actual

dilution standard or the likelihood of dilution standard.[100]  According to Gucci, Dr.

Pham – who has a Ph.D. in marketing and has taught at Columbia University's

business school since 1994 – concluded that Guess's use of the allegedly infringing

marks negatively impacted consumer perceptions of the quality of Gucci products

bearing the relevant Gucci marks, as well as the ability of the Gucci marks to

uniquely identify Gucci products.[101]

      While Dr. Pham's report is highly relevant, Gucci overstates the

degree to which it supports its dilution claims.  This is because Dr. Pham

consistently couches his conclusions in conditional terms.  For example, he writes

that "[a] perceived ubiquity of Gucci-like designs . . . is clearly *likely* to reduce the

perceived value of the original Gucci designs," that there is a "significant *risk* than

[sic] some of consumers' existing associations to the Guess brand [may] also

become linked to the Gucci brand [in such a way that] would weaken the latter's

───────────────

[99]     Guess Mem. at 1, 7, and 8 (emphasis in original).

[100]    *See* Gucci Mem. at 32-33.

[101]    *See id.* at 32.

brand identity," and finally, that "among consumers who are fully aware that the accused products are from Guess rather than from Gucci, the availability of Gucci-like Guess imitations is *likely* to create negative consumer responses toward the Gucci brand."[102]  Although Dr. Pham also reaches more concrete conclusions,[103] he does not show that any of these risks have materialized.  Accordingly, while Dr. Pham's report is sufficient to raise a genuine issue of material fact as to the existence of a likelihood of dilution, it does not do so on the issue of actual dilution.[104]

## 2.    The Applicable Standard of Dilution

---

[102]    Pham Report at 42-44.

[103]    *See id.* at 46.

[104]    Citing *Major League Baseball Props.*, 542 F.3d at 311, Guess complains that Dr. Pham's report is precisely the kind of "entirely conclusory" expert opinion that cannot defeat summary judgment.  Guess Rep. Mem. at 9 n.16.  Guess also argues that Dr. Pham's report "does not raise any triable issues as to consumer associations between Gucci and [Guess's use of the designs at issue in this case]."  *Id.*

While Dr. Pham's opinions are not based on survey evidence or anecdotal reports of consumer confusion, it does not follow that his opinions are "entirely conclusory."  Instead, Dr. Pham applied his expertise regarding, among other things, "brand-related associative network[s]" and "a well-known model of perceived similarity" to his own analysis of the allegedly infringing and genuine marks to reach the conclusion that "exposure to the [Guess designs] in the marketplace is likely to bring to mind the Gucci brand" and that the Gucci brand would be blurred and diluted.  Pham Report at 36-38, 57.  Accordingly, Dr. Pham's report is not the kind of "entirely conclusory" opinion that is insufficient to raise an issue of fact as to the likelihood of dilution.

Because there is no dispute that the Square G and Quattro G designs were first used in commerce before October 6, 2006,[105] the actual dilution standard applies to Gucci's claims regarding those marks. Gucci has provided no credible evidence sufficient to raise a genuine issue of material fact that any actual dilution has occurred. Accordingly, because Gucci bears the burden of proof at trial on this issue, summary judgment on its claims for dilution regarding these marks is granted.

There is also no dispute that Guess first used the GRG Stripe design in commerce after October 6, 2006. Accordingly, the "likelihood of dilution" standard applies to Gucci's claim for dilution with respect to this design. Because Dr. Pham's report raises a genuine issue of material fact as to whether Guess's use of this design is likely to dilute Gucci's mark, Guess's motion for summary judgment on Gucci's dilution claim with respect to this mark is denied.

The parties disagree about the date on which the Script Guess design was first used in commerce. Guess asserts that is has used "a stylized script-font 'Guess' design on apparel and accessories dating back to the mid-1980s."[106] While the examples attached to Guess's Rule 56.1 statement show that Guess has indeed

---

[105]    *See* Gucci Mem. at 31; Guess Mem. at 10-11.

