UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                  :

  GUCCI AMERICA, INC.,                       :        Civil Action No. 09cv4373 (SAS)

                  Plaintiff,             :

                  - against -           :

  GUESS?, INC., MARC FISHER FOOTWEAR   :
  LLC, THE MAX LEATHER GROUP/CIPRIANI   :
  ACCESSORIES, INC., SEQUEL AG, K&M      :
  ASSOCIATES L.P., VIVA OPTIQUE, INC.,     :
  SIGNAL PRODUCTS, INC. and SWANK, INC.,  :

                Defendants.          :
                                                  :
                                                  :
------------------------------------------------------------ x

## GUCCI AMERICA, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ARNOLD & PORTER LLP

Louis S. Ederer
Matthew T. Salzmann
399 Park Avenue
New York, New York  10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Plaintiff Gucci America, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................. 8

I.      THE STANDARD FOR SUMMARY JUDGMENT ......................................... 8

II.     GUCCI HAS MADE OUT A *PRIMA FACIE* CASE
OF POST-SALE CONFUSION ................................................................. 10

     A.     To Make Out a *Prima Facie* Case of Post-Sale Confusion,
Gucci Need Only Show There is a Likelihood of Confusion .............................. 11

     B.     The Claim that Gucci Must Show that Guess Customers
Intend to "Pass Off" Guess's Knockoffs as Gucci Products
is Another Guess Invention ..................................................................... 14

III.    GUESS IS NOT ENTITLED TO SUMMARY JUDGMENT
ON GUCCI'S CLAIMS FOR MONETARY RELIEF ................................. 16

     A.     To the Extent Evidence of Actual Confusion is Needed,
Gucci Has It .......................................................................................... 17

     B.     As the Court Has Recognized, the Question Whether
Defendants Acted in Bad Faith Is a Pure Issue of Fact ............................ 18

IV.    GUESS IS NOT ENTITLED TO SUMMARY JUDGMENT ON LACHES ................. 24

     A.     There Are Triable Issues of Fact as to Gucci's Purported
Knowledge of Guess's Use of an Infringing Square G Design ............................. 25

     B.     There Are Fact Questions Whether Gucci's "Delay" Was
"Inexcusable" ......................................................................................... 27

     C.     There Are Triable Issues of Fact as to Whether Guess Will Suffer
the Requisite Harm if Enjoined from Using Its Square G Knockoff ................. 28

V.     GUESS IS NOT ENTITLED TO SUMMARY JUDGMENT ON DILUTION .............. 31

     A.     There Are Triable Issues of Fact With Respect to
Gucci's Claims of Dilution ..................................................................... 31

     B.     The Level of Association Measured by Mazis is Sufficient ................................. 33

     C.     There Is a Question of Fact Whether Gucci's Square G Design
Was Famous ........................................................................................... 35

CONCLUSION ............................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**

*adidas America, Inc. v. Kmart Corp.*,
  2006 WL 2044857 (D. Or. June 15, 2006) ................................................................ 27, 28, 32

*adidas America, Inc. v. Payless Shoesource, Inc.*,
  529 F. Supp. 2d 1215 (D. Or. 2007) ................................................................ 31

*adidas America, Inc. v. Payless Shoesource, Inc.*,
  2008 WL 4279812 (D. Or. Sept. 12, 2008) ................................................................ 13

*adidas America, Inc. v. Payless Shoesource, Inc.*,
  546 F. Supp. 2d 1029 (D. Or. 2008) ................................................................ 32,33

*Am. Cynamid Co. v. Campagna Per Le Farmacie In Italia S.P.A.*,
  678 F. Supp. 1049 (S.D.N.Y. 1987) ................................................................ 26

*Am. Soc'y for Prevention of Cruelty to Animals v. Alexanian*,
  1995 WL 293957 (S.D.N.Y. 1995) ................................................................ 33

*The Am. Auto. Ass'n Inc. v. AAA Auto. Club of Queens, Inc.*,
  1999 WL 97918 (E.D.N.Y. Feb. 8, 1999) ................................................................ 19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................ 9

*Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*,
  305 U.S. 315 (1938) ................................................................ 20

*Audi AG v. Shokan Coachworks, Inc.*,
  592 F. Supp. 2d 246 (N.D.N.Y. 2008) ................................................................ 35

*Banff, Ltd. v. Colberts, Inc.*,
  996 F.2d 33 (2d Cir. 1993) ................................................................ 21

*Black Diamond Sportswear, Inc. v. Black Diamond Equipment, Ltd.*,
  2007 WL 2914452 (2d Cir. Oct. 5, 2007) ................................................................ 25, 27

*Brennan's, Inc. v. Brennan's Restaurant, LLC*,
  360 F.3d 125 (2d Cir. 2004) ................................................................ 14

*Cadbury Beverages, Inc. v. Cott Corp.*,
  73 F.3d 474 (2d Cir. 1996) ................................................................ 17

*Cartier, Inc. v. Deziner Wholesale, LLC*,
  2000 WL 347171 (S.D.N.Y. Apr. 3, 2000) ................................................................ 32

*Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.*,
  1995 WL 528001 (S.D.N.Y. Sept. 6, 1995) ................................................................ 21

*Clinique Labs. v. Dep Corp.*,
  945 F. Supp. 547 (S.D.N.Y. 1996) ................................................................ 14, 19

*Conopco, Inc. v. Campbell Soup Co.*,
   95 F.3d 187 (2d Cir. 1996) ........................................................................... 29

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*,
   717 F. Supp. 96 (S.D.N.Y. 1989) ............................................................. 21, 27

*Dan-Foam A/S v. Brand Named Beds, LLC*,
   500 F. Supp. 2d 296 (2007) .......................................................................... 35

*Dawn Donut Co. v. Hart's Food Stores, Inc.*,
   267 F.2d 358 (2d Cir. 1959) .......................................................................... 26

*Deere & Co. v. MTD Products, Inc.*,
   41 F.3d 39 (2d Cir. 1994) .............................................................................. 33

*DC Comics, Inc. v. Powers*,
   482 F. Supp. 494 (S.D.N.Y. 1979) ................................................................ 26

*Fendi Adele S.r.L. v. Filene's Basement*,
   696 F. Supp. 2d 368 (S.D.N.Y. 2010) ........................................................... 32

*Frito-Lay, Inc. v. Bachman Co.*,
   704 F. Supp. 432 (S.D.N.Y. 1989) ................................................................ 21

*Gateway, Inc. v. Companion Prods., Inc.*,
   2003 WL 22508907 (D.S.D. Aug. 19, 2003) ................................................. 21

*George Basch Co. v. Blue Coral, Inc.*
   968 F.2d 1532 (2d Cir. 1992) .................................................................. 19, 23

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
   82 F. Supp. 2d 126 (S.D.N.Y. 1999) ............................................................. 29

*GMA Accessories, Inc. v. BOP, LLC*,
   765 F. Supp. 2d 457 (S.D.N.Y. 2011) ........................................................... 16

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*,
   365 F. Supp. 707 (S.D.N.Y. 1973), *aff'd in relevant part*, 523 F.2d 1331 (2d Cir. 1975) ....... 29

*Hermés Int'l v. Lederer de Paris Fifth Ave., Inc.*,
   219 F.3d 104 (2d Cir. 2000) .......................................................................... 13

*Imagineering, Inc. v. Van Klassens, Inc.*,
   851 F. Supp. 532 (S.D.N.Y. 1994) ........................................................... 29, 31

*Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998) ............................................................................ 23

*Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.*,
   2000 WL 220504 (2d Cir. 2000) ................................................................... 22

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (2007) ...................................................................................... 33

*Jim Beam Brands Co. v. Beamish & Crawford Ltd.*,
   937 F.2d 729 (2d Cir. 1991) .......................................................................... 34

*Johnson & Johnson Co. v. Actavis Group HF*,
 No. 06cv8209 (S.D.N.Y. 2008) ................................................................. 34

*Johnston v. Standard Min. Co.*,
 148 U.S. 360 (1893) ................................................................................ 25

*Joint Stock Society v UDV North America, Inc.*,
 53 F. Supp. 2d 692, 717 (D. Del. 1999) ...................................................... 29

*Lang v. Retirement Living Pub. Co.*,
 949 F.2d 576 (2d Cir. 1991) ...................................................................... 16

*Levine v. McDonald's Corp.*,
 735 F. Supp. 92 (S.D.N.Y. 1990) ............................................................. 8, 9

*Lipton v. The Nature Co.*,
 1993 WL 541662 (S.D.N.Y. 1993) .............................................................. 17

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
 631 F. Supp. 735 (S.D.N.Y. 1985) ......................................................... 20-21

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
 799 F.2d 867 (2d Cir. 1986) .............................................................. 5, 11, 12

*Malletier v. Burlington Coat Factory Warehouse Corp.*,
 426 F.3d 537 (2d Cir. 2005) ...................................................................... 14

*Malletier v. Dooney & Bourke, Inc.*,
 2007 WL 1498323 (S.D.N.Y. May 22, 2007) ................................................ 21

*Malletier v. Dooney & Bourke, Inc.*,
 561 F. Supp. 2d 368 (S.D.N.Y. 2008) ..................................................... 3, 33

*Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.*,
 221 F.2d 464 (2d Cir. 1955) ...................................................................... 13

*Mele v. Davidson & Assocs., Inc.*,
 2004 WL 2285111 (W.D.N.Y. Oct. 7, 2004) ................................................ 21

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
 818 F.2d 254 (2d Cir. 1987) ................................................................. 19, 24

*Moseley v. V. Secret Catalogue, Inc.*,
 537 U.S. 418 (2003) ................................................................................ 32

*Mr. Water Heater Enters., Inc. v. 1-800-Hot Water Heater, LLC*,
 648 F. Supp. 2d 576 (S.D.N.Y. 2009) ......................................................... 17

*Nartron Corp. v. STMicroelectronics, Inc.*,
 305 F.3d 397 (6th Cir. 2002) ..................................................................... 29

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*,
 996 F.2d 577 (2d Cir. 1993) ................................................................. 19, 24

*Pharmacia Corp. v. Alcon Labs., Inc.*,
 201 F. Supp. 2d 335 (D.N.J. 2002) ............................................................. 34

iii

*Physical Therapy Ctr. v. Pro–Fit Orthopedic & Sports Physical Therapy*,
   314 F.3d 62 (2d Cir.2002) ........................................................................ 27

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   182 F. Supp. 350 (E.D.N.Y. 1960) ......................................................... 25

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961) ........................................................... *passim*

*RBC Nice Bearing, Inc. v. Peer Bearing Co.*,
   410 Fed. App'x 362 (2d Cir. 2010) ......................................................... 25

