**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| GUCCI AMERICA, INC., | : | Civil Action No. 09cv4373 (SAS) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| - against - | : |  |
|  | : |  |
| GUESS?, INC., MARC FISHER FOOTWEAR | : |  |
| LLC, THE MAX LEATHER GROUP/CIPRIANI | : |  |
| ACCESSORIES, INC., SEQUEL AG, K&M | : |  |
| ASSOCIATES L.P., VIVA OPTIQUE, INC., | : |  |
| SIGNAL PRODUCTS, INC. and SWANK, INC., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

------------------------------------------------------------------ x


**PLAINTIFF GUCCI AMERICA, INC.'S COUNTERSTATEMENT OF MATERIAL**
**FACTS AS TO WHICH THERE ARE GENUINE ISSUES TO BE TRIED**

In accordance with Rule 56.1(b) of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff Gucci America, Inc. respectfully submits this Counterstatement of Material Facts as to which there are genuine issues to be tried, in response to Defendants' Statements of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 in support of their motion for partial summary judgment.

**PLAINTIFF'S COUNTERSTATEMENT TO THE RULE 56.1 STATEMENT OF DEFENDANTS GUESS?, INC., SIGNAL PRODUCTS, INC., THE MAX LEATHER GROUP/CIPRIANI ACCESSORIES, INC. AND SWANK**

## I.   THE PARTIES

### A.   <u>Guess</u>

1.      Guess?, Inc. ("Guess") was founded in 1981 and licenses, markets and distributes a leading lifestyle collections of apparel and accessories for men, women and children.  (Welsh ¶ 2, Ex. A at A2 (Guess's 2010 Form 10-K).)

*Plaintiff's Response*:

**(1)**      Plaintiff does not dispute that Guess was founded in 1981 and licenses, markets and distributes collections of apparel and accessories for men, women and children.  Plaintiff, however, disputes Guess's claim that Guess-brand collections are "leading lifestyle collections".  Plaintiff further disputes the contention that Guess has been licensing, marketing and distributing collections of apparel and accessories for men, women and children since 1981, as there is no support for this contention in Guess's citation to its 2010 Form 10-K.

2.      Guess products are sold in all 50 states in over 340 directly operated Guess stores, over 900 major retail stores such as Macy's and Dillard's, and Guess's website. (*Id*. at A2-A3.)

*Plaintiff's Response*:

**(2)**      Plaintiff does not dispute that Guess products are sold in major retail stores such as Macy's and Dillard's, and through Guess's website.  Plaintiff, however, disputes the purported fact that "Guess products are sold in all 50 states in over 340 directly operated Guess stores" and

in "over 900 major retail stores", as there is no support for these contentions in Guess's citation to its 2010 Form 10-K.

3.     Signal Products, Inc. ("Signal") is licensed by Guess to design, manufacture and distribute Guess-branded handbags.  ("Second Amended Complaint" ("SAC") ¶ 11 and Guess's Answer to SAC ("Answer") ¶ 11.)

*Plaintiff's Response*:

**(3)**     Plaintiff does not dispute that Signal is licensed by Guess to design, manufacture and distribute Guess-branded handbags.  More specifically, however, Signal is exclusively licensed by Guess to design, manufacture and distribute Guess-branded women's handbags, men's handbags, women's small leather goods and luggage.  (Ederer ¶5 Ex. D at D27).

4.     Max Leather Group/Cipriani Accessories, Inc. ("Max Leather") is licensed by Guess to design, manufacture and distribute Guess-branded belts. (SAC ¶ 7; Answer ¶ 7.)

*Plaintiff's Response*:

**(4)**     Undisputed.

5.     Swank, Inc., ("Swank") is licensed by Guess to design, manufacture and distribute Guess-branded belts. (SAC ¶ 12; Answer ¶ 12.)

*Plaintiff's Response*:

**(5)**     Undisputed.

6.     Marc Fisher Footwear LLC ("Marc Fisher") is licensed by Guess to design, manufacture and distribute Guess-branded footwear. (SAC ¶ 6; Answer ¶ 6.)

*Plaintiff's Response*:

**(6)**     Undisputed.

7.     Viva Optique, Inc. ("Viva Optique") is licensed by Guess to design, manufacture and distribute Guess-branded eyewear and sunglasses. (SAC ¶ 10; Answer ¶ 10.)

*Plaintiff's Response*:

**(7)**     Plaintiff does not dispute that Viva Optique is licensed by Guess to design, manufacture and distribute Guess-branded eyewear and sunglasses.  Plaintiff, however, disputes

that Viva Optique's relationship with Guess is relevant to this motion, given that Viva Optique is not a party to this motion and, pursuant to the parties' January 2010 agreement, has sat on the "sidelines" during discovery. (Ederer ¶2, Ex. A at A47 (1/11/10 Conf. Tr. 25:9-19)).

8.      Sequel AG ("Sequel") is licensed by Guess to design, manufacture and distribute Guess branded watches. (SAC ¶ 8; Answer ¶ 8.)

*Plaintiff's Response*:

**(8)**      Plaintiff does not dispute that Sequel is licensed by Guess to design, manufacture and distribute Guess branded watches. Plaintiff, however, disputes that Sequel's relationship with Guess is relevant to this motion, given that Sequel is not a party to this motion and, pursuant to the parties' January 2010 agreement, has sat on the "sidelines" during discovery. (Ederer ¶2, Ex. A at A47 (1/11/10 Conf. Tr. 25:9-19)).

## B.      Gucci

9.      Gucci America. Inc. ("Gucci") is a subsidiary of Gucci Group. (Welsh ¶ 2, Ex. B at B2-B3 (4/6/11 Depo. of N. Marra).)

*Plaintiff's Response*:

**(9)**      Undisputed.

10.      Gucci America sells and distributes in the U.S. high-fashion apparel and accessories products made by its Italian sister company Guccio Gucci S.p.A. (Welsh ¶ 2, Ex. C at C2 (Pinault Printemps Redoute 2008 Financial Document); 6/4/2010 L. Ederer Letter to the Court.)

*Plaintiff's Response*:

**(10)**      Undisputed.

## II.      THE MARKS AND PRODUCTS AT ISSUE

### A.      The Gucci Marks and Products

11.      Gucci claims trademark rights in the Interlocking "GG" pattern, a repeating diamond shaped pattern that displays two inverted and inward-facing letter "G"s at each diamond corner and an empty space in the center of each diamond shape. (SAC ¶¶ 19-23.)

*Plaintiff's Response*:

**(11)**      Plaintiff does not dispute that it claims trademark rights in its Repeating

Interlocking GG design mark, and notes that its Repeating Interlocking GG design mark is the

subject of the following registrations on the Principal Register in the USPTO:

| Mark | Reg. No. | Reg. Date | First Use | Wares/Services | Class(es) |
|---|---|---|---|---|---|
|  | 3,072,549 | 3/28/2006 | 1966 | Wallets, Purses, Handbags, Shoulder Bags, Clutch Bags, Tote Bags, Business Card Cases, Credit Card Cases, Partly and Wholly of Leather, Key Cases, Cosmetic Cases Sold Empty, Briefcases, Attache Cases, Valises, Suitcases and Duffles | 18 |
|  | 3,072,547 | 3/28/2006 | 1966 | Neckties, Scarves, Belts, Footwear and Gloves | 25 |
|  | 2,680,237 | 1/28/2003 | 2001 | Jewelry | 14 |

(SAC ¶¶ 19-20, Ex. C).

12.      The Interlocking "GG" pattern contains Gucci's registered "GG" trademark. (SAC ¶¶ 24-26.)

*Plaintiff's Response*:

**(12)**      Plaintiff does not dispute that its Repeating Interlocking GG design mark

incorporates its registered Interlocking GG trademark, and notes that its Interlocking GG design

mark is the subject of the following registrations on the Principal Register in the USPTO:

| Mark | Reg. No. | Reg. Date | First Use | Wares/Services | Class(es) |
|---|---|---|---|---|---|
|  | 1,107,311 | 11/28/1978 | 1966 | Wallets, Purses, Handbags, Shoulder Bags, Clutch Bags, Tote Bags, Card Cases, Partly and Wholly of Leather, Key Cases, Passport Cases, Cosmetic Cases, Attache Cases, Valises, Suitcases, Duffles, Necktie Cases, Umbrellas, Saddles, Bridles, Walking Sticks, and Canes | 18 |
|  | 1,106,722 | 11/21/1978 | 1966 | Neckties, Scarves, Belts, Footwear, Shirts, Sweaters, Coats, Suits, Dressing Gowns, Hats, Socks, Dresses, and Bathing Suits | 25 |

(SAC ¶¶ 24-25, Ex. E).

13.    Gucci also claims related trade dress rights in the Interlocking "GG" pattern "overlaid on a beige canvas fabric," a design that it refers to as the "Diamond Motif Trade Dress." (SAC ¶¶ 39-41.)

***Plaintiff's Response*:**

**(13)**    Plaintiff does not dispute that it claims trade dress rights in the following

combination of design elements (the "Diamond Motif Trade Dress"):

   (a)    Gucci's famous REPEATING INTERLOCKING GG design mark;

   (b)    set in a repeating diamond-shaped pattern, with the INTERLOCKING GG design mark located at the four corners of each diamond shape;

   (c)    separated by dots forming straight diagonal lines; and

   (d)    overlaid on a beige canvas fabric.

