UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

GUCCI AMERICA, INC.,

        Plaintiff,

    - against -

GUESS?, INC., MARC FISHER
FOOTWEAR LLC, THE MAX
LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG,
J&M ASSOCIATES L.P., VIVA
OPTIQUE, INC., SIGNAL PRODUCTS,
INC., and SWANK, INC.,

        Defendants.

------------------------------------------------------------ X

**OPINION AND ORDER**

09 Civ. 4373 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-13-12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.    **INTRODUCTION**

        Gucci America, Inc. ("Gucci") brings this action against Guess?, Inc., Marc Fisher Footwear LLC ("MFF"), the Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc, and Swank, Inc. (collectively, "Guess"), alleging various violations of the Lanham Act and New York state law.[1]  There are currently two motions

---

    [1]    *See* Second Amended Complaint at ¶¶ 64-119.

-1-

before the Court. *First*, MFF seeks to preclude Gucci from introducing third-party cease-and-desist letters related to various American and European trademark disputes.[2] *Second*, Guess seeks to exclude evidence concerning Gucci's claim for "reasonable royalty" damages.[3] For the reasons given below, MFF's motion is denied in part and granted in part, while Guess's motion is denied in its entirety.

## II. BACKGROUND

The factual background to these motions is more fully set forth in this Court's recent Summary Judgment Opinion and Order.[4] Briefly, Gucci claims that Guess and its licensees use certain designs that infringe and dilute several famous Gucci marks, and that such use constitutes "a sophisticated and elaborate scheme . . . to target Gucci, to create products that are similar in appearance to the most popular and best-known Gucci products, and trade upon the goodwill and reputation associated with Gucci and its high-quality, distinctive product lines."[5]

---

[2] *See* Memorandum of Law in Support of MFF's Motion *in Limine* to Preclude Evidence Regarding Third-Party Cease and Desist Letters and Foreign Trademark Disputes ("MFF Mem.").

[3] *See* Memorandum of Law in Support of Guess's Motion *in Limine* to Exclude Evidence Concerning Gucci's Claim for Hypothetical Lost Royalties ("Guess Mem.").

[4] *See Gucci America, Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2012 WL 456519 (S.D.N.Y. Feb. 14, 2012).

[5] *Id.* at *1.

### A. MFF's Motion

MFF seeks to preclude Gucci from offering evidence related to cease-and-desist letters sent to Guess by other fashion companies – Jimmy Choo, Adidas, Yves Saint Laurent, Christian Dior, Celine, and Dolce & Gabbana – regarding footwear designed by MFF. According to MFF, such evidence is irrelevant for either of two reasons: (1) the disputes did not result in a judicial determination of infringement, or (2) they covered allegedly infringing activity that took place outside of the United States.[6] MFF also argues that this evidence should be precluded under Federal Rule of Evidence 403 as a waste of time.[7]

### B. Guess's Motion

Gucci seeks "reasonable royalty" damages as part of its remedy in this case. Guess argues that "[a]s a matter of law, lost royalty damages are *only* recoverable where the parties have previously negotiated or entered into a license agreement involving the trademark(s) at issue."[8]

## III. APPLICABLE LAW

### A. Motions *in Limine* Generally

---

[6] *See* MFF Mem. at 2.

[7] *See id.* at 3.

[8] Guess Mem. at 1 (emphasis in original).

The purpose of a motion *in limine* is to allow a court to rule on the admissibility of potential evidence in advance of trial.[9] A court will exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds."[10]

B.   **Evidence of Third-Party Trademark Disputes**

Under Federal Rule of Evidence 404(b)(2), evidence of prior bad acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." On this basis, courts frequently consider prior judicial resolutions of trademark disputes when discussing the alleged infringer's intent or bad faith.[11] Courts also consider the

---

[9]   *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[10]   *See United States v. Ozsusamlar*, 428 F. Supp .2d 337, 340 (S.D.N.Y. 2002).

