UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

GUCCI AMERICA, INC.,

          Plaintiff,

     - against -

GUESS?, INC., MARC FISHER
FOOTWEAR LLC, THE MAX
LEATHER GROUP/CIPRIANI
ACCESSORIES, INC., SEQUEL AG,
J&M ASSOCIATES L.P., VIVA
OPTIQUE, INC., SIGNAL PRODUCTS,
INC., and SWANK, INC.,

          Defendants.

------------------------------------------------ X

**ORDER**

**09 Civ. 4373 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/14/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       The Clerk of the Court is directed to docket the attached letters.

Further, the following letters shall be deemed Motions for Relief from a Judgment

or Order under Rule 60(a):  (1) the May 21, 2012 Letter from Darren W. Saunders

to the Court; (2) the May 23, 2012 Letter from Louis S. Ederer to the Court; and

(3) the May 24, 2012 Letter from Daniel M. Petrocelli to the Court.

                 SO ORDERED:

                 Shira A. Scheindlin
                 U.S.D.J.

Dated:      New York, New York
            June 14, 2012



**manatt**

manatt | phelps | phillips

**Darren W Saunders**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4600
Direct Facsimile: (212) 790-6303
E-mail: DSaunders@manatt.com

May 21, 2012

<u>**VIA FAX**</u>

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

    Re: *Gucci America, Inc. v. Guess?, Inc., et al.*
       <u>Case No. 09 Civ. 4373 (SAS)</u>

Dear Judge Scheindlin:

  We are writing to apprise the Court that in calculating the profits of MFF as to which the Court determined Gucci was entitled, it appears that the Court inadvertently used the profits number for the total SKUs of footwear that remained at issue ($1,912,098.60, see the Court's Finding of Fact No. 122) instead of the profits figure based on the SKUs found to be infringing ($435,115.38, see FF 123). In comparing FF 123 with CL 95, it appears that the Court intended to use the latter profits figure.

  MFF's expert Ronald Vollmar prepared a spreadsheet this evening in which he added the profit numbers by SKU that he provided to the Court on May 9, 2012 for those SKUs in Appendix B to the Court's opinion. This figure equals $419,890 (rounded). Mr. Vollmar's spreadsheet is attached.

  We are prepared to address this matter further with the Court at the soonest convenient time.

        Respectfully,

        Darren W. Saunders

cc: Louis Ederer, Esq. (Via Electronic Mail)
   Robert Welsh, Esq. (Via Electronic Mail)

**Marc Fisher LLC**
**2005 - 2009 Profit Analysis of Accused Products**
**(By SKU)**

| No. | Division | SKU | Mark | Total Units Sold | Total Net Sales | 2005 - 2009 Adjusted Net Profit |
|---|---|---|---|---|---|---|
| 2 | Mens | Craig2 NAMFB | Quattro G with G | 4,480 | 138,271 | 14,789 |
| 4 | Mens | Cyrus NAMFB | Quattro G with G | 2,422 | 57,353 | 6,903 |
| 5 | Mens | Dennis2 NAMFB | Striped | 2,448 | 77,485 | 9,471 |
| 5.A | | From Jan. 2005 to Mar. 2009 | | 2,448 | 77,485 | 9,471 |
| 5.B | | From Apr. 2009 to Dec. 2009 | | - | - | - |
| 6 | Mens | Dewayne BRMLE [1] | Striped/Quattro G with G | 1,846 | 54,938 | 6,109 |
| 6.A | | From Jan. 2005 to Mar. 2009 | | 1,648 | 50,963 | 5,682 |
| 6.B | | From Apr. 2009 to Dec. 2009 | | 198 | 3,975 | 427 |
| 7 | Mens | Donte2 BRMLE | Quattro G with G | 6,760 | 222,325 | 25,242 |
| 8 | Mens | Farley BRMLE | Quattro G with G | 1,300 | 43,553 | 4,770 |
| 9 | Mens | Farley MBRLE | Quattro G with G | 1,020 | 19,517 | 1,692 |
| 10 | Mens | JayJay2 NAMFB | Quattro G with G | 4,910 | 71,206 | 6,301 |
| 11 | Mens | Jerry2 NAMFB | Quattro G with G | 4,338 | 102,877 | 11,858 |
| 12 | Mens | Jerry2-UG NAMFB | Quattro G with G | 612 | 14,708 | 1,703 |
| 13 | Mens | Johnson NAMFB [1] | Striped/Quattro G with G | 287 | 7,292 | 862 |
| 13.A | | From Jan. 2005 to Mar. 2009 | | 273 | 6,931 | 819 |
| 13.B | | From Apr. 2009 to Dec. 2009 | | 14 | 361 | 43 |
| 14 | Mens | Johnson2 BRMFB [1] | Striped/Quattro G with G | 10 | 275 | 34 |
| 15 | Mens | Kaloon BRMFB | Quattro G with G | 2,478 | 73,959 | 9,165 |
| 16 | Mens | Macario BRMLE [1] | Striped/Quattro G with G | 2,640 | 75,157 | 9,191 |
| 18 | Mens | Melrose DBRLE [1] | Striped/Quattro G with G | 4,821 | 163,557 | 18,878 |
| 18.A | | From Jan. 2005 to Mar. 2009 | | 3,679 | 134,482 | 15,443 |
| 18.B | | From Apr. 2009 to Dec. 2009 | | 1,142 | 29,075 | 3,435 |
| 20 | Mens | Melrose2 NAMFB [1] | Striped/Quattro G with G | 20,489 | 670,473 | 79,997 |

05/21/2012 19:43 FAX 212 790 4545          MANATT, PHELPS, PHILLIPS          ☒004/005

| No. | Division | SKU | Mark | Total Units Sold | Total Net Sales | 2005 - 2009 Adjusted Net Profit |
|---|---|---|---|---|---|---|
| 21 | Mens | Melrose4 NAMFB | Quattro G with G | 2,525 | 81,042 | 8,770 |
| 22 | Mens | Mette BRMFB [1] | Striped/Quattro G with G | 2,926 | 106,285 | 12,439 |
| 22.A | | From Jan. 2005 to Mar. 2009 | | 2,645 | 95,971 | 11,096 |
| 22.B | | From Apr. 2009 to Dec. 2009 | | 281 | 10,314 | 1,343 |
| 23 | Mens | Orion BRMFB | Quattro G with G | 1,171 | 35,676 | 3,974 |
| 24 | Mens | Pacific BRMLE | Quattro G with G | 818 | 27,028 | 3,436 |
| 26 | Mens | Phyre2 NAMFB | Quattro G with G | 2,551 | 98,459 | 11,183 |
| 27 | Mens | Player2 BRMFB | Quattro G with G | 588 | 16,347 | 1,689 |
| 28 | Mens | Rogan BRMFB | Quattro G with G | 5,438 | 148,485 | 15,240 |
| 29 | Mens | Silas2 BRMFB | Quattro G with G | 4,936 | 71,834 | 5,022 |
| 30 | Mens | Turbow NAMFB [1] | Striped/Quattro G with G | 3,333 | 59,343 | 6,010 |
| 30.A | | From Jan. 2005 to Mar. 2009 | | 1,225 | 21,815 | 2,209 |
| 30.B | | From Apr. 2009 to Dec. 2009 | | 2,108 | 37,528 | 3,801 |
| 31 | Mens | Twister NAMFB | Striped | 7,264 | 92,098 | 7,235 |
| 32 | Mens | Vieno2 BRMFB | Quattro G with G | 2,543 | 78,539 | 9,821 |
| 35 | Womens | Adeline BLMPA | Quattro G with G | 2,004 | 58,666 | 10,287 |
| 36 | Womens | Adeline BRMPA | Quattro G with G | 1,008 | 30,397 | 5,419 |
| 41 | Womens | Arabella2 NAMFB | Quattro G with G | 810 | 22,149 | 3,570 |
| 45 | Womens | Blair2 BRMFB | Quattro G with G | 1,710 | 50,474 | 8,190 |
| 54 | Womens | Effort BRMLE | Quattro G with G | 2,001 | 64,359 | 7,968 |
| 71 | Womens | Gratifia BRMFB | Quattro G with G | 4,812 | 107,351 | 12,525 |
| 72 | Womens | Gratifia NAMFB | Quattro G with G | 1,533 | 32,073 | 3,692 |
| 73 | Womens | Hao BRMFB | Quattro G with Hearts | 24 | 622 | 74 |
| 83 | Womens | Ireland BRMFB | Quattro G with Hearts | 36 | 878 | 104 |
| 103 | Womens | Jerica NAMFB | Quattro G with G | 3,495 | 87,999 | 10,739 |
| 112 | Womens | Kessie DBRFB | Quattro G with G | 1,860 | 47,743 | 7,648 |
| 113 | Womens | Kessie LBRFB | Quattro G with G | 1,266 | 32,212 | 5,155 |
| 125 | Womens | Looly DBRFB | Quattro G with G | 2,232 | 53,818 | 8,566 |
| 126 | Womens | Looly LBRFB | Quattro G with G | 1,836 | 45,949 | 7,342 |
| 140 | Womens | Pastrana BRMFB | Quattro G with G | 3,138 | 107,543 | 17,651 |

| No. | Division | SKU | Mark | Total Units Sold | Total Net Sales | 2005 - 2009 Adjusted Net Profit |
|-----|----------|-----|------|------------------|-----------------|----------------------------------|
| 164 | Womens | Tripod NAMFB | Quattro G with Hearts | 6,393 | 130,341 | 19,176 |
| | | Total | | $ 129,112 | $ 3,480,657 | $ 419,890 |

# ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

May 21, 2012

**VIA FAX**

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

Re:    *Gucci America, Inc. v. Guess?, Inc., et al.*
        Case No. 09 Civ. 4373 (SAS)

Dear Judge Scheindlin:

      We hereby respond to Mr. Saunders' letter of earlier this evening. On behalf of the Plaintiff, we are in the process of reviewing the profit calculation as well, and may need to address the Court with respect to the same. We will be reviewing the calculation with our damages expert and will revert as soon as we can. In the meantime, we ask that the Court withhold any action on Mr. Saunders' application until we have had time to complete our review.

      Thank you for your consideration

                Respectfully,

                Arnold & Porter LLP

                By: *Louis S. Ederer*
                    Louis S. Ederer

Cc:    Darren W. Saunders, Esq. (by email)
       Robert Welsh, Esq. (by email)

# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

May 23, 2012

**VIA HAND DELIVERY**
The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

      Re:    <u>Gucci America, Inc. v. Guess?, Inc., et al., 09-cv-4373 (S.D.N.Y.) (SAS)</u>

Dear Judge Scheindlin:

On behalf of Plaintiff Gucci America, Inc. ("Gucci"), we write in furtherance of our letter of May 21, 2012.

On reviewing the monetary award portion of the Court's May 21, 2012 decision, we note the following mathematical calculation errors:

    1)    In ¶¶94-95 of its Conclusions of Law, the Court "concludes[s] that Defendants intentionally and willfully copied the Quattro G Pattern executed in brown/beige colorways". It then goes on, at Appendices A (non-footwear products) and B (footwear products), to list products in those colorways that were to be included in the profits award, including, in Appendix A, non-footwear products in colorways entitled "Brown", "Bronze", "Camel", "Cognac", "Mocha", "Moose" and "Stone". However, on reviewing the complete list of accused products, Gucci finds that there are many other Quattro G Pattern products in these same identified "brown/beige colorways" that were not included in the Court's Appendices; indeed, in some instances Gucci was awarded profits on one of the SKU's in a particular brown/beige colorway, but not another (*see, e.g.,* on Appendix A, SKU No. SI219531, where Gucci was awarded profits on Signal Products' sales of the "Brown" colorway, but not the "Moose" colorway).

Attached to this letter as Schedule A is a list of all accused Quattro G Pattern products in the identified "brown/beige colorways" that were not included in Appendices A and B. Examples of such handbag and footwear products appear below:

Hon. Shira A. Scheindlin
May 23, 2012
Page 2



JericaGOMFB[1]



Atomic Logo - SI605104 (Moose)

Gucci respectfully submits that it was the Court's intention to award the licensee defendants' (Signal Products, Marc Fisher, Max Leather and Swank) profits on their sales of the additional products listed on Schedule A, as they meet all the same criteria as the products included in Appendices A and B. As shown on the attached Schedule B, pp. B2-B17, such additional profits total $1,632,840.[2]

  2)    While the Court said, in ¶94 of its Conclusions of Law, that it intended to include, in its award of profits, Guess's profits on its retail sales of infringing Quattro G Pattern products, in fact no such profits were included in the calculation. With respect to infringing Quattro G Pattern footwear and other non-handbag products in the "brown/beige colorways", as indicated on the attached Schedule B, pp. B21-B23, Guess's total retail sales of such products were $997,476, and its profits on such sales amount to $306,578.

  With respect to infringing Quattro G Pattern handbag products, while Guess did not provide a breakdown of its retail handbag sales by color, its purchases and sales of such products can be determined with reasonable certainty by applying the ratios of Signal Products' sales of infringing handbags in the "brown/beige colorways" (which include sales to Guess) to sales of handbags in non-" brown/beige colorways", calculated on a SKU by SKU basis (*see* attached Schedule B, pp. B24-B26). Using these ratios, Guess's total retail sales of infringing Quattro G Pattern handbag products were $5,467,251, and the profits it earned on such sales were $2,102,538 (*see* attached Schedule B, pp. B18-B20).

  As the Court did not include any of these profits earned by Guess in its monetary award, even though even though the decision is clear that the Court intended to do so, they should now

---

[1] The "Jerica" shoe depicted above is another example of a product the Court included in its Appendix B and profit calculation in one infringing "brown/beige colorway" but not in another, even though both shoes were presented to the Court in the Gucci's post-trial submission. Photographs of the "Jerica" shoe that was included in the Court's profit calculation (NAMFB), and the one that was not (GOMFB), appear in Schedule C attached hereto.