[106]    Guess 56.1 ¶ 18.

used the word "Guess" rendered in cursive font as a logo for decades, none of those examples depict the specific configuration of which Gucci complains. Indeed, the only evidence that Guess presents in support of its claim that it used the complained-of configuration before October 6, 2006 is the deposition of its in-house intellectual property counsel Theresa McManus.[107]  Nonetheless, several of Guess's licensees reported being unaware of the complained-of configuration until 2007 or 2008.[108]

Drawing all reasonable inferences in Gucci's favor, I find that there is a genuine dispute as to when Guess first used the complained-of cursive font "Guess" logo in commerce.  Accordingly, I cannot conclude at this point that actual dilution is the appropriate standard to apply.  Because the Pham Report raised a material dispute of fact regarding the likelihood of dilution, Guess's motion for summary judgment with respect to this mark is denied.

E.    **MFF's Claims**

1.    **MFF Is Not Entitled to Summary Judgment on the Issue of Monetary Damages Generally**

MFF argues that Gucci's evidence establishes "only that MFF takes inspiration from and emulates features of designer fashion footwear, including

---

[107]    *See id.*

[108]    *See* Gucci 56.1 ¶ 18.

Gucci . . . ."[109]  While this inference may be reasonable, Gucci's opposing

inference – that MFF had a bad faith intent to deceive – is equally supported by the

evidence.  In a situation where the evidence supports competing inferences,

summary judgment is not appropriate.[110]

MFF also argues that the use of Guess logos demonstrates that it did

not act with an intent to deceive.[111]  However, the substantial overall similarity of

the shoes that Gucci complains of,[112] together with the fact that shoes are seen from

a distance in the post-sale environment, defeats the argument that the use of Guess

logos demonstrates that MFF acted without a post-sale intent to deceive.[113]

---

[109]    Marc Fisher LLC's Supplemental Memorandum of Law in Support of Motion for Summary Judgment ("MFF Mem.") at 3.  MFF reiterates this point in its reply brief.  *See* Supplemental Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment ("MFF Rep. Mem.") at 2-3.

[110]    *See In re MTBE Prod. Liab. Litig.*, 676 F. Supp. 2d at 153. Accordingly, it is irrelevant that an intent to copy is not the same as an intent to deceive or willful deception.  The evidence is substantial enough to support a finding of bad faith.

[111]    *See* MFF Mem. at 4.

[112]    *See* Gucci 56.1 ¶ 265, attached as Ex. E at the end of this Opinion.

[113]    Because there is sufficient evidence to raise a genuine issue of fact as to MFF's intent to deceive, this also gives rise to a rebuttable presumption of actual confusion.  This presumption has not been rebutted on the summary judgment record.  Accordingly, this Court need not consider MFF's argument that there is no evidence of actual confusion stemming from its use of the Quattro G pattern on footwear.  *See* MFF Rep. Mem. at 1-2.

-36-

A bad faith intent to deceive gives rise to a presumption of actual confusion.  It is also a critical factor in determining whether an accounting of profits is warranted.  Accordingly, because there is a disputed issue of fact regarding the existence of bad faith,  MFF is not entitled to summary judgment with respect to monetary relief, whether in the form of damages or an accounting of profits.

### 2. MFF Is Not Entitled to Summary Judgment on the Issue of Monetary Relief for Shoes Bearing the GRG Stripe Design

MFF argues that its good faith in using the GRG Stripe design is demonstrated by the fact that it ceased producing shoes with that design months before Gucci filed this suit.[114]  After it ceased *production*, however, the undisputed evidence shows that MFF *distributed* shoes bearing the design that it had previously manufactured.[115]  Accordingly, it would be reasonable to infer that MFF acted in bad faith by trying to maximize its profits from the design that it realized it could not continue to manufacture.  Summary judgment as to monetary relief stemming from MFF's use of the GRG Stripe design is therefore denied, as competing inferences can only be resolved by the trier of fact on a full evidentiary

---

[114]    *See* MFF Mem. at 5.