*Reebok Int'l Ltd. v. K-Mart Corp.*,
   849 F. Supp. 252 (S.D.N.Y. 1994) ..................................................... 5, 12

*RJR Foods, Inc. v. White Rock Corp.*,
   603 F.2d 1058 (2d Cir. 1979) .................................................................. 17

*Schering Corp. v. Pfizer Inc.*,
   189 F.3d 218 (2d Cir. 1999) .................................................................... 17

*Schieffelin & Co. v. Jack Co. of Boca, Inc.*,
   850 F. Supp. 232 (S.D.N.Y. 1994) ......................................................... 30

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   2004 WL 2158120 (S.D.N.Y. Sept. 28, 2004)........................................ 34

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   588 F.3d 97 (2d Cir. 2009) ............................................................... 18, 19

*T. Anthony v. Louis Vuitton Malletier*,
   1993 WL 659682 (S.D.N.Y. Nov. 24, 1993)...................................... 14, 21

*THOIP v. Walt Disney Co.*,
   690 F. Supp. 2d 218 (S.D.N.Y. 2010) ...................................................... 8

*THOIP v. Walt Disney Co.*,
   736 F. Supp. 2d 689 (S.D.N.Y. 2010) ...................................................... 3

*Tisch Hotels, Inc. v. Americana Inn, Inc.*,
   350 F.2d 609 (7th Cir. 1965) ................................................................... 30

*Toyota Jidosha Kabushiki Kaisha v. Ailments Lexus Inc.*
   2004 WL 1304054 (E.D.N.Y. June 14, 2004) ........................................ 25

*Tri-Star Pictures, Inc. v. Unger*,
   14 F. Supp. 2d. 339 (S.D.N.Y. 1998) ..................................................... 29

*Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*,
   964 F. Supp. 733 (S.D.N.Y. 1997) ......................................................... 29

*U.S. Bank N.A. v. Ables & Hall Builders*,
   582 F. Supp. 2d 605 (S.D.N.Y. 2008) .................................................... 24

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
   610 F.3d 1088 (9th Cir. 2010) ................................................................. 33

*W.E. Bassett Co. v. Revlon, Inc.*,
  435 F.2d 656 (2d Cir. 1970) ........................................................................... 20, 21

*Warner Bros. Inc. v. Am. Broad. Cos.*,
  720 F.2d 231 (2d Cir. 1983) ................................................................................. 5

*Wawa Dairy Farms v. Haaf*,
  40 U.S.P.Q.2d 1629 (E.D. Pa. 1996) .................................................................. 34

*Yurman Studio, Inc. v. Castaneda*,
  591 F. Supp. 2d 471 (S.D.N.Y. 2008) ................................................................ 14

## Statutes and Other Authorities

15 U.S.C. § 1117 .................................................................................................. 16, 23

*adidas America, Inc. v. Payless Shoesource, Inc.,* Legal Memorandum
  in Support of Motion for Judgment as A Matter of Law on Adidas' Liability
  Claims Or, In the Alternative, For New Trial, 2008 WL 2115520 (D. Or.)............................. 13

4 J. Thomas McCarthy, *McCarthy on Trademarks* § 24:116 (4th ed. 2011) .............................. 33

6 J. Thomas McCarthy, *McCarthy on Trademarks* § 32:184 (4th ed. 2011) .............................. 17

## PRELIMINARY STATEMENT

It is unfortunate, though not surprising, that Guess did not simply take the Court's advice and forego its wasteful motion for summary judgment.  It is also not surprising that Guess's motion is not the broad, fact-based attack on the entirety of Gucci's case that its counsel has been promising for two years.  Instead, it is a combination of newly-minted arguments and outright misstatements of the facts and the law, strung together so that counsel could keep his promise to his client to make a motion to knock out what he has been touting as a meritless case.

Indeed, over a two year period, and until just last month, despite the Court's repeated warnings, Guess's counsel continued to promise a motion that would definitively show that there were no triable issues of fact on the key *Polaroid* confusion factors.[1]  Now that Guess's confusion surveys have been thrown out, however, and realizing the futility of that exercise, but still having to keep his promise, Guess has filed what amounts to a glorified motion to dismiss, relying solely on the opinions of Guess's experts — which, as the Court has noted, serve only to raise triable issues of fact, not eliminate them.  Indeed, remarkably, Guess barely even mentions the standard for summary judgment, since its motion is not based on the absence of triable fact issues, but rather on misstatements of the law.  These misstatements include a deliberate misquotation of the primary case on which Guess relies for its newfound proposition that in addition to a likelihood of post-sale confusion, Gucci is required, as a matter of law, to make an evidentiary showing that the post-sale observer's confusion affects her later purchasing decisions — a requirement that does not exist.

A review of the events leading up to Guess's motion serves to highlight its futility, not to mention Guess's deliberate efforts to mislead.  As the Court will recall, Guess first indicated it

---

[1] *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).

would move for summary judgment in December 2009, before any meaningful discovery had been conducted, in a pre-motion conference letter that stated that Gucci's infringement claims could be disposed of solely on the basis that Gucci had "admitted" it had no evidence of actual confusion. CSF ¶ 150.[2]  At the subsequent January 11, 2010 pre-motion conference, however, the Court, agreeing with Gucci, pointed out, for the first of many times, that actual confusion is not required to establish likelihood of confusion — which is all Gucci needs to show, especially in post-sale confusion cases, where actual confusion evidence is particularly hard to come by. CSF ¶ 151.  The Court further noted that Gucci still had the opportunity to show actual confusion by way of survey evidence, which it has now done.  CSF ¶ 152.  Accordingly, the Court was able, for the moment, to talk Guess out of moving for summary judgment, but having promised its client otherwise, Guess was not to be deterred.

Guess next raised the issue of summary judgment at a scheduling conference on June 6, 2011.  By this time, discovery had essentially been completed, and the parties had conducted confusion surveys and exchanged initial expert reports.  As for Gucci's infringement claims, Guess's counsel indicated he intended to move for summary judgment on the *Polaroid* confusion factors — which the Court again stated would be a waste of his clients' time and money, since such an inquiry was inherently fact-based.  CSF ¶ 153.  Undaunted, Guess's counsel again indicated that he had promised his client he would bring such a motion from the beginning of the case, and would do so no matter what.  CSF ¶ 154.  Further, Guess continued to argue that Gucci had no evidence of actual confusion — despite a confusion survey that said otherwise — and that on the other key confusion factors, this case fit squarely within the Court's summary judgment

---

[2] Gucci's counter statement of facts, as well as additional relevant facts, as to which there are genuine issues to be tried, is set forth in Gucci's Counter Statement of Facts Pursuant to Local Rule 56.1 ("CSF"), which accompanies this Memorandum.

decisions in *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368 (S.D.N.Y. 2008), and *THOIP v. Walt Disney Co.*, 736 F. Supp. 2d 689 (S.D.N.Y. 2010).  CSF ¶ 156.

The Court, once again reminding Guess's counsel that Gucci was not required to show actual confusion, rejected Guess's argument that the circumstances of this case had anything to do with its prior decisions in *Malletier* and *THOIP*, and urged counsel to skip its motion for summary judgment and proceed directly to trial.  CSF ¶ 157.  Indeed, the Court suggested that if Gucci were able to knock out Guess's confusion surveys, Guess may not even have a summary judgment motion, since all that would remain would be the laches part of the motion, which is typically not amenable to summary disposition.  CSF ¶ 158.[3]  Ultimately, however, Guess's counsel was able to convince the Court to first address the exclusion motions on the confusion surveys, since "***the summary judgment issues that we are going to advance will rely largely on the surveys.***"  CSF ¶ 159.

Then, on August 4, 2011, the parties appeared again to discuss the scheduling of their exclusion motions.  At this conference, the Court, noting that the trial was to the bench, once again urged Guess to skip summary judgment and simply move for a directed verdict at the close of Gucci's case, saving everyone a great deal of time and money.  CSF ¶ 160.  The Court then sent Guess's counsel out of the courtroom to consider its suggestion.  Half an hour later, Guess's counsel returned, and repeated:  "***I have promised my client summary judgment motions since the beginning of this case.  . . . I cannot in good conscience waive my client's right.***"  CSF ¶ 161.

On November 16, 2011, the Court decided the parties' exclusion motions (the "Exclusion Decision"), excluding all of Guess's confusion surveys as irrelevant to Gucci's claims of post-

---

[3] At the same conference, the Court further noted: "***let's say they lose all their [survey] experts, maybe they don't have a summary judgment, maybe they have a settlement***".  CSF ¶ 158.

sale confusion.  In addition, the Court made two points salient to this motion.  First, it reiterated that evidence of actual confusion is not needed to find a likelihood of post-sale confusion.  Dkt. 176 at 26.  Second, it rejected Guess's argument that its point-of-sale confusion surveys were relevant to Gucci's claims of post-sale confusion in instances where the Guess name could be seen, stating:

> Because of the vast differences between the way consumers examine products at the point of sale and the way they notice products in a post-sale environment, ***the fact that consumers are not confused when they see the Guess name on a bag at the point of sale does not indicate that they will not be confused when they see ornamentation (bearing the Guess name) in passing on a bag in a typical post-sale environment.***  *Id.* at 45.

Subsequently, on Gucci's motion, the Court, having been reminded of its foregoing statement and the results of Guess's survey on how women carry their handbags, admitted Gucci's confusion survey to the extent it demonstrated confusion in the many instances where the Guess name would not be seen by the post-sale observer.  Dkt. 186.

Despite these setbacks, Guess's counsel still had a promise to his client to keep, so he had to come up with new grounds for "summary disposition."  Latching on to the Court's statement in the Exclusion Decision that "[i]n the post-sale environment, the concern is that the public in general will be deceived into thinking that the allegedly infringing product is authentic," and that "the harm in post-sale confusion is that potential purchasers will knowingly choose the infringing product over the authentic one" (Dkt. 176 at 47), Guess now contends that in order for Gucci to make out a *prima facie* case of post-sale confusion, it must not only demonstrate a likelihood of confusion among post-sale observers, but also that such confusion impacts these observers' subsequent purchasing decisions.  As discussed in Point II below, this newly-minted evidentiary hurdle — tantamount to requiring a showing of actual confusion, something which all courts agree a party need not show — exists nowhere in trademark law.  Indeed, in order for

Guess to make this argument, he had to ignore all the case law to the contrary, and deliberately misquote the case of *Reebok Int'l Ltd. v. K-Mart Corp.*, 849 F. Supp. 252, 272-73 (S.D.N.Y. 1994), leaving out that court's very next statement that such evidence is typically not available, and can often only be inferred from a showing of likelihood of confusion.