A representation of Gucci's Diamond Motif Trade Dress appears below:



(SAC ¶¶ 39-41).

14.     Gucci does not own a trademark registration for the Diamond Motif Trade Dress.

*Plaintiff's Response*:

**(14)**     Plaintiff does not dispute that it does not own a trademark registration for its Diamond Motif Trade Dress.  Plaintiff, however, disputes any contention that it does not have protectable trademark rights in its Diamond Motif Trade Dress simply because it has not applied for a trademark registration for such trade dress.  Gucci has used the Diamond Motif Trade Dress for many years on and in connection with high quality products, including handbags, wallets, belts, hats and footwear.  (SAC ¶ 35, Ex. K; Ederer ¶4, Ex. C at C45-C47, C106-C113; Ederer ¶6, Ex. E at E1-E2, E16-E31).

Moreover, Defendants themselves have conceded that Gucci's Diamond Motif Trade Dress is well-known and serves as an indicator that Gucci is the source of the products bearing the trade dress.  For example, **(a)** Paul Marciano, Guess's Chairman and Design Director, testified that he first become aware of Gucci's Diamond Motif Trade Dress "***35 years ago maybe***"[1], and has seen Gucci's Diamond Motif Trade Dress used "***a million times***" since. (Ederer ¶3, Ex. B at B8 (2/17/10 P. Marciano Depo. 209:16-24)); **(b)** Mr. Marc Fisher, the President of Marc Fisher, believes that customers associate Gucci's Diamond Motif Trade Dress with Gucci (Ederer ¶3, Ex. B at B42-B43 (5/20/10 M. Fisher Depo. 177:5-178:6, 179:4-9)); **(c)** Patrick Mochnaly, Guess's Men's Senior Buyer, testified that Gucci's Diamond Motif Trade Dress serves as an indicator of source, and that he identifies products bearing the Diamond Motif Trade Dress as Gucci products (Ederer ¶3, Ex. B at B33-B34 (3/3/10 P. Mochnaly Depo. 63:3-64:12, 88:9-17)); and **(d)** Guess Licensing Manager, Ariane Klein, testified that she recognizes

---

[1] All emphases added unless otherwise indicated.

products bearing Gucci's Diamond Motif Trade Dress as coming from Gucci (Ederer ¶3, Ex. B

at B31 (9/13/10 A. Klein Depo. 154:15-155:8)).

15.     Additionally, Gucci claims trademark rights in a cursive depiction of the "Gucci" name—the Script Gucci logo. (SAC ¶¶ 34-38.)

*Plaintiff's Response*:

**(15)**     Plaintiff does not dispute that it claims trademark rights in its Script Gucci design

mark, and notes that its Script Gucci design mark is the subject of the following registration on

the Principal Register in the USPTO:

| Mark | Reg. No. | Reg. Date | First Use | Wares/Services | Class(es) |
|------|----------|-----------|-----------|----------------|-----------|
| *Gucci* | 3,061,918 | 2/28/2006 | 1967 | Wallets, Purses, Handbags, Shoulder Bags, Clutch Bags, Tote Bags, Duffle Bags, Business Card Cases, Calling Card Cases, Credit Card Cases, Name Card Cases, Key Cases and Attache Cases | 18 |

(SAC ¶¶ 34-35, Ex. I).

16.     Gucci also claims trademark rights in a green-red-green design, consisting of three side-by-side colored stripes, with the first stripe being green, the second red, and the third green.  (SAC ¶¶ 14-18.)

*Plaintiff's Response*:

**(16)**     Plaintiff does not dispute that it claims trademark rights in its Green-Red-Green

Stripe design mark, and motes that its Green-Red-Green Stripe design mark is the subject of the

following registrations on the Principal Register in the USPTO:

| Mark | Reg. No. | Reg. Date | First Use | Wares/Services | Class(es) |
|------|----------|-----------|-----------|----------------|-----------|
| | 1,483,526 | 4/5/1988 | 1967 | Footwear | 25 |

| Mark | Reg. No. | Reg. Date | First Use | Wares/Services | Class(es) |
|---|---|---|---|---|---|
|  | 1,122,780 | 7/24/1979 | 1963 | Wallets, Purses, Handbags, Shoulder Bags, Clutch Bags, Tote Bags, Card Cases, Passport Cases, Cosmetic Cases, Attache Cases, Valises, Suitcases, Duffles, Necktie Cases, Umbrellas, Saddles, Bridles, Walking Sticks, Canes and Key Cases | 18 |

(SAC ¶¶ 14-15, Ex. A).

Gucci's Green-Red-Green Stripe design mark is "a very strong iconic element for Gucci". (Ederer ¶3, Ex. B at B91 (4/8/10 T. Novak (Rule 30(b)(6)) Depo. 188:3-4); Ederer ¶4, Ex. C at C42-C45, C99-C105). Indeed, Paul Marciano, the Chairman and Design Director at Guess, first became aware of Gucci's use of its Green-Red-Green Stripe design "*35 years ago*", and "*specifically*" recalls seeing the design being used on Gucci men's shoes, including a pair that he owned. (Ederer ¶3, Ex. B at B7 (2/17/10 P. Marciano Depo. 202:3-12; 203:20-204:7)). Notably, although he temporarily failed to remember this at his deposition, Marciano purchased two copies of a coffee table book entitled "*Gucci by Gucci*" in December 2006. (Ederer ¶3, Ex. B at B4-B6 (2/17/10 P. Marciano Depo. 193:11-201:11); Ederer ¶6, Ex. E at E1, E32). The book devotes an entire section to what is referred to as Gucci's Green-Red-Green "Web" design "icon". (Ederer ¶6, Ex. E at E1-E15).

Guess's former Licensing Manager, Ariane Klein, testified that "*… as a customer out in the market [Gucci's Green-Red-Green Stripe design] was something I just knew of being synonymous with Gucci.*" (Ederer ¶3, Ex. B at B28 (9/13/10 A. Klein Depo. 129:6-15)). Klein, further testified "*I feel that people do recognize [the Green-Red-Green Stripe design] with Gucci*" (Ederer ¶3, Ex. B at B29 (9/13/10 A. Klein Depo. 149:5-14)). When asked whether she was aware that Gucci owns a U.S. trademark registration for its Green-Red-Green Stripe design, Klein testified: "*I did not know specifically that they carried that trademark, though I would*

9

_**have assumed as common sense**...._" (Ederer ¶3, Ex. B at B29-B30 (9/13/10 A. Klein Depo. 149:16-150:4)).

Likewise, Patrick Mochnaly, Guess's Senior Men's Buyer, testified that he associates green-red-green stripes with Gucci (Ederer ¶3, Ex. B at B33 (3/3/10 P. Mochnaly Depo. 64:14-23)), and that he identifies products bearing a green-red-green stripe design as Gucci products (Ederer ¶3, Ex. B at B34 (3/3/10 P. Mochnaly Depo. 86:11-87:1, 87:19-88:8)).

Mr. Marc Fisher, the President of Marc Fisher, was aware of Gucci's use of its Green-Red-Green Stripe design prior to this lawsuit (Ederer ¶3, Ex. B at B36 (5/20/10 M. Fisher Depo. 98:2-11)), but never obtained a legal opinion as to whether the use of a green-red-green stripe on Guess-branded footwear would be permissible (Ederer ¶3, Ex. B at B37, B51 (5/20/10 M. Fisher Depo. 108:6-13; 294:3-8)).  Marc Fisher maintains an extensive library of Gucci footwear products, dozens of which prominently feature Gucci's Green-Red-Green Stripe design mark, including the following:



(Ederer ¶6, Ex. E at E33-E80).

17.     Finally, Gucci claims trademark rights in a Stylized G mark, a block-shaped single letter "G" that is depicted in a plain font style with ordinary borders of uniform width. (SAC ¶¶ 29-33.)

*Plaintiff's Response*:

(17)    Plaintiff does not dispute that it claims trademark rights in its Stylized G design

mark, and notes that its Stylized G design mark is the subject of the following registrations on

the Principal Register in the USPTO:

| Mark | Reg. No. | Reg. Date | First Use | Wares/Services | Class(es) |
|------|----------|-----------|-----------|----------------|-----------|
| G | 3,037,082 | 1/3/2006 | 1997 | Eyeglass Frames and Sunglasses | 9 |
| G | 2,234,272 | 3/23/1999 | 1996 | Watches and Clocks | 14 |
| G | 2,042,805 | 3/11/1997 | 1994 | Handbags, Belts and Gloves | 18, 25 |

(SAC ¶¶ 29-30, Ex. G).

**B.      The Guess Marks**

*The Script Guess Design*

18.     Guess has used a stylized script-font "Guess" design on apparel and accessories dating back to the mid-1980s. (Welsh ¶ 2, Ex. D at D2-D3 (9/14/10 Depo. of Guess's Rule 30(b)(6) Witness T. McManus).)