[11]   *See, e.g.*, *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009) (discussing the admissibility of prior "cybersquatting" activities to show bad faith under 15 U.S.C. § 1125(d)); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 785 (8th Cir. 2004) (same); *Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118,1124 (7th Cir. 1988) (noting that defendant had been previously "enjoined from infringing the trade dress at issue and thus could not assert that its new design should be accorded the same leniency that a good faith user might ask for."); *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 680 n.14 (W.D. Tex. 2008); *Johnson & Johnson Consumer Companies, Inc. v. Aini*, 540 F. Supp. 2d 374, 392 (E.D.N.Y. 2008); *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896, 900 (S.D.N.Y. 1995); *Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.*, No. 83 Civ. 709, 1983 WL 425, at *3 (S.D. Fla. Nov. 7, 1983).

alleged infringer's receipt of and response to cease-and-desist letters for the same purposes.[12]

### C. "Reasonable Royalties" as Damages in Trademark Cases

A plaintiff in a trademark action may recover a "reasonable royalty" under the heading of actual damages.[13] However, because they are inherently difficult to calculate in a vacuum, courts often decline to award such damages unless the parties had a prior licensing agreement.[14] Even in cases without such agreements, however, courts have awarded or approved of "reasonable royalty" damages if the evidence provides a sufficiently reliable basis from which to calculate them.[15]

---

[12] *See*, *e.g.*, *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 415 n.6 (S.D.N.Y. 2011), *aff'd* No. 11 Civ. 502, 2012 WL 414769 (2d Cir. Feb. 10, 2012) (noting that defendant's decision to continue "to ship product after receiving [plaintiff's] cease-and-desist letter" may be indicative of bad faith); *General Nutrition Inv. Co. v. General Vitamin Centers, Inc.*, No. 10 Civ. 2763, 2011 WL 4344194, at * 5 (E.D.N.Y. Sept. 14, 2011) (noting that refusal to respond to cease-and-desist letters may be indicative of willfulness); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 284 (S.D.N.Y. 2002) (noting that defendant "repeatedly received cease and desist letters from third parties complaining that it infringed their intellectual property rights.").

[13] *See Gucci America, Inc.*, 2012 WL 456519, at *3.

[14] *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208 (3d Cir. 1999).

[15] *See Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1343 (7th Cir. 1994); *Cornyn Group II v. O.C. Seacrets*, No. 08 Civ. 2764, 2010 WL

## IV.     DISCUSSION

### A.     MFF's Motion

#### 1.     The American Disputes

MFF argues that it will be prejudiced as a "first-time trademark defendant" if Gucci is allowed to introduce third-party cease-and-desist letters from other fashion companies to Guess in response to Guess shoes designed and manufactured by MFF for sale in the United States (the "American Disputes").[16] Although MFF acknowledges that previous adjudications of infringement are admissible on issues related to an alleged infringer's intent or bad faith, it argues that the mere receipt of cease-and-desist letters is not.[17]

MFF and Guess did not merely receive cease-and-desist letters.

---

1375301, at *8 (D. Md. Mar. 30, 2010); *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 585 (M.D.N.C. 2009); *Adidas Am,. Inc. v. Paylesss Shoesource, Inc.*, No. 01 Civ. 1655, 2088 WL 4279812, at *12 (D. Or. Sept. 12, 2008); *Clear Blue, Inc. v. Clear!Blue, Inc.*, No. 07 Civ. 339, 2008 WL 5232897, at *4-5 (W.D.N.C. Dec. 12, 2008). *But see Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ. 7203, 2006 WL 1359955, at *2 (S.D.N.Y. May 18, 2006) (excluding expert calculation of reasonable royalty when parties had no previous licensing agreement).

[16]     MFF Mem. at 4. The letters were sent by Jimmy Choo, Adidas, and Yves Saint Laurent. *See* Gucci's Memorandum in Opposition to MFF's Motion *in Limine* to Preclude Evidence Regarding Third-Party Cease and Deist Letters and Foreign Trademark Disputes ("Gucci-MFF Opp. Mem.") at 4-5.

[17]     *See* MFF Mem. at 4.