[2] All sales and profit figures appearing on the attached Schedule B are through the year 2009.

Hon. Shira A. Scheindlin
May 23, 2012
Page 3

be included.  As shown on page B1 of Schedule B, the total profits award under the decision should be $7,022,568.

      We thank the Court for its consideration.  We are prepared to conference these issues at the Court's convenience.

                      Respectfully,

                      ARNOLD & PORTER LLP

                      By: _____

                          Louis S. Ederer

Enclosures
cc:  All counsel (*via e-mail*)



**manatt**

manatt | phelps | phillips

**Darren W Saunders**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4600
Direct Facsimile: (212) 790-6303
E-mail: DSaunders@manatt.com

May 24, 2012

<u>**VIA ELECTRONIC MAIL AND FACSIMILE**</u>

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

        Re:    *Gucci America, Inc. v. Guess?, Inc., et al.*
               Case No. 09 Civ. 4373 (SAS)

Dear Judge Scheindlin:

      On behalf of Marc Fisher LLC ("MFF"), we write in response to Gucci America, Inc.'s ("Gucci") letter of May 23, 2012.

      Gucci contends that the Court's Opinion and Order dated May 21, 2012 contains "mathematical calculation errors" and that the Court should have included 15 additional footwear SKUs in its profits award. For the reasons set forth below, we disagree with most of Gucci's contentions. Further, there were four SKUs included in Appendix B to the Opinion and Order which should be removed, as briefly explained on page 3 below.

| | |
|---|---|
| Curtis (BRMFB) | This is a men's sandal having a narrow strip of Quattro G jacquard fabric, cut such that the Gs are not visible at each of the corners. Instead, the Quattro G mark and dashed lines become the only visible features of the repeating pattern. |
| Kissing (BRMFB, GOMFB, DBRFB) | The Quattro G pattern appears on the insole, such that the pattern is not visible when the shoes are worn. The strips of fabric on the foot strap are so narrow that the Quattro G pattern is not discernible. |



**manatt**
manatt | phelps | phillips

Honorable Shira A. Scheindlin
May 24, 2012
Page 2

| Tatyanna (BRMFB) | This is a women's open toe wedge shoe with lacing detail and a large bow in the front that obscures much of the fabric.  Overall, the Quattro G design is barely visible and the ornamentation is consistent with the Guess image. |
| --- | --- |
| Actor (BRMFB) | This is an open toe women's shoe with a narrow strip of jacquard Quattro G with hearts fabric that contains a bow and rhinestone studded "G" ornament.  The ornamentation is consistent with Guess' image not Gucci's. (See Conclusions of Law ¶ 52.)  In addition, see discussion below concerning Quattro G with hearts. |
| Jannie (DBRFB, LBRFB) | The amount of jacquard fabric on this shoe is so limited that the Quattro G with diamond repeating pattern is not visible. |
| Jerrica (GOMFB) | MFF does not object to inclusion of this SKU. |
| Peachy (GOMFB) | See comments to Kissing, above. |
| Boris2 (NAMFB) | MFF does not object to inclusion of this SKU. |
| Phreedom2 (NAMFB) | This men's sneaker style bears a GUESS embossed, leather strip prominently placed on the outer side of the shoe. |
| Bali (NAMFB) | The design, detailing and overall appearance of this shoe is such that no appreciable number of post-sale onlookers would confuse this shoe with Gucci. |
| Lite (NAMFB) | See comments to Actor, above. |
| Piper (NAMFB) | This shoe contains a large G ornament, along with other ornamentation such that the shoe is consistent with the Guess image and is not likely to be confused with Gucci. |



**manatt**
manatt | phelps | phillips

Honorable Shira A. Scheindlin
May 24, 2012
Page 3

<u>Adeline in Black/Beige Colorway</u>

It appears that the Court inadvertently included one SKU that is not a beige/brown colorway, the Adeline (BLMPA). This is a black/beige colorway. In view of the Court's conclusion that there is no likelihood of confusion with regard to non-brown/beige Quattro G colorways (Conclusions of Law ¶ 52), this SKU should be removed from Appendix B.

<u>Quattro G with Hearts</u>

The Court included three styles (Hao, Ireland and Tripod) that bore a Quattro G with hearts pattern. However, the Court did not find this design to infringe Gucci's trademark or trade dress rights. On the contrary, the Court found that the use of a Quattro G pattern without Gs in the corners is permissible. Clearly, the Quattro G with hearts does not have Gs in the corners. Moreover, the Court found that the pattern was adopted for use several months before Gucci came out with a version of its repeating GG design with hearts. (Opinion at p. 18 n. 62.) Accordingly, these three styles should be removed from Appendix B.

<u>Final Profits Calculation</u>

In view of the foregoing, MFF submits that the final profits calculation on sales of footwear SKUs found to be infringing should consist of those SKUs included in Appendix B to the Opinion and Order, excluding the black/beige Adeline and the three Quattro G with hearts SKUs (Hao, Ireland and Tripod), but including the SKUs Jerrica, GOMFB and Borris2, NAMFB, for total profits of $409,452.00. Attached as Exhibit A hereto is a revised schedule of profits for MFF Guess Footwear prepared by MFF's financial expert Ronald Vollmar.

Respectfully,

Darren W. Saunders

cc:  All Counsel (via email)

Enclosure

200459232.1

**Marc Fisher LLC**
**2005 - 2009 Profit Analysis of Accused Products**
**(By SKU)**

| No. | Division | SKU | Mark | Total Units Sold | Total Net Sales | 2005 - 2009 Adjusted Net Profit |
|---|---|---|---|---|---|---|
| 1 | Mens | Boris2 NAMFB | Quattro G with G | 3,479 | $ 124,432 | $ 14,434 |
| 2 | Mens | Craig2 NAMFB | Quattro G with G | 4,480 | 138,271 | 14,789 |
| 4 | Mens | Cyrus NAMFB | Quattro G with G | 2,422 | 57,353 | 6,903 |
| 5 | Mens | Dennis2 NAMFB | Striped | 2,448 | 77,485 | 9,471 |
| 6 | Mens | Dewayne BRMLE [1] | Striped/Quattro G with G | 1,846 | 54,938 | 6,109 |
| 7 | Mens | Donte2 BRMLE | Quattro G with G | 6,760 | 222,325 | 25,242 |
| 8 | Mens | Farley BRMLE | Quattro G with G | 1,300 | 43,553 | 4,770 |
| 9 | Mens | Farley MBRLE | Quattro G with G | 1,020 | 19,517 | 1,692 |
| 10 | Mens | JayJay2 NAMFB | Quattro G with G | 4,910 | 71,206 | 6,301 |
| 11 | Mens | Jerry2 NAMFB | Quattro G with G | 4,338 | 102,877 | 11,858 |
| 12 | Mens | Jerry2-UG NAMFB | Quattro G with G | 612 | 14,708 | 1,703 |
| 13 | Mens | Johnson NAMFB [1] | Striped/Quattro G with G | 287 | 7,292 | 862 |
| 14 | Mens | Johnson2 BRMFB [1] | Striped/Quattro G with G | 10 | 275 | 34 |
| 15 | Mens | Kaloon BRMFB | Quattro G with G | 2,478 | 73,959 | 9,165 |
| 16 | Mens | Macario BRMLE [1] | Striped/Quattro G with G | 2,640 | 75,157 | 9,191 |
| 18 | Mens | Melrose DBRLE [1] | Striped/Quattro G with G | 4,821 | 163,557 | 18,878 |
| 20 | Mens | Melrose2 NAMFB [1] | Striped/Quattro G with G | 20,489 | 670,473 | 79,997 |
| 21 | Mens | Melrose4 NAMFB | Quattro G with G | 2,525 | 81,042 | 8,770 |
| 22 | Mens | Mette BRMFB [1] | Striped/Quattro G with G | 2,926 | 106,285 | 12,439 |
| 23 | Mens | Orion BRMFB | Quattro G with G | 1,171 | 35,676 | 3,974 |
| 24 | Mens | Pacific BRMLE | Quattro G with G | 818 | 27,028 | 3,436 |
| 26 | Mens | Phyre2 NAMFB | Quattro G with G | 2,551 | 98,459 | 11,183 |
| 27 | Mens | Player2 BRMFB | Quattro G with G | 588 | 16,347 | 1,689 |
| 28 | Mens | Rogan BRMFB | Quattro G with G | 5,438 | 148,485 | 15,240 |
| 29 | Mens | Silas2 BRMFB | Quattro G with G | 4,936 | 71,834 | 5,022 |
| 30 | Mens | Turbow NAMFB [1] | Striped/Quattro G with G | 3,333 | 59,343 | 6,010 |

| No. | Division | SKU | Mark | Total Units Sold | Total Net Sales | 2005 - 2009 Adjusted Net Profit |
|---|---|---|---|---|---|---|
| 31 | Mens | Twister NAMFB | Striped | 7,264 | 92,098 | 7,235 |
| 32 | Mens | Vieno2 BRMFB | Quattro G with G | 2,543 | 78,539 | 9,821 |
| 36 | Womens | Adeline BRMPA | Quattro G with G | 1,008 | 30,397 | 5,419 |
| 41 | Womens | Arabella2 NAMFB | Quattro G with G | 810 | 22,149 | 3,570 |
| 45 | Womens | Blair2 BRMFB | Quattro G with G | 1,710 | 50,474 | 8,190 |
| 54 | Womens | Effort BRMLE | Quattro G with G | 2,001 | 64,359 | 7,968 |
| 71 | Womens | Gratifia BRMFB | Quattro G with G | 4,812 | 107,351 | 12,525 |
| 72 | Womens | Gratifia NAMFB | Quattro G with G | 1,533 | 32,073 | 3,692 |
| 103 | Womens | Jerica NAMFB | Quattro G with G | 3,495 | 87,999 | 10,739 |
| 102 | Womens | Jerica GOMFB | Quattro G with G | 1,434 | 39,142 | 4,769 |
| 112 | Womens | Kessie DBRFB | Quattro G with G | 1,860 | 47,743 | 7,648 |
| 113 | Womens | Kessie LBRFB | Quattro G with G | 1,266 | 32,212 | 5,155 |
| 125 | Womens | Looly DBRFB | Quattro G with G | 2,232 | 53,818 | 8,566 |
| 126 | Womens | Looly LBRFB | Quattro G with G | 1,836 | 45,949 | 7,342 |
| 140 | Womens | Pastrana BRMFB | Quattro G with G | 3,138 | 107,543 | 17,651 |
| | | **Total** | | $   125,568 | $   3,453,724 | $   409,452 |

O

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

May 24, 2012

OUR FILE NUMBER
340,980-49

## VIA EMAIL

WRITER'S DIRECT DIAL
(310) 246-6850

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street - Room 1620
New York, New York 10007

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:   *Gucci America, Inc. v. Guess?, Inc., et al., Case No. 09 CV 4373 (SAS)*

Dear Judge Scheindlin:

On behalf of Guess and the licensee defendants we represent (collectively, "Defendants"), we write in response to the letter that Gucci submitted to the Court on May 23, 2012, concerning the Court's profits award in its May 21, 2012 Opinion and Order ("Opinion").

Gucci submitted its letter for the stated purpose of identifying and correcting asserted "mathematical calculation errors" in the Court's award. Far from doing so, Gucci seeks to add **165** additional SKUs to the Court's infringement, dilution, and damages award findings and conclusions. Gucci's request—after the close of evidence and argument and after the Court's decision and Opinion—is improper and contrary to the Court's directions to the parties in the telephonic conference conducted on Tuesday, May 22. We respectfully submit that Gucci's request should be denied.

The Opinion is explicit that in analyzing Gucci's claims, the Court "exhaustively review[ed] the photos and exemplars of accused products submitted post-trial." Order, § II. ¶ 82. The Opinion is equally clear that with regard to the Quattro G, only "Guess's use of the Quattro G Pattern in brown/beige colorways *on the SKUs listed in Appendix A*" infringes Gucci's marks. *Id.*, § III. ¶ 69 (emphasis added). The Court's dilution findings likewise state that "Defendants' use of the Quattro G Pattern in brown/beige colorways – *limited to the SKUs in Appendix A* – is likely to cause dilution of the Diamond Motif Trade Dress by blurring." *Id.*, § III. ¶ 88 (emphasis added).

The Court's Opinion describes the various elements frequently featured on Guess products that "generally succeed in communicating the 'Guess Girl' image," including "bright and/or neon colors, [and] garish or 'bling-y' hardware." *Id.*, § III. ¶ 52. In particular, "[t]he

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, May 24, 2012 - Page 2

Guess style makes frequent use of 'loud' colors, exaggerated fabric details, and embellishments such as rhinestones. These act as indicators that Guess is the source of the product." *Id.*, § II. ¶ 20. These and other findings and conclusions make clear that the Court analyzed the submitted product images and samples based not only on the colors displayed, but also on other indicia such as the hardware, embellishments, and fabric details contained on the products. Based on this careful review, the Court identified 190 specific SKU product-color combinations that it found to be infringing. *See* Order, Appendices A and B.

Gucci seeks to nearly double the number of infringing products, based on financial data pulled from spreadsheets *without* reference to any images or product samples presented to the Court or other record evidence (save for one reference to a photo image of a "Jerica" shoe in Gucci's post-trial submission). Notably, of the 165 SKUs listed in Gucci's Schedule A, we have been unable to find product images for approximately 120 of those SKUs (*i.e.*, specific product-color combinations) in the binders that Gucci provided to the Court.[1] Gucci's Schedule A also includes several SKUs that clearly are not brown-beige, for example, the chocolate-colored SKUs shown below:

  

**MOC SP201507**       **MOC SP201524**       **BRO VY216212**

In short, the Court has already exhaustively reviewed the product images and samples in the record, and there is no basis to grant Gucci's request for the Court to repeat the same exercise. Gucci's request that the Court make 165 new infringement/dilution determinations should be denied.