[115]    *See* Gucci 56.1 ¶ 148.

record.[116]

## V.   CONCLUSION

For the reasons discussed, Guess is entitled to summary judgment on Gucci's dilution claims relating to the Square G and Quattro G designs.  With respect to all other claims, the motions are denied.  The Clerk of the Court is directed to close these motions (Docket Nos. 182 and 188).  A final pre-trial conference is scheduled for March 13, 2012 at 5:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             February 14, 2012

---

[116]    MFF also argues that, regardless of dispute as to its bad faith and/or intent to deceive, Gucci is not entitled to monetary relief because the allegedly infringing shoes that MFF produces for Guess are "quality products marketed and sold under a famous brand name that enjoys its own distinct reputation and vast goodwill." MFF Mem. at 6. This amounts to nothing more than a statement of displeasure regarding the doctrine of post-sale confusion.  It is not a reason to grant summary judgment.

### -Exhibit A: The Diamond Motif Trade Dress-

### <u>The Unregistered Gucci Trade Dress</u>



### <u>Gucci Exemplar</u>



## The Allegedly Infringing Guess "Quattro G" Trade Dress



## Guess Exemplar



**-Exhibit B: The Stylized G Design-**

**<u>Gucci's Registered Mark</u>**



**(Trademark Reg. Nos. 3,307,082l; 2,234,272; and 2,042,805)**

**<u>Exemplar: Guess Product Bearing the "Square G"</u>**



**-Exhibit C: The Script Gucci Design-**

**<u>Gucci's Registered Mark</u>**



**(Trademark Reg. No. 3,061,918)**

**<u>Gucci Exemplar</u>**



**<u>Admittedly Non-Infringing Guess Exemplar</u>**



### **Allegedly Infringing Guess Exemplar**



**-Exhibit D: The GRG Stripe Design-**

**<u>Gucci's Registered Mark</u>**



**(Trademark Reg Nos. 1,483,526 and 1,112,780)**

**<u>Gucci Exemplar</u>**



## Guess Exemplar



**-Exhibit E: Select Accused MFF Products-**

| GUESS | GUCCI (PREEXISTING) |
|-------|---------------------|
|  |  |
|  |  |
|  |  |
|  |  |

**-Appearances-**

**For Gucci America:**

Louis S. Ederer, Esq.
John Maltbie, Esq.
Matthew T. Salzmann, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

**For Guess?, Inc., Marc Fisher Footwear LLC, The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., Swank, Inc.,:**

Robert C. Welsh, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
(310) 553-6700

**For Guess?, Inc.:**

Andrew J. Frackman, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
(212) 326-2000

Daniel M. Petrocelli, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
(310) 553-6700

**For Marc Fisher Footwear LLC:**

Darren W. Saunders, Esq.
Hiscock & Barclay, LLP
7 Time Square
New York, New York 10036
(212) 784-5800

Alpa V. Patel, Esq.
Hiscock & Barclay, LLP
2000 HSBC Plaza, 20th Floor
Rochester, New York 14604
(585) 295-4438

**For The Max Leather Group/Cipriani Accessories, Inc. and Signal Products, Inc.:**

John T. Williams, Esq.
Hinkhouse Williams Walsh LLP
180 North Stetson Street, Suite 3400
Chicago, Illinois 60601
(312) 268-5767

**For Signal Products, Inc.:**

Kristin Marie Darr, Esq.
Steptoe & Johnson, LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
(212) 506-3900

Michael R. Heimbold, Esq.
Steptoe & Johnson, LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
(310) 734-3200

**For Swank, Inc.:**

Abigail Anne Rubinstein, Esq.

Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, District of Columbia 20036
(202) 429-3068

Paul Fields, Esq.
Karin Fromson Segall, Esq.
Leason Ellis LLP
81 Main Street, Suite 503
White Plains, New York 10601
(914) 288-0022

Atul R. Singh, Esq.
Darby & Darby, P.C.
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 527-7700