Guess's newly manufactured arguments did not stop there.  For the first time at the December 2, 2011 pre-motion conference, Guess's counsel argued that Gucci's claims for monetary relief should also be dismissed, first, because Gucci has no evidence of actual confusion — which, of course, it does — and second, in a bald-faced mischaracterization of the law, that even if Gucci had evidence of bad faith — which it does to an overwhelming extent — it is not entitled to monetary relief because in post-sale confusion cases where the products have "peacefully coexisted" for years, bad faith "drops out" as a factor in the monetary award analysis.  CSF ¶ 162.  In support of this argument, counsel referred to two cases, *Warner Bros. Inc. v. American Broadcasting Companies*, 720 F.2d 231 (2d Cir. 1983) and *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986) (CSF ¶ 163), neither of which comes close to supporting Guess's position, and tellingly, this argument has "dropped out" of Guess's motion.  Now, instead of arguing that bad faith "drops out," Guess claims Gucci lacks the right kind of intent evidence — intent to deceive as opposed to intent to copy — and that as a matter of law, the level of Guess's "willful deceptiveness" is not "egregious" enough to entitle Gucci to any monetary award.

As discussed in Point III below, however, Guess's new arguments are wrong, both factually and legally.  Not only does Gucci have evidence of actual confusion, but also compelling evidence of Guess's "intent to deceive" or "willful deceptiveness."  As the Court can see from Gucci's Counter Statement, Gucci has compiled not a handful, but an avalanche of

emails evidencing Defendants' deliberate copying of Gucci's famous design marks (CSF ¶¶ 177-92, 215-19, 253-64), right down to their color (CSF ¶¶ 220-35), fabric treatments (CSF ¶¶ 245-52), detail and construction (CSF ¶¶ 236-44) — to make their designs look as much like Gucci's as possible (CSF ¶¶ 193-214).  Further, as the Court advised Guess's counsel at the December 2 conference, intent is a classic issue for the fact finder, so a summary judgment motion on this issue is a waste of time.  CSF ¶ 164.

As for Guess's laches defense, the Court has repeatedly warned Guess that all the elements necessary to invoke laches, including Gucci's duty to investigate, the reasons for delay, the harm to Guess, and in this case, the ability to impute the alleged knowledge of other Gucci affiliates to Plaintiff Gucci America, are "distinctly subject to fact disputes and not amenable to summary judgment."  CSF ¶¶ 165-66.  Indeed, when questioned at the June 6, 2011 conference as to how Guess intended to prove when Gucci knew or should have known of Guess's use of its infringing designs — an element of laches that triggers a classic fact inquiry — Guess's counsel responded that he intended to use the expert report of a trademark investigator who would testify that if Gucci had hired him, he would have easily discovered Guess's use of a Square G Design in the 1990's, to which the Court responded:

> ***I'm not going to weigh an expert report on summary judgment***.  That's one of the things we're going to discuss today.  ***I have strong views that experts don't belong in summary judgments***.  They give opinions.  ***How can I say that's not a disputed issue of fact when you had to go out and hire somebody to give an opinion***?  ***That tells me right away it's in dispute, because they'll find an expert that says just the opposite, just the opposite***, which is fine; that's what trials are all about.  CSF ¶¶ 95, 168.

Undaunted, in its November 30, 2011 pre-motion conference letter, Guess again indicated its intention to move on laches, both with respect to Guess's Square G and Diamond Quattro G Designs (CSF ¶ 170), despite the fact that over a year earlier, the Court had observed that since there was no evidence that Gucci had become aware of Guess's Diamond Quattro G Design until

2006 at the earliest, ***"the diamond would never go on laches."*** CSF ¶ 171.[4]  Sometime between November 30 and December 9, however, Guess dropped the Diamond Quattro G portion of its motion, while continuing to ignore the Court's warnings that even the Square G portion should be determined by the trier of fact.[5]

It should come as no surprise, then, as discussed in Point IV below, that the record is replete with fact issues going to all elements of Guess's laches defense.  First, there is a serious question whether any Gucci-related entity, much less Plaintiff Gucci America, was sufficiently on notice of infringing activity to warrant an investigation of Guess's conduct in the U.S. (CSF ¶¶ 84-96), since there was only one reported U.S. sighting of a Square G infringement in 1999, followed by nothing until 2006.  CSF ¶¶ 73-83, 97-106.  Second, there is the question whether the purported knowledge of this single 1999 incident, which was exclusive to Gucci affiliates in Europe, can be imputed to Gucci America.  CSF ¶ 113.  Third, there is, at the very least, a serious question whether Guess has demonstrated, to the exclusion of any triable fact issues, the kind of prejudice or harm the law requires to sustain a laches defense.  CSF ¶¶ 108-12, 300-02.

Finally, as discussed in Point V below, Gucci has made a more than sufficient evidentiary showing to defeat Guess's summary judgment motion on Gucci's dilution claims, even as to those claims where Gucci's threshold of proof, *i.e.*, a showing of actual, as opposed to likelihood of dilution, may be higher.  Among other things, the expert report of Professor Michel Pham (CSF ¶¶ 52, 59, 64, 195, 200, 209, 298, 303-04), whose testimony has been previously credited

---

[4] Later, at a November 9, 2010 conference, the Court stated that if Guess was to lose the motion on the Diamond Quattro G Design, it was facing ***"five years of damages."*** CSF ¶ 174.

[5] Indeed, at the December 2, 2011 conference, the Court stated: ***"I must say the [Square G] laches argument sounds completely fact-intensive.  I don't understand how this could be a summary judgment on laches."*** CSF ¶ 166.

by this Court,[6] along with the association survey conducted by Michael Mazis (CSF ¶¶ 60-63) — which the Court, over Guess's objections, has admitted — at the very least raise triable questions of fact on dilution.

What is clear from this timeline, then, is that this is a motion that should never have been brought.  Unfortunately for the Court and Gucci, Guess declined to follow the Court's admonition that "[i]f it's a nonjury case, it should go right to the nonjury trial and be done with it."  CSF ¶ 167.  Now that it has no factual basis for its motion, and realizing that Gucci has compiled an overwhelming record on all the key factual issues, Guess runs away from the facts and relies instead on expert reports.  Accordingly, as there are numerous factual disputes that can only be resolved by the trier of fact, it appears Guess still does not "understand the concept of summary judgment" (CSF ¶ 169), and Defendants' motions must be denied.

## ARGUMENT

## I.    THE STANDARD FOR SUMMARY JUDGMENT

As the Court observed at the June 6, 2011 conference, on a motion for summary judgment "the judge combs the record, like *Diogenes* with the lamp, looking all over to see if there's a material issue of disputed fact.  She finds a disputed issue of material fact and she puts her pen down and says we have to have a trial."  CSF ¶ 155.  Thus, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The "'fundamental maxim' is that the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Levine v. McDonald's Corp.*, 735 F. Supp. 92, 95 (S.D.N.Y. 1990).

---

[6] *See THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218 (S.D.N.Y. 2010).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are the province of the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, in determining whether a genuine fact issue has been raised, "'a court must resolve all ambiguities and draw all inferences against the moving parties.'" *Levine*, 735 F. Supp. at 95. Thus, summary judgment is proper *only* where a reasonable trier of fact could not return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248, 255.

Given this standard, Guess well knew that its long-promised, fact-based motion for summary judgment was doomed, and instead spends 30 pages of briefing running away from the facts. Nevertheless, as discussed below and as demonstrated in Gucci's Counter Statement, in those few instances where Guess's arguments implicate the facts, they not only misrepresent the record, but raise classic factual disputes that this Court cannot decide on summary judgment. For example, on Gucci's infringement claims, once again Guess points — incorrectly, as it turns out — to the absence of actual confusion evidence, completely ignoring the other *Polaroid* confusion factors — including the key elements of strength, similarity and intent — which, as this and other courts have held, present inherent fact issues. As to all these factors, Gucci has compiled an overwhelming body of evidence, which it will introduce at trial.[7] Further, on Guess's newly manufactured theory for knocking out Gucci's claims for monetary relief, Guess asserts that Gucci's body of intent evidence is not the right kind or amount, a contention which,

---

[7] As noted above, Guess has based its motion for summary judgment on Gucci's infringement claims on a pure legal argument, *i.e.*, Gucci's purported failure to show that the confused post-sale observers' subsequent purchasing decisions have been impacted. Guess's counsel conceded, at the December 2, 2011 conference, that this does not involve a weighing of the *Polaroid* factors (CSF ¶ 175), nor does Guess so claim in its motion papers. Accordingly, to defeat Guess's motion with respect to Gucci's infringement claims, Gucci need only show that Guess is wrong on the law, and need not present, and has not presented here, the totality of its evidence on the *Polaroid* factors.

as the Court has observed, itself raises fact issues.  As for Guess's laches defense, Gucci has

loaded the record with one piece of evidence after another showing that at the very least, there

are serious fact issues on all the laches elements, not the least of which is the requisite harm to

Guess, of which it has shown none.  And finally, as for the dilution portion of Guess's motion,

this too does nothing but raise fact issues.  It is for these reasons, among many others, including

Guess's repeated, deliberate misstatements of the law, that Guess's motion is exactly the kind of

wasteful exercise this Court instructed Guess's counsel to avoid.

## II.     GUCCI HAS MADE OUT A *PRIMA FACIE* CASE OF POST-SALE CONFUSION

Having abandoned any fact-based approach to summary judgment, and instead seizing on

the Court's statements in its Exclusion Decision as to the "concern" of the Lanham Act and the

"harm" it seeks to avoid in post-sale confusion cases, Guess invents a new evidentiary standard

that Gucci purportedly must meet.  According to Guess, it is the "recognized" law in this Circuit

that in addition to showing a likelihood that post-sale observers will be confused, in order to

make out a *prima facie* case of post-sale confusion Gucci must also prove that "the claimed post-

sale confusion . . . affect[s] [the observers'] purchasing decisions."  Guess Br. at 3.  In other

words, Guess has taken what this and other courts have said is the purpose of the Lanham Act

and the harm the Act seeks to prevent, and turned it into an evidentiary requirement that does not

exist, and one that, in any event, could not be met.

Thus, according to Guess, the law in this Circuit is that, in addition to showing that a

post-sale observer, seeing a Guess knockoff, is likely to be confused and believe it is a Gucci

product, Gucci is required to show that the same observer later has an epiphany and realizes that

the product was really a Guess product, and that this revelation somehow affects her future

purchasing decisions.  Following Guess's logic, this means Gucci must first identify this

unknown person, show that she was actually confused, follow her around until she realizes the

handbag she saw came from Guess, continue following her until she goes to the Guess store and buys an infringing Guess handbag, and then interview her and ask her why she bought the Guess handbag, hoping she says she is intending to confuse other post-sale observers just as she herself was confused. Only if it can show all this, says Guess, under the "recognized" law in this Circuit, can Gucci make a claim for post-sale confusion. Of course, no case has ever required such a showing, since if it did, it would be the death knell of the post-sale confusion doctrine. Even more disturbing is how Guess gets there — by deliberately misstating the law.