*Plaintiff's Response*:

(18)    Plaintiff does not dispute that Guess has used a variety of script-font "Guess"

designs on apparel and/or accessories for many years.  Plaintiff, however, disputes the contention

that the complained-of Script Guess design has been used by Guess "dating back to the mid-

1980's".  Among other things, Guess has failed to substantiate the baseless testimony of Theresa

McManus, Guess's in-house intellectual property counsel, who, although not employed by Guess until 2003, testified under oath that she has seen the following "particular Guess script font logo on products dating from the 1980's":



(Ederer ¶3, Ex. B at B19 (9/14/10 T. McManus Depo. 99:21-101:5); Ederer ¶6, Ex. E at E81-E103). Notably, Guess has produced not a single pre-2008 collection Guess-branded product featuring the complained-of Script Guess design depicted above. (Ederer ¶6, Ex. E at E104).

Contrary to McManus' testimony, Defendants' own documents establish that the complained-of Script Guess design was not used on any Guess-branded product until Guess's 2008 collections, which, not coincidentally, occurred shortly after **(a)** Guess's Chairman and Creative Director, Paul Marciano, purchased two copies of the "*Gucci by Gucci*" coffee table book which prominently features the Script Gucci mark on the cover:



(Ederer ¶6, Ex. E at E1, E32), and **(b)** Genny Mangalindan, an Assistant Buyer - Accessories at

Guess, sent a "branching" reporting e-mail to Guess's Licensing Design team (Joy Kramer and

Ariane Klein, among others), stating that the following were "***items we think could translate***

***well to GUESS***":



(Ederer ¶6, Ex. E at E105-E109).

Perhaps most telling, however, the lead designers for both Marc Fisher (footwear) and

Signal Products (handbags) conceded that they did not use the complained-of Script Guess

design until 2008. ████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ (Ederer ¶6,

Ex. E at E110).  The following is an image of the Guess-branded Zaid shoe appears below:





(Ederer ¶6, Ex. E at E111-E114).  Further, Vando testified that "*Guess Corporate*" may have provided him with the script font used on the Zaid shoe.  (Ederer ¶3, Ex. B at B55 (5/7/10 P. Vando Depo. 210:16-211:4)).   In addition, at his May 20, 2010 deposition, Mr. Marc Fisher testified that the complained-of Guess Script design was first used on Guess footwear "*[p]robably two, three years ago*."  (Ederer ¶3, Ex. B at B45 (5/20/10 M. Fisher Depo. 203:7-16)).

Likewise, Suesan Faulkner, the Creative Director at Signal Products, does not recall designing any Guess handbags prior to 2008 that employed the complained-of Guess Script design.  (Ederer ¶3, Ex. B at B88 (1/13/11 S. Faulkner Depo. 347:15-24)).  Moreover, Guess's belt licensee, Max Leather, first used the complained-of Guess Script design as part of its "TRANS FALL 08" and "HOLIDAY 08" collections.  (Ederer ¶6, Ex. E at E115-E120).

What is more, although the submission of a "Licensed Property Use Approval Form" such as the following, was expressly required under Guess's licenses agreements with each of the Licensee Defendants:



(Ederer ¶6, Ex. E at E121), no such forms have been produced in this litigation with respect to the complained-of Guess Script design:



(Ederer ¶5, Ex. D at D1-D89 (licensee agreement excerpts); Ederer ¶6, Ex. E at E122-E123). Nevertheless, the evidence establishes that in Guess provided the complained-of Script Guess design to its licensees as a Fall 2008 "*Must Have*" to be incorporated into all of the licensed lines:



(Ederer ¶6, Ex. E at E122-E123). ███████████████████

████████████████████████████████████████

████████████████████████████████████

█████████████████████████ (Ederer ¶6, Ex. E at E124-E128).

There is also no question that Marc Fisher knew of Gucci's use of its Script Gucci mark,

given the extensive library of Gucci footwear products maintained by Marc Fisher, dozens of

which prominently feature the Script Gucci mark that is at issue, including the following:



(Ederer ¶6, Ex. E at E129-E145).

19.     The Guess Script design spells out the name "Guess" in script font and often contains an underline which starts from either the bottom of a cursive letter "G" or cursive letter "S" and continues to underline the rest of the word "Guess". (Welsh ¶ 2, Ex. E at E1-E10 (images of Guess Script design).)

*Plaintiff's Response*:

**(19)**     Plaintiff does not dispute that Guess has used script designs that spell out the name "Guess", and that certain of these designs contain an underline which either starts from the bottom of a cursive letter "G" or a cursive letter "S".  Plaintiff, however, disputes that Guess's various script Guess designs "often" contain an underline, and that when such an underline is present, that it "continues to underline the rest of the word 'Guess'".  (Welsh ¶ 2, Ex. E at E1-E10).

*The Square G Mark*

20.     Guess's Square G mark consists of a square-shaped single-letter "G." (Welsh ¶ 2, Ex. F at F1-F12 (exemplars of Guess's Square G mark that Gucci contends infringe its Stylized G Mark).)

*Plaintiff's Response*:

**(20)**     While Plaintiff disputes that Guess owns a "Square G mark" (SAC ¶¶ 29-30, Ex. G), Plaintiff does not dispute that the complained-of Square G design used by Guess consists of a square-shaped single-letter "G."

21.     The Square G mark has appeared on Guess-branded accessories since at least 1996. (*Id.* at F1-F2.)

*Plaintiff's Response*:

**(21)**     Plaintiff does not dispute that the complained-of Square G design appears on a belt in a *Guess Journal: International Magazine* dated Fall 1996.  However, because Guess has proffered no evidence to establish that the belt depicted therein was offered for sale or sold in the United States in 1996, Plaintiff disputes this contention.  (Welsh ¶ 2, Ex. F at F1-F2).  Moreover,

17

Defendants have proffered no evidence to establish that the complained-of Square G design was used on any other Guess-branded accessory product in 1996.

*The Quattro G Pattern*

22.     The repeating Quattro G Pattern has appeared on Guess-branded accessory products since early 2005. (Welsh ¶ 2, Ex. G at G1-G2 (exemplars of Quattro G products from 2005).)

***Plaintiff's Response*:**

**(22)**     Plaintiff disputes that the repeating Quattro G Pattern — as described and depicted in U.S. Trademark Registration No. 3,308,152 (and shown below), namely, "*a repeating pattern of four letter 'G's with a border. A pair of interlocking 'G's are facing outwards above a second pair of inverted interlocking 'G's facing outwards. **<u>The interlocking 'G's are bordered by a square composed of a dashed line</u>***" (Welsh ¶ 2, Ex. G at G4) — has appeared on Guess-branded accessory products since early 2005:



In fact, Paul Marciano, Guess's Chairman and Design Director, testified that he has never seen Guess use its trademarked repeating Quattro G pattern in a square format, as registered. (Ederer ¶3, Ex. B at B2-B3 (2/17/10 P. Marciano Depo. 164:11-167:15); Ederer ¶7, Ex. F at F1-F9). Rather, all evidence proffered by Guess indicates that such repeating pattern was used only in a diamond format, and predominantly with single letter "G"'s in the corners of the diamonds. (Ederer ¶3, Ex. B at B2-B3 (2/17/10 P. Marciano Depo. 164:11-167:15).

23.     Guess developed its Quattro G standalone mark in 2003. (Welsh ¶ 2, Ex. G at G3 (trademark registration for standalone Quattro G mark, U.S. Trademark Registration No. 3,261,860).)

**Plaintiff's Response:**

(23)     Plaintiff does not dispute that Guess claims to have developed the following

Quattro G standalone mark — a mark that is not, by itself, at issue in this case — in 2003:



(Welsh ¶ 2, Ex. G at G3).

24.     The standalone Quattro G mark consists of four letter "G"s—in a font similar to Times New Roman—with one pair of interlocking, outward-facing "G"s above a second pair of 4 inverted, outward-facing "G"s repeated in a diamond pattern. (*Id.*)

**Plaintiff's Response:**

(24)     Plaintiff disputes Guess's description of the standalone Quattro G mark.

According to the April 7, 2009 Amended registration certificate for U.S. Trademark Registration

No. 3,261,860, "*[t]he mark consists of 4 letter 'G's.  A pair of interlocking 'G's are facing*

*outwards above a second pair of inverted interlocking 'G's facing outward.*"  (Ederer ¶7, Ex. F

at F6).

25.     In 2004, the standalone Quattro G mark evolved into a signature repeating pattern. (Welsh ¶ 2, Ex. D at D6 (9/13/10 Depo. of A. Klein).)

**Plaintiff's Response:**

(25)     Plaintiff disputes that "[i]n 2004, the standalone Quattro G mark evolved into a

signature repeating pattern", and notes that Defendants' citation to the deposition testimony of

Ariane Klein, Guess's former Licensing Manager, provides no support for the proposition that

the Quattro G mark "evolved" into the complained-of repeating Quattro G Pattern.  In fact, there

is no evidentiary support for this proposition; to the contrary, Defendants cannot even agree on who first conceived the complained-of diamond-shaped repeating Quattro G Pattern with letter G's in the corner of the diamonds, or when Guess began to use such design, much less that is "evolved" from anything, despite the fact that Defendants admit to having sold over 2.4 million units of Guess products bearing this design.  (*See infra* ¶ 133).  All that is known is that a graphic designer working with Guess's advertising department developed the following repeating pattern sometime in mid to late 2003:



(Ederer ¶7, Ex. F at F11; Ederer ¶3, Ex. B at B24 (9/14/10 McManus Depo. 178:8-179:23)).