Rather, in response to these letters, MFF stopped producing the allegedly infringing shoes in three cases, and twice agreed to pay confidential settlements.[18] According to MFF's CEO, the letters involved mere "nuisance-type" claims, and settling them in this manner is "the process people use in this industry" rather than an admission of guilt.[19] While evidence regarding the American Disputes may support MFF's argument, it could also support Gucci's argument that MFF's actions – which Gucci characterizes as "avoid[ing] . . . lawsuits by quickly buying off the accuser and stopping sales of the accused products" – are indicative of bad faith and lack of respect for trademark protections.[20]

Because Gucci's claim against MFF for money damages requires proof of bad faith, evidence that supports such a finding is both relevant and material. For this reason, evidence of the American Disputes – including the cease-and-desist letters – is presumptively admissible under Federal Rule of Evidence 402. Furthermore, I decline to exclude this evidence under Rule 403, as MFF has not convinced me that its probative value is substantially outweighed by

---

[18] *See* Gucci-MFF Opp. Mem. at 4-5 (citing deposition testimony of MFF officials).

[19] 5/20/10 Transcript of Marc Fisher's Deposition, Ex. H to Declaration of Louis S. Ederer, Counsel for Gucci ("Ederer Decl."), at 223:20-225:4.

[20] *See* Gucci-MFF Opp. Mem. at 11.

the waste of time it might cause. Accordingly, MFF's motion to preclude testimony regarding the American Disputes is denied.[21]

### 2. The European Disputes

Gucci notes that Guess also received at least four cease-and-desist letters regarding MFF products sold in Europe (the "European Disputes"),[22] and argues that evidence related to those letters is admissible for the same reasons noted above. MFF argues that its response to the European Disputes is "irrelevant and inadmissible on the issue of intent in this action" because trademark rights are governed by different laws around the world.[23]

The Second Circuit has made clear that the admissibility of foreign trademark infringement disputes depends on the purposes for which they are introduced.[24] Here, Gucci does not allege that evidence regarding the European Disputes would prove that MFF actually infringed any of the trademarks at issue in

---

[21] Because the cease-and-desist letters are not being offered to prove the truth of the matters asserted therein, they will not be stricken as hearsay under Rule 801.

[22] *See* Gucci-MFF Opp. Mem. at 4.

[23] MFF Mem. at 4.

[24] *See Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 272-73 (2d Cir. 1999) (noting that a "foreign [trademark] decision" cannot be used to prove infringement of the same mark in the United States, but may be introduced if "it is relevant and admissible to prove [some other material] fact.").

those disputes or at issue in this case. Instead, it merely seeks to use such evidence to substantiate its claims about MFF's "knowledge, intent, and the steps [it takes] to avoid future claims . . . ."[25]

Evidence of the European Disputes could elucidate the policy and behavior of MFF and Guess with respect to trademark enforcement generally, and is therefore arguably relevant. However, such evidence addresses the same issue as the evidence of the American Disputes, and is therefore duplicative. Furthermore, evidence of the European Disputes is likely to lead to time-consuming digressions about the trademark law and enforcement practices in each of the countries at issue. Therefore, I find that the minimal probative value of the European Disputes is outweighed by the need to conserve time and avoid the presentation of cumulative evidence. Accordingly, MFF's motion to preclude evidence related to the European Disputes is granted pursuant to Rule 403.[26]

### B.  Guess's Motion

---

[25]  Gucci-MFF Opp. Mem. at 11 n.8.

[26]  Gucci also asserts that the cease-and-desist letters are admissible to explain communications between the CEOs of Guess and MFF discussing the letters, which it believes Guess will introduce in order to shift blame to MFF. *See* Gucci-MFF Opp. Mem. at 14. Even though these communications discuss the American Disputes and the European Disputes, an in-depth exploration of the latter is not necessary to fully contextualize them. Accordingly, this argument does not affect my decisions precluding evidence of the European Disputes.

Guess argues that Gucci cannot recover "reasonable royalty" damages as a matter of law because the parties did not engage in previous licensing discussions or have a previous licensing agreement.[27] However, as noted above, such damages are available if they can be calculated based on reliable evidence.