As to any purported profits calculations for Guess's retail handbag sales, the issue is not any mathematical error by the Court, but a failure of proof by Gucci. As acknowledged in its letter, Gucci can point to no evidence in the record breaking down Guess's retail handbag sales by color. (*See* Gucci's 5/23/12 Letter at p.2.) Instead, Gucci premises its computations on two assumptions: that the specific SKUs (*i.e.*, handbag product-color combinations) listed in Appendix A were sold in Guess's retail stores; and that Guess sold those specific SKUs in the same ratios as Signal's wholesale division. Gucci cites no evidence in the record to warrant either assumption.

---

[1] For another 15 SKUs, the image copies contained in the Gucci binders that we received were too poor in quality to discern the actual product color.

2

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, May 24, 2012 - Page 3

        From the outset of this lawsuit, Gucci asserted a trade dress claim specific to the use of
brown-beige colorways on Guess Quattro G handbags.  Throughout nearly three years of
litigation, Gucci had ample opportunity to develop evidence concerning the color breakdowns of
Quattro G bags.  Even at trial, several Guess witnesses—including Mr. Marciano, Ms.
McManus, Ms. Kramer, and Mr. Bowers—were made available for live examination by Gucci's
counsel.  Yet at trial Gucci did not inquire or otherwise seek to elicit evidence about the
breakdown of Quattro G colorways sold by Guess retail.  As a result, Gucci failed to carry its
burden of proof concerning the sales of any specific infringing handbag SKUs sold by Guess,
and Gucci's profits assumptions and calculations should be disregarded.  *See American Honda
Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) (trademark plaintiff
bears the burden of proving defendant's gross sales).

        In contrast to handbags, the record does contain evidence of Guess's retail profits for the
belt and footwear identified in the Court's list of infringing SKUs.  As to the infringing belt,
Guess's retail profits were $40,545.  As to the infringing footwear, Guess's retail profits were
$107,925.  *See* Gucci's 5/23/12 Letter, Schedule B, at B21-B22.  Combined, these figures would
add an additional $148,470 to the Court's profits award based on Guess's retail sales.
Accordingly, at the very most, we respectfully submit that any modification to the Court's award
should be limited to the addition of $148,470 in profits attributable to Guess's retail sales of the
belt and footwear SKUs identified in Appendices A and B of the Court's Opinion.

                                    Respectfully submitted,

                                    Daniel M. Petrocelli
                                    of O'MELVENY & MYERS LLP


cc:  Louis S. Ederer, Esq. (via email)
     Mathew T. Salzmann
     Arnold & Porter LLP
     399 Park Avenue
     New York, New York  10022
     *(louis.ederer@aporter.com)*
     *(matthew.salzmann@porter.com)*
     *Attorneys for Plaintiff Gucci America, Inc.*

3

O'MELVENY & MYERS LLP

The Honorable Shira A. Scheindlin, May 24, 2012 - Page 4

Mark I. Peroff (via email)
Darren W. Saunders
Manatt, Phelps & Phillips LLP
7 Times Square
New York, New York 10036
*(mperoff@manatt.com)*
*(dsaunders@manatt.com)*
*Attorneys for Defendant Marc Fisher Footwear LLC*

Paul Fields (via email)
Leason Ellis LLP
One Barker Avenue, Fifth Floor
White Plains, NY 10601
*(fields@leasonellis.com)*
*Co-counsel for Defendant Swank, Inc.*

John T. Williams (via email)
Hinkhouse Williams Walsh LLP
180 North Stetson, Suite 3400
Chicago, IL 60601
*(jwilliams@hww-law.com)*
*Co-counsel for Defendant The Max Leather/Cipriani Accessories, Inc.*

William Pecau (via email)
Steptoe & Johnson LLP
1330 Connecticut Avenue Northwest
Suite 700
Washington, D.C. 20036
*(wpecau@steptoe.com)*
*Co-counsel for Defendants Signal Products, Inc.*



## ARNOLD & PORTER LLP

Louis S. Ederer
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

May 25, 2012

**VIA FACSIMILE**
The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

      Re:    Gucci America, Inc. v. Guess?, Inc., et al., 09-cv-4373 (S.D.N.Y.) (SAS)

Dear Judge Scheindlin:

On behalf of Plaintiff Gucci America, Inc. ("Gucci"), we write in response to the May 24, 2012 letters from defendants' counsel.

Gucci's response to counsel's letters is simple. In its May 21, 2012 Opinion and Order, the Court clearly intended to award — and, indeed, indicated that it had awarded — profits on sales by *all* defendants (including Guess) of *all* Quattro G Pattern products in "brown/beige colorways" (*see* ¶¶52 and 94-95 of Conclusions of Law). However, due to a calculation error, the Court's profits award did not do so, in two ways: first, the Court's lists of "brown/beige colorway" SKUs in Appendices A and B to the Opinion did not include all SKUs sold in "brown/beige colorways"; and second, the Court's profits award did not include profits earned by Guess on its own retail sales. As shown in Schedule B to Gucci's May 23, 2012 letter, unless these errors are corrected, the profits award will be understated by nearly $4 million.

Defendants' counsel's May 24 letters implicitly concede that Gucci is right. Indeed, Guess's counsel's letter is a transparent attempt to justify an unexpected, and undeserved, multi-million dollar windfall to his client, which the Court found to have deliberately copied Gucci's trademarks, and which has been ordered to disgorge its profits. Instead of arguing, which he cannot, that the Court did not fail to include Guess's ill-gotten profits in its award, counsel argues that this was the Court's considered decision; however, clearly the Court states otherwise in the Opinion, where it indicates that it intended to include — and indeed believed it had included — Guess's profits in its award. Guess also does not contest, except in three minor instances,[1] that Gucci's list of "brown/beige colorway" products not included in Appendix A are

---

[1] As for the three "Mocha" and "Brown" color products Guess displays in its letter, the reference to such products supports Gucci's position, as clearly these products are in the "brown/beige

Footnote continued on next page

Hon. Shira A. Scheindlin
May 25, 2012
Page 2

in fact "brown/beige colorway" products, instead arguing once again that the Court made a considered decision not to include them, when it is obvious, as shown in Gucci's May 23 letter, that these additional products were not deliberately excluded. Guess also argues that the Court should not now include these additional products because photos of them in their brown/beige color designations do not exist. However, aside from the fact that many of these photos are available, and clearly show that these products are in "brown/beige colorways" that is not the point — the point is that at trial, defendants conceded, in an effort to control and minimize the damage, that certain handbag colorways were in the "brown/beige colorway" family (Alexander Statement, ¶33), and the Court deliberately adopted that approach in deciding which handbag styles to include in its profit calculation. Accordingly, Gucci is not, as Guess's counsel claims, asking the Court to "make 165 new infringement determinations"; rather, it asks the Court to include all products it says it intended to include, and which it has already determined to be infringing, in its profits calculation.[2]

As for Guess's argument that the Court should not award profits on Guess's retail sales of handbags in "brown/beige colorways" because Guess's records were not kept in such a way that its handbag sales in a particular colorway can be determined,[3] Gucci's response is simple. Guess should not be rewarded — and Gucci should not be penalized — for Guess's sale of handbags that featured willful, intentional copies of Gucci's trademarks simply because Guess failed to maintain sales records that lent themselves to calculating profits the way the Court decided to calculate them. Gucci has provided the Court with the most accurate way to calculate Guess's sales of handbag products in the offending colorways,[4] and the Court should adopt that approach

---

Footnote continued from previous page
colorways" found to be infringing by the Court, which is why the Court included 68 "Mocha" and "Brown" color products in Appendix A to its Opinion.

[2] As for Mr. Saunders' letter on behalf of Marc Fisher, he too concedes that the Court did not include many infringing "brown/beige colorway" products in Appendix B to the Opinion. However, his arguments for why certain "brown/beige colorway" SKUs should be removed from Appendix B do not withstand analysis, as these SKUs contain the very design the Court found that Marc Fisher deliberately copied from Gucci.

[3] We note Guess's new argument, in its May 24 letter, that Gucci never called for production of Guess's sales records broken down to the SKU or color level. This is not only belied by the facts, but is contrary to counsel's statement, in the May 23 conference call with the Court, that Guess *did not maintain* handbag sales records broken down that way. In fact, Gucci's Third Set of Requests for Production of Documents, dated August 2010, called for Guess to break down its sales of handbags, footwear and other accessory products alleged to infringe Gucci's Diamond Motif Trade Dress (which, Guess concedes in its May 24 letter, is a "claim specific to the use of brown-beige colorways") on a SKU by SKU basis, and thereafter Guess produced sales records by SKU/colorway for all non-handbag products, but not for handbags (since its own records were not kept that way). The suggestion that Guess's failure to produce handbag sales information broken down by colorway is somehow Gucci's fault is simply a misstatement of the record in case.

[4] In that regard, Gucci notes that its calculation of Guess's profits on retail sales of "brown/beige colorway" handbags is consistent with the testimony at trial that "among the Quattro G handbags

Footnote continued on next page

Hon. Shira A. Scheindlin
May 25, 2012
Page 3

and award profits on those sales, as it believed it had already done, rather than allowing Guess to
keep a $2 million windfall. As the Court stated in *Fendi Adele S.R.L. v. Burlington Coat Factory
Warehouse*, 689 F. Supp. 2d 585 (S.D.N.Y. 2010), in response to the very same argument Guess
is making here:

> Plainly, the determination of the amount to be disgorged in order to …. deter
> future violations of the law is not an exact science. *First Jersey Sec., Inc.*, 101
> F.3d at 1475 (disgorgement amount need only be a "reasonable approximation of
> profits causally connected to the violation" (quoting *SEC v. Patel*, 61 F.3d 137,
> 139 (2d Cir. 1995))). During this process, doubts should generally be resolved
> against the wrongdoer. *Id.* ("any risk of uncertainty [in calculating
> disgorgement] should fall on the wrongdoer whose illegal conduct created that
> uncertainty" (alteration in original) (quoting *Patel*, 61 F.3d at 139)); *Aimsi Tech.,
> Inc.*, 650 F. Supp. 2d at 304-05 (citing *id.*); *Acticon Tech.*, 2008 WL 356872, at *2
> (where damages for willful patent infringement are uncertain because of
> inadequacy of evidence available from infringer, doubts must be resolved against
> the infringer) (internal citations omitted).

689 F. Supp. 2d at 621.

Accordingly, for all the foregoing reasons, the Court should not let defendants keep the
profits from their willful infringement of Gucci's marks; rather, it should amend its Opinion and
Order to include all offending "brown/beige colorway" SKUs on Appendices A and B, and
award all of the defendants' profits, including Guess's profits on its retail sales, in the total
amount of $7,022,568.

We thank the Court for its consideration.

Respectfully,

ARNOLD & PORTER LLP

By: _Louis Edward Jacobs_
Louis S. Ederer

cc:  All counsel (*via e-mail*)

Footnote continued from previous page
sold in the U.S., 22.4% appeared on a beige or near-beige background". Alexander Statement,
¶33.



**manatt**
manatt | phelps | phillips

**Darren W Saunders**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4600
Direct Facsimile: (212) 790-6303
E-mail: DSaunders@manatt.com

June 4, 2012

**VIA HAND DELIVERY**

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York  10007

      Re: *Gucci America, Inc. v. Guess?, Inc., et al.*
         Case No. 09 Civ. 4373 (SAS)

Dear Judge Scheindlin:

   In response to the Court's email of May 31, 2012, we enclose on behalf of Marc Fisher
LLC a set of images of the footwear products referenced in Appendix B to the Court's May 21,
2012  opinion ("Appendix B") and Schedules A and B to Gucci's May 23, 2012 letter
("Schedules A and B") that were in a brown/beige colorway.  We have endeavored to provide
the best available images that could be located.  In three instances, no image could be located for
the particular SKU requested by the Court, however, a representative image of that style is
provided as indicated in the enclosed binder.

   In addition, for the Court's convenience, we provide a chart with brief comments
regarding the reasons why:  (1) certain SKUs should be removed from Appendix B; and (2)
certain SKUs identified in Schedules A and B should not be included in an amended Appendix
B.  This chart incorporates MFF's comments contained in our May 24, 2012 letter.

           Respectfully,

           Darren W. Saunders

cc:  Louis Ederer, Esq. (Via Hand Delivery w/enclosures)
   Robert Welsh, Esq. (Via Federal Express w/enclosures)
   All Other Counsel (Via Electronic mail w/o enclosures)

7 Times Square, New York, New York  10036  Telephone: 212.790.4500  Fax: 212.790.4545

Albany  |  Los Angeles  |  New York  |  Orange County  |  Palo Alto  |  Sacramento  |  San Francisco  |  Washington, D.C.

ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

June 4, 2012

**VIA HAND DELIVERY**
The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

Re:    Gucci America, Inc. v. Guess?, Inc., et al., 09-cv-4373 (S.D.N.Y.) (SAS)

Dear Judge Scheindlin:

On behalf of Plaintiff Gucci America, Inc. ("Gucci"), we write in follow-up to the telephone conference held on May 30, 2012, and further to Your Honor's instruction, in your Clerk's May 31, 2012 e-mail, that Gucci make a revised submission showing, "for each product line referenced in either the Appendices to the bench opinion or Schedule B of Gucci's 5/23/12 letter, at least one image…for each color that is in a beige/brown colorway."

Together with this letter, we are submitting a hard copy binder which contains, at Schedule A, for each Guess handbag group featuring the Quattro G Pattern, a photograph of at least one handbag in each of the brown/beige colorways that Gucci contends should be included in the Court's profits calculation. Thus, taking the "Antonia" handbag group, for example, documents produced by Signal Products, Inc. ("Signal"), Guess's handbag licensee, indicate that the various handbag styles in that group were available in the color "Brown", which, as the Court can see, contained or consisted of a brown/beige colorway. We have therefore included a photograph of one "Antonia" handbag style in the color "Brown" for the Court's reference. In addition, we have included, for each handbag group, a list of SKUs (also known as "Styles") within that group which, according to records produced by Defendants, were sold in that color designation (and, accordingly, that colorway) — in the case of the "Antonia" group, there were twelve such SKUs. Most of the images included in Schedule A were extracted from exhibits in evidence at trial, and the corresponding trial exhibit number is included in each such instance.[1]

---

[1] In addition to the hard copy binder, we are providing the Court with a CD-rom containing the images therein. As the Court will see, the quality of some hard copy photographs has become degraded through repeated color printing, and in some instances the colors no longer appear to coincide with the original product colors. For example, some products designated as "Brown" may now appear to have a reddish or greenish tinge. In certain cases, however, the colors may be seen better when viewed electronically.