### A.   To Make Out a *Prima Facie* Case of Post-Sale Confusion, Gucci Need Only Show There is a Likelihood of Confusion

To set the table for its newfangled theory, Guess first miscites *Lois Sportswear*, which Guess acknowledges to be "[t]he Second Circuit's 'leading post-sale confusion case.'" Guess Br. at 3. According to Guess, to make out a *prima facie* case of post-sale confusion, *Lois Sportswear* requires the plaintiff to show more than just a likelihood of confusion. But the court in *Lois Sportswear* says just the opposite:

> [In] a claim of trademark infringement under § 32 or a claim of unfair competition under § 43, *a prima facie case is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product*.

*Lois Sportswear*, 799 F.2d at 871. Accordingly, in considering the plaintiff's post-sale confusion claims, the Second Circuit merely applied the likelihood of confusion factors set out in *Polaroid*. *Id.* at 873-76. Indeed, this Court itself followed *Lois Sportswear* on this point, stating that it is "well-established that a plaintiff seeking to prevail under the Lanham Act need not prove the existence of actual confusion, *'since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source.'"* Dkt. 176 at 26 (quoting *Lois*

*Sportswear*, 799 F.2d at 875).[8]

In addition to mischaracterizing *Lois Sportswear*, in order to support its theory that a plaintiff in a post-sale confusion case must show an "impact on purchasing decisions," Guess seizes on a single sentence from the 1994 decision in *Reebok*. Guess Br. at 3. Guess, however, omits the next three sentences:

> Even had Reebok demonstrated a likelihood that an appreciable number of consumers would mistake the Titan for a Reebok shoe, a claim of post-sale confusion requires the additional steps of showing that the consumers will perceive something about the product, and that what they observe will affect a later purchasing decision. ***These steps can often only be inferred. Of course, courts analyzing the likelihood of confusion must necessarily often infer the existence of relevant factors in order to answer the ultimate question. In appropriate cases, these inferences are warranted, and will lead to a finding of post-sale confusion.*** *Reebok*, 849 F. Supp. at 272-73 (bold italic portion left out of Guess's Memorandum of Law at 3).

The reason this additional showing can "often only be inferred," of course, is that it is virtually impossible to prove.

But it does not stop there. Guess next claims that the court in *Reebok* relied on *Lois Sportswear* for the proposition that the plaintiff in the post-sale context bears this additional evidentiary burden of showing impact on future purchasing decisions (Guess Br. at 3); not surprisingly, however, the above passage does not cite to any case, much less *Lois Sportswear*. Guess also omits the part where the *Reebok* court states "[r]egardless of whether it occurs at the point of sale or post-sale, a likelihood of confusion still requires the same thing — a showing that an appreciable number of consumers are likely to be confused." *Id.* at 273.

Moreover, in the seventeen years that have followed, *Reebok* has never once been cited

---

[8] Guess's theory that *Lois Sportswear* imposes this additional evidentiary requirement apparently comes from the statement in *Lois Sportswear* that the harm the Lanham Act seeks to prevent in the post-sale context is that the observer's confusion will influence her later buying decisions. *Lois Sportswear*, 799 F.2d at 872-73. As was the case with this Court's statement to the same effect in the Exclusion Decision, however, the court in *Lois Sportswear* is merely indicating that this is the "concern" of the Lanham Act and the "harm" the Act is seeking to avoid.

for the proposition that in post-sale confusion cases, this additional evidentiary showing must be made.  Indeed, the only other time a defendant in a post-sale confusion case tried to argue what Guess is arguing here, in the highly publicized case of *adidas America, Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812, at *7 (D. Or. Sept. 12, 2008),[9] the court rejected the argument out of hand, once again requiring only a showing of likelihood of confusion:

> [A]fter considering Payless' other four arguments [including the *Reebok* argument], the court concludes that sufficient evidence supports the jury's finding of likelihood of confusion.  Payless' arguments focus almost exclusively on a single factor in the likelihood of confusion analysis (*i.e.*, actual confusion) and ignore the other relevant factors.  ***In determining whether the accused Payless shoes were likely to cause consumer confusion, the jury was charged with considering not just evidence of actual confusion . . . but with weighing [all the confusion factors.]*** *Id.* at *19 (emphasis added).

Once again, what Guess is espousing here is simply the harm the Lanham Act seeks to prevent in the post-sale context, not any additional evidentiary requirement.  As the Second Circuit stated in *Hermés Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir. 2000), the harm the Act seeks to prevent is that "[a]t least some customers would buy [the copier's] cheaper [product] for the purpose of acquiring the prestige gained by displaying what many [observers] would regard as a prestigious article."  *Hermés*, 219 F.3d at 108 (quoting *Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.*, 221 F.2d 464, 466 (2d Cir. 1955)).  However, the court continued, "[the copier's] wrong . . . consisted of the fact that such [an observer] would be likely to assume that the [copier's product] was a[] [product of the plaintiff]. . . .  *[T]he likelihood of such [post-sale] confusion suffices to render [the copier's] conduct actionable*.'"  *Id.* (quoting *Mastercrafters*, 221 F.2d at 466).

At most, then, as was the case with the defendant in *Payless*, the argument Guess makes

---

[9] *See adidas America, Inc. v. Payless Shoesource, Inc.*, Legal Memorandum in Support of Motion for Judgment as A Matter of Law on Adidas' Liability Claims Or, In the Alternative, For New Trial, 2008 WL 2115520 (D. Or.).

here is the same argument it has been making since the beginning of this case, and the same one this Court has been telling Guess to stop making.  Gucci does not have to prove the equivalent of actual confusion to make out a *prima facie* case of post-sale confusion, as actual confusion is just one factor in the *Polaroid* analysis, in which no single factor is dispositive.  Dkt. 176 at 23 (citing *Brennan's, Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 130 (2d Cir. 2004)).  Nothing more than a likelihood of confusion is needed.[10]  Further, as for the ultimate issue of likelihood of confusion, as this Court has stated many times, this is an inquiry that is "distinctly subject to fact disputes and not amenable to summary judgment."  CSF ¶ 165.[11]

**B.    The Claim that Gucci Must Show that Guess Customers Intend to "Pass Off" Guess's Knockoffs as Gucci Products is Another Guess Invention**

Building on its misstatement that Gucci must make a showing that the confused post-sale observer's future purchasing decisions have been affected, Guess has invented yet another evidentiary hurdle for Gucci.  Citing, and purporting to quote the Exclusion Decision, Guess claims that "in order to make out a *prima facie* case of trademark infringement based on post-sale confusion, Gucci must shoulder its burden of showing that customers knowingly choose to purchase Guess-branded handbags and other accessories over Gucci products for the intended purpose of 'passing them off' [] as Gucci products"  Guess Br. at 5.  We say "invent" because even though Guess places quotation marks around the words "passing off" eight times in Point I of its brief, as if to indicate a direct quote from the Exclusion Decision, in fact neither those words, nor any such requirement, appears in that decision.

---

[10] *See, e.g., Lois Sportswear*, 799 F.2d at 871-76 (*Polaroid* factors applied in post-sale context and likelihood of confusion found); *Clinique Labs. v. Dep Corp.*, 945 F. Supp. 547, 551-558 (S.D.N.Y. 1996) (Scheindlin, J.) (same); *T. Anthony v. Malletier*, 1993 WL 659682, at *2-4 (S.D.N.Y. Nov. 24, 1993) (same); *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 537, 537, n.2 (2d Cir. 2005) (*Polaroid* factors must be applied in post-sale context).

[11] Indeed, this Court said the same thing in *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 500 (S.D.N.Y. 2008): "[The likelihood of confusion] inquiry is heavily fact-based, and generally not amenable to disposition on summary judgment."

14

Guess then goes on to argue that the evidence it has made of record "refutes the possibility that the Guess products at issue could ever be 'passed off' as Gucci products so as to mislead an 'appreciable number of ordinarily prudent purchasers.'"  Guess Br. at 5.  In support of this contention, Guess advances the following purportedly dispositive "facts": that (i) Guess "is one of the strongest global brands in the fashion industry"; (ii) "Guess products leave no doubt as to their source"; and (iii) as shown by the analysis of Guess's damages expert, Dr. Alan Goedde, "Guess's sales figures refute any suggestion that consumers purchase Guess products bearing the designs at issue in order to pass them off as Gucci products."  Guess Br. at 5-6.  None of these "facts", however, have any relevance here.  CSF ¶¶ 33-46, 131.

First, Guess's prominence in the fashion industry has no bearing on whether it has the capacity to engage in trademark infringement; indeed, the evidence shows that Guess, an admitted "trend-follower, and not trend-leader" (CSF ¶ 129), is a serial infringer, copying one fashion house after another, waiting only until its infringement is challenged before moving on to the next victim.  CSF ¶¶ 281-97, 265-80.  Second, while some of the knockoff Guess products may display the Guess name, as the Court recognized in the Exclusion Decision, this has little bearing on whether the name is seen in the post-sale context.  Dkt. 176 at 45.  Third, Guess's reliance on Goedde's "attribution" analysis is a perfect example of why this Court said it would not consider Guess's expert reports in the summary judgment context.  Just as the Court anticipated, Gucci responded with its own financial expert, Basil Imburgia, who opined that Goedde's analysis of the pricing of Guess products bears absolutely no relationship to the question whether Guess's products were likely to confuse consumers.[12]  Accordingly, as the

---

[12] Indeed, according to Imburgia, Goedde's analysis: (i) used no recognized statistical or accounting methodology; (ii) failed to take into account critical information about the accused products and their respective life-cycles; (iii) used data that was, at best, of deficient and suspect

Footnote continued on next page

Court predicted, all Goedde's report accomplished was to raise disputed fact issues, not resolve them.  CSF ¶ 168.

For all these reasons, in order to make out a *prima facie* case of post-sale confusion, Gucci is not required to do anything more than show a likelihood of confusion among post-sale observers.  Guess's purported additional evidentiary burdens do not exist, and its motion for summary judgment on Gucci's infringement claims must be denied.