Specifically, on December 11, 2009, Theresa McManus, Guess's in-house intellectual property counsel, testified that "*the Quatro [sic] G with the diamond with the Gs on the points was ... developed by a licensee [of Guess's]*".  (Ederer ¶3, Ex. B at B14 (12/11/09 T. McManus Depo. 169:12-15)).  A month later, on January 13, 2010, Guess's counsel, Robert Welsh, stated during a Court conference that Guess's "*handbag licensee*", Signal Products, was responsible for placing the G's in the corners of the repeating Quattro G pattern:

> **THE COURT:**  That wouldn't be the licensee that had the bright idea of the Gs in the corner.
>
> **MR. WELSH:**  No, ***that's a handbag licensee***.

(Ederer ¶2, Ex. A at A44 (1/13/10 Conf. Tr. 41:4-6)).

Guess's handbag licensee, Signal Products, however, disagrees with its own counsel's representation. Rather, Signal Products maintains that the complained-of design was provided to it by Guess's Licensing Department. In particular, Suesan Faulkner, the Creative Director at Signal Products, testified that she first received a drawing of the Quattro G repeating pattern with letter "G"'s in the corners from Guess during a trend seminar. (Ederer ¶3, Ex. B at B83-B84 (1/13/11 S. Faulkner Depo. 172:7-177:13)). An image of that drawing appears below:



(Ederer ¶7, Ex. F at F12-F15). Jason Rimokh, the President of Signal Products, and the same individual who believes that "*[if] its [sic] good for Gucci it has to be good for [G]uess*" (Ederer ¶7, Ex. F at F16-F17), also could not recall who came up with the complained-of design or even if Signal Products participated in its development (Ederer ¶3, Ex. B at B73 (9/16/10 J. Rimokh Depo. 202:7-203:15)).

In addition, although the submission of a "Licensed Property Use Approval Form" was expressly required under Guess's license agreements with each of the Licensee Defendants, no such forms have been produced in this litigation with respect to the following complained-of design:



(Ederer ¶5, Ex. D at D1-D89 (licensee agreement excerpts); Ederer ¶3, Ex. B at B74 (9/16/10 J. Rimokh Depo. 212:22-213:3)).

26.    The repeating Quattro G Pattern consists of a standalone Quattro G mark position in the center of a box composed of intersecting, dashed lines that look like stitching. This "box" is repeated, creating a diamond shaped pattern with the Quattro G standalone mark in the center of each box and a single alternating "G" on the top and bottom corner of each box. (Welsh ¶ 2, Ex. G at G4, G14, G15.)

*Plaintiff's Response*:

**(26)**    Plaintiff disputes Guess's description of the repeating Quattro G Pattern. According to the April 7, 2009 Amended registration certificate for U.S. Trademark Registration No. 3,308,152, "*[t]he mark consists of a repeating pattern of four letter 'G's with a border.  A pair of interlocking 'G's are facing outwards above a second pair of inverted interlocking 'G's facing outwards.  **The interlocking 'G's are bordered by a square composed of a dashed line**.*" (Welsh ¶ 2, Ex. G at G4).  This description makes no mention of a "diamond shaped pattern" or "a single alternating 'G' on the top and bottom corner of each box."  (*Id.*).

Moreover, Guess's newly formulated description of its repeating Quattro G Pattern is squarely at odds with the testimony of Guess's in-house intellectual property counsel, Teresa McManus, who testified that "*the Quatro G with the diamond with the Gs on the points was not specifically cleared by the [Guess] legal department*" because it is not Guess's trademark. (Ederer ¶3, Ex. B at B14 (12/11/09 T. McManus Depo. 169:5-15)).  As McManus explained —

22

contrary to the position Guess now advances — Guess's trademark does not include "Gs on the points":

> **Q.**     The design that's depicted on that handbag, were you involved in the clearance of that design?
>
> **A.**     Which design?
>
> . . .
>
> **Q.**     I'm pointing to the repeating -- the diamond -- the diamond G design with the Gs at each corner and the Quatro G design in the center.
>
> **A.**     Our Quarto G is our trademark, so I was involved in the clearance of that.  The Quatro G with the diamond pattern around it is also our trademark and I was involved in the clearance of that.
>
> **_And the Quatro G with the diamond with the Gs on the points was not specifically cleared by the legal department.  It was developed by a licensee and it was on our products after that._**

(Ederer ¶3, Ex. B at B14 (12/11/09 T. McManus Depo. 169:5-15)).

27.     Guess' repeating Quattro G Pattern was registered with the United States Patent and Trademark Office in October 2007. (*Id.* at G4-G5 (U.S. Trademark Registration No. 3,308,152).)

**_Plaintiff's Response_:**

**(27)**     Plaintiff disputes that "Guess' repeating Quattro G pattern" — as described in Paragraph 26 above — was ever registered with the United States Patent and Trademark Office. The mark registered with the United States Patent and Trademark Office under Trademark Registration No. 3,308,152 "*consists of a repeating pattern of four letter 'G's with a border.  A pair of interlocking 'G's are facing outwards above a second pair of inverted interlocking 'G's facing outwards.  **The interlocking 'G's are bordered by a square composed of a dashed line**.*" (Ederer ¶7, Ex. F at F1-F2).  That mark is not configured in a "diamond shaped pattern", and does not feature "a single alternating 'G' on the top and bottom corner of each box."  (*Id.*).

*The Green-Red-Green Stripe*

28.     In November 2008, two Guess men's footwear styles containing a green-red-green stripe were offered for sale in Guess stores. (Welsh ¶ 3; *see also* Welsh ¶ 2, Ex. D at D9-D10, D13 (3/4/10 Depo. of C. Kearney).)

*Plaintiff's Response*:

**(28)**     Plaintiff does not dispute that, in November 2008, at least two Guess men's

footwear styles containing a green-red-green stripe design were offered for sale in Guess stores.

Plaintiff, however, points out that Guess approved and accepted royalty payments from the sale

of ***fourteen*** Guess men's footwear styles bearing the complained-of green-red-green stripe

design.  These products were sold by numerous third-party retailers, both online and in stores.

(Ederer ¶7, Ex. F at F18-F38; Plaintiff's Response to ¶ 127 below).  Moreover, while the

documents Guess cites may establish that Guess sold only two Guess men's footwear styles

bearing the complained-of green-red-green stripe design, they do not establish that only two

styles were offered for sale in Guess retail stores.

29.     In late November 2008, Guess's Intellectual Property Counsel, Theresa McManus, discovered one of the styles on the Guess website, ordered a recall, and directed Guess's footwear buyer to cease all orders for products with a green-red-green stripe. (Welsh ¶ 2, Ex. H at H5 (11/21/08 T. McManus Email), H6-H7 (12/8/08 T. McManus Email).)

*Plaintiff's Response*:

**(29)**     Plaintiff does not dispute that on November 21, 2008 Theresa McManus, Guess

in-house intellectual property counsel, sent an e-mail to certain Guess employees in which she

instructed Guess's footwear buyer to cease all orders for Guess footwear products with a green-

red-green stripe design — which McManus aptly described as "***Gucci's green and red ribbon***

***detail***."  (Ederer ¶7, Ex. F at F39-F45).  Plaintiff also does not dispute that McManus directed

that Guess footwear bearing "***Gucci's green and red ribbon detail***" be removed from Guess's

website and stores.  (*Id.*).

24

Plaintiff, however, disputes that Guess footwear products bearing "***Gucci's green and red ribbon detail***" were immediately removed from Guess retail stores, in light of evidence establishing that Guess attempted to fire-sale these infringing products. (Ederer ¶7, Ex. F at F46-F54). Indeed, on November 29, 2008, over a week after McManus directed that "t*he Mette shoe in the brown colorway [featuring the complained-of green-red-green stripe design] must ... be removed from our site and stores*" (Welsh ¶ 2, Ex. H at H5), an investigator retained by Gucci's outside counsel visited the Guess store located at 537 Broadway, New York, New York, and purchased both the Mette and Melrose products bearing "***Gucci's green and red ribbon detail***". (Ederer ¶7, Ex. F at F46-F54). As indicated in the investigator's report, and depicted below, not only had Guess not removed the infringing Mette shoe from its retail store shelves, but it was featuring such product as a sale item:



(Ederer ¶7, Ex. F at F46-F54).

Plaintiff further disputes the contention that Guess "*recalled*" any Guess footwear bearing "***Gucci's green and red ribbon detail***" from third-party retailers or end consumers who had previously purchased said footwear. In fact, McManus testified that Guess did not even

attempt to contact third-party retailers like Macy's and Dillard's to remove Guess footwear

bearing "***Gucci's green and red ribbon detail***" — electing instead to instruct Marc Fisher to do

that, and choosing not to follow up to determine whether it had been done at all.  (Ederer ¶3, Ex.

B at B21-B22 (9/14/10 T. McManus Depo. 149:22-150:16)).