Guess argues that the opinions of Basil Imburgia – Gucci's expert on the "reasonable royalty" issue – are "utterly speculative" and therefore unreliable for two reasons: (1) there is no "evidence of a previous licensing arrangement between the parties" and (2) Gucci admits that it would not have licensed the designs at issue if Guess approached it.[28] While Imburgia's opinions may be subject to attack via "[v]igorous cross-examination [and] presentation of contrary evidence,"[29] I am not convinced, after reviewing his report, that his opinions are so flawed as to be inadmissible.[30] Accordingly, Guess's motion to

---

[27] *See* Guess Mem. at 2.

[28] *Id.* at 4.

[29] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

[30] *See* Gucci-Guess Opp. Mem. at 10. Indeed, in the patent context, courts have found that a plaintiff's unwillingness to license supports a higher-than-normal royalty rate. *See Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1555-56 (Fed. Cir. 1995). *See also Wyers v. Master Lock Co.*, Civil No. 06-cv-00619-LTB, 2008 WL 1324422, at *3 (D. Colo. May 19, 2009); *Promega Corp. v. Lifecodes Corp.*, 53 U.S.P.Q.2d 1463, 1473 (D. Utah. 1999) (noting that plaintiff's "general policy of not granting licenses for any of the patents it held" may "weigh in favor

exclude his report and any other evidence regarding "reasonable royalty" damages is denied.[31]

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         March 13, 2012

---

of a higher royalty rate."). *But see IEX Corp. v. Blue Pumpkin Software, Inc.*, No. 4:01CV16, 2005 WL 6426934, at *2 (E.D. Tex. Dec. 14, 2005) (noting that "when the two parties were not willing or able to come to an amicable resolution, other factors must be analyzed to avoid" resting the royalty award on solely on speculative grounds.).

[31]   Gucci argues that "Guess's motion should be seen [as] another waste of Gucci's and the Court's time and resources," and that it should therefore be entitled to costs on the motion. Gucci's Memorandum in Opposition to Defendants' Motion *in Limine* to Exclude Evidence Concerning Gucci's Claim for Hypothetical Lost Royalties ("Gucci-Guess Opp. Mem.") at 1-2. Because this issue has not been fully briefed, I deny this request without prejudice to renew at a later date if necessary.

-Appearances-

**For Gucci America:**

Louis S. Ederer, Esq.
John Maltbie, Esq.
Matthew T. Salzmann, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

**For Guess?, Inc., Marc Fisher Footwear LLC, The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., Swank, Inc.,:**

Robert C. Welsh, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
(310) 553-6700

**For Guess?, Inc.:**

Andrew J. Frackman, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
(212) 326-2000

Daniel M. Petrocelli, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
(310) 553-6700

**For Marc Fisher Footwear LLC:**

Darren W. Saunders, Esq.
Hiscock & Barclay, LLP
7 Time Square
New York, New York 10036
(212) 784-5800

Alpa V. Patel, Esq.
Hiscock & Barclay, LLP
2000 HSBC Plaza, 20th Floor
Rochester, New York 14604
(585) 295-4438

**For The Max Leather Group/Cipriani Accessories, Inc. and Signal Products, Inc.:**

John T. Williams, Esq.
Hinkhouse Williams Walsh LLP
180 North Stetson Street, Suite 3400
Chicago, Illinois 60601
(312) 268-5767

**For Signal Products, Inc.:**

Kristin Marie Darr, Esq.
Steptoe & Johnson, LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
(212) 506-3900

Michael R. Heimbold, Esq.
Steptoe & Johnson, LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
(310) 734-3200

**For Swank, Inc.:**

Abigail Anne Rubinstein, Esq.

-13-

Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, District of Columbia 20036
(202) 429-3068

Paul Fields, Esq.
Karin Fromson Segall, Esq.
Leason Ellis LLP
81 Main Street, Suite 503
White Plains, New York 10601
(914) 288-0022

Atul R. Singh, Esq.
Darby & Darby, P.C.
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 527-7700