As the Court is aware, Signal's line sheets for its various Quattro G handbag groups, which were presented to the Court in Gucci's first post-trial binder, also contain examples of brown/beige colorways within these handbag groups, although they do not necessarily show every handbag style in every color. However, there is clear evidence in the record, including the sales summary prepared by Signal's Vice President of Sales, Michael Alexander, a copy of which was attached as Ex. G to Mr. Alexander's witness statement (Trial Ex. D-1446), as well Mr. Alexander's trial testimony, from which a complete list of SKUs within each handbag group that were sold in brown/beige colorways can be compiled.

We further note that there remain a small number of instances where, as indicated in Schedule A, no photograph of a handbag from a particular handbag group in a particular color designation was produced by Signal. Nevertheless, since Mr. Alexander's sales data shows the handbag SKUs in that group that were sold in that color, to the extent there is evidence that such color designations consisted of brown/beige colorways, we have included these products in our list of SKUs that should be subject to the Court's profits calculation.[2]

In this regard, we note the testimony of Signal witnesses, including Jason Rimokh, Signal's President, and Mr. Alexander, that Signal used the same color designations across all "signature logo" handbag groups, so that if a Quattro G handbag group was made available, for example, in the "Moose" color — one of the Signal color designations that, both Mr. Rimokh and Mr. Alexander testified, consisted of a brown/beige colorway — that color (and corresponding colorway) was presented consistently across all Quattro G handbag groups (Alexander Statement, ¶31). Indeed, Mr. Alexander testified that Quattro G handbags sold in the Signal color designations "Moose", "Brown", "Cognac" and "Mocha" were all either beige or near-beige in color (Alexander Statement, ¶33).[3] Thus, at trial Defendants *conceded* that all Quattro G handbags sold under the "Moose", "Mocha", "Brown" and "Cognac" color designations contained or consisted of a brown/beige colorway; accordingly, all Quattro G handbag SKUs in those colors should be included on the list of infringing products.[4]

---

[2] Thus, for example, while images of the "Milan" handbag group in the "Stone" color were available, and Guess does not contest that Milan Quattro G handbag SKUs sold in "Stone" contained a brown/beige colorway, no images from the "Tamara" handbag group in the "Stone" color designation were produced by Signal. Nevertheless, since, as Signal principals testified, Signal color designations were consistent across all Quattro G handbag groups, Gucci submits that the Tamara SKUs in the Stone color designation should be included in the list of infringing SKUs as well.

[3] Mr. Alexander further testified that "[b]ased on the results of [my Signal sales data report] and my review of [Signal] line sheets and other documents, I have determined that among the Quattro G handbags sold in the U.S., 22.4% appeared on a beige or near-beige background (the color designations moose, mocha, brown, and cognac)." (*Id.*) Mr. Rimokh confirmed this, testifying that between 23% and 25% of handbags sold with the Quattro G Pattern were in one of these brown/beige color combinations (4/9/12 Trial Tr. at 1489:3-7).

[4] We note that in Guess's counsel's May 24, 2012 letter to the Court, Guess claimed that certain "Mocha" color handbags should not be included in the profits calculation because they do not contain brown/beige colorways. However, a review of these "Mocha" products indicates that they do contain brown/beige colorways, with brown as the background color and the Quattro G Pattern appearing in the foreground in beige, while for other Mocha products the background and foreground colors are reversed.

In addition, in Appendix A to the Court's May 12, 2012 Opinion and Order, the Court identified three other Quattro G handbag color designations, "Bronze", "Camel" and "Stone", that consisted of or contained brown/beige colorways. We have, accordingly, included in our binder, and on our list of infringing SKUs, all Quattro G handbags sold in these three color designations, as well as a corresponding photo from each handbag group, where available, showing that these colors, in fact, contained or consisted of a brown/beige colorway. We further note that we have included in our binder three additional SKUs from the "Antoinette" handbag group in the "Gold" color designation, and four additional SKUs from the "Antonia" group in the "Pewter" color designation, since, as the Court can see, these colors, too, contained or consisted of an infringing beige/brown colorway.

We also wish to advise the Court that prior to preparing this revised submission, we were in contact with Guess's counsel about the possibility of making a joint submission in which we would provide the Court with an agreed list of SKUs to be included in the profits calculation. While the parties were not able to agree on a majority of the SKUs, we have highlighted in yellow on Schedule A the SKUs which Guess concedes should be included. In this regard, we note that Guess appears to be in agreement that if there is a photograph of one SKU from a handbag group sold in a brown/beige colorway, then all SKUs from that group that were sold in that colorway should be included in the Court's profits calculation.

We have further been advised that Guess intends to object to the inclusion of certain handbag groups, or certain styles within those groups, even where concededly sold in brown/beige colorways, if no photo of a handbag from that group, in that colorway, appears in the trial record. Principally on this basis, we understand Guess is now objecting not only to 125 of the 165 additional SKUs Gucci proposed to include in Schedule B to its May 23, 2012 letter, but also to 63 of the 138 handbag SKUs the Court already determined to be infringing in Appendix A to the Opinion.

As to the latter objection, we did not understand the Clerk's May 31 email to be an invitation to reopen the infringement determinations the Court made in its Opinion. Indeed, until it received the Clerk's email, apparently neither did Guess — in his May 24, 2012 letter to the Court, Guess's counsel, in objecting to Gucci's attempt to add SKUs to the Court's Appendices, argued that Guess was satisfied with the Court's determinations, and that no additional SKUs should be included because the Court had already "exhaustively reviewed the photos and exemplars of accused products submitted post-trial", and "[b]ased on this careful review, the Court identified 190 specific SKU product-color combinations that it found infringing." At no point did counsel indicate that Guess was at all unhappy with any of these findings — to the contrary, he urged the Court to reject the additional SKUs being proposed by Gucci, and limit its list of infringing handbag products to the SKUs on Appendix A.

As for Guess's objection to the inclusion of certain SKUs consisting of brown/beige colorways because their images do not appear in the trial record, this objection is without merit. First, at the close of trial, as Guess's counsel acknowledges in his May 24 letter, the Court invited the parties to submit their best exemplars of the products at issue so that it could review them and make its infringement determinations. Included among Gucci's submission were handbag images from the line sheets Signal produced in discovery, which Guess did not object

to. and which the Court used in making its determinations. Apparently now, however, Guess is claiming that these images, while accurately reflecting the appearance of Guess's accused handbags. are not part of the trial record (even though they appeared in exhibits on Gucci's trial exhibit list that were not objected to by Guess), so they may not be relied on. There is, however, no dispute that: a) these exemplars were requested by the Court as part of the parties' post-trial submissions as an aid to the Court, b) the Court placed no restrictions on the materials to be submitted by the parties. c) no objection was raised with respect to any materials in Gucci's binder before the May 12 Opinion issued, d) the Court referred to and relied on the images in Gucci's binder in making its infringement determinations, e) until May 30, Guess was satisfied with the Court's determinations, e) the images submitted by Gucci were true and accurate copies of photos taken from Defendants' own documents, f) many of these same images appeared in Guess's post-trial binder, and g) Guess included many materials in its post-trial binder that were not part of the trial record, some of which were newly created. Accordingly, Gucci submits that the materials contained in the parties' previously submitted post-trial binders should continue to serve as a basis for the Court's infringement determinations.

Second, and in any event, Guess is wrong when it claims that images of infringing Quattro G handbags in brown/beige colorways do not appear in the trial record. The binder Gucci is submitting herewith contains numerous images of infringing Quattro G handbags in brown/beige colorways extracted from trial exhibits, as indicated in Schedule A. Many of these images also appeared in the line sheets submitted to the Court in Gucci's previous post-trial binder. Accordingly. even if Guess's objection to the Court's reliance on images contained in Gucci's first post-trial binder had merit, it no longer has.[5]

In addition to handbags and other infringing Guess products, we have included, in Schedule B of our binder, photographs of infringing footwear, belt and wallet products, together with identifying SKU numbers, that, Gucci maintains, should also be included in the list of infringing products. We further note that we have included in Schedule B of our binder three additional footwear SKUs (gwBradley-GOLL; gwJersey-NAMFB; and gwPiper-DBLFB), and one additional belt SKU (35643-BRN), as these products, too, contained or consisted of an infringing beige/brown colorway. As for the arguments by Marc Fisher's counsel, in his May 24, 2012 letter, that certain footwear SKUs included in Appendix B to the Opinion should now be removed, aside from the fact that it is too late to be making these arguments, a willful

---

[5] Further, Guess should not be allowed to avoid disgorgement of profits on sales of infringing brown/beige colorway handbags simply because they appeared in the Signal line sheets submitted in Gucci's first post-trial binder. This would lead to an absurd result, as, for example, the Court would be including in its profits calculation "Taylor" Quattro G handbags in the "Cognac" color designation, to which Guess does not object, but not "Brooke" handbags in the exact same color (although Gucci has now also included a record reference to the "Brooke" handbag, in the accompanying Schedule A). "Under Second Circuit law, "[t]he district court has broad discretion …in determining whether or not to order disgorgement", *SEC v. First Jersey Securities. Inc.*, 101 F.3d 1450. 1474 (2d Cir. 1996), since "[t]he primary purpose of disgorgement . . . is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objective." *Id.* Further, "any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse*, 689 F. Supp. 2d 585 (S.D.N.Y. 2010).

4

infringer like Marc Fisher should not be heard to make technical arguments to avoid disgorgement at this stage of the proceedings. In any case, the photographs of infringing Marc Fisher footwear products included in Gucci's binder show that all these footwear SKUs were sold in infringing brown/beige colorways.

Finally, at Schedule C of Gucci's binder, for ease of reference, we have included a complete list of SKUs that, Gucci maintains, should be included in the Court's profits calculation. That list consists of all SKUs identified by the Court in its original Appendices A and B, the SKUs in Schedule B to my May 23, 2012 letter, and the additional SKUs referred to above. The SKUs added by Gucci to those originally included in the Court's Appendices are indicated by color coding.

We would be happy to address any further inquiries the Court might have. We thank the Court for its consideration.

Respectfully,

ARNOLD & PORTER LLP

By: _____
Louis S. Ederer

Enclosures

cc: All counsel (*via e-mail*)

EAST:57047877v8

5

O

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

June 4, 2012

OUR FILE NUMBER
340,980-49

**VIA HAND DELIVERY AND EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street - Room 1620
New York, New York 10007

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

    **Re:**    *Gucci America, Inc. v. Guess?, Inc., et al., Case No. 09 CV 4373 (SAS)*

Dear Judge Scheindlin:

    In response to the Court's May 31, 2012 Order, Guess, Signal Products, Max Leather, and Swank (collectively, "Defendants") submit the enclosed collection of handbag, belt, and wallet images and related information to assist the Court in finalizing its determination of the specific SKUs that meet the definition of infringing products as set forth in the Court's May 21, 2012 Opinion and subsequent email orders.

    We attempted to meet and confer with Gucci's counsel in an effort to provide the Court with a joint submission. On Thursday, May 31, Mr. Ederer advised us that "Schedule B" of Gucci's May 23, 2012 letter to the Court reflected the universe of SKUs that Gucci deemed to be infringing under the Court's Opinion and subsequent email orders. Gucci's Schedule B contains [1] 139 handbag and belt SKUs that had been identified in Appendix A to the Court's May 21 Opinion, and [2] an additional 149 handbag and wallet SKUs that Gucci believed should be added to the Court's damages award, for a total of 288 separate handbag, belt, and wallet SKUs.[1]

    On Friday, June 1, we sent Mr. Ederer an email identifying the SKUs from Schedule B that Defendants believed did not fall within the Court's definition of "infringing." On Sunday, June 3, Mr. Ederer notified us that "due to the pressures of time," Gucci would not be able to respond to Guess's letter. Therefore, Mr. Ederer "suggest[ed] we simply agree to disagree on the SKUs you indicate you are planning to take issue with, and we will advise the Court in our

---

    [1] Schedule B also contains 41 Quattro G footwear SKUs identified in Appendix B to the May 21 Opinion and 15 additional footwear SKUs proposed by Gucci, or 56 total Quattro G footwear SKUs. We understand that Marc Fisher's counsel will be filing a submission concerning these footwear SKUs.

O'MELVENY & MYERS LLP

The Honorable Shira A. Scheindlin, June 4, 2012 - Page 2

submission (as we assume you will do likewise) which SKUs you have indicated you do not contest." (See Ex. 1, attached hereto (email thread between D. Petrocelli and L. Ederer).) Accordingly, Defendants prepared this submission for the Court's consideration.

Our submission includes and assesses the entire universe of 288 handbag, belt, and wallet SKUs listed in Gucci's "Schedule B." To the extent Gucci's separate submission goes beyond these SKUs, we reserve the right to file a supplementary submission to address any additional SKUs.

We organized the 288 SKUs by product style-and-color combination—*e.g.*, all SKUs that fit within the "Antonia" handbag style in "brown" color or all SKUs that fit within the "Daisy" handbag style in "mocha" color. The 288 SKUs break down into 51 product style-and-color combinations. Accordingly, we have 51 one-page summary sheets. Each one-page summary sheet contains pertinent information related to that product style-color combination, including an image of the product-color combination, where available. For example, page 1 identifies the 12 SKUs representing the "brown" color of the handbag group called Antonia.