## III.    GUESS IS NOT ENTITLED TO SUMMARY JUDGMENT ON GUCCI'S CLAIMS FOR MONETARY RELIEF

In this action, Gucci makes a claim for actual damages based on a reasonable royalty calculation ($26,374,844), and also seeks to recover Defendants' illicit profits from their intentional sale of infringing goods ($98,618,051).[13]  CSF ¶ 145.  Guess now argues that Gucci has no evidence of the kind of intentional conduct required to recover money, stating that, as a matter of law, Gucci must, and cannot, show: (i) intent to deceive, as opposed to intent to copy, and (ii) a particularly "egregious" level of "willful deceptiveness."  Guess Br. at 24-30.  While apparently Guess has abandoned its short-lived bad faith "drops out" argument, nevertheless, as the Court has recognized, to the extent Guess is relying on the absence of any kind or degree of intentional conduct, intent is a classic fact issue not amenable to summary judgment.

The cases concur.  The fact-laden question of willfulness or bad faith "is 'generally ill-suited for disposition on summary judgment.'"  *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 471 (S.D.N.Y. 2011) (quoting *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991)).  For this reason, courts routinely deny summary judgment in Lanham Act

---

Footnote continued from previous page

quality; and (iv) was based on assumptions that were demonstrably false and were contradicted by Guess's own purported experts.  CSF ¶ 40.

[13] Gucci may also elect to seek up to $2 million in statutory damages from each Defendant that counterfeited its Green-Red-Green Stripe design.  15 U.S.C. § 1117(c).

cases where the issue of willfulness is implicated, including in the context of monetary relief.[14]

### A.    To the Extent Evidence of Actual Confusion is Needed, Gucci Has It

Guess's first argument with respect to Gucci's claim for actual damages is that Gucci has no evidence of actual confusion.  After Guess filed its motion, however, the Court admitted Gucci's confusion survey on the Diamond Quattro G Design, showing a 16% confusion rate with Gucci's famous GG Diamond Design in the many post-sale situations where the Guess name is not seen.  CSF ¶ 36.  As this Court has recognized, "surveys create an experimental environment from which we can get useful data from which to make informed inferences about the likelihood that actual confusion will take place."  Dkt. 176 at 26-27 (citing 6 J. Thomas McCarthy, *McCarthy on Trademarks* § 32:184 at 32–392 (4th ed. 2011) ("*McCarthy on Trademarks*")).  Accordingly, "[a]lthough survey evidence is not direct evidence of actual confusion, it is nonetheless routinely categorized 'under the heading of actual confusion.'"  *Id.* at n.79.[15]

Moreover, the results of Gucci's confusion survey show a more than actionable rate of confusion,[16] and one that, according to Guess's own study on how women wear handbags, would come into play at least one-third of the time.  Dkt. 186 at 7, n.20.[17]  In fact, as the Court

---

[14] *See, e.g., Mr. Water Heater Enters., Inc. v. 1-800-Hot Water Heater, LLC*, 648 F. Supp. 2d 576, 589-90 (S.D.N.Y. 2009) (denying summary judgment on claims for monetary recovery where "a question of fact exists as to whether Defendants acted in bad faith "); *Lipton v. The Nature Co.*, 1993 WL 541662, at *2 (S.D.N.Y. 1993) (same); *see also Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 483 (2d Cir. 1996) ("[s]ubjective issues such as good faith are singularly inappropriate for determination on summary judgment").

[15] *See also Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 225 (2d Cir. 1999) ("Surveys are . . . routinely admitted in trademark and false advertising cases to show actual confusion . . . .").

[16] *See, e.g., RJR Foods, Inc. v. White Rock, Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979) (15-20% confusion rate corroborates a finding of likely confusion).

[17] Indeed, this one-third number is understated, since Guess's study only accounts for those situations where the ornamentation is not being worn outward or there is no ornamentation at all — it fails to account for those situations where the ornamentation is worn facing outward but is not clearly seen by post-sale observers for various reasons.  These reasons may include the wearer's speed of movement, whether the wearer's arm is blocking all or a portion of the ornamentation, and the clarity of the observer's viewing angle, among others.  CSF ¶ 131.

observed, even where the Guess name is visible, "this does not mean that a casual observer in a

post-sale environment will ever notice [it], and, furthermore, the fact that consumers are not

confused when they see the Guess name [] at the point of sale does not indicate that they will not

be confused when they see ornamentation (bearing the Guess name) in passing [] in a typical

post-sale environment." Dkt. 176 at 45.  As Guess has sold millions of products bearing

infringements of Gucci's GG Diamond Design, a 16% confusion level is an indication that a

"more than appreciable" number of consumers have been actually confused.  CSF ¶¶ 36, 133.

### B. As the Court Has Recognized, the Question Whether Defendants Acted in Bad Faith Is a Pure Issue of Fact

Guess's next arguments are that (i) with respect to actual damages Gucci has only

demonstrated Defendants' intent to copy, not their intent to deceive; and (ii) with respect to

profits Gucci cannot show a special level of "egregiousness."  The most important point here is

that whatever Guess may wish to call its intentional conduct, Gucci has come forward with

overwhelming evidence of it.  CSF ¶¶ 177-280.  Indeed, at the December 2 conference, the

Court, hearing Guess's argument, and recalling only some of the bad faith evidence Gucci has

compiled, believed it was more than enough to raise an issue of fact, stating:

> I will say to you Mr. Welsh, lest you take too much confidence from this
> conversation, I don't think there is such a strong point to summary judgment,
> because I think there is a legitimate question of fact as to bad faith.  ***Once there is
> a question of fact as to bad faith, I don't see how I can grant summary
> judgment and say money damages are out of the case.***  If I think there is an issue
> of fact on bad faith, ***and I do,*** then where are we going?  CSF ¶ 164.

Left with none of the arguments it made at the December 2 conference, Guess now tries a

different tack.  First, as to Gucci's claim for actual damages, Guess argues that there is a

difference between an intent to copy another's designs — effectively conceding the obvious, that

it intended to copy Gucci — and an intent to confuse or deceive consumers.  Guess Br. at 24-27

(citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117-18 (2d Cir. 2009)).

18

Guess then goes on to argue that Gucci has no evidence that Guess intended to deceive consumers. However, not only is the record filled with such evidence (CSF ¶¶ 177-280), but Guess ignores this Court's prior holding that "evidence of intentional copying raises a presumption that the second comer intended to create a confusing similarity." *Clinique Labs.*, 945 F. Supp. at 555 (citing *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993) and *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)).[18] Accordingly, on a motion for summary judgment, even if Gucci had no evidence of intent to deceive — which it does — a showing of intent to copy would be more than enough.

Once again, Guess attempts to rebut this presumption, as well as the basic presumption of confusion in any Lanham Act damages analysis where intentional conduct is shown,[19] by arguing that as a matter of law it did not intend to deceive consumers, because it slaps the Guess name on nearly all of its products. Here, however, Guess is once again trying to "confuse" the Court, making the same point-of-sale confusion argument that the Court rejected in the Exclusion Decision. Dkt. 176 at 44. Further, if the Court needs any evidence beyond that already of record to show that Defendants were intending to deceive consumers (CSF ¶¶ 177-280), it need look no further than the name Guess was slapping on its products. The evidence shows that Guess was

---

[18] Even *Starbucks* noted that deliberate copying may raise a presumption of bad faith. *See Starbucks*, 588 F.3d at 118 (also citing *Paddington*, 996 F.2d at 587 for the proposition that deliberate copying may indicate that the defendant acted in bad faith).

[19] *See George Basch* Co. *v. Blue Coral, Inc.* 968 F.2d 1532, 1537 (2d Cir. 1992) ("it is well settled that . . . defendant's . . . intentionally deceptive [actions] . . . giv[e] rise to a rebuttable presumption of consumer confusion"). Notably, as to this presumption, Guess's counsel argued, at the December 2 conference, that to the extent Guess's bad faith raises a presumption of confusion, such presumption can be rebutted merely by showing there have been no instances of actual confusion. The Court, however, ultimately agreed with Gucci that the presumption cannot rebutted this way, but rather only by a strong showing on the remaining likelihood of confusion factors. CSF ¶ 176; *see, e.g., The Am. Auto. Ass'n Inc. v. AAA Auto. Club Of Queens, Inc.*, 1999 WL 97918 (E.D.N.Y. Feb. 8, 1999) (following *Polaroid* analysis, court found insufficient evidence to rebut presumption of confusion, noting that defendant had no survey evidence to support rebuttal).

deliberately designing the Guess name to appear as close as possible to the well-known Gucci script, even adding an underline because it "was the same logo font which is being used by Gucci, who is having great success with it."  CSF ¶¶ 18, 38, 209-10.  Obviously, this was done to ensure that in a post-sale context, from ten feet away, the observer may see only the familiar "G-u" script and underline, and believe it is looking at a Gucci product.  CSF ¶ 38.  At the very least, as the Court acknowledged at the December 2 conference (CSF ¶ 164), Gucci has raised a question of fact as to whether this and other deliberate conduct on Guess's part was done to deceive consumers, thereby supporting an award of damages.[20]

Even if Guess were not trying to make its name look like "Gucci", a number of courts have observed — as this Court has here — that in the post-sale context, the presence of a house mark does not offset a party's bad faith.  Indeed, the Second Circuit has called Guess's argument on this point "specious", finding that the use of a house mark does not "indicate a lack of deliberate fraud," but rather "would allow any company that is well enough known, to infringe a competing company's mark . . . merely by coupling its own name with the competitor's mark." *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970) (citing *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315 (1938)).  The district court in *Lois Sportswear* agreed, stating that where the infringed design mark is strong, the use of a house mark alongside an infringing mark allows the infringer to "unfairly couple the benefits of the mark with the selling power of the infringer's name."  *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631

---

[20] Guess also tries to rebut the two intentional conduct presumptions by recasting the "peaceful coexistence" argument it made at the December 2 conference, now claiming this is evidence of "no likelihood of confusion", as opposed to "no actual confusion".  Guess Br. at 25-27.  However Guess may wish to cast this argument, it does not change the fact that, as this Court has observed, instances of confusion are difficult to come by in the post-sale context, and the presumptions raised by intentional conduct are not rebutted this way.

F. Supp. 735, 745 (S.D.N.Y. 1985).[21]

Second, Guess argues that in order for the Court to award profits, Gucci must show that Guess's bad faith is "particularly egregious," citing *Mele v. Davidson & Assocs., Inc.*, 2004 WL 2285111, at *13 (W.D.N.Y. Oct. 7, 2004).  In *Mele*, however, where, unlike here, "it [was] undisputed that, when defendant first started using the [infringing] mark, it did not [even] know about [plaintiff]," the court merely noted that "[c]ourts have insisted on a relatively egregious display of bad faith for a finding of willfulness — to wit, an 'aura of indifference to plaintiff's rights' or a 'deliberate[ ] and unnecessar[y] duplicating [of] plaintiff's mark * * * in a way that was calculated to appropriate or otherwise benefit from the good will plaintiff had nurtured.'" *Id.* (quoting *W.E. Bassett Co.*, 435 F.2d at 662).[22]  Further, as this Court has previously noted, the Second Circuit uses several terms interchangeably to describe the *scienter* requirement for a profits award, including "willful infringement," "bad faith," "malicious or egregious infringement," and "deliberately deceptive conduct."  *Malletier v. Dooney & Bourke, Inc.*, 2007 WL 1498323, at *1 & n.4 (S.D.N.Y. May 22, 2007) (Scheindlin, J.).  This does not, however, imply a "legal distinction between the level or type of proof that is required" to recover profits. *Id.* at *1.