In fact, the evidence of record establishes that third-party retailers were still selling Guess

footwear bearing the complained-of green-red-green stripe design, *including the Mette*, in April

2009, five months later:



(SAC ¶ 46, Ex. L).

Moreover, with respect to Guess's ecommerce website, as late as **_June 2009_**, three Guess men's footwear products bearing "**_Gucci's green and red ribbon detail_**" — GMMelrose (DBRNL), GMMette (BRMFB) and GMTurbow (NAMFB) — were still "**_showing up_**" on Guess's ecommerce website.  (Ederer ¶7, Ex. F at F55-F65).

30.     Guess also required Marc Fisher, Guess's shoe licensee, to change the striping on all shoes going forward. (Welsh ¶ 2, Ex. H at H6-H7 (12/8/08 T. McManus Email), H8-H9 (12/19/08 C. Kearney Email); *see also* Welsh ¶ 2, Ex. D at D11 (3/4/10 Depo. of C. Kearney).)

*Plaintiff's Response*:

**(30)** ███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ (Ederer

¶7, Ex. F at F66-F69). ████████████████████████████

████████████████████████████████████████

(Ederer ¶7, Ex. F at F70). ██████████████████████████

████████████████████████████████████████████

██████████████████████████████ (Ederer ¶7, Ex. F at F66-F69),

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████ (Ederer ¶7, Ex. F at F71-F72).

██████████████████████████████████████

████████████████████████████████████████████

█████████████████████████ (Ederer ¶7, Ex. F at F73-F74).

27

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ (Ederer ¶7, Ex. F at

F75).

Thereafter, Guess's in-house legal team approved the use of a brown-red-brown stripe

design as a substitute for all prior uses of the green-red-green stripe design.  (Ederer ¶3, Ex. B at

B22 (9/14/10 T. McManus Depo. 152:15-25), B62 (5/7/10 P. Vando Depo. 298:4-8), B38-B39

(5/20/10 M. Fisher Depo. 119:20-122:15)).  Gucci alleges in this action that Guess's use of a

brown-red-brown stripe design infringes its rights in its green-red-green stripe design, and the

change to a brown-red-brown stripe design was a deliberate effort to continue to infringe upon

Gucci.  (SAC ¶ 46, Ex. L; Dkt. 173, at 10-11).

## III.    GUCCI'S ALLEGED INFRINGEMENT CLAIM FAILS

31.    Gucci's Rule 30(b)(6) witness, Terilyn Novak, admitted Gucci has no evidence
that any consumer has ever been induced to purchase a Guess product to "pass it off" as a Gucci
product.  (Welsh ¶ 2, Ex. B at B5-B6 (4/8/10 Depo. of Gucci's Rule 30(b)(6) Witness T.
Novak).)

### *Plaintiff's Response*:

**(31)**    Plaintiff does not dispute that Terilyn Novak, Plaintiff's Rule 30(b)(6) witness for

issues relating to ***footwear*** only (Ederer ¶8, Ex. G at G1-G4), stated that Plaintiff was aware of

no specific individual consumer who was induced to purchase a Guess product to "pass it off" as

a Gucci product.  Nevertheless, Plaintiff has presented evidence of actual consumer confusion

arising from Defendants' use of the complained-of Repeating Quattro G Pattern (Ederer ¶4, Ex.

C at C1-C15 (Mantis Survey)), and the appearance of the infringing designs at issue coupled

with evidence compiled from Defendants establishing their intent to replicate Gucci marks and

designs (*see infra* ¶¶ 177-280, 298-99), creates an inference that the intended consumer

confusion occurred.

32.   Guess is a well-known brand. (Welsh ¶ 2, Ex. I at I1-I13 (*Women's Wear Daily*
"The WWD 100").)

**Plaintiff's Response:**

**(32)**   Undisputed, subject to Plaintiff's Response to paragraphs 33 and 34 below.

33.   In annual surveys conducted by *Women's Wear Daily*, Guess has placed among
the top 30 well-known brands as ranked by fashion-conscious women every year in which the
survey was conducted. (*Id.*)

**Plaintiff's Response:**

**(33)**   Plaintiff does not dispute that Guess has placed among the top 30 brands in

*Women's Wear Daily*'s annual brand awareness survey for certain years.  Plaintiff, however,

disputes that such rankings are made by "*fashion-conscious women*" or that being "*fashion-*

*conscious*" was a prerequisite for participation in any of *Women's Wear Daily*'s annual brand

awareness surveys.  (Welsh ¶ 2, Ex. I at I14).

34.   Guess consistently outranked Gucci in these surveys. (*Id.*)

**Plaintiff's Response:**

**(34)**   Plaintiff does not dispute that Guess has outranked Gucci in certain *Women's*

*Wear Daily* annual brand awareness surveys, but points out that the purported "*fashion-*

*conscious women*", which, Guess contends, participate in these studies, also ranked the following

brands ahead of Guess in 1995, and virtually every year thereafter: (1) Hanes; (3) L'eggs; (4)

Hanes Her Way; (9) Fruit of the Loom; (17) Playtex; (19) No Nonsense (Welsh ¶ 2, Ex. I at I1),

the point being that these surveys do not measure anything about the fashion consciousness of

the women who participate in the survey.

Moreover, in February 2008, The Nielsen Company announced that its global luxury brands survey revealed that Gucci "*is the world's most coveted luxury brand*".  (Ederer ¶8, Ex. G at G5-G7).  In addition, Gucci has consistently ranked among Interbrand's annual list of "Best Global Brands" — 2006 (46); 2007 (46); 2008 (46).  (Ederer ¶8, Ex. G at G8-G28; Ederer ¶4, Ex. C at C40-C42).  Guess does not appear in any of Interbrand's annual lists.  (Ederer ¶8, Ex. G at G8-G28).

35.     Defendants spend over $35 million annually to advertise and promote the Guess brand and Guess products in magazines and other marketing materials. (Welsh ¶ 4; Welsh ¶ 2, Ex. A at A6 (Guess's 2011 Form 10-K).)

***Plaintiff's Response*:**

**(35)**     Plaintiff disputes that "Defendants spend over $35 million annually to advertise and promote the Guess brand and Guess products."  *First*, Guess has offered no data on this motion to support the calculation of advertising spend for any year other than fiscal 2010. (Welsh ¶ 4).  *Second*, Mr. Welsh's declaration incorrectly represents that Guess's 2011 Form 10-K states that Guess incurred "$31.7 million in advertising expenses … in 2010".  That is not the case.  Guess's advertising spend for fiscal 2010 was actually one third less — $21.8 million. (Welsh ¶ 4; Welsh ¶ 2, Ex. A at A6).  Moreover, there is no evidence in the motion record as to what products this money was used to advertise, or what it was devoted to.

36.     In its November 16, 2011 Opinion and Order, the Court stated: "[a]ccording to Dr. Diamond's analysis of the underlying sales data, more than 99 percent of bags bearing the allegedly infringing trade dress also bore 'either the GUESS name on the front of the bag, or the GUESS name on large G-shaped hardware on the handbag, or both.'" (11/16/11 Opinion and Order ("Op.") at 39.) (*See also* 6/27/11 Rebuttal Report of Dr. Shari Seidman Diamond ("6/27/11 Diamond Report") at ¶ 10 & Ex. C (previously submitted as  Exhibit 5 to the Declaration of Robert C. Welsh In Support Of Guess?, Inc's Motion to Exclude the Surveys of Dr. Michael Rappeport, George Mantis, and Dr. Michael B. Mazis (filed Aug. 29, 2011)).)

***Plaintiff's Response*:**

**(36)**     Plaintiff does not dispute that the Court's November 16, 2011 Opinion and Order

states what it states.  Plaintiff, however, notes that on December 15, 2011, the Court granted

Gucci's motion for partial reconsideration of the Court's November 16, 2011 Opinion and Order

(Dkt. 186), and ruled that "*<u>the Mantis Survey is admissible to show the likelihood of confusion</u>*

*<u>that may exist in those post-sale situations in which no permanent Guess-identifying</u>*

*<u>ornamentation would be visible to the casual observer.</u>*"  (Dkt. 186, at 6-7).

The Court further concluded that the Guess Scott Survey establishes that "*<u>no</u>*

*<u>ornamentation was visible on nearly thirty-four percent of handbags.</u>*"  (Dkt. 186, at 7, fn20).

Thus, even if 99% of Guess bags bearing the allegedly infringing trade dress also bore either the

GUESS name or the GUESS name on large G-shaped hardware on front of the handbag, Guess's

own survey establishes that, at least, "*<u>nearly thirty-four percent</u>*" of post-sale observers would

not notice the Guess name on such bags.  (*Id.*).  Further, this does not appear to account for those

situations where ornamentation was visible on the handbags, but the observer was nevertheless

unable to observe the details of such ornamentation.

37.     On Guess products bearing the Square G mark, the Guess name is prominently
placed on or in close proximity to the Square G. (Welsh ¶ 2, Ex. F at F1-F12 (exemplars of
Guess's Square G mark).)