In terms of locating images or physical specimens of a particular product style-and-color combination, we reviewed the trial record. Per the Court's directive, we assumed the Court will treat similarly all SKUs within a particular product style-and-color combination. Thus, if we found an image of an Antonia "hobo" bag in stone color, we assume that the Court's determination with respect to the "hobo" will apply equally to the Antonia "satchel" in stone, as well.

If there is no image or physical specimen in the trial record of a particular product style-color combination, the Court has no meaningful way to determine if that combination is infringing under the Court's definition and, therefore, Gucci failed carry its burden of proof to show that Defendants' products infringed Gucci's trademarks and/or trade dress. We identified these instances on the one-page summary sheets by checking the box labeled "No Images Found in Trial Record." As a matter of law, these SKUs should not be included in the calculation of profits to which Gucci may be entitled under the Court's Opinion.

In prior submissions, Gucci has tried to supplement the trial record with images of product-color combinations that were not introduced during the trial. We object to Gucci's attempt to introduce evidence after trial. The time to introduce evidence was during the trial when both sides had an opportunity to object to evidence, make argument, cross-examine witnesses, and offer rebuttal proof. Allowing Gucci to introduce new evidence after trial and especially in the context of simultaneously-exchanged submissions greatly prejudices Guess. However, heeding the Court's instruction to submit only one paper, we undertook to review the complete record in search of images of product-color combinations that may not have been introduced at trial. Where we were able to locate such an image (*i.e.*, an image in the record but that was not introduced at trial), we include it in our one-page summary sheet under reservation of rights and objection.

2

O'MELVENY & MYERS LLP

The Honorable Shira A. Scheindlin, June 4, 2012 - Page 3

    Each one-page summary sheet bears a legend across the top that reflects Defendants' ultimate position with respect to that particular product-color combination:

**Meets Court's Test for Infringement:**   ☐ Yes   ☐ No   ☐ Unclear

- "Yes" means we were able to locate an image of the product-color combination in the trial record and, based on our review, we believe the SKUs meet the definition of infringing product as set forth in the Court's May 21 Opinion and subsequent orders. (Of course, we disagree with the Court's determinations but, in good faith, we have tried to identify the products that we think the Court will believe meets its criteria.)

- "No" means [a] we were unable to locate in the trial record an image of a particular product style-color combination; [b] if an image was located in the trial record, the SKUs do meet the definition of infringing product as set forth in the Court's May 21 Opinion and subsequent orders; and/or [c] even if there was no image in the trial record, we located an image in the record (but not introduced at trial) and the SKUs do meet the definition of infringing product as set forth in the Court's May 21 Opinion and subsequent orders.

- "Unclear" means we are not able to determine if the SKUs meet the definition of infringing product as set forth in the Court's May 21 Opinion and subsequent orders.

- Although we did not exclude any SKUs on this basis alone, we identify for the Court those product-color combinations that prominently display embellishments such as letter "G"s and/or rhinestones which, as the Court observed in the May 21 Opinion, "act as indicators that Guess is the source of the product." (Op., FOF, at p.6, ¶ 20.)

    All told, 98 handbag, belt, and wallet SKUs fit within the Court's criteria. (See Ex. 2.) Based on our preliminary analysis (subject to final review), the profits from these 98 SKUs for Guess and the non-Marc Fisher defendants would total $1,803,252, excluding sales from Guess Retail. If the Court permits Gucci to supplement the record after trial (over our objection), 140 SKUs fit within the Court's definition of infringing products. (See Ex. 3.) The profits from these 140 SKUs for Guess and the non-Marc Fisher defendants would total $2,180,970, excluding Guess Retail figures.

    We are available to provide any additional assistance the Court may require.

Respectfully submitted,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

3

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 4, 2012 - Page 4


Enclosures

cc:  Louis S. Ederer, Esq. (via email) (w/ enclosures)
     Mathew T. Salzmann
     Arnold & Porter LLP
     399 Park Avenue
     New York, New York  10022
     *(louis.ederer@aporter.com)*
     *(matthew.salzmann@porter.com)*
     *Attorneys for Plaintiff Gucci America, Inc.*

     Mark I. Peroff (via email)  (w/ enclosures)
     Darren W. Saunders
     Manatt, Phelps & Phillips LLP
     7 Times Square
     New York, New York 10036
     *(mperoff@manatt.com)*
     *(dsaunders@manatt.com)*
     *Attorneys for Defendant Marc Fisher Footwear LLC*

     Paul Fields (via email)  (w/ enclosures)
     Leason Ellis LLP
     One Barker Avenue, Fifth Floor
     White Plains, NY 10601
     *(fields@leasonellis.com)*
     *Co-counsel for Defendant Swank, Inc.*

     John T. Williams (via email)  (w/ enclosures)
     Hinkhouse Williams Walsh LLP
     180 North Stetson, Suite 3400
     Chicago, IL  60601
     *(jwilliams@hww-law.com)*
     *Co-counsel for Defendant The Max Leather/Cipriani Accessories, Inc.*

     William Pecau (via email)  (w/ enclosures)
     Steptoe & Johnson LLP
     1330 Connecticut Avenue Northwest
     Suite 700
     Washington, D.C. 20036
     *(wpecau@steptoe.com)*
     *Co-counsel for Defendants Signal Products, Inc.*



## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

June 5, 2012

OUR FILE NUMBER
340,980-49

**VIA EMAIL AND HAND DELIVERY**

WRITER'S DIRECT DIAL
(310) 246-6850

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street - Room 1620
New York, New York  10007

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:   *Gucci America, Inc. v. Guess?, Inc., et al., Case No. 09 CV 4373 (SAS)*

Dear Judge Scheindlin:

Guess, Signal Products, Max Leather, and Swank (collectively, "Defendants") submit this brief response to Gucci's June 4, 2012 letter.  Our primary goal — and the primary goal of **Exhibit A** to this letter — is to streamline the process and facilitate the Court's review of products.  We tried to confer with Gucci before the parties submitted simultaneous independent letters.  Gucci declined.  We now know why.

*First*, although Gucci never explicitly says it, Gucci clearly seeks to re-argue the Court's decision that only those Guess products sold in the classic Gucci beige-brown colorway are infringing.  For example, Gucci contends that these products are classic beige-brown and must be included in the Court's profit analysis:



(For Color Reference Only - SI605150)
**Atomic Logo Brown**



(SI683216) D-*4,504D, D-2873.0061)
**Yankee Mocha**



(SI061466)
**Taylor Cognac**

These products — described on Signal's data sheets as "Brown," "Mocha," and "Cognac" — are nothing like Gucci's beige-brown colorway and plainly do not meet the Court's definition of infringing products as set forth in the May 21 Opinion and subsequent Orders.

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 5, 2012 - Page 2

*Second*, despite notifying Guess that the universe of allegedly infringing SKUs matched the 288 SKUs identified in "Schedule B" to Gucci's May 23 letter to Court, Gucci nevertheless added 10 additional SKUs to its letter yesterday. These SKUs are: ME 104317 GOL, ME 104333 GOL, ME 104388 GOL, SP024401 PEW, SP024402 PEW, SP024423 PEW, SP024451 PEW, 35643-BRN, 91-7144-02, and 91-8487-02. Guess has had no opportunity to respond.

*Third*, Gucci admits it is unable to identify in the trial record images of products from which the Court can make a meaningful infringement assessment. (*See, e.g.,* Athena Moose, Diana Brown, Kensington Brown.) Defendants renew their objection to the Court's consideration of these product-color combinations, since Gucci's failure to introduce the relevant images or physical specimens in the trial record constitutes a failure of proof on Gucci's part.

*Fourth*, Gucci admits that, with respect to 13 product-color combinations (encompassing 39 SKUs), it is unable to locate *any* images, whether in the trial record or not. Nevertheless, Gucci asks the Court to assume these 39 SKUs are infringing because a different product described in Signal's data as having been sold in the same color has been deemed by the Court to be infringing. For example, if the Court finds that the Daisy Logo handbag group in Mocha is infringing, the Court can assume that all other products in "Mocha" are also infringing. The images submitted by Gucci demonstrate that the assumption is unwarranted and underscore why the Court must actually view images before concluding that any product infringes:



| | | |
|---|---|---|
| (SP201524) - D-1267 | (SL402026) | (For Color Reference Only - SI40F487) |
| **Daisy Logo Mocha** | **Mondrian Mocha** | **Outback Mocha** |
| (SI4054462) - D-524.0464 | (SI00C757) - D-472.0441 | (For Color Reference Only - PC0568321) |
| **Outback Moose** | **Paddington Moose** | **Tamara Moose** |

2

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 5, 2012 - Page 3

| | | |
|---|---|---|
|  |  |  |
| (SI31967) - Goldapse Kapers #31 | (SIN266) | (VV216212) - D-74.0009; D-1533.0007 |
| **Harvest Brown** | **Heartbreaker Brown** | **Blake Brown** |

Since Gucci admits it can point to no image for these 39 SKUs, they must be excluded from the Court's profit analysis.[1]  In a final plea, Gucci says the Court should exercise its "broad discretion" to relieve Gucci of its evidentiary burden because Defendants allegedly willfully infringed Gucci's trademarks.  However, the Court also concluded that Gucci knew or should have known of Defendants' actions many years ago and failed to take action and that the delay materially prejudiced Defendants' ability to marshal evidence to defend themselves — which, here, includes the ability to show specimens and images of products to establish they do not infringe any "brown-beige colorway."  (Opinion, pp.41-42 ¶¶ 98-99.)

To assist the Court in finalizing its determination of which SKUs should be deemed infringing, we have combined the submissions made by Gucci and Defendants to show the SKUs on which the parties agree and the SKUs on which they disagree.  Our document containing this information is attached hereto as **Exhibit A**.  Because we did not previously have an opportunity to assess the 10 new SKUs added by Gucci in yesterday's submission, our positions on these SKUs are contained in Exhibit A as well.

Respectfully submitted,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

---

[1] The 39 SKUs are:  SI081210 STO, VY061633 BRZ, SI061633 BRO, SI061633 STO, SI906033 STO, SI906004 STO, SI906026 STO, SI906050 STO, SI906051 STO, SI906023 STO, SI219531 MOO, SI219533 MOO, SI219534 MOO, SI216301 STO, SI216317 STO, SI018426 MOC, PC056817 MOC, PC056801 MOC, PC056801 STO, PC056817 STO, SI056801 STO, SI056813 STO, SI056826 STO, SI056827 STO, SN056801 STO, SN056802 STO, SN056806 STO, SN056817 STO, SN056827 STO, SN056853 STO, SN056865 STO, SN056890 STO, SI056851 STO, SI056866 STO, SI061451 STO, SI061466 STO, SI191526 STO, SI191533 STO, and VY012704 COG.  Furthermore, Defendants reviewed the record and located what we believe are images of some of these SKUs.  (See Defendants' 6/4/12 Product Sheets at pp. 13, 26, 41, 45.)  As the Court can see, these products are not remotely close to a brown/beige colorway, which explains why Gucci did not identify them for the Court.

3

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 5, 2012 - Page 4


Enclosure

cc:  Louis S. Ederer, Esq. (via email) (w/ enclosure)
     Mathew T. Salzmann
     Arnold & Porter LLP
     399 Park Avenue
     New York, New York  10022
     *(louis.ederer@aporter.com)*
     *(matthew.salzmann@porter.com)*
     *Attorneys for Plaintiff Gucci America, Inc.*

     Mark I. Peroff (via email)  (w/ enclosure)
     Darren W. Saunders
     Manatt, Phelps & Phillips LLP
     7 Times Square
     New York, New York 10036
     *(mperoff@manatt.com)*
     *(dsaunders@manatt.com)*
     *Attorneys for Defendant Marc Fisher Footwear LLC*

     Paul Fields (via email)  (w/ enclosure)
     Leason Ellis LLP
     One Barker Avenue, Fifth Floor
     White Plains, NY 10601
     *(fields@leasonellis.com)*
     *Co-counsel for Defendant Swank, Inc.*

     John T. Williams (via email)  (w/ enclosure)
     Hinkhouse Williams Walsh LLP
     180 North Stetson, Suite 3400
     Chicago, IL  60601
     *(jwilliams@hww-law.com)*
     *Co-counsel for Defendant The Max Leather/Cipriani Accessories, Inc.*

     William Pecau (via email)  (w/ enclosure)
     Steptoe & Johnson LLP
     1330 Connecticut Avenue Northwest
     Suite 700
     Washington, D.C. 20036
     *(wpecau@steptoe.com)*
     *Co-counsel for Defendants Signal Products, Inc.*

4

# ARNOLD & PORTER LLP



**Louis S. Ederer**
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715 1399 Fax

399 Park Avenue
New York, NY 10022-4690

June 5, 2012

**VIA FACSIMILE AND EMAIL**
The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

Re:    Gucci America, Inc. v. Guess?, Inc., et al., 09-cv-4373 (S.D.N.Y.) (SAS)

Dear Judge Scheindlin:

This evening we received Guess's June 5 "response" to Gucci's June 4 submission regarding infringing SKU's to be included in the Court's Opinion and Order. We did not understand the Clerk's email of earlier today to be an invitation for the parties to make any additional submissions on this subject, so we restrained ourselves after receiving Guess's submission last evening, which is replete with factual misstatements. However, after receiving counsel's letter this evening, we feel compelled to correct one glaring misstatement.