Here, aside from the fact that the degree of a party's bad faith is itself an inherently factual question, Guess's behavior helps define the phrase "aura of indifference."  Nevertheless,

---

[21] Other courts are in accord, even in cases where the house mark is displayed as prominently as the infringing mark; intent is, as always, determined by considering all the facts and circumstances.  *See, e.g., Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96, 131, 133 (S.D.N.Y. 1989) (bad faith despite prominent use of house mark); *Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432, 436-37 (S.D.N.Y. 1989) (same); *Gateway, Inc. v. Companion Prods., Inc.*, 2003 WL 22508907, at *16 (D.S.D. Aug. 19, 2003) (same); *see also Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.*, 1995 WL 528001, at *12 (S.D.N.Y. Sept. 6, 1995); *T. Anthony, supra*, note 9 at *5.

[22] Similarly, in *Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33, 34-35 (2d Cir. 1993), another case cited by Guess for this proposition, there was no evidence that the defendant was even aware of plaintiff's existence, much less that it had deliberately infringed plaintiff's mark.

Guess argues that as a matter of law, Gucci cannot show the required level of egregiousness. First, once again Guess argues that the presence of the Guess house mark precludes such a finding. Second, incredibly, Guess resurrects an argument it previously made with respect to laches, which was shot down by this Court at the September 20, 2010 conference — that, based on the opinion of its Trademark Office expert, Gary Krugman, Guess could not have acted intentionally, since Gucci never raised an objection when Guess submitted specimens of its accused Diamond Quattro G Design to the Trademark Office in support of its application to register a completely different design, a Square Quattro G Design with no "G's" in the corners. CSF ¶¶ 139-42, 172. How this argument is relevant to the issue of Guess's bad faith, is no more explained here than at the 2010 conference.[23]

Guess also cites *Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.*, 2000 WL 220504 (2d Cir. 2000), in support of its "extra egregiousness" argument. *Star Class*, however, is inapposite, as in that case, Hilfiger's designers were not serially copying the plaintiff's designs; indeed, they had no knowledge of the plaintiff or how it used its mark, but just liked the mark's appearance. Rather, the finding of willfulness derived from Hilfiger's failure to follow its attorney's advice to conduct a full search of the mark in question. *Star Class,* 2000 WL 220504 at *1. Here, not only did Guess and its designers know exactly who Gucci was and what it was doing, but by faithfully and systematically replicating Gucci's designs right down to the color, stitching and fabric construction, using actual Gucci products and fabric swatches (CSF ¶¶ 193-94, 196-214) — even to the point of adding Gucci's familiar

---

[23] In addition to Krugman, Guess relies on two other experts to support its arguments on intent — Goedde and his faulty "attribution" analysis (CSF ¶ 40-46, 143), and Guess's so-called fashion expert, Gabriele Goldaper (CSF ¶ 144), who opined that Guess promoted its deliberate knockoffs of Gucci designs solely as indicators of Guess — an opinion, which, if credited, would create a new "fair use" defense under the Lanham Act. At best, as the Court said, these opinions raise issues of fact, not eliminate them.

black pinpoint shading to the G's in Guess's knockoff diamond pattern (CSF ¶¶ 236-41) — they were only carrying out their longstanding mantra: **"[if] its [sic] good for Gucci it has to be good for [G]uess."**  CSF ¶ 25.  Accordingly, whatever level of egregiousness may be required to recover an infringer's profits, Gucci has raised triable fact issues that it is present here.[24]

Next, once again misleading the Court, Guess claims that the only way Gucci may be entitled to a profits award is if it shows that Guess has been unjustly enriched, that is, that Gucci would have made the same sales Defendants made, but for those sales.  Guess Br. at 30.  While unjust enrichment is one equitable ground for awarding profits in a case of willful infringement, however, it is not the only one; to the contrary, there are three bases for awarding profits under § 1117(a) of the Lanham Act: 1) as a proxy for damages, 2) to remedy unjust enrichment, or 3) to deter a willful infringer.  *George Basch*, 968 F.2d at 1537-40.  Further, the Second Circuit has made clear that deterrence, by itself, is a more than sufficient basis for awarding profits.[25]  Here, at the very least, given Defendants' history of knocking off and creeping ever closer to Gucci's famous design marks in their most popular and enduring collections (CSF ¶¶ 177-299), there is a fact question whether Guess needs to be deterred from engaging in this type of conduct in the

---

[24]  If there were any question whether Defendants' intentional conduct was sufficiently "egregious", their position is belied by the spontaneous words of their own employees.  Indeed, Guess's scheme to knock off Gucci was so pervasive, and so well known within the company, that in April 2008, when it was reported that Gucci had prevailed in a trademark infringement suit in China against another party, Guess's men's footwear buyer breathed a sigh of relief, telling Guess's licensing manager: **"Don't worry — it is not Guess . . . ."**  CSF ¶ 193.  And if there were any question as to Defendants' intention to deceive consumers, that was answered when Jason Rimokh, President of Guess's handbag licensee Signal Products, on learning that Guess's knockoff Quattro G Diamond messenger bag — the same bag tested by Gucci for confusion — had been detained by U.S. Customs, remarked **"I am nervous they think it is Gucci."**  CSF ¶ 47; *see also* CSF ¶¶ 196-214.

[25]  *See George Basch*, 968 F.2d at 1539 ("[W]e have held that a court may award a defendant's profits solely upon a finding that the defendant fraudulently used the plaintiff's mark . . . to protect the public at large" by "deterring public fraud regarding the source and quality of consumer goods and services."); *Int'l Star Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 72 (2d Cir. 1998) ("[A]n accounting for profits is available, even if a plaintiff cannot show actual injury or consumer confusion, 'if the accounting is necessary to deter a willful infringer from doing so again.'").

future.[26]

## IV.    GUESS IS NOT ENTITLED TO SUMMARY JUDGMENT ON LACHES

Guess's motion to bar Gucci's Square G infringement claim based on laches fails as well. As this Court held in the Exclusion Decision, "[a]s an equitable defense, however, [laches] is also highly fact intensive and not typically amenable to summary judgment."  Dkt. 176 at 49 (citing *U.S. Bank N.A. v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 611 (S.D.N.Y. 2008)). Indeed, at the December 2 pre-motion conference, the Court again warned Guess's counsel not to make this part of Guess's motion:  "I must say the laches argument sounds completely fact-intensive.  I don't understand how this could be a summary judgment on laches."  CSF ¶ 166.

Undeterred by the Court's warnings, Guess brought its laches motion anyway, leaving behind only its promised motion on the Diamond Quattro G Design.  As this Court held in the Exclusion Decision, "[g]enerally speaking, the Court considers three factors in a laches analysis: 1) whether the senior user knew the junior user was using its mark; 2) whether the senior user

---

[26] As for the question whether there is evidence that Guess intentionally copied Gucci's designs, Guess makes several futile arguments.  On the Square G Design, Guess argues that there is no evidence that Guess copied this design, despite the fact that Gucci's Square G preceded Guess's by two years, the designs are identical, and there is a mass of evidence that Guess was following and copying Gucci's every move.  CSF ¶¶ 298-99.  With respect to the Green-Red-Green Stripe design, this was directly copied from Gucci products (CSF ¶¶ 253-64), so not even Guess can bring itself to claim this was not a counterfeit of Gucci's famous design; instead, it argues that its footwear licensee, Marc Fisher, acted on its own, and this somehow got past Guess — ignoring the fact that Guess's own witnesses, including its chairman, Paul Marciano, were well aware of this famous Gucci design, and that Guess approved every design created by its licensees.  CSF ¶¶ 202-08, 262.  As for the Gucci Script Design, as noted above, the evidence is clear that this was a deliberate Gucci knockoff.  CSF ¶¶ 18, 208-09.  And as for Gucci's GG Diamond Design, Guess has effectively conceded, as the record clearly shows, that it intended to come as close to this design as it possibly could, to the point where even Marciano could not tell the difference from ten feet away.  CSF ¶¶ 195-99, 213, 220-52.  As stated in *Paddington Corp.*, 996 F.2d at 587,"[i]n determining a defendant's intent, 'actual or constructive knowledge' of the prior user's mark or dress may indicate bad faith", especially "[w]here such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred…." (quoting *Mobil Oil Corp.*, 818 F.2d at 259).  Finally, as for Defendants' claims that they immediately stopped selling the infringing goods when Gucci called them out, there are serious questions of fact as to when they actually removed these goods from sale.  CSF ¶¶ 29-30, 37, 125-28, 147-48, 191-92.

inexcusably delayed taking action; and 3) whether the junior user is harmed as a result." Dkt. 176 at 50 (citing *Black Diamond Sportswear, Inc. v. Black Diamond Equipment, Ltd.*, 2007 WL 2914452, at *1 (2d Cir. Oct. 5, 2007)). The Court, however, was right — Guess's motion only serves to raise fact questions on all three of these elements.

A.   **There Are Triable Issues of Fact as to Gucci's Purported Knowledge of Guess's Use of an Infringing Square G Design**

First, there is a serious question of fact as to when the Plaintiff in this case, Gucci America, Inc. — as opposed to any Gucci affiliate anywhere in the world — even knew about Guess's use of an infringing Square G Design. A mark holder's knowledge, and, accordingly, its duty to police its marks, only arises where "'the facts already known to [the mark holder] were such as to put upon a man of ordinary intelligence the duty of inquiry.'" *Toyota Jidosha Kabushiki Kaisha v. Ailments Lexus Inc.*, 2004 WL 1304054, at *6 (E.D.N.Y. June 14, 2004) (quoting *Johnston v. Standard Min. Co.*, 148 U.S. 360, 370 (1893) and citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 182 F. Supp. 350, 356 (E.D.N.Y. 1960), *aff'd*, 287 F.2d 492 (2d Cir. 1961)).[27] That does not mean, however, that just because one affiliate of a multinational company may have known about an infringing use, that knowledge is automatically imputed to all other affiliates — such imputation is, itself, a question of fact.

Accordingly, while Guess claims that Gucci knew or should have known of Guess's use of the Square G Design in 1999, there is a question of fact as to when any employee of the Plaintiff, Gucci America, Inc., knew anything about Guess's use of a Square G. CSF ¶¶ 97-98. According to the evidence, it was not until 2006 that Gucci America's in-house counsel, Jonathan Moss, saw a Guess handbag that contained an elongated version of Gucci's Square G.