***Plaintiff's Response***:

**(37)**     Plaintiff disputes the contention that "Guess products bearing the Square G mark,

the Guess name is prominently placed on or in close proximity to the Square G."  The following

are just some examples of Guess products bearing the complained-of Square G design where the

Guess name does not appear on the product, much less appear "prominently", in close proximity

to the complained-of Square G design:









91-8891/01



91-8892/01







(Ederer ¶8, Ex. G at G29-G36).

In fact, had the Guess name been "prominently placed on or in close proximity to the [complained-of] Square G" design, as Guess contends, there would have been no reason for Joy Kramer, Guess's Senior Licensing Design Manager, to write the following to all Guess licensees on June 12, 2009, mere weeks after the commencement of this lawsuit — "***_**When using any rectangular G's please add GUESS engraved somewhere on the bottom of the G (with no fill).**_***"  (Ederer ¶6, Ex. E at E81-E103).

34

That apparent instruction, nevertheless, is still not being followed today.  As of January 5, 2012, Guess is selling the following "Slick G" Square G belt on its website:



(Ederer ¶8, Ex. G at G42).  Once again, the Guess name is not "prominently placed on or in close proximity to" this Square G design.

38.     The Guess Script design clearly and unambiguously spells out the name "Guess."

*Plaintiff's Response*:

**(38)**     Plaintiff does not dispute that the complained-of Guess Script design spells out the name "Guess".  Plaintiff, however, does dispute that the Guess Script design "clearly and unambiguously" depicts the name Guess, and that casual post-sale observers will not be confused into thinking the Guess Script design, to the extent it is observed at all, says Gucci.  As the Court held in its December 15, 2011 Memorandum Opinion and Order granting Plaintiff's motion for partial reconsideration of the Court's November 16, 2011 Opinion and Order, the Scott Study shows that a significant percentage of women carry handbags in a manner that may obscure some or all of the brand name.  (Dkt. 168, at 6-7).

Accordingly, and as Plaintiff explained in its September 22, 2011 Reply Memorandum of Law in further support of its exclusion motion, it is likely that a significant percentage of women carrying handbags bearing the complained-of Guess Script design will carry them with the brand name facing outward but nevertheless obscured by their hand or arm — in some instances

35

permitting the post-sale observer to see only the following design elements before the bag is out of sight:



| Gucci's "G-U" | Guess's "G-U" |

(Dkt. 175, at 4, fn6).

Moreover, as Plaintiff's expert, Dr. Itamar Simonson, explained in his June 27, 2011 rebuttal to the Scott Survey, in the post-sale context, "whether the brand name is observable may depend on the person holding the bag, the brand, the perceived prestige of the brand, the situation, the angle from which the handbag is observed, whether holding the bag one way is more comfortable, and other random effects (e.g., the woman holding the bag is not even thinking about how she wishes to hold the bag)."  (Ederer ¶4, Ex. C at C154).

39.    Defendants use a variety of other designs and signatures on Guess-branded products that Gucci does not challenge. (Welsh ¶ 2, Ex. E at E11-E15.)

***Plaintiff's Response*:**

**(39)**    Plaintiff does not dispute that Guess has used a variety of designs and so-called "signatures" on Guess-branded products that do not infringe Gucci's intellectual property rights, and Plaintiff, accordingly, does not challenge Guess's use of such designs.  Plaintiff, however, notes that the complained-of Diamond Quattro G design was such a success (Ederer ¶3, Ex. B at B73 (9/16/10 J. Rimokh Depo. 203:5-15); Ederer ¶8, Ex. G at G45-G46) that it became known as Guess's "***status staple[]***" (Ederer ¶8, Ex. G at G39-G41; Ederer ¶3, Ex. B at B71 (7/14/10 P. Memishian Depo. 150:9-13), B69 (5/12/10 K. Ringwood Depo. 148:4-15)), and was used across

more consecutive handbag lines than any other Guess design or "signature" (Ederer ¶3, Ex. B at

B87 (1/13/11 S. Faulkner Depo. 296:6-17)).

40.    In his report, Guess's damages expert, Dr. Alan Goedde, compared pricing and sales data for Guess products bearing the marks at issue and similar Guess products that do not contain the accused designs. (Welsh ¶ 2, Ex. J at J1-J8.)

**Plaintiff's Response:**

**(40)**    Plaintiff disputes the relevance of any opinions of Guess's so-called "damages

expert", Dr. Alan Goedde.  In no uncertain terms, the Court specifically admonished Guess's

counsel, Robert C. Welsh, that "**_experts don't belong in summary judgments.  They give_**

**_opinions._**"  Had Gucci known that Guess intended to rely on the Goedde Report on summary

judgment — despite this Court's repeated admonition not to present such opinions on this motion

— Gucci would have moved to exclude the Goedde Report as part of the exclusion motions that

preceded summary judgment.

In any event, as the Rebuttal Expert Report of Guess's damages expert, Basil A.

Imburgia, makes clear, Goedde's alleged "comparison" is fundamentally flawed and proves

nothing at all.  (Ederer ¶4, Ex. C at C219-C244 (Imburgia Rebuttal Report).  As the Imburgia

Rebuttal Report explains:

> … Dr. Goedde's "attribution" analysis suffers from numerous fundamental flaws, and is entirely unreliable.  Among other things, Dr. Goedde's analysis (i) uses no recognized statistical or accounting methodology; (ii) fails to take into account critical information about the Accused Products and their respective life-cycles; (iii) use data that is, at best, of deficient and suspect quality; and (iv) is based on assumptions that are demonstrably false and which have been contradicted by Guess's own purported experts.  Indeed, if credited, Dr. Goedde's analysis stands for little more than the proposition that no one buys a Guess product for any reason other than the brand name "Guess," so it matters not what the product looks like, what its quality or utility might be, or whether the designs that appear on the product are in any way significant to consumers.  Accordingly, Dr. Goedde's so-called attribution analysis is completely unreliable in my professional opinion.

(Ederer ¶4, Ex. C at C230).

37

41.     Dr. Goedde's purpose was to determine whether the marks at issue "had any incremental value beyond their value as [identifiers] of the Guess brand." (*Id.* at J6 (¶ 28).)

***Plaintiff's Response*:**

**(41)**     Plaintiff does not dispute the stated purpose of Goedde's purported

"comparison".  Plaintiff, however, disputes the reliability and admissibility of the Goedde

"comparison" for the reasons set forth in the Imburgia Rebuttal Report.  (Ederer ¶4, Ex. C at

C230-C240).

42.     Dr. Goedde identified 12 Guess handbags containing the marks at issue and 51 comparable handbags not bearing the marks at issue but with similar product characteristics—all offered for sale in 2008 and 2009. (*Id.* at J7 (¶¶ 31-32).)

***Plaintiff's Response*:**

**(42)**     Plaintiff does not dispute that Goedde claims to have identified 12 Guess

handbags containing the marks at issue and "51 comparable handbags not bearing the marks

at issue but with similar product characteristics", all offered for sale in 2008 and 2009.

Plaintiff, however, disputes the reliability and admissibility of the Goedde "comparison" for

the reasons set forth in the Imburgia Rebuttal Report.  (Ederer ¶4, Ex. C at C230-C240).

43.     Focusing on the number of units sold and the pricing of the products, Dr. Goedde found "no discernable incremental value attributable to the [handbags] containing the accused design on the basis of price." (*Id.* at J7 (¶¶ 33).)

***Plaintiff's Response*:**

**(43)**     Plaintiff does not dispute that Paragraph 43 accurately quotes Goedde's so-

called "finding", but does dispute the reliability and admissibility of Goedde's "findings" for

the reasons set forth in the Imburgia Rebuttal Report.  (Ederer ¶4, Ex. C at C230-C240).

44.     Dr. Goedde found the Guess handbags containing the accused designs were priced at or below the handbags bearing the unchallenged designs 76% of the time. (*Id.*)

***Plaintiff's Response*:**

**(44)**     Plaintiff does not dispute that Paragraph 44 accurately states Goedde's so-called "finding", but does dispute the reliability and admissibility of Goedde's "findings" for the reasons set forth in the Imburgia Rebuttal Report.  (Ederer ¶4, Ex. C at C230-C240).

45.     Dr. Goedde found that among the 12 Guess handbags bearing accused designs, only two outsold comparable non-accused handbags. (*Id.* at J7-J8 (¶¶ 35).)

***Plaintiff's Response*:**

**(45)**     Plaintiff does not dispute that Paragraph 45 accurately states Goedde's so-called "finding", but does dispute the reliability and admissibility of Goedde's "findings" for the reasons set forth in the Imburgia Rebuttal Report.  (Ederer ¶4, Ex. C at C230-C240).

46.     Based on his analysis, Dr. Goedde concluded that: "[T]he entirety of the value of the accused designs derive from the designs' association with Guess, not Gucci. Stated another way, my analysis shows that there is no incremental value attributable to an association between the accused designs and Gucci that is over and above the value of the designs as indicators of Guess." (*Id.* at J8 (¶ 36).)

***Plaintiff's Response*:**

**(46)**     Plaintiff does not dispute that Paragraph 46 accurately quotes Goedde's so-called "conclusions", but does dispute the reliability and admissibility of Goedde's "conclusions" for the reasons set forth in the Imburgia Rebuttal Report.  (Ederer ¶4, Ex. C at C230-C240).