In Guess's June 5 letter, Guess continues to take the position that if a particular image submitted by Gucci, even if concededly found in Defendants' own documents, is not technically in the trial record, it should not be considered by the Court. We disagree for the reasons set out in our June 4 letter. We understood that the purpose of this exercise was to get to the truth by placing the best available product images before the Court, so that it could finally determine which of Defendants' handbags were sold in infringing brown/beige colorways, and which were not.[1] This evening, however, Guess has continued to take the position that images submitted for the following product groups are not in the trial record, when, as we indicated in our June 4 submission, they clearly are:

---

[1] Once again, Defendants registered no objection to any of the handbag images Gucci submitted in its initial post-trial submission, all of which, as Guess has conceded, were taken directly from Signal Products' line sheets and the Guess website, and were marked for identification as Plaintiff's Trial Ex. 143, an exhibit that itself was never objected to by Defendants. Only after the Court considered and relied on Gucci's submission in its May 21 Opinion and Order, and made infringement determinations that Guess's counsel indicated, in his May 24 letter to the Court, that Guess was completely satisfied with, did Guess raise this issue for the first time in its June 4 submission.

| Group Name (Color) | Trial Record Reference |
|---|---|
| Brooke (Cognac) | Witness Statement of Gabriele Goldaper, ¶ 29 |
| Daisy Logo (Mocha) | Def. Tr. Ex. 1207 (physical exhibit) <br> Witness Statement of Gabriele Goldaper, ¶ 31 |
| Harvest (Brown) | Witness Statement of Gabriele Goldaper, ¶ 31 |
| Outback (Moose) | Def. Tr. Ex. 524.0464 |
| Paddington (Moose) | Def. Tr. Ex. 472.0441 |
| Paddington (Brown) | Def. Tr. Ex. 472.0445 |
| Riviera Logo (Stone) | Witness Statement of Suesan Faulkner, ¶ 32 |

Accordingly, with apologies, we respectfully submit this letter to correct these false statements.[2] We thank the Court for its consideration.

Respectfully,

ARNOLD & PORTER LLP

By: _Louis S. Ederer_

Louis S. Ederer

cc: All counsel (*via e-mail*)

---

[2] We also take issue with Guess's newly minted position that even if a Quattro G handbag was sold in a brown/beige colorway, it should not be considered infringing if it displays so-called "indicators of Guess". According to the May 21 Opinion, if a Quattro G handbag was sold in a brown/beige colorway, it was a deliberate infringement and should be included on the Court's list.

2

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

June 6, 2012

OUR FILE NUMBER
340,980-49

**VIA EMAIL AND HAND DELIVERY**

WRITER'S DIRECT DIAL
(310) 246-6850

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street - Room 1620
New York, New York  10007

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:   ***Gucci America, Inc. v. Guess?, Inc., et al., Case No. 09 CV 4373 (SAS)***

Dear Judge Scheindlin:

On behalf of Guess, Signal Products, Max Leather, and Swank (collectively, "Defendants"), we have reviewed Gucci's June 5 letter in another effort to streamline the process and make the Court's review more efficient.

Based on that review, Defendants do not dispute that the trial record contains images of the seven product groups identified in Gucci's June 5 letter.  These seven product groups comprise 40 SKUs.

In light of this information, Defendants agree with Gucci that three product groups encompassing 23 SKUs appear to meet the Court's definition of "infringing" as described in the May 21 Opinion and subsequent email orders.[1]

However, Defendants do not agree that the remaining four groups comprising 17 SKUs meet the definition of infringing.[2]  Based on a fair review of the images, Defendants do not

---

[1]  These SKUs are:  SI405490 MOO, SI405417 MOO, SI405401 MOO, SI405404 MOO, SI405451 MOO, SI405462 MOO, SI806755 MOO, SI806767 MOO, SI806738 MOO, SI806795 MOO, SI806711 MOO, SI806787 MOO, SI806753 MOO, SI806751 MOO, SI806707 MOO, SI806701 MOO, SI806705 MOO, SI806727 MOO, SI806704 MOO, SI806772 MOO, SI806784 MOO, SI806799 MOO, and SI803226 STO.

[2]  These SKUs are:  SI061633 COG, SP201504 MOC, SP201507 MOC, SP201517 MOC, SP201524 MOC, SP201551 MOC, SP201566 MOC, SI219533 BRO, SI219526 BRO, SI219507 BRO, SI219534 BRO, SI219531 BRO, SI219551 BRO, SI219555 BRO, SI219556 BRO, SI219566 BRO, and SI806701 BRO.

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 6, 2012 - Page 2

believe the products identified as Brooke Cognac, Daisy Logo Mocha, and Harvest Brown are infringing under the Court's orders.



**Brooke Cognac**



**Daisy Logo Mocha**



**Harvest Brown**

  Likewise, Defendants do not agree that the one SKU listed as Paddington Brown, SKU SI806701, is rightly included in the Court's profits analysis. The line sheets for the Paddington Group say that brown was not an available color. *See* Ex. D-106. Signal's sales data—the sole basis for Gucci's argument that this SKU should be included in the Court's profits analysis— shows that the Paddington in "brown" sold a grand total of "-1" units, which confirms that this product-color combination was never sold. *See* Ex. D-1446. Even if it were, because there is no single "brown" color and because "brown" varies across products, the Court must have an image of a brown Paddington handbag to assess and compare against the Gucci brown/beige colorway. Gucci concedes no such image exists and is forced to rely on an image of a Paddington hat that is not at issue in this case.

  In all other respects, our submissions from June 4 and 5 reflect Defendants' positions. Attached is a revised Exhibit A reflecting the parties' respective positions with regard to each product/color combination.

  We hope this helps make the Court's review easier.

Respectfully submitted,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

Enclosure

2

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 6, 2012 - Page 3


cc:  Louis S. Ederer, Esq. (via email) (w/ enclosure)
     Mathew T. Salzmann
     Arnold & Porter LLP
     399 Park Avenue
     New York, New York  10022
     *(louis.ederer@aporter.com)*
     *(matthew.salzmann@porter.com)*
     *Attorneys for Plaintiff Gucci America, Inc.*

     Mark I. Peroff (via email)  (w/ enclosure)
     Darren W. Saunders
     Manatt, Phelps & Phillips LLP
     7 Times Square
     New York, New York 10036
     *(mperoff@manatt.com)*
     *(dsaunders@manatt.com)*
     *Attorneys for Defendant Marc Fisher Footwear LLC*

     Paul Fields (via email)  (w/ enclosure)
     Leason Ellis LLP
     One Barker Avenue, Fifth Floor
     White Plains, NY 10601
     *(fields@leasonellis.com)*
     *Co-counsel for Defendant Swank, Inc.*

     John T. Williams (via email)  (w/ enclosure)
     Hinkhouse Williams Walsh LLP
     180 North Stetson, Suite 3400
     Chicago, IL  60601
     *(jwilliams@hww-law.com)*
     *Co-counsel for Defendant The Max Leather/Cipriani Accessories, Inc.*

     William Pecau (via email)  (w/ enclosure)
     Steptoe & Johnson LLP
     1330 Connecticut Avenue Northwest
     Suite 700
     Washington, D.C. 20036
     *(wpecau@steptoe.com)*
     *Co-counsel for Defendants Signal Products, Inc.*

3



**manatt**
manatt | phelps | phillips

**Darren W Saunders**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4600
Direct Facsimile: (212) 790-6303
E-mail: DSaunders@manatt.com

June 13, 2012

**HAND DELIVERY**

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

     Re:    *Gucci America, Inc. v. Guess?, Inc., et al.,* No. 09 Civ. 4373 (SAS)

Dear Judge Scheindlin:

On behalf of defendant Marc Fisher LLC ("MFF"), we enclose a summary chart of MFF's adjusted net profits for the footwear products identified in Appendix B of the Court's June 8, 2012 Final SKU list; and Ronald Vollmar's individual profit analyses for the footwear SKUs identified therein. Mr. Vollmar's calculations are taken from those previously submitted to the Court on May 9, 2012.

Respectfully,

Darren W. Saunders

Encl.

cc:    Louis Ederer, Esq. (Via Hand Delivery w/Encl.)
       Daniel Petrocelli, Esq. (Via Federal Express w/Encl.)
       All other counsel (Via Electronic Mail w/o Encl.)

200548086.1

ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

June 13, 2012

**VIA E-MAIL & HAND DELIVERY**
Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

   Re:  *Gucci America, Inc. v. Guess?, Inc., et al.* - Case No. 09 Civ. 4373 (SAS)

Dear Judge Scheindlin:

   On behalf of Plaintiff Gucci America, Inc. ("Gucci"), we write pursuant to the Court's instructions at the May 30, 2012 telephone conference and in the Clerk's May 31 and June 8, 2012 e-mails, and in furtherance of our May 23 and May 25, 2012 letters, with respect to the Court's calculation of profits to be disgorged by Defendants in accordance with the May 21, 2012 Opinion and Order ("Opinion").

   First, now that the Court has issued amended Appendices of infringing SKUs, we have asked our damages expert to recalculate the profits earned by the licensee Defendants, Signal Products ("Signal"), Marc Fisher Footwear ("Marc Fisher"), Swank, and Max Leather, on their sales of those SKUs, as well as the royalties they paid to Guess on such sales. As the Court can see from the attached Schedule A, using the same calculation approach adopted by the Court in the Opinion, the profits realized by each of the licensee Defendants, and the total amount of royalties they paid to Guess, are as follows:

| | |
|---|---|
| Signal | $1,834,503 |
| Marc Fisher[1] | $494,255 |
| Swank | $24,701 |
| Max Leather | $18,791 |
| Guess Royalty Revenue | $1,076,084 |

---

[1] The calculation of profits earned by Marc Fisher takes into account the cost deductions proposed by Ronald Vollmar, Marc Fisher's damages expert, which the Court accepted. Opinion pp. 52-53.

# ARNOLD & PORTER LLP

Second, with respect to Guess's profits on its own retail sales of infringing SKUs, as the Court acknowledged at the May 30 telephone conference, it had intended to award these profits in the Opinion, but had not done so.  With respect to Guess's sales of infringing non-handbag products, its profits on these sales can be calculated precisely, as shown in the attached Schedule A (pp. A28-A30).[2]  Such profits are as follows:

| | |
|---|---|
| Guess Profits on Footwear Sales | $117,692 |
| Guess Profits on Belt Sales | $40,545 |
| Guess Profits on Wallet Sales | $36,780 |

With respect to Guess's profits on sales of infringing handbags, as the Court indicated at the May 30 conference, "the only question [is] how to fairly calculate [them]."  May 30 Conf. Tr. 4:20-22.  As indicated in our May 23 and 25 letters, Guess did not maintain records of handbag sales down to the color level, and therefore did not produce such information in this litigation.  Accordingly, the Court has instructed the parties to make additional submissions as to the most reasonable way to calculate Guess's profits on its retail sales of handbags in the infringing colorways, at the same time warning Guess that if it continued to take the position it took in its May 24 letter, namely, that there was no way to do this, it would be doing so at its peril.[3]

In this regard, as we noted in our May 25 letter, it is often the case in trademark infringement litigation that a party ordered to disgorge ill-gotten profits fails to produce, or simply does not maintain records that lend themselves to a straightforward profits calculation.  In those instances, under clear Second Circuit law, "[t]he district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged," *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996), since "[t]he primary purpose of disgorgement ... is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objective" of the Lanham Act.  *Fendi Adele S.r.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 619, 621 (S.D.N.Y. 2010).  Here, the Court found that disgorgement was "needed" for this very reason, that is, "to deter [Guess's] future willful infringement."  Opinion p. 98.[4]  Accordingly, "the disgorgement amount need only be a **reasonable approximation of profits causally connected to the violation**."  *First Jersey Sec.*,

---

[2] As indicated in Schedule A, in calculating Guess's retail store profits, costs have been deducted for "store occupancy expenses".  Opinion p. 51.

[3] Thus, at the May 30 conference, the Court stated that "I can ... simply seek submissions as to the best way to calculate [Guess's] profits on the sales of those [infringing handbag] SKUs. And if Guess wants to take the position, when invited to submit, sorry, we can't, then they will have to suffer the consequences."  May 30 Conf. Tr. 5:18-22.

[4] This was not surprising, since at five different points in the Opinion (pp. 32, 44, 83, 90 and 97), the Court found that Guess had willfully copied and infringed Gucci's Diamond Motif Trade Dress.

ARNOLD & PORTER LLP

101 F.3d at 1475 (emphasis added); *accord Fendi*, 689 F. Supp. 2d at 621.[5] Further, "any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty." *First Jersey Sec.*, 101 F.3d at 1465.[6]

Thus, in our May 23 letter, Gucci proposed what it believes to be the fairest and most accurate way to approximate Guess's retail sales of handbags in the infringing colorways (and, accordingly, its profits on those sales). Since, unlike Guess, Signal, the manufacturer of these handbags, maintained sales data down to the color level, Gucci's damages expert calculated, on a SKU-by-SKU basis, the ratios of Signal's sales of handbags in infringing brown/beige colorways to its total sales of the same handbags in all colors. He then applied those ratios to Guess's sales of the same handbags. This approach makes perfect sense, since, according to the testimony of Jason Rimokh, Signal's President, Guess was by far and away the largest single customer for Signal handbags, purchasing 55% of all handbags sold by Signal in the U.S. during the relevant time period. Rimokh Trial Testimony, Trial Tr. 1448:2-7. Accordingly, the ratios of Guess's purchases of handbags in the infringing colorways should not differ significantly from the ratios of Signal's sales of the same handbags. This is, therefore, the most accurate way to approximate Guess's purchases and sales of infringing handbags based on the limited information available.

As noted above, in responding to Gucci's May 23 calculation of Guess's profits on retail sales of infringing handbags, Guess's counsel argued, in his May 24 letter, that Gucci should receive nothing, since the Court should not assume that any of the infringing handbags were sold by Guess, or that Guess bought them in the same ratios that Signal sold them. However, aside from the fact that the Court indicated, at the May 30 conference, that it would not countenance such a windfall to Guess, counsel's letter fails to mention that Guess proposed a nearly identical approach to calculating its sales of infringing handbags in its own post-trial submissions. If the Court looks at Guess's April 27, 2012 binder entitled "Handbag Products at Issue", it will see, both on the "Notes" page at the front of the binder (in particular, Note 6), and the "Quattro G" section (items 84-122) towards the end of the binder, that for each Quattro G handbag group, Guess sets out Guess's and Signal's combined total sales, and then calculates the ratio of Signal's sales of brown/beige handbags in that group to its sales of all handbags in that group. The point of this exercise was to suggest exactly what Gucci is suggesting, namely, that the best

---

[5] *See also Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (in calculating a profits award, "'where … the defendant controls the most satisfactory evidence of sales the plaintiff needs only establish a basis for a reasoned conclusion as to the extent of [profits earned] by the deliberate and wrongful infringement.'" (quoting *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 193 (2d Cir. 1959))).