---

[27] *See also RBC Nice Bearing, Inc. v. Peer Bearing Co.*, 410 Fed. App'x 362, 365 (2d Cir. 2010) (same); *Black Diamond*, 2007 WL 2914452, at *2-3 (describing a duty arising only after 1990, when it is undisputed that the plaintiff first learned of the mark's use).

CSF ¶¶ 97, 101.  There is no evidence that any individual directly responsible for Gucci America's trademark enforcement program knew anything about Guess's Square G Design before then.  CSF ¶ 97.

To get around this, Guess attempts to rely on the apparent knowledge of attorneys for Gucci affiliates in Europe, Lorenza Bencini, General Counsel for Guccio Gucci S.p.A. in Italy, and Alan Tuttle, General Counsel for the Gucci Group in England,[28] each of whom was apparently made aware of a single incident involving Guess's use of a Square G before 2003.  CSF ¶¶ 74, 78-83, 113.  Neither Bencini, however, who left Guccio Gucci in 2002, nor Tuttle, who died in 2004, have testified in this case, so there is no evidence as to what they actually knew about Guess's use of a Square G.  Further, the law requires that in order for Gucci America to be charged with such knowledge, Guess must show that Gucci America actually knew what its affiliates knew at the time they knew it.  *Am. Cynamid Co. v. Campagna Per Le Farmacie In Italia S.P.A.*, 678 F. Supp. 1049, 1054 (S.D.N.Y. 1987) (telling one branch is insufficient to notify another branch); *DC Comics, Inc. v. Powers*, 482 F. Supp. 494, 496-97 (S.D.N.Y. 1979) (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 363 (2d Cir. 1959) (applying same test to knowledge imputation from an agent to a principal)).

Aside from the fact that this inquiry, itself, is distinctly factual, here there is no such evidence.  According to Gucci America's witnesses, as well as its legal files, which were exhaustively searched, there is absolutely no evidence that anyone responsible for Gucci America's trademark matters knew anything about Guess's use of a Square G Design back in the late 1990's or early 2000's.  CSF ¶¶ 97-98.  Thus, Guess is left to rely on the fact that Tuttle,

---

[28] Guess also points to the purported knowledge of Guess's Square G by Iolanda Tursi, an attorney who reported to Tuttle in the UK.  There is no evidence, however, that Tursi was in any way responsible for or involved in Gucci America's U.S. trademark enforcement activities.  CSF ¶¶ 77, 113.

although he did not work for Gucci America, was technically a Gucci America employee for tax purposes, and, further, that he was involved in some capacity in certain of Gucci's U.S. infringement cases.  CSF ¶¶ 74-75, 78.  Lombardo, however, testified that in her many years enforcing Gucci trademarks, Tuttle had nothing to do with U.S. enforcement.  CSF ¶ 75.  In addition, the only Square G incident of which Tuttle was made directly aware involved the use of the design in France in 2002.  CSF ¶¶ 79-80.

Further, Guess's argument that "had Gucci conducted any reasonable investigation, it would have quickly discovered the extent of Guess's use of the Square G mark in 2002, and certainly before the presumptive laches period ran in 2003" (Guess Br. at 17), also raises fact issues.  "A trademark owner is 'not required to constantly monitor every nook and cranny of the entire nation and to fire both barrels of [its] shotgun instantly upon spotting a possible infringer.'"  *adidas America, Inc. v. Kmart Corp.*, 2006 WL 2044857, at *8 (D. Or. June 15, 2006) (quoting *Cullman Ventures,* 717 F. Supp. at 127).  Further, this Court has already rejected Guess's attempt to rely on the opinion of investigator Michael Kessler, whose conclusion that "had Gucci America been exercising reasonable diligence in protecting its trademarks in the 2003 and earlier period, it would have and should have known of Guess's use of the Square G design prior to May 2003," prompted the Court to say:  ***I'm not going to be considering that on summary judgment, that's for sure.***"  CSF ¶ 95.

**B.    There Are Fact Questions Whether Gucci's "Delay" Was "Inexcusable"**

In a laches analysis, the delay period only begins to toll when "'the plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant.'"  *Black Diamond*, 2007 WL 2914452, at *2 (quoting *Physical Therapy Ctr. v. Pro–Fit Orthopedic & Sports Physical Therapy*, 314 F.3d 62, 70 (2d Cir. 2002)).  Here, as noted above, there are issues of fact as to

when Gucci America even learned about Guess's use of a Square G in the U.S., much less whether it knew it had a provable claim, in the presumptive laches period.  Indeed, if these questions are decided in Gucci's favor, then just as was the case with Guess's infringing Diamond Quattro G Design, "the [Square G] would never go on laches" CSF ¶ 171 and the inquiry about the "excusability" of Gucci's delay would end.

Further, even if whatever Gucci America's affiliates knew about Guess's use of a Square G design could somehow be imputed to Gucci America, there remain serious fact questions whether Gucci America's purported delay in bringing suit was excusable.  Indeed, as this Court observed at the September 20, 2010 conference, whether and when a party has a duty to act under penalty of laches depends on many things: whether "it wasn't enough yet"; whether "it was small"; whether "we thought we could take care of it";  whether it "was only occasional" or "minor"; or whether "it only added up over time".  CSF ¶ 173.[29]  One thing is sure — the law does not require Gucci America, a company whose products are frequently counterfeited and knocked off, to chase down every infringement that comes to its attention.  *adidas*, 2006 WL 2044857 at *8.  On the other hand, the point at which Gucci America had a duty to investigate, and what events may have triggered such a duty, as this Court has stated, are "issues that are distinctly subject to fact disputes and not amenable to summary judgment."  CSF ¶ 165.

### C.   There Are Triable Issues of Fact as to Whether Guess Will Suffer the Requisite Harm if Enjoined from Using Its Square G Knockoff

Finally, there are serious fact questions whether Guess, if enjoined, will be so highly prejudiced that it would only be fair to invoke laches.  As this Court has found, "'prejudice ensues when a defendant has changed his position in a way that would not have occurred if the

---

[29] Indeed, when asked why Gucci America's affiliate, Guccio Gucci S.p.A. of Italy, did not sue Guess over the Square G until 2009, Guccio Gucci S.p.A.'s General Counsel Carlo Imo testified that the decision was based on many of these same considerations.  CSF ¶ 100.

plaintiff had not delayed.'"  *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126,

134 (S.D.N.Y. 1999) (Scheindlin, J.) (quoting *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187,

191 (2d Cir. 1996)).  To demonstrate such prejudice, however, Guess must show more "than 'the

simple fact that the business continued during the period of delay.'"  *Imagineering, Inc. v. Van*

*Klassens, Inc.*, 851 F. Supp. 532, 536 (S.D.N.Y. 1994).  Rather, Guess "must show that [it has]

taken affirmative steps to increase [its] reliance on the mark during Plaintiff['s] alleged delay."

*Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 361 (S.D.N.Y. 1998).[30]

Indeed, courts in this Circuit have set a very high bar for the type of change in position

that satisfies the prejudice element, requiring a defendant to show that it would have "to

reorganize its business or reeducate the public as to its product if restrained from using the

mark."  *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707,

719 (S.D.N.Y. 1973), *aff'd in relevant part*, 523 F.2d 1331 (2d Cir. 1975).  In other words, a

party must show that it has so expanded its use of the accused mark that the mark has become a

part of its identity, and that it would be inordinately expensive, if not impossible, for the

infringer to have to stop and use another mark.  *See, e.g., Tri-Star Pictures*, 14 F. Supp. 2d at 361

(defendant "cannot establish prejudice . . . where it would cost little to remedy the

infringement"); *Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*, 964 F.

Supp. 733, 753 (S.D.N.Y. 1997) (prejudice found where the accused mark was defendant's brand

name, and "plaintiff['s delay] precluded the possibility that the defendant could effectively adopt

an alternative marketing position").

---

[30] In the two cases Guess cites for the proposition that mere deprivation of profits is enough to
constitute prejudice for laches, the circumstances of these cases were very different and neither
has been followed in this Circuit.  *See Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397,
411-12 (6th Cir. 2002) (noting that the "nature of Nartron's claims themselves satisfies the
requirement that the delay results in prejudice"); *Joint Stock Society v UDV North America, Inc.*,
53 F. Supp. 2d 692, 717 (D. Del. 1999) (involving a claim of abandonment after a 60 year delay).

Guess does not even come close to clearing this high bar.  While Guess asserts that Gucci's claims would "destroy[] the substantial commercial interest and goodwill that Defendants have developed in the Square G mark" (Guess Br. at 20), it submits no evidence of any such interest or goodwill.[31]  Nor does Guess argue that it would be expensive, much less a "great expense," to cease using the Square G Design.  This is not surprising, since Guess uses many different G designs, several of which are registered trademarks, while the Square G has no special significance to Guess other than to trade on Gucci.  CSF ¶¶ 300-02.

With nothing else to go on, predictably Guess points to the only piece of harm "evidence" it has — this Court's decision to admit Guess's otherwise excluded Square G confusion survey to the extent it shows that at the point of sale, a significant percentage of respondents associated the knockoff Square G Design with Guess.  Dkt. 176 at 50.  For this argument, Gucci has the following response: there is a serious question of fact — to be decided only at trial — as to how much weight Guess's survey is to be accorded.  As Gucci's rebuttal confusion expert, Dr. Itamar Simonson, explained, one of the problems with Guess's survey was that it allowed the respondents to handle the test belt, as a consumer would in a store.  CSF ¶¶ 108-09.  However, anyone handling this test belt who was not familiar with the Square G Design, but assumed the "G" referred either to Gucci or Guess, would pick Guess over Gucci, given the poor quality of the leather.  CSF ¶¶ 108-09.  For this reason, the number of respondents who guessed "Guess" is skewed, and, at best, the question whether this survey indicates any sort of harm or prejudice to

---

[31] Further, even if Guess had presented evidence, prejudice is not shown by the expense of "promoting the infringing articles," or else "'relief would have to be denied in practically every case of delay.'"  *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232, 253 (S.D.N.Y. 1994) (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965)).