47.    Defendants collectively sold 2,333 units of handbags that were in the handbag group containing the messenger bag tested by Gucci's expert, Mr. George Mantis, in his survey. (6/27/11 Diamond Report at ¶ 10 & Ex. C.)

*Plaintiff's Response*:

(**47**)    Plaintiff does not dispute that Defendants claim to have sold 2,333 units of

Citizen G handbags, which included the following messenger bag:



(Ederer ¶8, Ex. G at G47-G49).  Plaintiff, however, points out that it was the Citizen G bag that

Jason Rimokh, the President of Signal Products, was referring to when he sent an e-mail to

Guess stating "***I am nervous [U.S. Customs] think[s] it is a Gucci***":

| | |
|---|---|
| **From:** | Jason Rimokh |
| **Sent:** | Wednesday, December 03, 2008 07:56 PM |
| **To:** | Hannah Cosico; 'Patrick Mochnaly' |
| **CC:** | Jessica Garzilli; Jessica Wellisch; 'Carly Cherof' |
| **Subject:** | RE: Citizen G bags |

Patrick –

I am nervous they think it is Gucci – we are pushing them should know by Wednesday – we are excited
to get it out to stores – I will next day the order at my cost.

Thanks,

J

(Ederer ¶8, Ex. G at G50).  Moreover, to the extent Guess is suggesting that the Citizen G group

was not successful, the truth is that Guess's Men's Senior Buyer, Patrick Mochnaly, could not

wait to get this particular group to market because there was a "*large waiting list for the bags*" in

this group:

```
From: Patrick Mochnaly [mailto:pmochnaly@guess.com]
Sent: Wednesday, December 03, 2008 3:46 PM
To: Hannah Cosico
Cc: Jessica Garzilli; Jessica Wellisch; Jason Rimokh; Carly Cherof
Subject: Citizen G bags

Hi Hannah -
So you should have orders for the Citizen G group - we have a 12/3 - 12/8CXL

Please ship ASAP - can they all ship out by Thursday?

The attached email went out today - and we already have large waiting list for the bags - we want

them in as soon as possible.

Thank YOU.

Patrick Mochnaly
Guess? INC.
Men's Senior Buyer
213-765-3146
```

(Ederer ¶8, Ex. G at G50-G51).  Indeed, the Citizen G group was such a success that Mochnaly

wrote the following to Rimokh on January 9, 2009:

```
From:       Patrick Mochnaly
Sent:       Friday, January 09, 2009 05:09 PM
To:         SIGNAL\Jason Rimokh; Hannah Cosico
CC:         SIGNAL\Jessica Garzilli; Jessica Wellisch; Carly Cherof
Subject:    RE: Citizen G bags
```

*Rimokh*  Deposition
*9-6 2010*  Exhibit No. *301*
Brenda Countz

```
Hi Jason -
WELL - first few weeks of selling and we've had about a 40-50% ST overall on the Citizen G
collection.  We will be confirming RO's on all 4 styles next week.

I've shared info with Harriet & we are all very excited!
```

(Ederer ¶8, Ex. G at G50-G51).  Thus, the only reason Defendants collectively sold 2,333 units is

because Plaintiff sued them on May 6, 2009; otherwise, it appears this would have become one

of Defendants' best-selling lines.  (Dkt. 1).

## IV.   ALLEGED DILUTION

### A.   No Evidence of Actual Dilution

48.    The 1995 Federal Trademark Dilution Act's requirement that a plaintiff must
show actual dilution as a prerequisite to monetary relief applies to all Guess marks or designs
that were first used prior to October 6, 2006. *See Malletier v. Dooney & Bourke, Inc.*, 500 F.
Supp. 2d 276, 282-83 (S.D.N.Y. 2007); 12/2/2011 Hearing Tr. at 27:12-24.

*Plaintiff's Response*:

(48)    Undisputed.

41

49.     The Square G mark was first used prior to October 6, 2006. (*See supra* ¶ 21.)

***Plaintiff's Response*:**

**(49)**     Undisputed.

50.     The Quattro G Pattern, including on a beige background, was first used prior to October 6, 2006. (Welsh ¶ 2, Ex. F at F13-F15.)

***Plaintiff's Response*:**

**(50)**     Plaintiff does not dispute that Guess first used the complained-of Quattro G Pattern, including on a "beige" background, prior to October 6, 2006, but points out that Defendants' efforts to replicate the exact color, weave and other aspects of Gucci's Diamond Motif Trade Dress continued through 2009.  (*See infra* at ¶¶ 220-52).

51.     The Script Guess design was first used prior to October 6, 2006. (Welsh ¶ 2 Ex. E at E1-E3, E5-E10 (exemplars of Script Guess design); *see also supra* ¶ 18.)

***Plaintiff's Response*:**

**(51)**     Plaintiff disputes that the complained-of Script Guess design was first used prior to October 6, 2006.  The evidence of record establishes that the complained-of Script Guess design was not used on Guess products until approximately Guess's Fall 2008 collections. Suesan Faulkner, the Creative Director at Signal Products, does not recall designing any handbags prior to 2008 that contained the complained-of Script Guess design.  (Ederer ¶3, Ex. B at B88 (1/13/11 S. Faulkner Depo. 347:15-24)).  Furthermore, Guess's belt licensee, Max Leather, first used the complained-of script mark as part of its "TRANS FALL 08" and "HOLIDAY 08" lines.  (Ederer ¶6, Ex. E at E115-E120).

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ (Ederer ¶6, Ex. E at E110).  An

image of the Guess-branded Zaid shoe appears below:





(Ederer ¶6, Ex. E at E111-E114).  Mr. Vando testified that "*Guess Corporate*" may have

provided him with the script font used on the Zaid shoe.  (Ederer ¶3, Ex. B at B_-B_ (5/7/10 P.

Vando Depo. 210:16-211:4)).

52.     There is no record evidence that any Gucci marks have been impaired or tarnished
because of any alleged "association" with Guess's Square G mark, Quattro G Pattern, or Script
Guess design.

***Plaintiff's Response*:**

**(52)**     Plaintiff disputes that there is no record evidence that any Gucci marks have been

impaired or tarnished because of any alleged "association" with Guess's Square G mark, Quattro

G Pattern, or Script Guess design.  Plaintiff has offered the expert opinion of (Michel) Tuan

Pham, Ph.D., a highly-regarded consumer behavior and consumer psychology expert, whose

testimony has been credited by this Court in other proceedings.  In his report, Dr. Pham identifies and discusses how Guess's use of the complained-of designs has impaired and tarnished Gucci's marks.  (Ederer ¶4, Ex. C at C65-C70 (Pham Report)).

Gucci witnesses Terilyn Novak and Jonathan Moss also testified Guess's conduct has resulted in the diminishment of the Gucci brand.  (Ederer ¶3, Ex. B at B97 (12/1/09 J. Moss Depo. 272:9-14), B90 (4/8/10 T. Novak 168:20-169:16)).

In addition, immediately following the commencement of this action, a number of fashion bloggers commented on how Guess's conduct has tarnished and diluted the value of Gucci's marks, including the following:

> **(a)** "Maybe Gucci won't lose any real customers but ***it does cheapen the brand*** to
>
> have inferior versions flooding the market."; and
>
> **(b)** "I myself have a [Guess] laptop bag that always gets mistaken for Gucci.  Not to
>
> my detriment though! … ***Gucci is a legacy, Guess is depreciating it***."

(Ederer ¶8, Ex. G at G53-G76).

53.     According to annual studies conducted by global consultancy firm Interbrand, the value of the Gucci brand increased significantly between 2001 and 2010—from $5.36 billion to $8.35 billion, or 56%. (Welsh ¶ 2, Ex. J at J9-J15 (Interbrand's Best Global Brands List.)

***Plaintiff's Response*:**

**(53)**     Plaintiff does not dispute that according to annual studies conducted by Interbrand, the worldwide value of the Gucci brand increased between 2001 and 2010.  Plaintiff, however, notes that this is not to say that, according to Interbrand, the worldwide value of the Gucci brand would not have increased even more but for Defendants' infringing conduct. Further, there is no evidence one way or the other as to whether the value of the individual Gucci marks and designs that Guess has infringed has increased, given Defendants' infringing conduct.

54.     Gucci's parent company, Pinault-Printemps Redoute, cites Interbrand studies in its annual reports. (Welsh ¶ 2, Ex. C at C3 (Pinault-Printemps Redoute 2008 Financial Document) ("Gucci named world's 2nd most valuable Luxury brand in the Top 100 Global Brand rankings (source: Interbrand, Best Global Brands 2008).").)

**Plaintiff's Response**:

**(54)**     Plaintiff does not dispute that its indirect parent, Pinault-Printemps Redoute, cites

Interbrand studies in its annual reports, but does the dispute the relevance of this fact.

55.     Gucci's former CFO, Sandro Risi, relied on Interbrand studies when calculating the value of the Gucci brand in the U.S. (Welsh ¶ 2, Ex. B at B14-B15 (9/22/10 Depo. of Gucci's Rule 30(b)(6) Witness S. Risi) (Risi used "the value of [Gucci as stated by] Interbrand" to "apportion the value of the Gucci brand in relation to Gucci America.").)