[6] *See also U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc.*, 2009 WL 4351962, at *3 (S.D.N.Y. Dec. 1, 2009) ("[I]f 'the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence.'" (quoting *Chloe v. Zarafshan*, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009))).

# ARNOLD & PORTER LLP

way to approximate Guess's retail sales of infringing handbags, given the information made available by Defendants, is to apply Signal's ratios of infringing sales to Guess's sales. The only difference between Gucci's and Guess's approaches is that Gucci calculated Signal's infringing handbag sales ratios down to the individual SKU level, while Guess's calculation was at the group level.[7]

Accordingly, we ask the Court to adopt Gucci's approach to calculating Guess's profits on retail sales of infringing handbag SKUs, that is, by applying, on a SKU-by-SKU basis, Signal's ratios of sales of handbags in infringing colorways to sales of handbags in all colorways. This approach most reasonably approximates Guess's retail sales and profits on infringing handbags based on the information made available. In Schedule A hereto (pp. A15-A19), Gucci has calculated Guess's profits on sales of infringing handbag sales using this approach. The result is as follows:

| | |
|---|---|
| Guess's retail handbag profits using Signal's sales ratios on SKU-by-SKU basis[8] | $1,796,136 |

In sum, Gucci respectfully submits that, on reconsideration, the Court should enter an award of profits against all Defendants in the total amount of **$5,439,488**.[9] The award breaks

---

[7] At trial, Defendants suggested still another approach to calculating infringing handbag sales, using Signal's ratios for sales of Quattro G handbags in beige or near-beige colors to sales of all Quattro G handbags. *See* Trial Testimony of Alexander ¶33, and Rimokh Trial Testimony, Trial Tr. 1448:3-7.

[8] Gucci's damages expert has also performed a calculation of Guess's profits the way Guess proposed to do it in Guess's post-trial submissions, that is, by applying Signal's sales ratios for infringing handbags at the handbag group level, rather than the individual SKU level. As the Court can see from Schedule A attached (pp. A20-A21), these calculations yield a nearly identical amount of $1,798,808, differing only by $2,672 from Gucci's calculation, yet another indication that Gucci's calculation is the fairest and most reasonable way to approximate Guess's illicit handbag profits.

[9] Gucci notes that in its profit calculations, it has not included ten (10) handbag SKUs that it appears the Court may have intended to include in its revised Appendix A, but did not: a) in the Atomic Logo "Moose" colorway, SKU Nos. SI605101, SI605104, SI605106, SI605131, SI605113, SI605187, SI605190, and SI605196; b) in the Sicily "Brown" colorway, SKU No. SI706582; and c) in the Sicily "Moose" colorway, SKU No. SI706582. The reason we believe the Court may have intended to include these SKUs is that all other SKUs in those color groups were included in Appendix A as infringing. Attached hereto as Schedule B are the lists of SKUs from these groups, with corresponding images, showing the SKUs that were included by the Court and the ones that were not. If the Court intended to include these SKUs in Appendix A, then Gucci has provided profit calculations with respect to them (*see* Schedule A, pp. A2-A10). As the Court can see, the inclusion of these ten SKUs increases the disgorgement amount by $196,941 (consisting of $135,667 in additional Signal profits, and $61,274 in additional royalties paid to Guess), for a total amount of **$5,636,429**.

4

# ARNOLD & PORTER LLP

down against each Defendant as follows:

|  |  |
|---|---|
| Guess (includes profits and royalty revenue) | $3,067,237 |
| Signal | $1,834,503 |
| Marc Fisher | $494,255[10] |
| Swank | $24,701 |
| Max Leather | $18,791 |

We thank the Court for its consideration.

Respectfully,

ARNOLD & PORTER LLP

By: _Louis S. Eder___

Louis S. Ederer

cc:    All counsel (by e-mail)

---

[10] Of this amount, $10,480 is attributable to profits earned by Marc Fisher on the style known as the gmDennis2, which bears only the GRG Stripe design. Marc Fisher also paid Guess a royalty on its sales of this style in the amount of $5,481 (*see* Schedule A, pp. A11-A12).

O

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

June 13, 2012

OUR FILE NUMBER
340,980-49

**VIA HAND DELIVERY AND EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street - Room 1620
New York, New York  10007

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:   *Gucci America, Inc. v. Guess?, Inc., et al., Case No. 09 CV 4373 (SAS)*

Dear Judge Scheindlin:

Defendants Guess, Signal Products, Max Leather, and Swank (collectively "Defendants") submit proposed profits calculations attributable to the SKUs identified on the Court's June 8, 2012 Final SKU List and Order. The profits calculations break down into three categories, which we identify and explain below. Schedules A through I on attached Exhibit A summarize the calculations and provide the quantitative backup.

Category 1: Licensee Wholesale Profits. "Licensee Wholesale Profits" consist of the profits earned by Signal, Max Leather, and Swank from the products the Court has determined to be infringing. We calculated these profits by taking the net sales for each SKU on the Court's Final SKU List and deducting the expense categories that Mr. Imburgia determined were deductible in his own profits analysis. Schedule C to this letter collects all handbag, belt, and wallet SKUs from the Court's Final SKU List and identifies the profits earned by Signal, Max Leather, and Swank for each SKU.

Based on our calculations, the net profits earned by Signal from the sale of products on the Final SKU List are $1,834,503; the net profits earned by Max Leather are $24,701; and the net profits earned by Swank are $18,791. (*See* Schedules A and C.)

Category 2: Guess Royalty Revenue. The second category of profits—"Guess Royalty Revenue"—consists of the royalty paid by each licensee for the right to manufacture and sell Guess-branded products. The licensees paid Guess a royalty fee for each product sold, including products sold by the licensees to Guess. Our calculations include the full royalty amount paid by Signal, Max Leather, Swank, and Marc Fisher to Guess based on the SKUs identified on the Final SKU List. Schedule D to this letter collects all SKUs from the Court's Final SKU List and

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 13, 2012 - Page 2

identifies the royalty revenue Guess received from each licensee for each SKU. Based on our calculations, the royalties paid to Guess on sales of SKUs identified in the Final SKU List total $1,077,392. (*See* Schedules A and D.)

Category 3: Guess Retail Profits. "Guess Retail Profits" consist of the profits earned by Guess's Retail division from its sales of SKUs identified on the Final SKU List. Gucci bears the burden of proving the volume of and profits from sales of infringing products by Guess's Retail division.

For belt, wallet, and footwear SKUs, we identified specific SKUs that had been sold by Guess in the sales data produced during litigation. (*See* Exs. D-689 and D-700.) For the identified belt, wallet and footwear products, we calculated Guess's retail profits by taking the sales for each SKU and deducting the expense categories allowed by Mr. Imburgia as well as costs for "store occupancy," in accordance with the Court's findings in the May 21, 2012 Opinion. (*See* Op. at p. 51 ¶¶ 118-119.) For Guess's Retail division, the profits generated by the belt, wallet, and footwear SKUs sold by Guess are $40,545, $36,780 and $125,273, respectively, and total $202,598. (*See* Schedules A and F.)

In contrast, Guess's retail sales data for handbags are not broken down by color, so there is no evidence in the record identifying Guess's retail sales for the handbag SKUs on the Final SKU List. In the past, Gucci has not identified any evidence in the trial record that would allow the Court to make a reasonable retail profits calculation. Instead, Gucci has argued that the Court should *assume*—without any evidentiary basis—that Guess's sales of handbag SKUs (*i.e.*, style-color combinations) mirror Signal's sales of handbag SKUs. Put another way, Gucci asks the Court to assume that if Signal sold a specific handbag to third parties, Guess too must have purchased that handbag to sell in its retail stores. The record, however, demonstrates that Guess sells at retail only a fraction of the products its licensees sell to third parties:

- Signal President Jason Rimokh testified that only 55% of Signal's products are sold to Guess retail stores. (4/9/12 Trial Tr. at 1448:2–7.)

- In Appendix B of the May 21 Opinion, the Court identified 41 "infringing" Quattro G footwear SKUs sold at wholesale by Marc Fisher. In Mr. Imburgia's profits analysis submitted on May 23, he identified only 12 of those same SKUs, or 29.3%, that were sold by Guess Retail. (See Gucci's 5/23/12 Letter, Schedule B at B000021.)

- During discovery, Max Leather produced a summary identifying 119 belt SKUs Gucci claimed were infringing. Guess Retail sold only 60, or 50.4%, of those belt SKUs. (See Exs. D-888, D-700.)

Plainly, a significant but unknown number of the infringing SKUs—including handbag SKUs—were never sold by Guess's Retail division. Contrary to Gucci's "assumption analysis," there is no factual basis in the record from which the Court could reasonably assess the amount of Guess's retail profits derived from the sale of infringing handbag SKUs. Guess therefore contends that Gucci is not entitled to recover Guess's retail profits on the handbag SKUs at issue.

2

O'Melveny & Myers llp
The Honorable Shira A. Scheindlin, June 13, 2012 - Page 3

Subject to and without waiving its contention that Gucci failed to prove any such damages, if the Court is inclined to issue an award of Guess's retail profits for handbags, Guess contends that the only reasonable basis to do so is to examine Exhibits D-472 and D-524, the exhibits admitted at trial depicting images of products offered for sale on Guess's retail website over time. Indeed, Gucci relied on and excerpted from these exhibits in preparing its June 4, 2012 submission of allegedly infringing images. Based on our review of Exhibits D-472 and D-524, 53 handbag SKUs from the Final SKU List were sold on Guess's website. Schedule F contains our proposed calculation of Guess's retail profits from these 53 handbag SKUs. For each SKU, we computed the ratio of Signal's sales to its sales at the relevant Style level, and applied that ratio to Guess's retail sales. This is the same ratio approach proposed by Gucci in its May 23, 2012 letter to the Court. Thus, for example, if SKU # SI506701 in brown represents 15% of Signal's wholesale sales for Style # SI506701, we applied the same 15% ratio to Style # SI506701 for Guess Retail. Using this analysis, Guess's retail profits from the sale of the 53 handbag SKUs total $1,018,591.

Although Guess disagrees that any profits should be awarded in light of Gucci's failure of proof concerning sales of the handbag SKUs at issue, Guess respectfully submits that to the extent the Court makes any award of Guess Retail's profits from handbags, the profits should be no more than $1,018,591. For the Court's convenience, Defendants' proposed calculations—with and without Guess's retail profits for handbags—are summarized in the table below.

|  | Without Profits from Guess Retail Handbag Sales | With Profits from Guess Retail Handbag Sales |
|---|---|---|
| **Signal Wholesale** | $1,834,503 | $1,834,503 |
| **Max Leather Wholesale** | $24,701 | $24,701 |
| **Swank Wholesale** | $18,791 | $18,791 |
| **Guess Royalties (handbag, belt, footwear, wallet SKUs)** | $1,077,392 | $1,077,392 |
| **Guess Retail (belt, footwear, wallet SKUs)** | $202,598 | $202,598 |
| **Guess Retail (handbag SKUs)** | $0 | $1,018,591 |

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 13, 2012 - Page 4


We are available to provide any additional assistance the Court may require.

Respectfully submitted,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

Enclosure

cc:  Louis S. Ederer, Esq. (via email) (w/ enclosure)
     Mathew T. Salzmann
     Arnold & Porter LLP
     399 Park Avenue
     New York, New York  10022
     (louis.ederer@aporter.com)
     (matthew.salzmann@porter.com)
     Attorneys for Plaintiff Gucci America, Inc.

     Mark I. Peroff (via email)  (w/ enclosure)
     Darren W. Saunders
     Manatt, Phelps & Phillips LLP
     7 Times Square
     New York, New York 10036
     (mperoff@manatt.com)
     (dsaunders@manatt.com)
     Attorneys for Defendant Marc Fisher Footwear LLC


     Paul Fields (via email)  (w/ enclosure)
     Leason Ellis LLP
     One Barker Avenue, Fifth Floor
     White Plains, NY 10601
     (fields@leasonellis.com)
     Co-counsel for Defendant Swank, Inc.

     John T. Williams (via email)  (w/ enclosure)
     Hinkhouse Williams Walsh LLP
     180 North Stetson, Suite 3400
     Chicago, IL  60601
     (jwilliams@hww-law.com)
     Co-counsel for Defendant The Max Leather/Cipriani Accessories, Inc.


4

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 13, 2012 - Page 5

William Pecau (via email)  (w/ enclosure)
Steptoe & Johnson LLP
1330 Connecticut Avenue Northwest
Suite 700
Washington, D.C. 20036
*(wpecau@steptoe.com)*
*Co-counsel for Defendants Signal Products, Inc.*

5



## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

June 13, 2012

OUR FILE NUMBER
340,980-49

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street - Room 1620
New York, New York  10007

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:    *Gucci America, Inc. v. Guess?, Inc., et al., Case No. 09 CV 4373 (SAS)*

Dear Judge Scheindlin:

On behalf of Defendants Guess, Signal Products, Max Leather, and Swank (collectively "Defendants"), we write in response to Gucci's submission of earlier today.  Defendants object to Gucci's request for a reconsideration of the SKUs included on the Final SKU List (*see* Gucci Letter at n.9) as contrary to the Court's explicit instructions in its June 8, 2012 Order.  In addition, it appears that Gucci has mistakenly flipped the profits calculations for Max Leather and Swank listed in the tables shown on pages 1 and 5 of its letter.