Guess if required to stop using the Square G is one of fact.[32]

## V.      GUESS IS NOT ENTITLED TO SUMMARY JUDGMENT ON DILUTION

Finally, Guess seeks summary judgment on Gucci's dilution claims.  First, with respect to the infringing marks Guess used before October 6, 2006, namely, Guess's Square G and Diamond Quattro G Designs, Guess asserts that Gucci's claim for damages must fail because Gucci has no evidence of actual dilution.  Guess Br. at 7-9.  Second, with respect to the infringing marks Guess first used after October 6, 2006, namely, the Script Guess[33] and Green-Red-Green Stripe Designs, Guess argues that Gucci's dilution claims fail because there is no evidence of likelihood of dilution.  *Id.* at 10-11.  Third, Guess contends that "the 12% level of association found by the [Mazis] survey [with respect to the Diamond Quattro G Design] is insufficient as a matter of law to establish likelihood of dilution."  *Id.* at 11.  Finally, Guess argues that Gucci's dilution claim on its Square G Design is barred because Gucci cannot show that this mark was famous before Guess introduced its infringing design.  *Id.* at 12-13.  As is the case with all of Guess's purported grounds for summary judgment, there are significant material questions of fact with respect to each of these claims, and Guess's motion must fail.

### A.      There Are Triable Issues of Fact With Respect to Gucci's Claims of Dilution

Guess's assertion that Gucci has no evidence of actual dilution is wrong.  Proof of actual dilution may be shown by direct or circumstantial evidence, including expert opinions.  Indeed,

---

[32] With respect to its argument that it has suffered evidentiary prejudice, Guess has similarly failed to demonstrate that there are no triable issues of fact.  To the extent Guess argues that certain "[d]ocuments and financial records from the mid-to-late 1990s at both Guess and Gucci are no longer available" (Guess Br. at 21), any potential value to be provided by these unspecified documents is "purely speculative" and therefore insufficient to constitute evidentiary prejudice.  *Imagineering*, 851 F. Supp. at 536-37; *see also adidas America, Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1255 (D. Or. 2007).

[33] As for Guess's claim that its Script Guess design was used prior to October 6, 2006, while Guess has presented evidence of its use of other script Guess designs going back in time, it has never come forward with any evidence that it used this particular Script Guess design prior to 2008.  CSF ¶ 18.  Accordingly, the likelihood of dilution standard applies to this design.

in denying defendant's motion for summary judgment on this identical issue, the court in *adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1065 (D. Or. 2008) (citing *Kmart*, 2006 WL 2044857, at *12), stated:

> Defendants assert adidas cannot demonstrate actual dilution.  In response, adidas has submitted an expert opinion [by Professor Pham of Columbia University Business School] identifying numerous ways in which defendants' continued sale of two and four stripe footwear dilutes the distinctiveness of the Three-Stripe Mark by: (1) reducing brand equity within the footwear market; (2) negatively affecting the strength of the mark in the minds of consumers; (3) eviscerating the perception of the mark as signifying quality and a premium product; and (4) impacting consumer loyalty associated with the mark . . . .  ***This evidence is sufficient to create a genuine issue of material fact both as to actual dilution under the FTDA . . . and as to the likelihood of dilution.***  (emphasis added).

In this case, Gucci has proffered exactly the same kind of evidence, thereby raising fact issues as to actual (and likelihood of) dilution.  CSF ¶¶ 303-04.[34]

Thus, Gucci has submitted the expert report of the very same Professor Pham, who finds that Guess's actions have: (i) caused Gucci's marks to lose their ability to uniquely identify Gucci; (ii) diminished the perceived distinctiveness of Gucci's marks; (iii) impacted consumers' perception of Gucci products as being of high quality; and (iv) caused Gucci's marks to lose brand equity.  CSF ¶¶ 303-04.  Pham's report is bolstered by the testimony of Gucci's own witnesses, who indicate how the widespread use of Gucci designs by third parties impairs the exclusivity of the Gucci brand, and causes Gucci customers to feel less loyal to Gucci.  CSF ¶¶ 303-04.[35]  Further, when this suit was brought, numerous commentators on fashion websites noted the harm Guess had caused, and the blurring and tarnishment of the Gucci brand, stating,

---

[34] *See Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003); *Fendi Adele S.r.L. v. Filene's Basement*, 696 F. Supp. 2d 368, 390 (S.D.N.Y. 2010) (question of fact regarding actual dilution precludes summary judgment).

[35] *See, e.g., Cartier, Inc. v. Deziner Wholesale, LLC*, 2000 WL 347171 at *6 (S.D.N.Y. Apr. 3, 2000) (finding of dilution based in part on likelihood that "sophisticated, brand conscious consumers will lose interest in the [brand] as they see the number of inferior products in the market bearing the [brand] name grow").

among other things, "***Gucci is a legacy, Guess is depreciating it***," and "[m]aybe Gucci won't lose any real customers, ***but it does cheapen the brand to have inferior versions flooding the market***." CSF ¶ 305.  Just as in *Payless*, this evidence is sufficient to create a genuine issue of material fact both as to actual dilution[36] and likelihood of dilution.[37]

### B.    The Level of Association Measured by Mazis is Sufficient

Guess argues that the 12% level of association reported by Mazis with respect to Guess's Diamond Quattro G Design is not sufficient to establish association as a matter of law, because courts "generally demand percentages of twice that level."  Guess Br. at 11.  Guess, however, is wrong.  The Ninth Circuit has held that summary judgment was not appropriate in view of a survey showing an association level as low as 7%, this being enough to "indicate that consumers associate one mark with the other," and to allow a reasonable trier of fact to conclude that this was sufficient to establish a likelihood of dilution.  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (2007).[38]  Further, none of the cases cited by Guess establish any minimum association level

---

[36] Try as it might, Guess presents no evidence that the marks in questions were not actually diluted.  While it mentions that Gucci's overall brand value and sales figures increased from 2001 to 2010, (Guess Br. at 9 & n.17), Guess makes no attempt to show that its conduct did not diminish the value of these particular Gucci marks, or impair them in any way.  Guess's reliance on *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 392 (S.D.N.Y. 2008) is unavailing, as here there is far from a "complete absence" of evidence as to actual dilution.

[37] As for the designs first used after October 6, 2006, Gucci need only demonstrate a likelihood of dilution.  Guess Br. at 7-8.  Just as in the case of actual dilution, however, "[w]hether a defendant's mark creates a likelihood of dilution is a factual question generally not appropriate for decision on summary judgment."  *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010).  *See also Am. Soc'y for Prevention of Cruelty to Animals v. Alexanian*, 1995 WL 293957, at *1 (S.D.N.Y. 1995) (citing *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 42 (2d Cir. 1994)).  Whether there is a likelihood of association is also question of fact.  *See* 4 *McCarthy on Trademarks* § 24:116.  Moreover, while Guess argues that "Gucci has no evidence showing any likelihood of impairment or harm to its marks or trade dress attributable to Guess's designs" (Guess Br. at 11), Guess ignores the evidence of dilution discussed above, for which it has no counter.  *See supra* at 31-32.  Therefore, just as was the case in *Payless*, Gucci's evidence creates an issue of fact on both actual and likelihood of dilution.

[38] Not only is the 12% association level measured by Mazis, using a proper control, sufficient under *Jada Toys*, but his 24% association level before adjusting for noise is in line with the

Footnote continued on next page

required to sustain a dilution claim, but instead hold that such level depends on the facts of each

case.  For example, *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335 (D.N.J. 2002),

held: "***Without dictating that any particular level of dilution is necessary at a minimum***, it is

plain that 14% is not adequate to sustain the extraordinary remedy sought here—a preliminary

injunction against an FDA-approved prescription drug."  *Id.* at 381.[39]

Moreover, Guess misconstrues the testimony of Dr. Simonson, Gucci's confusion expert,

given in another case.  As explained in Simonson's accompanying declaration, his statement

regarding the threshold level for likelihood of dilution in *Johnson & Johnson Co. v. Actavis*

*Group HF*, No. 06cv8209 (S.D.N.Y. 2008), was specific to the very different circumstances of

that case.  Ederer Decl., Ex. K.  Thus, the *Actavis* case "represent[ed] an extreme situation where

one brand (*i.e.*, Neosporin) completely dominates the category.  . . . Accordingly, . . . one should

have indeed expected the likelihood of association to be much higher than the typical threshold

applied by courts when assessing likelihood of confusion surveys."  *Id.* at ¶4.  Here, in contrast,

"the handbag category is fragmented, with various famous brands holding relatively low market

shares.  Accordingly, there are multiple 'association candidates,' which lowers the expected level

of association between any two brands, even if one product is likely to dilute another brand

---

Footnote continued from previous page

association survey in *Wawa Dairy Farms v. Haaf*, 40 U.S.P.Q.2d 1629 (E.D. Pa. 1996), a case
cited by Guess, where an association level of 29% without use of a control was held sufficient.

[39] As for Guess's attack on the weight to be accorded the Mazis survey, this too is for the finder
of fact.  *See, e.g.*, *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 736 (2d Cir.
1991) (vacating summary judgment stating, "[i]f . . . survey is eventually ruled admissible . . . it
would be the province of the finder of fact to determine what weight to accord the responses.");
*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 2004 WL 2158120, at *8 (S.D.N.Y. Sept. 28,
2004) ("weight and significance of the survey . . . as to dilution must be left for determination by
the finder of fact.").

within a target consumer segment." *Id.* at ¶5.[40]

### C.    There Is a Question of Fact Whether Gucci's Square G Design Was Famous

Finally, Guess argues that Gucci's Square G mark could not have been famous before Guess started to knock it off in 1996, because Gucci had been using its mark for less than a year. However, aside from the fact that Gucci started using its mark in 1994,[41] Gucci has proffered evidence that its Square G mark was famous as early as 1995.  CSF ¶ 69, 72.  There is also a question of fact whether Guess actually started using its Square G Design in 1996.  CSF ¶¶ 21, 66.  As courts have made clear that in the context of dilution, fame is a question of fact that is not amenable to summary judgment, there are triable questions of fact whether Gucci's Square G mark was famous before Guess started copying it.[42]

### CONCLUSION

For all the foregoing reasons, Defendants' motions for summary judgment should be denied in their entirety.

Dated: New York, New York
         January 18, 2012

ARNOLD & PORTER LLP

By:   _____

Louis S. Ederer
399 Park Avenue
New York, New York  10022
Phone (212) 715-1000
Fax (212) 715-1399
*Attorneys for Plaintiff Gucci America, Inc.*

---

[40] Further, Simonson explains that *Actavis* was a point-of-sale case, so that one would expect a sharp drop from the level of association to the level of confusion.  In contrast, in the post-sale context, the levels of association and confusion would be more closely aligned.  *Id.* at 6.

[41] *See* Trademark Reg. No. 2,042,805 (alleging a first use date of October 1994).  CSF ¶¶ 67-68.

[42] *See, e.g., Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 323-24 (2007) (summary judgment denied where movant had "not met its burden to prove that no genuine factual dispute exists as to the issue of famousness"); *Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 281 (N.D.N.Y. 2008) (summary judgment denied where "there are questions of fact regarding the use in commerce element of Plaintiffs' dilution claim").