**Plaintiff's Response**:

**(55)**     Plaintiff does not dispute that its former CFO, Sandro Risi, once relied on

Interbrand studies, "***plus some other documents which were identifying the weight of Gucci***

***America on our worldwide organization***", when calculating the value of the Gucci brand in the

U.S., in order to prepare for a meeting.  (Welsh ¶ 2, Ex. B at B14-B15).

56.     Sales of Gucci products in the United States increased significantly between 2004 and 2009—from $327,511,000 to $530,875,000, or 62%. (Welsh ¶ 2, Ex. C at C4-C5 (Gucci America Income Statements).)

**Plaintiff's Response**:

**(56)**     Plaintiff does not dispute that sales of Gucci products in the United States

increased between 2004 and 2009.

57.     In December 2009, Gucci's Rule 30(b)(6) witness Jonathan Moss testified that Gucci was unaware of a single sale that Gucci had lost because of any Guess product. (Welsh ¶ 2, Ex. K at K3-K4 (12/1/09 Depo. of Gucci's Rule 30(b)(6) Witness J. Moss).)

**Plaintiff's Response**:

**(57)**     Plaintiff does not dispute that Jonathan Moss testified that Gucci had not been

advised by any potential consumers that Gucci had lost a sale because of any Guess product, but

notes that the absence of such evidence does not prove that lost sales did not occur.

58.     In September 2010, Gucci's Rule 30(b)(6) witness Sandro Risi testified that Gucci had no evidence of any sales lost as a result of any Guess product. (Welsh ¶ 2, Ex. B at B12-B13 (9/22/10 Depo. of Gucci's Rule 30(b)(6) Witness S. Risi).)

**Plaintiff's Response:**

**(58)**   Undisputed.

**B.     No Likelihood of Dilution**

59.     There is no record evidence of any consumer association between Guess's Square G mark, the Script Guess design, or the green-red-green stripe and Gucci.

**Plaintiff's Response:**

**(59)**   Plaintiff disputes that there is no record evidence of any consumer association

between Guess's Square G mark, the Script Guess design, or the green-red-green stripe and

Gucci.  Plaintiff has offered the expert report of Dr. Pham on these precise issues.  (Ederer ¶4,

Ex. C at C26-C140 (Pham Report)).

**C.     The Mazis Survey Does Not Establish Dilution**

60.     Gucci's expert, Dr. Michael B. Mazis, conducted a survey designed to determine "whether consumers associate Guess's use of [the Quattro G Pattern] with Gucci." (Initial Survey Report of Dr. Michael B. Mazis ("Mazis Report") at ¶ 1 (previously submitted as Exhibit 2 to the Declaration of Robert C. Welsh In Support Of Guess?, Inc's Motion to Exclude the Surveys of Dr. Michael Rappeport, George Mantis, and Dr. Michael B. Mazis (filed Aug. 29, 2011)).)

**Plaintiff's Response:**

**(60)**   Undisputed.

61.     The survey asked respondents looking at a photo of either a Guess handbag or a control handbag whether any "other" products or brands "come to mind." (*Id.* at ¶ 19-22 & Ex. G.)

**Plaintiff's Response:**

**(61)**   Plaintiff disputes Defendants' description of the Mazis Survey.  Respondents

were not shown "a photo", but rather "two photographs showing the front and back of the same

handbag."  Plaintiff refers the Court to Exhibit G of the Mazis Report for the exact questions

asked of respondents who passed the "screener" questionnaire.  (Initial Survey Report of Dr.

Michael B. Mazis ("Mazis Report") at Ex. G (previously submitted as Exhibit 2 to the

Declaration of Robert C. Welsh In Support Of Guess?, Inc's Motion to Exclude the Surveys of

Dr. Michael Rappeport, George Mantis, and Dr. Michael B. Mazis (filed Aug. 29, 2011))).

62.     The survey did not inquire into whether any claimed association between Guess
and Gucci resulted in any impairment or injury to Gucci. (*See generally id.*)

*Plaintiff's Response*:

**(62)**     Plaintiff does not dispute that the Mazis Survey did not inquire as to whether the

level of association it found with Gucci — *12%* — resulted in any impairment or injury to Gucci,

but notes that Gucci has proffered the expert report of Dr. Pham to address the impairment and

injury caused by the type of association revealed by the Mazis Survey.  (Ederer ¶4, Ex. C at C65-

C70 (Pham Report)).

63.     In his expert report Dr. Mazis does not claim that his survey results show a
likelihood of dilution. (*See generally id.*)

*Plaintiff's Response*:

**(63)**     Plaintiff does not dispute that Dr. Mazis does not claim that his survey results

show a likelihood of dilution, but notes that Gucci has proffered the expert report of Dr. Pham to

address the likelihood of dilution caused by the association between Guess and Gucci revealed

by the Mazis Survey.  (Ederer ¶4, Ex. C at C65-C70 (Pham Report)).

64.     There is no record evidence establishing that Gucci is likely to be tarnished or
impaired by Guess's Square G mark, Quattro G Pattern, Script Guess design or green-red green
stripe.

*Plaintiff's Response*:

**(64)**     Plaintiff disputes that there is no record evidence establishing that Gucci is likely

to be tarnished or impaired by Guess's Square G mark, Quattro G Pattern, Script Guess design or

green-red green stripe.  Plaintiff offered the expert report of Dr. Pham on these precise issues.  (Ederer ¶4, Ex. C at C26-C140 (Pham Report)).

Gucci witnesses Terilyn Novak and Jonathan Moss also testified Guess's conduct has resulted in the diminishment of the Gucci brand.  (Ederer ¶3, Ex. B at B97 (12/1/09 J. Moss Depo. 272:9-14), B90 (4/8/10 T. Novak 168:20-169:16)).

In addition, immediately following the commencement of this action, a number of fashion bloggers commented on how Guess's conduct has tarnished and diluted the value of Gucci's marks, including the following:

> **(c)**   "Maybe Gucci won't lose any real customers but ***it does cheapen the brand*** to have inferior versions flooding the market."; and

> **(d)**   "I myself have a [Guess] laptop bag that always gets mistaken for Gucci.  Not to my detriment though! … ***Gucci is a legacy, Guess is depreciating it***."

(Ederer ¶8, Ex. G at G53-G76).

### D.   Gucci's Stylized G Mark Was Not Famous When Guess's Square G Mark Was Introduced

65.   To establish a dilution claim concerning Guess's Square G mark, Gucci must show that its Stylized G was "widely recognized by the general consuming public of the United States" before Guess began using its Square G mark. 15 U.S.C. § 1125(c)(2)(A).

*Plaintiff's Response*:

**(65)**   Undisputed.

66.   The Square G mark has appeared on Guess products since at least 1996. (*See supra* ¶ 21.)

*Plaintiff's Response*:

**(66)**   Plaintiff does not dispute that the complained-of Square G design appeared on a belt depicted in a *Guess Journal: International Magazine* dated Fall 1996.  (*See supra* ¶ 21). However, because Guess has proffered no evidence to establish that the belt depicted therein was

offered for sale or sold in the United States, Plaintiff disputes this contention.  (Welsh ¶ 2, Ex. F at F1-F2).  Moreover, Defendants have proffered no evidence establishing that the complained-of Square G design was used on any other Guess products at that time.

67.     Gucci's first use in commerce of the Stylized G mark was in 1995. (SAC Ex. G.)

*Plaintiff's Response*:

**(67)**     Plaintiff does not dispute that its first use in commerce of its Stylized G mark was in March 1995, but notes that its first use of its Stylized G mark occurred in October 1994. (SAC ¶ 24, Ex. G).

68.     In 1996, Gucci had used its Stylized G mark for no more than a year. (SAC Ex. G.)

*Plaintiff's Response*:

**(68)**     Plaintiff disputes the contention that in 1996, Gucci had used it Stylized G mark for no more than a year.  As Gucci's U.S. Trademark Registration No. 2,042,805 makes clear, Gucci's first use of its Stylized G mark occurred in *October 1994*.  (SAC ¶ 24, Ex. G).  In addition, by the Fall of 1996 — when the complained-of Square G design appeared on a belt in a *Guess Journal: International Magazine* — Gucci had used its Stylized G mark in commerce for more than a year.  (SAC ¶ 24, Ex. G).

69.     There is no record evidence that between the first use of Gucci's Stylized G in 1995 and the first use of Guess's Square G mark in 1996, the Stylized G mark had gained any fame.

*Plaintiff's Response*:

**(69)**     Plaintiff disputes that there is no record evidence that Gucci's Stylized G mark gained fame prior to the Fall of 1996.  Gucci's Stylized G mark was prominently featured in a 1995 Spring/Summer ad campaign, and was prominently featured in Gucci's Fall/Winter 1996

fashion show.  (Ederer ¶8, Ex. G at G77-G80).  The following is an image from Plaintiff's 1995 Spring/Summer ad campaign:



(Ederer ¶8, Ex. G at G77).

70.     There is no record evidence from that period concerning sales or advertising for Gucci products bearing the Stylized G, or the degree of any actual consumer recognition of the mark.

***Plaintiff's Response***:

**(70)**     Plaintiff disputes that there is no record evidence that Gucci's Stylized G gained