Respectfully submitted,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

cc:  Louis S. Ederer, Esq. (via email)
     Mathew T. Salzmann
     Arnold & Porter LLP
     399 Park Avenue
     New York, New York  10022
     *(louis.ederer@aporter.com)*
     *(matthew.salzmann@porter.com)*
     *Attorneys for Plaintiff Gucci America, Inc.*

O'MELVENY & MYERS LLP
The Honorable Shira A. Scheindlin, June 13, 2012 - Page 2


Mark I. Peroff (via email)
Darren W. Saunders
Manatt, Phelps & Phillips LLP
7 Times Square
New York, New York 10036
*(mperoff@manatt.com)*
*(dsaunders@manatt.com)*
*Attorneys for Defendant Marc Fisher Footwear LLC*


Paul Fields (via email)
Leason Ellis LLP
One Barker Avenue, Fifth Floor
White Plains, NY 10601
*(fields@leasonellis.com)*
*Co-counsel for Defendant Swank, Inc.*

John T. Williams (via email)
Hinkhouse Williams Walsh LLP
180 North Stetson, Suite 3400
Chicago, IL 60601
*(jwilliams@hww-law.com)*
*Co-counsel for Defendant The Max Leather/Cipriani Accessories, Inc.*


William Pecau (via email)
Steptoe & Johnson LLP
1330 Connecticut Avenue Northwest
Suite 700
Washington, D.C. 20036
*(wpecau@steptoe.com)*
*Co-counsel for Defendants Signal Products, Inc.*

2

# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

June 14, 2012

**VIA E-MAIL**
Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

      Re:    *Gucci America, Inc. v. Guess?, Inc., et al.* - Case No. 09 Civ. 4373 (SAS)

Dear Judge Scheindlin:

On behalf of Plaintiff Gucci America, Inc. ("Gucci"), we write pursuant to the Court's instructions at the May 30, 2012 telephone conference and in the Clerk's May 31 and June 8, 2012 e-mails, and in furtherance of our May 23 and May 25, 2012 letters, with respect to the Court's calculation of profits to be disgorged by Defendants in accordance with the May 21, 2012 Opinion and Order ("Opinion").

First, now that the Court has issued amended Appendices of infringing SKUs, we have asked our damages expert to recalculate the profits earned by the licensee Defendants, Signal Products ("Signal"), Marc Fisher Footwear ("Marc Fisher"), Swank, and Max Leather, on their sales of those SKUs, as well as the royalties they paid to Guess on such sales. As the Court can see from the attached Schedule A, using the same calculation approach adopted by the Court in the Opinion, the profits realized by each of the licensee Defendants, and the total amount of royalties they paid to Guess, are as follows:

| | |
|---|---|
| Signal | $1,834,503 |
| Marc Fisher[1] | $494,255 |
| Swank | $18,791 |
| Max Leather | $24,701 |
| Guess Royalty Revenue | $1,076,084 |

---

[1] The calculation of profits earned by Marc Fisher takes into account the cost deductions proposed by Ronald Vollmar, Marc Fisher's damages expert, which the Court accepted.  Opinion pp. 52-53.

# ARNOLD & PORTER LLP

Second, with respect to Guess's profits on its own retail sales of infringing SKUs, as the Court acknowledged at the May 30 telephone conference, it had intended to award these profits in the Opinion, but had not done so. With respect to Guess's sales of infringing non-handbag products, its profits on these sales can be calculated precisely, as shown in the attached Schedule A (pp. A28-A30).[2] Such profits are as follows:

| | |
|---|---|
| Guess Profits on Footwear Sales | $117,692 |
| Guess Profits on Belt Sales | $40,545 |
| Guess Profits on Wallet Sales | $36,780 |

With respect to Guess's profits on sales of infringing handbags, as the Court indicated at the May 30 conference, "the only question [is] how to fairly calculate [them]." May 30 Conf. Tr. 4:20-22. As indicated in our May 23 and 25 letters, Guess did not maintain records of handbag sales down to the color level, and therefore did not produce such information in this litigation. Accordingly, the Court has instructed the parties to make additional submissions as to the most reasonable way to calculate Guess's profits on its retail sales of handbags in the infringing colorways, at the same time warning Guess that if it continued to take the position it took in its May 24 letter, namely, that there was no way to do this, it would be doing so at its peril.[3]

In this regard, as we noted in our May 25 letter, it is often the case in trademark infringement litigation that a party ordered to disgorge ill-gotten profits fails to produce, or simply does not maintain records that lend themselves to a straightforward profits calculation. In those instances, under clear Second Circuit law, "[t]he district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged," *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996), since "[t]he primary purpose of disgorgement ... is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objective" of the Lanham Act. *Fendi Adele S.r.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 619, 621 (S.D.N.Y. 2010). Here, the Court found that disgorgement was "needed" for this very reason, that is, "to deter [Guess's] future willful infringement." Opinion p. 98.[4] Accordingly, "the disgorgement amount need only be a ***reasonable approximation of profits causally connected to the violation.***" *First Jersey Sec.*,

---

[2] As indicated in Schedule A, in calculating Guess's retail store profits, costs have been deducted for "store occupancy expenses". Opinion p. 51.

[3] Thus, at the May 30 conference, the Court stated that "I can ... simply seek submissions as to the best way to calculate [Guess's] profits on the sales of those [infringing handbag] SKUs. And if Guess wants to take the position, when invited to submit, sorry, we can't, then they will have to suffer the consequences." May 30 Conf. Tr. 5:18-22.

[4] This was not surprising, since at five different points in the Opinion (pp. 32, 44, 83, 90 and 97), the Court found that Guess had willfully copied and infringed Gucci's Diamond Motif Trade Dress.

2

# ARNOLD & PORTER LLP

101 F.3d at 1475 (emphasis added); *accord Fendi*, 689 F. Supp. 2d at 621.[5] Further, "any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty." *First Jersey Sec.*, 101 F.3d at 1465.[6]

Thus, in our May 23 letter, Gucci proposed what it believes to be the fairest and most accurate way to approximate Guess's retail sales of handbags in the infringing colorways (and, accordingly, its profits on those sales). Since, unlike Guess, Signal, the manufacturer of these handbags, maintained sales data down to the color level, Gucci's damages expert calculated, on a SKU-by-SKU basis, the ratios of Signal's sales of handbags in infringing brown/beige colorways to its total sales of the same handbags in all colors. He then applied those ratios to Guess's sales of the same handbags. This approach makes perfect sense, since, according to the testimony of Jason Rimokh, Signal's President, Guess was by far and away the largest single customer for Signal handbags, purchasing 55% of all handbags sold by Signal in the U.S. during the relevant time period. Rimokh Trial Testimony, Trial Tr. 1448:2-7. Accordingly, the ratios of Guess's purchases of handbags in the infringing colorways should not differ significantly from the ratios of Signal's sales of the same handbags. This is, therefore, the most accurate way to approximate Guess's purchases and sales of infringing handbags based on the limited information available.

As noted above, in responding to Gucci's May 23 calculation of Guess's profits on retail sales of infringing handbags, Guess's counsel argued, in his May 24 letter, that Gucci should receive nothing, since the Court should not assume that any of the infringing handbags were sold by Guess, or that Guess bought them in the same ratios that Signal sold them. However, aside from the fact that the Court indicated, at the May 30 conference, that it would not countenance such a windfall to Guess, counsel's letter fails to mention that Guess proposed a nearly identical approach to calculating its sales of infringing handbags in its own post-trial submissions. If the Court looks at Guess's April 27, 2012 binder entitled "Handbag Products at Issue", it will see, both on the "Notes" page at the front of the binder (in particular, Note 6), and the "Quattro G" section (items 84-122) towards the end of the binder, that for each Quattro G handbag group, Guess sets out Guess's and Signal's combined total sales, and then calculates the ratio of Signal's sales of brown/beige handbags in that group to its sales of all handbags in that group. The point of this exercise was to suggest exactly what Gucci is suggesting, namely, that the best

---

[5] *See also Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (in calculating a profits award, "'where … the defendant controls the most satisfactory evidence of sales the plaintiff needs only establish a basis for a reasoned conclusion as to the extent of [profits earned] by the deliberate and wrongful infringement.'" (quoting *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 193 (2d Cir. 1959))).

[6] *See also U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc.*, 2009 WL 4351962, at *3 (S.D.N.Y. Dec. 1, 2009) ("[I]f 'the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence.'" (quoting *Chloe v. Zarafshan*, 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009))).

# ARNOLD & PORTER LLP

way to approximate Guess's retail sales of infringing handbags, given the information made available by Defendants, is to apply Signal's ratios of infringing sales to Guess's sales. The only difference between Gucci's and Guess's approaches is that Gucci calculated Signal's infringing handbag sales ratios down to the individual SKU level, while Guess's calculation was at the group level.[7]

Accordingly, we ask the Court to adopt Gucci's approach to calculating Guess's profits on retail sales of infringing handbag SKUs, that is, by applying, on a SKU-by-SKU basis, Signal's ratios of sales of handbags in infringing colorways to sales of handbags in all colorways. This approach most reasonably approximates Guess's retail sales and profits on infringing handbags based on the information made available. In Schedule A hereto (pp. A15-A19), Gucci has calculated Guess's profits on sales of infringing handbag sales using this approach. The result is as follows:

> Guess's retail handbag profits        $1,796,136
> using Signal's sales ratios on SKU-
> by-SKU basis[8]

In sum, Gucci respectfully submits that, on reconsideration, the Court should enter an award of profits against all Defendants in the total amount of **$5,439,488**.[9] The award breaks

---

[7] At trial, Defendants suggested still another approach to calculating infringing handbag sales, using Signal's ratios for sales of Quattro G handbags in beige or near-beige colors to sales of all Quattro G handbags. *See* Trial Testimony of Alexander ¶33, and Rimokh Trial Testimony, Trial Tr. 1448:3-7.

[8] Gucci's damages expert has also performed a calculation of Guess's profits the way Guess proposed to do it in Guess's post-trial submissions, that is, by applying Signal's sales ratios for infringing handbags at the handbag group level, rather than the individual SKU level. As the Court can see from Schedule A attached (pp. A20-A21), these calculations yield a nearly identical amount of $1,798,808, differing only by $2,672 from Gucci's calculation, yet another indication that Gucci's calculation is the fairest and most reasonable way to approximate Guess's illicit handbag profits.

[9] Gucci notes that in its profit calculations, it has not included ten (10) handbag SKUs that it appears the Court may have intended to include in its revised Appendix A, but did not: a) in the Atomic Logo "Moose" colorway, SKU Nos. SI605101, SI605104, SI605106, SI605131, SI605113, SI605187, SI605190, and SI605196; b) in the Sicily "Brown" colorway, SKU No. SI706582; and c) in the Sicily "Moose" colorway, SKU No. SI706582. The reason we believe the Court may have intended to include these SKUs is that all other SKUs in those color groups were included in Appendix A as infringing. Attached hereto as Schedule B are the lists of SKUs from these groups, with corresponding images, showing the SKUs that were included by the Court and the ones that were not. If the Court intended to include these SKUs in Appendix A, then Gucci has provided profit calculations with respect to them (*see* Schedule A, pp. A2-A10). As the Court can see, the inclusion of these ten SKUs increases the disgorgement amount by $196,941 (consisting of $135,667 in additional Signal profits, and $61,274 in additional royalties paid to Guess), for a total amount of **$5,636,429**.

4

# ARNOLD & PORTER LLP

down against each Defendant as follows:

| | |
|---|---|
| Guess (includes profits and royalty revenue) | $3,067,237 |
| Signal | $1,834,503 |
| Marc Fisher | $494,255[10] |
| Swank | $18,791 |
| Max Leather | $24,701 |

We thank the Court for its consideration.

Respectfully,

ARNOLD & PORTER LLP

By: _____
Louis S. Ederer

cc:    All counsel (by e-mail)

---

[10] Of this amount, $10,480 is attributable to profits earned by Marc Fisher on the style known as the gmDennis2, which bears only the GRG Stripe design.  Marc Fisher also paid Guess a royalty on its sales of this style in the amount of $5,481 (*see* Schedule A, pp. A11-A12).

5

**-Appearances-**

**For Gucci America:**

Louis S. Ederer, Esq.
John Maltbie, Esq.
Matthew T. Salzmann, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

**For Guess?, Inc., Marc Fisher Footwear LLC, The Max Leather Group/Cipriani Accessories, Inc., Sequel AG, K&M Associates L.P., Viva Optique, Inc., Signal Products, Inc., Swank, Inc.,:**

Robert C. Welsh, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
(310) 553-6700

**For Guess?, Inc.:**

Daniel M. Petrocelli, Esq.
David Marroso, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, California 90067
(310) 553-6700

Andrew J. Frackman, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
(212) 326-2000

**For Marc Fisher Footwear LLC:**

Darren W. Saunders, Esq.
Mark I. Peroff, Esq.
Alpa V. Patel, Esq.
Manatt, Phelps, & Phillips LLP
7 Time Square
New York, New York 10036
(212) 790-4500

**For The Max Leather Group/Cipriani Accessories, Inc. and Signal Products, Inc.:**

John T. Williams, Esq.
Hinkhouse Williams Walsh LLP
180 North Stetson Street, Suite 3400
Chicago, Illinois 60601
(312) 268-5767

**For Signal Products, Inc.:**

William G. Pecau, Esq.
Steptoe & Johnson, LLP
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-6244

Kristin Marie Darr, Esq.
Steptoe & Johnson, LLP
750 Seventh Avenue, Suite 1900
New York, New York 10019
(212) 506-3900

Michael R. Heimbold, Esq.
Steptoe & Johnson, LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
(310) 734-3200

**For Swank, Inc.:**

Abigail Anne Rubinstein, Esq.

Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, District of Columbia 20036
(202) 429-3068

Paul Fields, Esq.
Karin Fromson Segall, Esq.
Leason Ellis LLP
81 Main Street, Suite 503
White Plains, New York 10601
(914) 288-0022

Atul R. Singh, Esq.
Darby & Darby, P.C.
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 527-7700